Case No. 22-11172

# United States Court of Appeals
# for the Fifth Circuit

CORNELIUS CAMPBELL BURGESS,

*Plaintiff – Appellee*

— v. —

JENNIFER WHANG, IN HER OFFICIAL CAPACITY AS AN ADMINISTRATIVE LAW JUDGE; FEDERAL DEPOSIT INSURANCE CORPORATION; MARTIN J. GRUENBERG, IN HIS OFFICIAL CAPACITY AS ACTING CHAIRMAN OF THE FDIC; MICHAEL J. HSU, IN HIS OFFICIAL CAPACITY AS A DIRECTOR OF THE FDIC; ROHIT CHOPRA, IN HIS OFFICIAL CAPACITY AS A DIRECTOR OF THE FDIC,

*Defendants – Appellants.*

On Appeal From The United States District Court For The Northern District Of Texas (Wichita Falls Division), No. 7:22-cv-00100-O, Hon. Reed O'Connor

**APPELLANTS' MOTION FOR SUMMARY REVERSAL AND A STAY OF FURTHER DISTRICT COURT PROCEEDINGS PENDING APPEAL**

B. AMON JAMES
Assistant General Counsel
J. SCOTT WATSON
Senior Counsel
JOSEPH BROOKS
Counsel
FEDERAL DEPOSIT INSURANCE
  CORPORATION
3501 Fairfax Drive, Room VS-D-7010
Arlington, VA 22226
Tel: (703) 562-2054 | Fax: (703) 562-2469

December 8, 2022                    *Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

Appellants are not required to provide a certificate of interested persons under 5th Cir. R. 28.2.1, as the Federal Deposit Insurance Corporation (FDIC) is a federal agency established under 12 U.S.C. § 1811 and all remaining appellants are individuals acting in their official governmental capacities.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.......................................................i

TABLE OF AUTHORITIES.............................................................................iii

INTRODUCTION...........................................................................................1

LEGAL STANDARD FOR SUMMARY DISPOSITION......................................2

RELEVANT PROCEDURAL HISTORY.............................................................3

ARGUMENT.................................................................................................5

   I.   Summary Reversal Is Warranted Because This Court Has Already
       Held That 12 U.S.C. § 1818(i) Explicitly Divests District Courts
       Of Jurisdiction To Review And Enjoin FDIC Enforcement Proceedings.......5

  II.  A Stay Of Further District Court Proceedings Pending Resolution Of
       This Appeal Is Warranted Because Appellants Present A Substantial
       Case On The Merits Involving A Serious Legal Question And The
       Balance Of Equities Weighs Heavily In Favor Of A Stay..............................12

CONCLUSION.............................................................................................14

CERTIFICATE OF SERVICE.........................................................................16

CERTIFICATE OF COMPLIANCE.................................................................17

CERTIFICATE OF CONFERENCE.................................................................18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bank of Louisiana v. FDIC,*
  919 F.3d 916 (5th Cir. 2019)............................................................6-11, 13

*BedRoc Ltd. v. United States,*
  541 U.S. 176 (2004)............................................................................8, 11

*Board of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.,*
  502 U.S. 32 (1991)..............................................................................5, 7

*Boyd Rosene & Assocs. v. Kansas Mun. Gas Agency,*
  174 F.3d 1115 (10th Cir. 1999)............................................................10

*Campaign for Southern Equality v. Bryant,*
  773 F.3d 55 (5th Cir. 2014)..................................................................12

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) (en banc), *cert. granted,*
  142 S.Ct. 2707 (2022).........................................................1, 2, 8-11, 13

*Groendyke Transport, Inc. v. Davis,*
  406 F.2nd 1158 (5th Cir. 1969)..............................................................2

*Gunther v. Commissioner of Internal Revenue,*
  789 F. App'x 836 (11th Cir. 2020)...........................................................2

*Rhoades v. Casey,*
  196 F.3d 592 (5th Cir. 1999)..................................................................7

*United States v. Brigham,*
  382 F.3d 500 (5th Cir. 2004) (en banc)..................................................10

*United States v. Murphy,*
  578 F.3d 719 (8th Cir. 2009)................................................................10

iii

## STATUTES

12 U.S.C. § 1818.............................................................1, 3, 5, 6

12 U.S.C. § 1818(c)(2)...........................................................5

12 U.S.C. § 1818(h)(2)...........................................................5

12 U.S.C. § 1818(i).............................................................7-12

12 U.S.C. § 1818(i)(1).....................................................1, 5, 6, 9

Financial Institutions Supervisory Act of 1966,
  12 U.S.C. § 1818 *et seq.*.................................................5

## INTRODUCTION

On December 1, 2022, the district court entered an order granting a preliminary injunction (PI Order) that bars the FDIC from continuing an ongoing administrative enforcement proceeding "in any way." PI Order at 4 (copy at Exhibit A). In particular, the PI Order enjoins the FDIC from "entering any Final Decision in the Enforcement Proceeding [while acting] pursuant to 12 U.S.C. § 1818[,]" the statute that authorizes FDIC enforcement actions. *Id.* This extraordinary injunction is not only unprecedented, but it also contravenes this Court's controlling case law holding that Congress divested district courts of jurisdiction to enter such an injunction. *See Cochran v. SEC*, 20 F.4th 194, 204 (5th Cir. 2021) (en banc) ("clarify[ing]" that prior Fifth Circuit precedent held that section 1818 "include[s] an *explicit* statutory bar on any court enjoining 'the issuance or enforcement of any . . . [section 1818] order'") (quoting 12 U.S.C. § 1818(i)(1)) (brackets and emphasis added), *cert. granted on other grounds,* 142 S.Ct. 2707 (2022).

Appellants hereby move for summary reversal because binding precedent forecloses district court jurisdiction over this case. Appellants also move for a stay of all further proceedings in the district court—but *not* the PI Order itself—pending resolution of this appeal because, as we show *infra*, Appellants present a substantial case on the merits involving a serious legal question and the balance of equities weighs heavily in favor of granting the requested stay.

1

## LEGAL STANDARD FOR SUMMARY DISPOSITION

This Court has identified "two circumstances under which summary disposition is necessary and proper." *Groendyke Transport, Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969). "The first comprises those cases where time is truly of the essence[,] . . . includ[ing] situations where important public policy issues are involved[.]" *Id.* "Second, are those [cases] in which the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case." *Id.* "[W]here either of these circumstances is found, summary disposition is proper." *Id.* Both are present here.

*First*, the district court's enjoining of an ongoing administrative enforcement proceeding addressing alleged improper acts of a bank officer involves important public policy issues that impact the stability of the nation's financial system. Moreover, the PI Order prevents the FDIC from proceeding with an ongoing administrative enforcement action and Congress has not authorized the FDIC to bring such an enforcement action before any other tribunal including any court of law.

*Second*, because *Cochran* already decided the identical subject matter jurisdiction issue, there can be no substantial question as to the outcome of this case. *See Gunther v. Commissioner of Internal Revenue*, 789 F. App'x 836, 836-37 (11th Cir. 2020) (holding summary disposition was warranted where prior circuit precedent decided the "identical jurisdictional issue") (citing *Groendyke*, 406 F.2d at 1162).

## RELEVANT PROCEDURAL HISTORY

1. For more than eight years, Appellee Cornelius Campbell Burgess aggressively defended against claims the FDIC brought in an administrative enforcement action under 12 U.S.C. § 1818. The extended proceedings included a seven-day hearing before an administrative law judge (ALJ), a final order of the FDIC's Board of Directors (Board) removing Burgess from his bank-related positions and assessing a $200,000 civil money penalty against him, a direct appeal to this Court, a remand to the Board after an intervening Supreme Court decision held that another agency's ALJs are subject to the Appointments Clause, and a supplemental three-day hearing before a newly-appointed ALJ. *See* Order granting motion for preliminary injunction (Nov. 6 Order) at 3-5 (copy at Exhibit B). The action then returned to the Board, where all that remained was for it to review the ALJ's recommended decision and issue a final order. *Id.* at 5. Before the Board could act, however, Burgess filed this lawsuit in the district court seeking to prevent the Board from issuing a final order.

2. On October 6, 2022, Burgess filed his complaint against the FDIC, an ALJ, and three FDIC officers. Nov. 6 Order at 5. The complaint asserts three claims for declaratory relief: (1) a claim alleging the FDIC Board is unconstitutionally structured; (2) a claim alleging the ALJs used by the FDIC are unconstitutionally shielded from removal; and (3) a claim alleging the FDIC unconstitutionally deprived Burgess of his Seventh Amendment right to a jury trial. *Id.* at 5-6.

3

3. On October 15, 2022, Burgess moved for entry of a preliminary injunction "to enjoin the FDIC from continuing the Enforcement Proceeding against [him]." Nov. 6 Order at 6.

4. On November 6, 2022, the district court granted Burgess's motion. Nov. 6 Order at 1, 24. The court first rejected the FDIC's argument that the court lacked jurisdiction to grant the declaratory and injunctive relief sought in the complaint. *Id.* at 7-16. Next, the district court found Burgess was unlikely to succeed on the merits of his FDIC-Board-structure and ALJ-removal-protection claims. *Id.* at 17-19. Finally, the court found Burgess had shown a likelihood of success on the merits of his right-to-a-jury-trial claim. *Id.* at 19-22. The Order concluded by directing the parties to file briefs describing in detail what relief the injunction should include. *Id.* at 24.

5. On December 1, 2022, the district court entered an order preliminarily enjoining Appellants from:

- Entering any Final Decision in the Enforcement Proceeding, . . . ;
- Acting on any motions or requests filed by the parties to the Enforcement Proceeding . . . ;
- Transmitting the record of the Enforcement Proceeding to the FDIC's Board of Directors, . . . ; or
- Otherwise continuing the Enforcement Proceeding in any way.

PI Order at 4.

6. On December 5, 2022, the district court denied Appellants' unopposed consent motion to stay proceedings in that court pending resolution of this appeal.

# ARGUMENT

## I. Summary Reversal Is Warranted Because This Court Has Already Held That 12 U.S.C. § 1818(i) Explicitly Divests District Courts Of Jurisdiction To Review And Enjoin FDIC Enforcement Proceedings.

The Financial Institutions Supervisory Act of 1966, 12 U.S.C. § 1818 *et seq.*, established a "tripartite regime of judicial review" for FDIC enforcement actions. *See Board of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 38 (1991) (discussing 12 U.S.C. § 1818). Under this framework, federal courts have subject matter jurisdiction to review FDIC administrative enforcement actions in only three circumstances. First, the statute permits the FDIC to petition district courts for "the enforcement of any effective and outstanding notice or order issued [to an insured bank]" pursuant to section 1818 proceedings. *See* 12 U.S.C. § 1818 (i)(1). Second, district courts have jurisdiction to review challenges by bank directors and other institution-affiliated parties to the FDIC's issuance of a temporary cease and desist order. *See* 12 U.S.C. § 1818(c)(2). Third, the United States courts of appeals have exclusive jurisdiction to review *final* agency orders issued by the FDIC in section 1818 proceedings. *See* 12 U.S.C. § 1818(h)(2).

Outside of these three specifically delineated circumstances, federal courts lack subject matter jurisdiction to review or otherwise interfere with FDIC administrative enforcement proceedings. Congress made this abundantly clear with unequivocal statutory language:

> [E]xcept as otherwise provided[,] . . . *no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [section 1818],* or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(i)(1) (brackets, ellipsis, and emphasis added). Moreover, this Court's controlling precedent confirms that this language means exactly what it says.

In *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019), the appellants were a bank and three of its directors who—just as Burgess has done here—brought a lawsuit in a federal district court seeking declaratory and injunctive relief to prevent the FDIC Board from issuing a final order in an ongoing administrative enforcement proceeding under section 1818. This Court held that the district court correctly dismissed the lawsuit for lack of subject matter jurisdiction. *Id.* at 930.

This Court began its analysis in *Bank of Louisiana* by observing that, "[a]s a general matter, federal district courts have subject matter jurisdiction over all civil cases arising under the Constitution and federal law." *Id.* at 922. But as this Court further observed, "Congress may channel[ ] judicial review of a constitutional claim through a statutory scheme of administrative review followed by judicial review in a federal appellate court[,] [thereby] preclud[ing] district court jurisdiction[.]" *Id.* (internal quotation marks omitted). And "[i]n that event, federal district courts lack subject matter jurisdiction to hear those claims." *Id.*

This Court then explained that "Congress may preclude district court jurisdiction either explicitly or implicitly." *Bank of Louisiana*, 919 F.3d at 923. "To discern an *explicit* preclusion, [this Court] examine[s] whether the text expressly limit[s] the jurisdiction that other statutes confer on district courts[.]" *Id.* (emphasis added). In other words, "[w]hen dealing with an express preclusion clause . . . [courts] determine the scope of preclusion *simply by interpreting the words Congress has chosen.*" *Id.* (emphasis added). On the other hand, "[t]o discern an *implicit* preclusion, [this Court] engage[s] in a more complex analysis." *Id.* (emphasis added). That analysis ultimately requires consideration of "three 'factors,' sometimes referred to as the '*Thunder Basin* factors.'" *Id.* Those factors are: "(1) whether precluding district court jurisdiction 'could foreclose all meaningful judicial review'; (2) whether the Bank's 'suit is wholly collateral to a statute's review provisions'; and (3) whether its claims are 'outside the agency's expertise.'" *Id.*

The *Bank of Louisiana* Court next noted that "[b]oth the Supreme Court and [this Court] have 'held that the plain, preclusive language of § 1818(i) 'provides . . . clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin administrative' proceedings.'" *Id.* at 924 (quoting *Rhoades v. Casey*, 196 F.3d 592, 597 (5th Cir. 1999) (quoting *MCorp*, 502 U.S. at 44)). Then, applying the statute to the case before it, this Court held "the plain terms of section 1818(i) bar[red] jurisdiction [t]here." *Id.*

7

Consistent with the *Bank of Louisiana* Court's earlier discussion of the law quoted above, at that point its analysis was complete. *See also BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (when interpreting a statute, "our inquiry begins with the statutory text, and it ends there as well if the text is unambiguous"). Nevertheless, because the district court in *Bank of Louisiana* had resolved the jurisdictional issue by employing an implicit-preclusion analysis, this Court thought it "prudent to cycle through the *Thunder Basin* factors." *Bank of Louisiana*, 919 F.3d at 925. After doing so, this Court concluded that "[t]hose factors *reinforce[d]* the conclusion [it had already reached under the explicit-preclusion analysis] that the review scheme preclude[d] district court jurisdiction over the Bank's claims." *Id.* (emphasis and brackets added).

That this Court elected to "cycle through the *Thunder Basin* factors" in *Bank of Louisiana* does not detract from its holding that section 1818(i) *explicitly* precludes district court jurisdiction to review and enjoin FDIC enforcement proceedings. Indeed, any doubt about this was swept aside by this Court's subsequent en banc decision in *Cochran.* There, the SEC attempted to rely on *Bank of Louisiana* in a case involving a district court lawsuit challenging an SEC enforcement proceeding. But this Court rejected the SEC's argument and distinguished *Bank of Louisiana* on the ground that "the statutory review scheme at issue in that case differed in a key respect from the Exchange Act's [which governs SEC proceedings]: in *Bank of Loui-*

*siana*, the scheme included an *explicit* statutory bar on any court enjoining 'the issuance or enforcement of any . . . [FDIC] order.'" *Cochran*, 20 F.4th at 204 (quoting 12 U.S.C. § 1818(i)(1)) (brackets and emphasis added). Then, resolving any lingering doubt about what this Court had actually held in *Bank of Louisiana*, the en banc court in *Cochran* stated: "[W]e *clarify* that *Bank of Louisiana* was addressing the *explicit* statute at issue there." *Id.* (bracket and emphases added). And as the en banc court further clarified, "*Bank of Louisiana* . . . h[eld] that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]." *Id.* Thus, *Bank of Louisiana*—as clarified by *Cochran*—is directly on point and it therefore requires the same result here that this Court affirmed there: dismissal of the entire case for lack of subject matter jurisdiction.[1]

Critical to the district court's contrary ruling in this case that it did have jurisdiction to enjoin the FDIC Board from issuing a final order was the court's conclusion that section 1818(i) is not an *explicit* jurisdiction-precluding statute. Nov. 6 Order at 10-11. To support that conclusion, the district court dispatched *Cochran* by stating that this Court had merely "'assumed' that, based on the *Bank of Louisiana* decision, § 1818(i) represented an explicit jurisdictional bar" and that whether section 1818(i) is an *explicit* jurisdiction-precluding statute was therefore "a matter of first impression." *Id.* at 10. But the *Cochran* Court did not merely "assume" any-

---

[1] This Court has held that section 1818(i)(1)'s "specific prohibition against affecting agency orders 'by injunction *or otherwise*' encompasses declaratory relief[.]" *Bank of Louisiana*, 919 F.3d at 924.

thing. Rather, this Court unequivocally stated: "[W]e *clarify* that *Bank of Louisiana* was addressing the *explicit* statute at issue there." *Cochran*, 20 F.4th at 204 (emphasis added). And when a federal court of appeals sitting en banc "clarifies" one of its prior precedents, the en banc clarification is controlling circuit law. *See United States v. Brigham*, 382 F.3d 500, 503, 509-11 (5th Cir. 2004) (en banc) ("[c]larifying prior precedents" and then deciding case based on the clarifications); *see also United States v. Murphy*, 578 F.3d 719, 721 (8th Cir. 2009) (applying earlier en banc court decision's "clarification" of one of the circuit's prior precedents as controlling circuit law); *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1117-18 (10th Cir. 1999) (same).

The district court also concluded that *Cochran's* clarification of *Bank of Louisiana* was not necessary to the decision. Nov. 6 Order at 10. Again, that is not correct. Rather, because the SEC relied on *Bank of Louisiana* in *Cochran*, *see Cochran*, 20 F.4th at 204, the *Cochran* Court had to distinguish *Bank of Louisiana* in some way in order to decide the case against the SEC as it did. And the way the *Cochran* Court distinguished *Bank of Louisiana* was by "clarify[ing] that *Bank of Louisiana* was addressing the *explicit* statute at issue there[,]" *i.e.*, 12 U.S.C. §1818(i). *Id.*

Finally, the district court concluded that "the court in *Bank of Louisiana* expressly *declined* to hold that § 1818(i) is an explicit jurisdictional bar[.]" Nov. 6 Order at 9. Once again, however, that is not correct. As explained above, this Court

10

necessarily held in *Bank of Louisiana* that section 1818(i) is an *explicit* jurisdiction-precluding statute when it ruled that "the plain terms of section 1818(i) bar[red] jurisdiction [t]here." *Bank of Louisiana*, 919 F.3d at 924. Nothing further beyond this interpretation of the unambiguous statutory language was either necessary or required for an explicit-preclusion analysis. *See BedRoc Ltd.*, 541 U.S. at 183 ("our inquiry begins with the statutory text, and it ends there as well if the text is unambiguous"). In *Cochran*, this Court reached precisely the same conclusion:

> [In *Bank of Louisiana*], we held that district court jurisdiction was *explicitly* divested (explaining that "the plain terms of section 1818(i) bar jurisdiction here"). Although we proceeded to analyze the *Thunder Basin* factors, we did so merely to "reinforce" our conclusion based on the explicit jurisdictional bar.

*Cochran*, 20 F.4th at 204 (internal citation omitted).

In sum, because *Bank of Louisiana* "held that district court jurisdiction [to review and enjoin FDIC administrative enforcement proceedings] was *explicitly* divested . . . by the plain terms of section 1818(i)," *Cochran*, 20 F.4th at 204 (bracket and ellipsis added), and because the identical jurisdictional issue is presented here, summary reversal is "necessary and proper." *Groendyke*, 406 F.2d at 1162.[2]

---

[2] Appellants continue to maintain that application of the *Thunder Basin* factors would reinforce the conclusion that the district court lacks jurisdiction over Burgess's claims. *See* Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (District Court ECF 24) at 15-17. For purposes of this motion, however, we argue only that *Cochran* requires summary reversal because it clarified that section 1818(i) *explicitly* divests district courts of jurisdiction to review and enjoin FDIC administrative enforcement proceedings. Consequently, there is no need to consider the *Thunder Basin* factors here as they only apply to an *implicit*-preclusion analysis.

11

II.     **A Stay Of Further District Court Proceedings Pending Resolution Of This Appeal Is Warranted Because Appellants Present A Substantial Case On The Merits Involving A Serious Legal Question And The Balance Of Equities Weighs Heavily In Favor Of A Stay.**

Appellants seek a stay of further proceedings in the district court—but not a stay of the PI Order itself—pending resolution of this appeal. "In determining whether to grant a stay pending appeal, [this Court] consider[s] four factors: '(1) whether the stay applicant has made a strong showing that he [or she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Campaign for Southern Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (first two brackets added). However, "[i]n evaluating these factors, this [C]ourt has refused to apply them in a rigid . . . [or] mechanical fashion." *Id.* (internal quotation marks omitted). Instead, this Court has "recognized that a movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Id.* (internal quotation marks omitted).

With respect to the first of these two factors, we have already demonstrated in the previous section of this motion that this case involves a serious legal question—whether section 1818(i) divests district courts of jurisdiction to review and enjoin FDIC administrative enforcement proceedings. What is more, Appellants have presented a substantial case on the merits with respect to this serious legal question

because it has already been decided in their favor by this Court in *Bank of Louisiana* and *Cochran*. At a bare minimum, Appellants have made a substantial case that this is true.

As to the second factor, the balance of equities here weighs heavily in favor of granting the requested stay. Should a stay be denied, parallel duplicative proceedings would go forward in this Court and the district court. Because the district court's rulings addressing jurisdiction, Burgess's right to a jury trial, and the removability of FDIC ALJs and officers were made in the course of proceedings on a preliminary injunction motion, they would all have to be litigated further in the district court at the same time that the parties are litigating them here. Such a course would needlessly waste the time and resources of this Court, the district court, the parties, and counsel. On the other hand, given that the requested stay would leave the PI Order in place pending resolution of this appeal, Burgess would suffer no discernible harm if the stay were granted. Indeed, Burgess would actually benefit from the stay because he, too, would be spared the unnecessary time and expense of duplicative proceedings. This likely explains why Burgess consented in the district court to a stay of all further proceedings pending appeal except with respect to his motion for reconsideration of the part of the court's Nov. 6 Order that denied in part his motion for a preliminary injunction. *See* Defendants' Consent Motion To Stay Certain Proceedings (Dist. Ct. ECF 52) at 2.

Unfortunately, however, the district court denied the consent motion for a stay of further proceedings pending this appeal. *See* Order denying consent motion for stay (Dist. Ct. ECF 56). The court reasoned that other issues Appellants may raise in the district court could moot this appeal. *Id.* at 1. But whether or not that speculation might ultimately turn out to be accurate, it does not justify denial of the requested stay and the resulting duplicative proceedings—especially given the strong likelihood that this appeal may be resolved by summary reversal in fairly short order.

## CONCLUSION

Based on the foregoing points and authorities, Appellants respectfully submit that this Court should summarily reverse the district court's PI Order and Nov. 6 Order and remand this case to the district court with instructions to dismiss the entire case for lack of subject matter jurisdiction. Appellants also respectfully submit that this Court should enter a stay of further district court proceedings pending resolution of this appeal.

In the event that this Court does not grant this motion for summary reversal, Appellants request a period of 30 days from the denial of the motion in which to file their brief on the merits.[3]

---

[3] Appellants reserve the right to seek reversal of the PI Order and the Nov. 6 Order on any ground supported by the record and relevant authorities.

Dated: December 8, 2022              Respectfully submitted,

                                    B. Amon James
                                    Assistant General Counsel
                                    J. Scott Watson
                                    Senior Counsel

                                    s/Joseph Brooks
                                    Joseph Brooks
                                    Counsel
                                    **FEDERAL DEPOSIT INSURANCE
                                      CORPORATION**
                                    3501 Fairfax Drive, Room D-7010
                                    Arlington, VA 22226
                                    Tel: (703) 562-2054
                                    Fax: (703) 562-2496

                                    *Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion has been filed by electronic case filing and served on counsel of record through the Court's Notice of Docket Activity on this 8th day of December, 2022.

s/ Joseph Brooks
Joseph Brooks

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this motion complies with the length limits of Fed. R. App. P.  27(d)(2)(A) because it contains 3,527 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

Undersigned counsel further certifies that this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced 14-point (12-point for footnotes) Baskerville Old Face typeface using Microsoft Word 2016.


s/Joseph Brooks
Joseph Brooks

*Counsel for Defendants-Appellants*

Dated:  December 8, 2022

## CERTIFICATE OF CONFERENCE

I certify that, on December 8, 2022, I conferred with Manuel Berrelez, counsel for Appellee Cornelius Campbell Burgess, who informed me that Burgess will be filing an opposition to this motion.

s/Joseph Brooks
Joseph Brooks

*Counsel for Defendants-Appellants*

# EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| CORNELIUS CAMPBELL BURGESS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 7:22-cv-00100-O |
| FEDERAL DEPOSIT INSURANCE CORPORATION, et al., | § § § § | |
| Defendants. | § § | |

### ORDER AND PRELIMINARY INJUNCTION

On November 26, 2022, the Court issued a Notice to the Parties to inform them of its plan to advance the trial on the merits under Federal Rule 65(a)(2) and to invite any objections the Parties may have regarding that plan of action.[1] Having read Defendants' Objection[2] to the Court's Order, the Court hereby **DECLINES** to advance the trial on the merits under Federal Rule 65(a)(2).

Further, in response to the Court's prior Order[3] granting Plaintiff's Motion for Preliminary Injunction, Defendants filed a Motion for Reconsideration.[4] Having read the Parties' briefing regarding Defendants' Motion for Reconsideration,[5] as well as the relevant caselaw, the Court finds that Defendants' Motion for Reconsideration should be, and is, hereby **DENIED**.

Therefore, the Court's finding in its prior November 6, 2022 Order stands – Plaintiff has satisfied the requirements and is entitled to a preliminary injunction as to his claim under the

---

[1] Order, ECF No. 41.
[2] Objection, ECF No. 46.
[3] Order, ECF No. 31.
[4] Motion for Reconsideration, ECF No. 34.
[5] *See* Pl. Resp., ECF No. 37; Defs. Reply, ECF No. 38; Pl. Sur-Reply, ECF No. 39-1.

Seventh Amendment.[6] In the November 6 Order, the Court ordered the Parties to brief the appropriate scope of relief.[7] Both parties filed briefing as to the scope of the injunction.[8] Having read the briefing and the pertinent caselaw, the issue is ripe for decision.

Plaintiff requests the following injunction from the Court:

Pending further order of this Court, Defendants are hereby enjoined from taking any further action in the administrative enforcement proceeding styled *In re Cornelius Campbell Burgess et al.* (Nos. FDIC-14-0307e, FDIC 140-0308k) (the "Enforcement Proceeding"). Absent future authorization from this Court, the Defendants are enjoined from:

- entering any Final Decision in the Enforcement Proceeding, pursuant to 12 U.S.C. § 1818 or 12 C.F.R. § 308.40(c);
- acting on any motions or requests filed by the parties to the Enforcement Proceeding, including but not limited to motions filed under 12 C.F.R. § 308.23(c), such as the FDIC's recent motion seeking leave to file a response to the Exceptions that Burgess has filed in the Enforcement Proceeding;
- transmitting the record of the Enforcement Proceeding to the FDIC's Board of Directors, pursuant to 12 C.F.R. § 308.40(a); or
- otherwise continuing the Enforcement Proceeding in any way.

Pending further order of this Court, Defendants are also enjoined from taking any other action against Burgess that relies in any way on the record in the Enforcement Proceeding, including but not limited to evidence adduced or determinations, rulings, or recommendations rendered as part of that proceeding.[9]

Defendants contend that Plaintiff's proposed injunction is overbroad and vague, and that the injunction should be narrowly tailored to enjoining Defendants from "entering any Final Decision in the Enforcement Proceeding, pursuant to 12 U.S.C. § 1818 or 12 C.F.R. § 308.40(c)."[10] Defendants contend the injunction should be limited to enjoining the FDIC Board from rendering a final decision in solely these legal claims imposing civil monetary penalties against Plaintiff as

---

[6] *See* Order 24, ECF No. 31.
[7] *Id.*
[8] *See* Pl. Brief, ECF No. 32; Defs. Resp. and Obj., ECF No. 33; Pl. Resp., ECF No. 37; Defs. Reply, ECF No. 38; Pl. Sur-Reply, ECF No. 39-1.
[9] Pl. Brief 3–4, ECF No. 32.
[10] Defs. Resp. and Obj. 11–13, ECF No. 33.

the Court found that the Seventh Amendment right to a jury trial applied only to those claims for civil monetary penalties.[11]

The Fifth Circuit has said that a preliminary injunction is impermissibly overbroad if it is not "narrowly tailored to remedy the specific action which gives rise to the order" as determined by the substantive law at issue. *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (quoting *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)). Thus, Defendants are correct that the injunction must be narrowly tailored to remedy the Seventh Amendment issue. However, the Fifth Circuit in *Jarkesy v. Securities and Exchange Commission* held that the Seventh Amendment applies to proceedings that involve a mix of equitable and legal claims, stating "the facts relevant to the legal claims should be adjudicated by a jury, even if those facts relate to equitable claims too." 34 F.4th 446, 455 (5th Cir. 2022) (citing *Ross v. Bernhard*, 396 U.S. 531, 537–38 (1970)). In this case, the FDIC's claims against Plaintiff depend on the same underlying facts. Therefore, in accordance with *Jarkesy*, Plaintiff is entitled to a jury trial as to the entire shared body of overlapping issues, rendering the whole Enforcement Proceeding unconstitutional.

As the entire Enforcement Proceeding is unconstitutional, the Court finds it must enjoin the entire Enforcement Proceeding. Therefore, the Court grants Plaintiff's requested injunctive relief.[12] The Court **ORDERS** as follows:

Pending further order involving this case, Defendants are hereby enjoined from taking any further action in the administrative enforcement proceeding styled *In re Cornelius Campbell Burgess et al.* (Nos. FDIC-14-0307e, FDIC 140-0308k) (the "Enforcement Proceeding"). Defendants are therefore enjoined from:

---

[11] *Id.*
[12] Pl. Brief 3–4, ECF No. 32.

- entering any Final Decision in the Enforcement Proceeding, pursuant to 12 U.S.C. § 1818 or 12 C.F.R. § 308.40(c);

- acting on any motions or requests filed by the parties to the Enforcement Proceeding, including but not limited to motions filed under 12 C.F.R. § 308.23(c), such as the FDIC's recent motion seeking leave to file a response to the Exceptions that Burgess has filed in the Enforcement Proceeding;

- transmitting the record of the Enforcement Proceeding to the FDIC's Board of Directors, pursuant to 12 C.F.R. § 308.40(a); or

- otherwise continuing the Enforcement Proceeding in any way.

Pending further order of this Court, Defendants are also enjoined from taking any other action against Burgess that relies in any way on the record in the Enforcement Proceeding, including but not limited to evidence adduced or determinations, rulings, or recommendations rendered as part of that proceeding.

Finally, Burgess shall post a security in the amount of $1,000 to pay any costs or damages that occur should this injunction prove to be wrong.

**SO ORDERED** on this **1st day** of **December, 2022**.


_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| CORNELIUS CAMPBELL BURGESS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.  7:22-cv-00100-O |
| FEDERAL DEPOSIT INSURANCE CORPORATION, et al., | § § § § § | |
| Defendants. | § | |

## <u>ORDER</u>

Before the Court are Plaintiff's Motion for Preliminary Injunction (ECF No. 15), filed on October 15, 2022; Defendant's Response (ECF No. 24), filed October 24, 2022; and Plaintiff's Reply (ECF No. 25), filed October 27, 2022.  Having reviewed the Motion, the Court finds that it should be, and is, hereby **GRANTED**.

### I.     Factual Background[1]

#### A.  The Structure of the FDIC and its Administrative Adjudications

The Federal Deposit Insurance Corporation ("FDIC") is an independent agency that has expansive power to enforce a variety of banking laws against regulated parties. *See* 12 U.S.C. §§ 1812(a), 1818.

The FDIC is headed by a five-member Board of Directors. § 1812(a)(1). Three of the members are appointed by the President to fixed, six-year terms from which they can only be removed for cause. §§ 1812(a)(1)(C), 1812(c)(1). The remaining two members are the Comptroller

---

[1] The underlying facts in this case are undisputed. Accordingly, unless otherwise specified, the Court draws the facts in this section from Plaintiff's Complaint (ECF No. 1), Plaintiff's Brief in Support of His Motion for Preliminary Injunction (ECF No. 15-1), and the FDIC's Response (ECF No. 24).

1

of the Currency and the Director of the Consumer Finance Protection Bureau ("CFPB"). *See* § 1812(a)(1)(A)–(B). These remaining two members can be fired at will by the President.

The FDIC is empowered by statute to issue a "notice of charges" against an enforcement target who is alleged to have violated banking laws, to conduct administrative adjudications of those charges, and, if those charges are sustained, to order a wide variety of sanctions. *See* § 1818. The most severe sanctions that the FDIC can impose are a "removal" order (which will remove its subject from the bank-related offices that he or she holds) and a "prohibition order" (which will forever bar its subject from working anywhere in the American banking industry for the rest of their life). *See* § 1818(e). The FDIC can also impose significant civil monetary penalties. *Id.* § 1818(i).

When the FDIC issues a notice of charges, it must also fix a time and place for an administrative hearing on those charges. *See* § 1818(e)(4). Those hearings are in turn conducted by an Administrative Law Judge ("ALJ"). *See* 12 C.F.R. §§ 308.5, 308.35, 308.31(a). The ALJs used by the FDIC have a broad range of powers, including the ability to issue subpoenas, rule on the admissibility of evidence, and decide critical substantive motions. *See* § 308.5. After the hearing has concluded, the ALJ prepares a "recommended decision" for presentation to the FDIC's Board. *See* §§ 308.5(b)(8), 308.38. Parties may then file "exceptions" to the ALJ's recommended decision. *See* § 308.39. Once the exceptions are on file, the record is considered complete, and the parties are notified that the proceeding has been submitted to the FDIC Board for Final Decision. *See* § 308.40(a). At that point, the Board is free to render a Final Decision that would immediately impose sanctions on the enforcement target. The FDIC Board must issue its Final Decision within ninety days of the date on which the matter is submitted for its review. § 308.40(c)(2).

2

The ALJs used by the FDIC can only be removed if a majority of the Merit Systems Protection Bureau determines that there is "good cause" for termination. 5 U.S.C. § 7521(a). The five members of the Merit Systems Protection Bureau also enjoy for-cause removal protection. 5 U.S.C. § 1202(d).

The ALJs used by the FDIC are part of an entity called the Office of Financial Institution Adjudication, which maintains a "pool" of ALJs who conduct adjudications on behalf of the FDIC and three other federal agencies with related jurisdiction (together, Plaintiff refers to them as the "Banking Agencies"). *See* Pub. L. No. 101-73 § 93,103 Stat. 183,486 (Aug. 9, 1989) (codified at 12 U.S.C. § 1818 note (1992)). Office of Financial Institution Adjudication ALJs, including those used by the FDIC, cannot be referred to the Merit Systems Protection Bureau for removal proceedings unless all four Banking Agencies unanimously agree, in writing, on that course of action. Therefore, for an ALJ used by the FDIC to be removed, all four Banking Agencies would have to unanimously agree to initiate removal proceedings and the Merit Systems Protection Bureau would have to find good cause for the removal.

### B. The FDIC's Enforcement Proceeding Against Plaintiff

Plaintiff Cornelius Burgess served as the Chief Executive Officer of Herring Bank from 2000 to 2012, and as the President of the Bank from 2002 to 2012. In 2010, the FDIC began an investigation into Plaintiff's expense practices after receiving a tip that he was using bank funds to renovate his house. After nearly four years of investigation, the FDIC formally opened an Enforcement Proceeding against Plaintiff on November 21, 2014. In the Enforcement Proceeding, FDIC Enforcement Counsel alleged that Burgess abused his position at Herring Bank. Enforcement Counsel sought to (1) remove Plaintiff from his positions at the bank and its holding

company; (2) prohibit Plaintiff from further participation in the banking industry; and (3) assess a civil monetary penalty of $200,000 against Plaintiff.

The FDIC referred the Enforcement Proceeding to the Office of Financial Institution Adjudication for a hearing. The Enforcement Proceeding was originally assigned to ALJ C. Richard Miserendino, who was then one of the ALJs in the Office of Financial Institution Adjudication "pool." Prior to the first hearing, the Enforcement Proceeding was reassigned to ALJ Christopher McNeil.

Beginning on September 13, 2016, a seven-day hearing was conducted before ALJ McNeil. On January 11, 2017, ALJ McNeil issued a Recommended Decision, where he recommended that Plaintiff be removed from his bank-related positions, prohibited from ever working in the banking industry again, and assessed a $200,000 civil monetary penalty. On May 26, 2017, the FDIC's Administrative Officer submitted the case for the Board's review. On August 7, 2017, the Board accepted ALJ McNeil's Recommended Decision and issued a Final Decision of removal and prohibition. The Board further assessed a $200,000 civil penalty.

On August 25, 2017, Plaintiff filed a petition for review of the FDIC's decision with the United States Court of Appeals for the Fifth Circuit. That same day, Plaintiff filed a motion to stay the FDIC's final order pending disposition of his petition for review. Plaintiff argued, among other things, that a stay was appropriate because ALJ McNeil was an "inferior Officer" of the United States who had not been validly appointed under the Appointments Clause. On September 7, 2017, the Fifth Circuit issued a published Order that stayed the Board's decision. Then, on June 21, 2018, the Supreme Court issued its Opinion in *Lucia v. Sec. & Exch. Comm'n*, which definitively confirmed that ALJs are inferior officers of the United States. 138 S. Ct. 2044, 2055 (2018).

After the Supreme Court's Opinion in *Lucia*, the FDIC Board realized that the ALJs it used to conduct its Enforcement Proceeding could only serve if they were formally appointed by the President, the head of an agency, or a court of law. Therefore, the full Board issued a resolution appointing ALJ McNeil and ALJ Miserendino as FDIC ALJs on July 19, 2018.

On August 20, 2018, the Fifth Circuit remanded the Enforcement Proceeding back to the FDIC for further proceedings in light of the Supreme Court's holding in *Lucia*. On October 28, 2019, the FDIC Board issued a Resolution appointing ALJ Jennifer Whang as an ALJ for the FDIC. On November 26, 2019, the Executive Secretary of the FDIC reassigned the Enforcement Proceeding to ALJ Whang. A three-day supplemental hearing before ALJ Whang was held in January 2022.

On September 16, 2022, ALJ Whang issued a Recommended Decision recommending that Plaintiff be removed from his bank-related offenses, be prohibited from further participation in the banking industry, and be assessed a civil monetary penalty of $200,000.

On October 17, 2022, Plaintiff filed his exceptions to ALJ Whang's Recommended Decision. At this time, the Board could render a Final Decision and impose sanctions on Plaintiff that would be immediately effective, absent a discretionary stay. The Board must render a Final Decision within ninety days after the case is submitted for its review. 12 C.F.R. § 308.40(c)(2).

### C. Present Lawsuit

Plaintiff filed this lawsuit against the FDIC, ALJ Whang, and a number of FDIC officers on October 6, 2022.[2] Plaintiff first brings a claim for declaratory relief on the grounds that the FDIC Board is unconstitutionally structured.[3] Plaintiff next brings a claim for declaratory relief on

---

[2] *See* Compl., ECF No.1.
[3] *Id.* at ¶¶ 90–106.

the grounds that the ALJs used by the FDIC are unconstitutionally shielded from removal.[4] Lastly, Plaintiff brings a claim for declaratory relief on the grounds that the FDIC unconstitutionally deprived Plaintiff of his Seventh Amendment right to a jury trial.[5] On October 15, 2022, Plaintiff filed a Motion for a Preliminary Injunction, asking the Court to enjoin the FDIC from continuing the Enforcement Proceeding against Plaintiff.[6] The FDIC filed a preliminary Response and Objection on October 15, 2022.[7] The FDIC then filed a full Response on October 24, 2022.[8] Plaintiff filed his Reply on October 27, 2022.[9] The Court held a hearing on the Motion on November 1, 2022. The Motion is now ripe for the Court's review.

## II.    Legal Standard

A preliminary injunction is an "extraordinary remedy" and will be granted only if the movants carry their burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *see also* FED. R. CIV. P. 65. The Court should issue a preliminary injunction only if the movants establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The movant

---

[4] *Id.* at ¶¶ 106–18.
[5] *Id.* at ¶¶ 119–40.
[6] Mot., ECF No. 15.
[7] Prel. Resp., ECF No. 18.
[8] Def. Resp., ECF No. 24.
[9] Reply, ECF No. 25.

must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Id.*

### III.    Analysis

#### A.  Jurisdictional Issue

Defendants' main argument is that Plaintiff cannot demonstrate a substantial likelihood of success on the merits because 12 U.S.C. § 1818(i)(1) divests this Court of jurisdiction to grant the injunctive and declaratory relief sought in the Complaint.[10] Plaintiff contends that the Court has jurisdiction because § 1818(i)(1) does not divest this Court of jurisdiction to hear structural constitutional claims that are exogenous to the enforcement proceeding.[11]

Looking at the statutory language, § 1818(i)(1) states, in pertinent part:

> [E]xcept as otherwise provided[,] . . . no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(i)(1). Congress may preclude district court jurisdiction either explicitly or implicitly. *Bank of Louisiana v. Fed. Deposit Ins. Corp.*, 919 F.3d 916, 923 (5th Cir. 2019). The FDIC argues that the § 1818(i) *explicitly* precludes this Court of subject matter jurisdiction. Therefore, the Court will first analyze whether § 1818(i)(1) explicitly precludes district court jurisdiction over the present matter.

##### 1.  Explicit Preclusion

Plaintiff contends that § 1818(i) bars the Court from hearing claims regarding constitutional violations that occurred as part of, or within, the FDIC Enforcement Proceeding, but that there is no explicit preclusion over structural constitutional claims of the type presented by

---

[10] Def. Resp. 2, ECF No. 24.
[11] Pl. Brief 25–26, ECF No. 15-1.

Plaintiff.[12] The FDIC contends that the language of § 1818(i) is "plain" and "preclusive," and bars this Court from reviewing and enjoining administrative proceedings for any reason—including review of structural constitutional claims.[13]

i.   *Cochran* Explicit Preclusion Analysis

Both Plaintiff and the FDIC, in their briefing, rely heavily on the recent Fifth Circuit en banc decision *Cochran v. U.S. Sec. & Exch. Comm'n*., 20 F.4th 194 (5th Cir. 2021), cert. granted sub nom. *Sec. & Exch. Comm'n v. Cochran*, 142 S. Ct. 2707 (2022). In *Cochran*, the Fifth Circuit held that the Securities Exchange Act, 15 U.S.C. § 78y, does not strip federal district courts of jurisdiction to hear structural constitutional claims regarding Securities & Exchange Commission ("SEC") proceedings.

The circuit in the *Cochran* decision spent one paragraph briefly discussing § 1818(i) wherein it distinguished 15 U.S.C. § 78y, which governs SEC proceedings, from § 1818(i). *See id.* at 204. Specifically, the court interpreted a prior Fifth Circuit case, *Bank of Louisiana*, as "holding that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]." *Id.* (citing 919 F.3d at 925–27, 930). It stated the statutory framework of § 1818 included "an explicit statutory bar on any court enjoining 'the issuance of enforcement of any FDIC order." *Id.* at 204 (quoting 12 U.S.C. § 1818(i)). The court interpreted *Bank of Louisiana* as "[holding] that district court jurisdiction was explicitly divested." *Id.* (citation omitted). The court in *Cochran* went on to distinguish that case because the holding of *Bank of Louisiana* was limited to cases involving the "explicit statute" at issue, 12 U.S.C. § 1818, and did not mandate the outcome in a proceeding involving 15 U.S.C. § 78y. *Id.*

---

[12] *Id.* at 25.
[13] Def. Resp. 9–10, ECF No. 24.

Defendant contends that this language in *Cochran* makes clear that jurisdiction in this case is explicitly precluded.[14] However, *Cochran*'s discussion of § 1818(i) is limited to the circuit's interpretation of the holding in *Bank of Louisiana* and why that provision was inapplicable. Focusing on the *Bank of Louisiana* decision, the Fifth Circuit analyzed whether the district court was implicitly precluded from hearing certain claims, and notably concluded it did not engage in an explicit preclusion analysis. *See* 919 F.3d at 924–25, n.10 ("In any event, we need not resolve [the explicit preclusion] issue because of our holding that the statutory scheme withdraws district jurisdiction implicitly."). Furthermore, while the Plaintiff in *Bank of Louisiana* appears to have asserted one structural separation-of-powers claim, the court's analysis focused entirely on Plaintiff's other claims that arose out of the enforcement proceeding, mentioning the separation-of-powers claim in passing when evaluating whether Congress implicitly stripped jurisdiction over Bank of Louisiana's claims.[15] *See id.* Regardless, the court in *Bank of Louisiana* expressly *declined* to hold that § 1818(i) is an explicit jurisdictional bar on the court's jurisdiction to hear any structural claims involving the FDIC.

When questions of jurisdiction have been sidestepped in prior decisions *sub silentio*, later federal courts may consider the issue when a subsequent case squarely presents the jurisdictional issue. *Hagans v. Lavine*, 415 U.S. 528, 535, n.5 (1974); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63, n.4 (1989) ("Petitioner cites a number of cases from this Court that he asserts 'assumed' that a State is a person. [. . .] But the Court did not address the meaning of person in any of those cases, and in none of the cases was resolution of that issue necessary to the decision."). As applied to this case then, whether district courts are *explicitly* barred from

---

[14] *See id.* at 11.

[15] There is some confusion about whether *Bank of Louisiana* actually pursued a separation of powers claim *apart* from the enforcement proceeding as the district court concluded *Bank of Louisiana* made no claim to the constitutional or inherent authority of the FDIC. *See* 2017 WL 3849340 at *6.

9

reviewing structural constitutional claims under § 1818(i), the court in *Bank of Louisiana* made clear that it did not decide the issue. Later, the circuit in *Cochran* "assumed" that, based on the *Bank of Louisiana* decision, § 1818(i) represented an explicit jurisdictional bar to hear these structural claims. *See* 20 F.4th at 204. But, the court in *Cochran* did not engage in the explicit preclusion analysis of § 1818(i), nor was the resolution of that issue necessary to the decision. Therefore, that portion of *Cochran* does not decide the issue here where it is squarely presented.

ii.  Explicit Bar Analysis

Based on the foregoing, the Court considers, as a matter of first impression, whether § 1818(i) explicitly bars this Court's jurisdiction in this case. Plaintiff contends that § 1818(i) is not an explicit bar because (1) Congress, in drafting the statute, did not make clear that it intended to strip the courts of jurisdiction to hear structural constitutional claims; (2) when Congress wants to explicitly strip district court jurisdiction, it knows how to do so; and (3) interpreting § 1818(i) as an explicit bar would present its own constitutional issues.[16]

In *Bank of Louisiana*, while the circuit did not go through the explicit preclusion analysis, it did make clear that, to discern an explicit preclusion, courts examine whether "the text . . . expressly limit[s] the jurisdiction that other statutes confer on district courts," such as 28 U.S.C. § 1331. 919 F.3d at 923 (citation omitted) (alterations in original). The fact that 12 U.S.C. § 1818(i) does not directly reference other jurisdictional statutes weighs against it being an explicit bar. *Id.* at 925, n.10; *cf.*, *e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000) (addressing an explicit jurisdictional bar providing that "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under Section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." (alterations in original)).

_____

[16] Pl. Brief 27–28, ECF No. 15-1.

Further, the Supreme Court has instructed "that where Congress intends to preclude judicial review of constitutional claims, its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (citation omitted). Congress has shown that when it wants to strip district courts of jurisdiction over structural constitutional claims, it will explicitly do so. *See, e.g.*, 18 U.S.C. § 1252(b)(9) (judicial review provision within the Immigration and Nationality Act) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order under this section."). "[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862 (2017). In this case, the FDIC concedes that § 1818(i) does not specifically mention that the jurisdictional bar encompasses structural constitutional claims.[17]

To conclude, 12 U.S.C. § 1818(i) does not expressly limit the jurisdiction that other statutes confer on district courts. The statute makes no mention of constitutional claims, and thereby, any intent of Congress to strip the district court's jurisdiction over constitutional claims was not made clear. Further, Congress has shown when it wants to remove district court jurisdiction over structural constitutional claims, it will explicitly do so. It did not do so in § 1818(i). The Court therefore finds that § 1818(i) does not present an explicit bar to the Court's exercise of subject matter jurisdiction over structural constitutional claims in this case.

### 2.  Implicit Preclusion

As Plaintiff's structural constitutional claims are not explicitly barred, the Court turns to the question of whether it is nonetheless *implicitly* barred from hearing them. The FDIC, in its

---

[17] Def. Resp. 13, ECF No. 24.

Response, does not go through the implicit preclusion analysis, choosing to rest on its argument that the Court is explicitly barred.[18]

"To discern an implicit preclusion, [the Court] engage[s] in a more complex analysis. [The Court] first ask[s] whether it is fairly discernible from the text, structure, and purpose of the statutory scheme that Congress intended to preclude district court jurisdiction." *Bank of Louisiana*, 919 F.3d at 923 (citation and quotation marks omitted). The Court then asks, "whether the claims at issue are of the type Congress intended to be reviewed within the statutory structure." *Id.* (citation omitted). To answer this second question, the Supreme Court has identified three factors the Court must analyze, known as the *Thunder Basin* factors. *Id.* Specifically, the Court must inquire: (1) whether precluding district court jurisdiction could foreclose all meaningful judicial review; (2) whether Plaintiff's suit is wholly collateral to a statute's review provisions; and (3) whether its claims are outside the agency's expertise. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994).

As a preliminary matter, the Fifth Circuit in *Bank of Louisiana* went through the implicit preclusion analysis and held that the district court was implicitly precluded from exercising subject matter jurisdiction over the plaintiff's claims. 919 F.3d at 923–30. The plaintiff in *Bank of Louisiana* brought Equal Protection and Due Process claims that arose out of the enforcement proceeding, and as stated above, perhaps it continued to pursue a structural separation-of-powers claim. *Id.* at 921. The court's implicit preclusion analysis focused entirely on the non-structural Equal Protection and Due Process claims tied to the enforcement proceeding. *Id.* at 921. Then it mentioned the structural separation-of-powers claim briefly in connection with the third *Thunder Basin* factor. *Id.* at 930. Accordingly, as the Fifth Circuit in *Bank of Louisiana* did not analyze all

---

[18] *Id*. at 15.

of the *Thunder Basin* factors to determine whether the district court was implicitly barred from hearing purely *structural* claims, the Court cannot conclude it is implicitly precluded from hearing the plaintiff's structural claims here based solely on that case. Instead, the Court must consider all of the *Thunder Basin* factors in this case to determine if Plaintiff's structural claims are implicitly precluded.

First, as to the text, structure, and purpose of § 1818(i), the statute is silent as to whether it intends to preclude federal district court jurisdiction to hear *structural* constitutional claims. Furthermore, there is no existing controlling precedent dealing with the precise issue of whether § 1818(i) bars a district court from hearing strictly structural constitutional claims. But, even if Congress intended § 1818(i) to have a jurisdiction-stripping effect as to some claims, the Court advances to step two and finds that Plaintiff's structural claims are not the type of claim Congress intended to funnel through the FDIC's statutory-review scheme. The Court's conclusion is supported by its analysis of the "wholly collateral," "agency expertise," and "meaningful judicial review" *Thunder Basin* factors.

At this point, the Court's analysis of the first two *Thunder Basin* factors closely mirrors the Fifth Circuit's analysis in *Cochran* where it evaluated whether 15 U.S.C. § 78y implicitly stripped federal district courts of jurisdiction to hear purely structural constitutional claims. 20 F.4th at 206–12.

### i. Availability of meaningful judicial review

In *Cochran*, the court stated that even though § 78y provided for eventual Court of Appeals review, the SEC statutory-review scheme "does not guarantee Cochran meaningful judicial review of her claim because the enforcement proceedings will not necessarily result in a final adverse order; as a final adverse order is a prerequisite for judicial review under § 78y(a)(1), Cochran may

thus be left unable to seek redress for the injury of having to appear before the SEC." *Id.* at 209. Consequently, "a finding of preclusion could foreclose all meaningful judicial review." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010)).

Plaintiff argues that the analysis in this case should be identical, and the Court agrees.[19] Title 12 U.S.C. § 1818(h) provides that a party to an FDIC enforcement proceeding may obtain a judicial review of the FDIC Board's final judgment by filing a petition for review in a Court of Appeals of the United States. 12 U.S.C. § 1818(h). Like the SEC statutory scheme at the heart of *Cochran*, the FDIC statutory scheme under § 1818 does not guarantee Plaintiff meaningful judicial review of his claims because the enforcement proceeding will not necessarily result in a final adverse order.

Plaintiff further contends that if he is forced to wait for a final decision to be issued, the only available remedy would be retrospective relief, which is much harder to obtain.[20] However, this argument holds no weight in light of the recent Fifth Circuit case *Community Financial Services Association of America, Ltd. v. Consumer Financial Protection Bureau*, 2022 WL 1577222 (5th Cir. 2022), discussed in more depth later.

Ultimately, the Court finds that this factor weighs against a finding of implicit preclusion.

    ii.  Whether Plaintiff's suit is wholly collateral

The court in *Cochran* stated that "whether a claim is collateral to the relevant statutory-review scheme depends on whether that scheme is intended to provide the sort of relief sought by the plaintiff." 20 F.4th at 207 (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22 (2012)). The *Cochran* court points to *Free Enterprise Fund v. Public Co. Accounting Oversight Board* where the plaintiff "did not seek relief of the sort the Exchange Act's scheme is designed to offer; rather

---

[19] Pl. Brief 30, ECF No. 15-1.
[20] *Id.* at 31; *see Cochran*, 20 F.4th at 233 (Oldham, J., concurring).

than seeking to challenge the propriety of any particular rule or regulation, or to establish that it was not liable for a violation, the accounting firm sought to abolish the PCAOB." *Id.* (citing 561 U.S. at 490). That is, the plaintiff's claims in *Free Enterprise Fund* were structural constitutional claims, rather than substantive securities claims, and were therefore beyond the bounds of the Exchange Act's statutory-review scheme. *Id.*

In *Cochran*, as in *Free Enterprise Fund*, the plaintiff challenged the existence of SEC ALJs. *Id.* The nature of her challenge was structural—it did not depend on the validity of any substantive aspect of the Exchange Act, nor of any SEC rule, regulation, or order. *Id.* "Further, the outcome of her constitutional challenge to the ALJs' removal protection will have no bearing on her ultimate liability for allegedly violating the securities laws." *Id.* Consequently, the Fifth Circuit held that the plaintiff did not seek relief of the sort the Exchange Act's scheme was designed to provide, and therefore the "wholly collateral" factor weighed against preclusion. *Id.*

Likewise, in the present case, Plaintiff is bringing purely structural constitutional claims. His claims do not depend on any substantive aspect of the FDIC statute, nor any FDIC rule, regulation, or order. The outcome of his constitutional challenges will have no bearing on his ultimate liability for his alleged statutory violations. Therefore, Plaintiff is not seeking relief of the sort the FDIC statutory scheme was designed to provide, and accordingly, Plaintiff's claims are wholly collateral from the relevant statutory-review scheme. This factor weighs against preclusion.

### iii.  Whether Plaintiff's claims are outside the FDIC's expertise

The Fifth Circuit in *Bank of Louisiana* held that the plaintiff's constitutional claims were not beyond the FDIC's expertise. 919 F.3d at 929–30. While the bulk of the Fifth Circuit's analysis focused on the Equal Protection and Due Process claims, the court engaged in a brief discussion of the plaintiff's structural separation-of-powers claim. *Id.* at 930. While the Fifth Circuit noted

"the Bank's separation-of-powers challenge to the ALJ does not directly implicate the agency's expertise in the way the Bank's other constitutional claims do," the court held that this was not dispositive under *Elgin v. Dep't of Treasury*, 567 U.S. 1. *Id.* In *Elgin* the Supreme Court "clarified ... that an agency's relative level of insight into the merits of a constitutional question is not determinative" for purposes of the agency expertise factor. *Id.* (quoting *Jarkesy v. S.E.C.*, 803 F.3d 9, 28 (D.C. Cir. 2015). The Fifth Circuit in *Bank of Louisiana* held that the agency expertise factor did not show that "Congress intended to exempt [the Bank's constitutional] claims from exclusive review before [the FDIC] and the [courts of appeal]." *Id.* (quoting *Elgin*, 567 U.S. at 23) (alterations in original). Accordingly, the court held that the agency expertise factor weighed in favor of preclusion. *Id.*

As *Bank of Louisiana* dealt directly with § 1818(i), the statutory provision at issue in this case, the Court is bound to follow the Fifth Circuit's analysis of the third *Thunder Basin* factor as it pertains to the plaintiff's *structural* claim. Thereby, the Court finds that the agency expertise factor weighs in favor of preclusion. *But see Cochran*, 20 F.4th at 207–08 (holding the agency expertise factor weighed against preclusion where the plaintiff's structural constitutional claims presented only "standard questions of administrative law, which the courts are at no disadvantage in answering").

### iv.  Conclusion

Having analyzed the *Thunder Basin* factors, two out of the three factors weigh against implicit preclusion so that the Court concludes that it is not implicitly precluded from hearing Plaintiff's structural constitutional claims and issuing a preliminary injunction if appropriate. The Court will now analyze whether the elements for granting a preliminary injunction are met.

### B. Substantial Likelihood of Success on the Merits[21]

>    1. Plaintiff's claims against the constitutionality of the FDIC Board structure and
>       the removal protections afforded FDIC ALJs

The Court finds Plaintiff unlikely to succeed on the merits of the remedy on his first two claims. While Plaintiff's claims that the FDIC Board structure and the double removal protections afforded FDIC ALJs are unconstitutional have merit, the Court cannot afford Plaintiff any relief as to these claims.

Both claims involve potentially unconstitutional removal protections. In *Collins v. Yellen*, the Supreme Court made clear that relief from agency proceedings involving potentially unconstitutional removal provisions is predicated on a showing that the unconstitutional provision inflicted compensable harm. 141 S. Ct. 1761, 1788–89 (2021). In *Collins*, the Supreme Court agreed that the for-cause removal provision at issue was unconstitutional, but the Supreme Court refused to hold that an officer's insulation from removal, by itself, rendered all agency action taken under that officer void. *Id.* at 1783, 1787–88. Unlike cases "involv[ing] a Government actor's exercise of power that the actor did not lawfully possess," the Fifth Circuit explained, a properly appointed officer's insulation from removal "does not strip the [officer] of the power to undertake the other responsibilities of his office." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 2022 WL 11054082, at *8 (5th Cir. 2022) (quoting *id.* at 1788 n.23). Thus, to obtain a remedy, the challenging party must demonstrate not only that the removal restriction violates the Constitution, but also that "the unconstitutional removal provision inflicted harm." *Collins*, 141 S. Ct. at 1788–89.

---

[21] The FDIC makes no argument in response that Plaintiff's substantive constitutional claims lack merit. *See* Resp., ECF No. 24.

Plaintiff contends that the *Collins* harm requirement only arises when a plaintiff is seeking retrospective relief, and further, that the Court should grant Plaintiff the requested prospective relief because, "after *Collins*, a declaratory-judgment lawsuit of the type Plaintiff is now pursuing may be the only way to provide a meaningful avenue for relief."[22] However, the Fifth Circuit recently made clear:

> *Collins* did not rest on a distinction between prospective and retrospective relief. [. . .] *Collins's* remedial inquiry "focuse[d] on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief."

*Cmty. Fin. Servs.*, 2022 WL 11054082, at *8 (quoting *Collins*, 141 S. Ct. at 1788–89). Therefore, the Fifth Circuit has stated, even in cases where the plaintiff is seeking prospective relief, the plaintiff must demonstrate both that the removal restriction violates the Constitution and that the unconstitutional removal provision inflicted harm. *Id.* (quoting *Collins*, 141 S. Ct. at 1788–89).

The Fifth Circuit has distilled from *Collins* three requisites for proving a potentially unconstitutional removal provision caused harm:

> (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor.

*Id.* at *9. Overall, to obtain relief on an unconstitutional removal provision claim then, plaintiffs must show a connection between the President's frustrated desire to remove the actor and the agency action complained of. *Id.*; *see Collins*, 141 S. Ct. at 1789. In this case, Plaintiff has provided no evidence that the potentially unconstitutional nature of the FDIC Board of Directors inflicted harm of the kind required under *Collins*. Plaintiff makes no argument that the President wanted to remove any of the FDIC Board members nor that he was estopped from doing so due to the FDIC

---

[22] Reply 5, ECF No. 25 (quoting *Cochran*, 20 F.4th at 233 (Oldham, J., concurring)).

Board removal protections. The same is true regarding the double removal protections afforded FDIC ALJs. Plaintiff does not argue that the President wanted to remove ALJ Whang, but that he was unable to do so due to the double removal protections. Therefore, the requisite harm has not been shown, and the Court cannot grant Plaintiff relief for his claims regarding the removal protections. Accordingly, Plaintiff has not shown a substantial likelihood of succeeding on the merits of these claims.

2.  Plaintiff's claim the FDIC violated the Seventh Amendment by depriving him of a jury trial

Plaintiff lastly contends that Defendants unlawfully deprived Plaintiff of his right to a jury trial under the Seventh Amendment.[23] The Seventh Amendment to the United States Constitution provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. Because "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence[,] . . . any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 452 (5th Cir. 2022) (alterations in original) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)).

However, "when Congress properly assigns a matter to adjudication in a non-Article III tribunal, the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1379 (2018) (citation and quotation marks omitted).

---

[23] Compl. at ¶¶ 119–140, ECF No. 1.

The Fifth Circuit in *Jarkesy* clarified that the inquiry to determine whether an adjudication must be handled by a jury moves in two stages:

> First, a court must determine whether an action's claims arise "at common law" under the Seventh Amendment. Second, if the action involves common-law claims, a court must determine whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial. Here, the relevant considerations include: (1) whether Congress created a new cause of action, and remedies therefor, unknown to the common law, because traditional rights and remedies were inadequate to cope with a manifest public problem; and (2) whether jury trials would go far to dismantle the statutory scheme or impede swift resolution of the claims created by statute.

*Jarkesy*, 34 F.4th at 453 (cleaned up).

The petitioner in *Jarkesy* had been the target of an SEC enforcement proceeding in which the agency alleged that the petitioner had committed securities fraud and sought various remedies against him, including substantial civil penalties. *Id.* at 449–50. Specifically, the SEC ordered the petitioner to pay a civil fee of $300,000, along with separate equitable remedies. *Id.* at 450.

The court in *Jarkesy* began its analysis by holding that the cause of action against the petitioner arose at common law because a "civil penalty was a type of remedy at common law that could only be enforced in courts of law." *Id.* at 453–54. Next, the court held that the action the SEC brought against the petitioner was not the sort that may be properly assigned to agency adjudication under the public-rights doctrine. *Id.* at 455. In doing so, the court concluded that (1) "[s]ecurities fraud actions are not new actions unknown to the common law," and that (2) "[j]ury trial in securities fraud suits would not dismantle the statutory scheme" or "impede swift resolution of the SEC's fraud prosecutions." *Id.* (quotations marks omitted).

Plaintiff contends, and the Court agrees, that the analysis of this claim should mirror that in *Jarkesy*.[24] Like in *Jarkesy*, the FDIC's claims against Plaintiff arise at common law as the FDIC

---

[24] Pl. Brief 16, ECF No. 15-1.

is seeking civil penalties against Plaintiff, along with separate equitable remedies. See *id.* at 452 (the "Seventh Amendment jury-trial right applies to suits brought under a statute seeking civil penalties").

As to the second prong of the analysis, whether the public-rights doctrine permits Congress to route the proceeding to agency adjudication without a jury, one of the FDIC's chief allegations in the Enforcement Proceeding is that Plaintiff breached his fiduciary duties to Herring Bank due to his purportedly improper expense practices.[25] *See* 12 U.S.C. § 1818(e)(1)(A). Actions seeking remedies for breaches of fiduciary duties have been known at common law for centuries. *See* David J. Seipp, Trust and Fiduciary Duty in the Early Common Law, 91 B.U. L. Rev. 1011, 1013-16 (2011). Indeed, ALJ Whang noted in her Recommended Decision that Burgess's alleged "self-dealing" was "a serious breach of [a] common law fiduciary duty."[26] Therefore, the action against Plaintiff is not a new action unknown to the common law.

Moreover, the use of jury trials to adjudicate claims of the type that the FDIC is pursuing against Burgess would not "dismantle the statutory scheme." *Jarkesy*, 34 F.4th at 453. When applying this factor, one critical consideration is whether the claims at issue are of "the sort . . . uniquely suited for agency adjudication." *Id.* at 456. Federal courts have handled claims alleging entitlement to civil penalties for breaches of common-law duties "for many decades." *Id.* Further, as Plaintiff highlights, several of the FDIC's enabling statutes allow it to bring cases before a jury in federal and state court against bank officials accused of various forms of misconduct.[27] *See, e.g.*, 12 U.S.C. § 1821(k). Therefore, as the claims against Plaintiff are not uniquely suited for agency

---

[25] Compl. ¶ 25, ECF No. 1,
[26] *Id.* at ¶ 135.
[27] Pl. Brief 17, ECF No. 15-1.

adjudication and the FDIC has the option to bring jury-eligible proceedings under other aspects of the statute, the Court finds that the use of a jury trial would not dismantle the statutory scheme.

Finally, the Court finds no evidence that the use of a jury trial to adjudicate claims of the type the FDIC is pursuing against Plaintiff would "impede swift resolution of the claims created by statute." *Jarkesy*, 34 F.4th at 453. At this point, the FDIC initiated its investigation against Plaintiff more than twelve years ago and has been pursuing a formal Enforcement Proceeding against him for more than eight years, which still has not concluded. The Court cannot see how using a jury trial would add any additional time to the lengthy course of proceedings. In fact, a jury trial could lead to a swifter resolution of claims.

Therefore, the Court concludes that Plaintiff has shown a substantial likelihood of success on the merits of his claim that the FDIC violated Plaintiff's Seventh Amendment right to a jury trial.

### C.  Substantial Threat of Irreparable Harm

As to Plaintiff's claim regarding his right to a jury trial, Plaintiff contends that, without an injunction, he will suffer irreparable harm as: (1) he will continue to suffer the harm of being subjected to an unconstitutional process; (2) he will suffer reputational harm; and (3) he will suffer economic harm from the ongoing Enforcement Proceeding.[28]

The Supreme Court has held that, as a matter of law, the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This concept that a violation of a constitutional right in and of itself constitutes irreparable injury has been universally recognized and is not open to debate. *Booth v. Galveston Cnty.*, 2019 WL 3714455, at *17 (S.D. Tex. 2019); *see also ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052,

---

[28] *Id.* at 19–20.

1157 (S.D. Tex. 2017) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary.") (citation omitted). Since the Court has determined that Plaintiff was entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings of irreparable harm.

### D. Balance of Hardships and Service of the Public Interest

The FDIC in its Response provides no argument that granting the preliminary injunction will cause it any hardship.[29] Further, as Plaintiff notes, Herring Bank has already implemented significant controls to address the issues raised by the FDIC's charges, and many of the expense-related practices that most concerned the FDIC have long been suspended. Plaintiff no longer serves as the Bank's CEO and President, and the Bank's balance sheet and ratings are currently sound.[30] Therefore, if the Enforcement Proceeding is enjoined, there is no risk that the prior, years-past conduct to which the FDIC has objected will recur.[31] As for hardships facing Plaintiff, the Court has already found that Plaintiff will suffer irreparable harm if the preliminary injunction is not granted. Therefore, looking at the hardships facing each party should the Court grant or deny the preliminary injunction, the balance clearly tips in favor of Plaintiff and granting the injunction.

As to the public interest, "[a]n injunction does not disserve the public interest when it prevents constitutional deprivations." *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 840 (N.D. Tex. 2022) (citing *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458, n.9 (5th Cir. 2014)). In this case, the Court finds Plaintiff likely has the constitutional right to a jury trial, a right the FDIC deprived him of.

---

[29] Def. Resp. 23–25, ECF No. 24.
[30] Pl. Brief 22, ECF No. 15-1.
[31] *Id.*

Therefore, the Court finds that Plaintiff has satisfied the final two requirements for a preliminary injunction.

**IV.     Conclusion**

As Plaintiff has satisfied the requirements for a preliminary injunction as to his claim under the Seventh Amendment, the Motion for Preliminary Injunction is **GRANTED**. Plaintiff is ORDERED to file briefing by **November 9, 2022**, describing in detail what relief the injunction should include on the claim the Court has identified affords this relief. Defendant may reply no later than **November 11, 2022**.

**SO ORDERED** on this **6th day** of **November, 2022**.

_____

Reed O'Connor

**UNITED STATES DISTRICT JUDGE**