No. 22-11172

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**CORNELIUS CAMPBELL BURGESS**,

*Plaintiff-Appellee,*

*v.*

**JENNIFER WHANG**, in her official capacity as an Administrative Law Judge;
**FEDERAL DEPOSIT INSURANCE CORPORATION**;
**MARTIN J. GRUENBERG**, in his official capacity as Acting Chairman of the
FDIC; **MICHAEL J. HSU**, in his official capacity as a Director of the FDIC;
**ROHIT CHOPRA**, in his official capacity as a Director of the FDIC;

*Defendants-Appellants.*

---

On Appeal from the United States District Court for the Northern District of Texas
No. 7:22-cv-100 — The Hon. Reed O'Connor, U.S. District Judge, Presiding

---

## PLAINTIFF-APPELLEE CORNELIUS CAMPBELL BURGESS'S
## OPPOSITION TO APPELLANTS' MOTION FOR SUMMARY REVERSAL

---

James T. Dawson
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: (202) 639-6507
Facsimile: (202) 639-6500
Email: jamesdawson@velaw.com

Manuel G. Berrelez
*Attorney of Record*
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 77002
Phone: (214) 220-7700
Facsimile: (214) 220-7716
Email: mberrelez@velaw.com

*Counsel for Plaintiff-Appellee Cornelius Campbell Burgess*

## CERTIFICATE OF INTERESTED PERSONS OF PLAINTIFF-APPELLEE CORNELIUS CAMPBELL BURGESS

*Cornelius Campbell Burgess v. Jennifer Whang*, et al. (No. 22-11172)

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    **Cornelius Campbell Burgess**, Plaintiff-Appellee, represented by:

> **Manuel G. Berrelez**
> **James T. Dawson**
> **Thomas P. Mitsch**
> **James F. Hopper**
> **Madelyn C. Stanley**
> **VINSON & ELKINS LLP**

2.    **Herring Bank**, a regional bank headquartered in Amarillo on whose board of directors Cornelius Campbell Burgess now serves as Vice Chair;

3.    **Herring Bancorp, Inc.,** the parent company of Herring Bank, on whose board of directors Cornelius Campbell Burgess now serves as Vice Chair;

4.    **Jennifer Whang**, Defendant-Appellant, in her official capacity as an administrative law judge, represented by:

> **Joseph Brooks**
> **Arthur E. Anthony**
> **Andrew A. Nicely**
> **FEDERAL DEPOSIT INSURANCE CORPORATION**

5.     **Federal Deposit Insurance Corporation** ("FDIC"), Defendant-Appellant, an independent agency of the United States, represented by:

> Joseph Brooks
> Arthur E. Anthony
> Andrew A. Nicely
> FEDERAL DEPOSIT INSURANCE CORPORATION

6.     **Martin J. Gruenberg**, Defendant-Appellant, in his official capacity as Acting Chairman of the FDIC, represented by:

> Joseph Brooks
> Arthur E. Anthony
> Andrew A. Nicely
> FEDERAL DEPOSIT INSURANCE CORPORATION

7.     **Michael J. Hsu**, Defendant-Appellant, in his official capacity as a director of the FDIC, represented by:

> Joseph Brooks
> Arthur E. Anthony
> Andrew A. Nicely
> FEDERAL DEPOSIT INSURANCE CORPORATION

8.     **Rohit Chopra**, Defendant-Appellant, in his official capacity as a director of the FDIC, represented by:

> Joseph Brooks
> Arthur E. Anthony
> Andrew A. Nicely
> FEDERAL DEPOSIT INSURANCE CORPORATION

Dated:  December 30, 2022

*/s/ Manuel G. Berrelez*

Manuel G. Berrelez
  *Attorney of Record*
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 77002
Phone: (214) 220-7700
Facsimile: (214) 220-7716
Email: mberrelez@velaw.com

*Counsel for Plaintiff-Appellee*
*Cornelius Campbell Burgess*

# **TABLE OF CONTENTS**

**Page**

Certificate of Interested Persons ............................................................... ii

Table of Contents ........................................................................................ v

Table of Authorities ................................................................................... vi

Introduction ................................................................................................. 1

Legal Standard ............................................................................................ 4

Argument ..................................................................................................... 4

    I.    The District Court Has Competent Jurisdiction. ........................... 4

        A.    12 U.S.C. § 1818(i) Does Not Explicitly Strip District Courts of Jurisdiction To Hear Structural Constitutional Claims. ............. 4

        B.    Neither *Bank of Louisiana* nor *Cochran* Controls this Case. ......... 9

            1.    *Bank of Louisiana* Is Not Controlling .................................. 9

            2.    *Cochran* Is Not Controlling. ............................................... 16

    II.    Burgess Does Not Oppose a Stay of All District Court Proceedings Other than Proceedings Related to His Pending Motion for Reconsideration. ...................................................................... 19

Conclusion ................................................................................................. 21

Certificate of Service ................................................................................ 22

Certificate of Compliance ......................................................................... 23

# TABLE OF AUTHORITIES

**Cases:**                                                                      **Page(s)**

*Am. Petroleum Inst. v. EPA*,
  72 F.3d 907 (D.C. Cir. 1996)........................................................................3

*Bank of Louisiana v. FDIC*,
  2017 WL 3849340 (E.D. La. Jan. 13, 2017) ............................................. 10, 11

*Bank of Louisiana v. FDIC*,
  919 F.3d 916 (5th Cir. 2019) ...................................................... *passim*

*Bowen v. Michigan Acad. of Family Physicians*,
  476 U.S. 667 (1986)........................................................................8

*Clark v. Martinez*,
  543 U.S. 371 (2005)........................................................................9

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) (en banc) ...................................... *passim*

*Cochran v. SEC*,
  969 F.3d 507 (5th Cir. 2020) ...................................................... *passim*

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021)........................................................................8

*Groendyke Transp., Inc. v. Davis*,
  406 F.2d 1158 (5th Cir. 1969) ...................................................4, 9

*Hagans v. Lavine*,
  415 U.S. 528 (1974)........................................................................15

*Mata v. Lynch*,
  576 U.S. 143 (2015)........................................................................5

*Matter of Swift*,
  129 F.3d 792 (5th Cir. 1997) ........................................................15

*Ochoa-Salgado v. Garland*,
  5 F.4th 615 (5th Cir. 2021) ...................................................... 15, 16

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) ...............................................................15

*United States v. Acevedo-Azua*,
    754 F. App'x 234 (5th Cir. 2018) ...........................................................3

*United States v. Monshizadeh*,
    679 F. App'x 359 (5th Cir. 2017) ...........................................................3

*Webster v. Doe*,
    486 U.S. 592 (1988)................................................................................6

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989)................................................................................15

**Statutes:**

12 U.S.C. § 1818(i) ..................................................................... *passim*

12 U.S.C. § 1252(b)(9)..................................................................................7

15 U.S.C. § 78y.................................................................................. 16, 19

28 U.S.C. § 1331..........................................................................................5, 7

42 U.S.C. § 405(h) ......................................................................................7

**Other Authorities:**

Br. of Appellants, *Bank of Louisiana v. FDIC*,
    919 F.3d 916 (5th Cir. 2019), 2017 WL 2332944 (May 26, 2017)............. 11, 16

*Cochran* En Banc Argument Transcript (Jan. 20, 2021) ................................... 12, 18

*Cochran* Panel Argument Transcript (Nov. 5, 2019) ...............................................13

*Cochran* Stay-Stage Argument Transcript (Sept. 24, 2019)........................... 14, 18

Complaint, *Bank of Louisiana v. FDIC*
    (No. 16-cv-13585), Dkt. No. 1 (E.D. La. Aug. 4, 2016) ....................................10

Reply Br. of Appellants, *Bank of Louisiana v. FDIC*,
    919 F.3d 916 (5th Cir. 2019), 2017 WL 3579413 (Aug. 9, 2017) ....................12

# **INTRODUCTION**

Summary reversal should be denied because the government's perplexing Motion seeks to overturn a holding that the District Court did not make. According to the government's Motion, the "[c]ritical" error in the District Court's November 6, 2022 Order granting a preliminary injunction (the "November Order") was its "conclusion that [12 U.S.C. §] 1818(i) is not an <u>explicit</u> jurisdiction-precluding statute." Mot. 9 (citing ROA.337–338). But that is not what the November Order says. What the District Court actually held was that Section 1818(i) "does not present an explicit bar to the Court's exercise of subject matter jurisdiction <u>over structural constitutional claims</u>." ROA.338 (emphasis added).

Neither Burgess nor the District Court have ever disputed the notion that Section 1818(i) is an explicit jurisdictional bar over <u>some</u> claims—i.e., those that allege irregularities internal to the administrative proceeding, such as claims that the agency improperly excluded evidence or witnesses. Burgess's chief argument from the beginning of this case has been that <u>structural</u> constitutional claims nonetheless fall outside the ambit of Section 1818(i)'s preclusive reach because they are materially different from other types of claims, as both this Court and the Supreme Court have recognized. In light of that contention, the parties' District Court briefs, the hearing on Burgess's preliminary-injunction motion, and the November Order all focused at length on the special status of <u>structural</u> claims. The government—

1

represented by new counsel—has now filed a Motion in this Court that, for reasons unknown, does not address the distinction between structural and non-structural claims at all. Indeed, the word "structural"—which appears more than 30 times in the November Order—is not used even once in the government's Motion.

The Motion's failure to appreciate the distinction between structural and non-structural claims in turn infects every argument the government makes. For example, the Motion focuses almost exclusively on the suggestion that this Court's prior Opinions in *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019), and *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc), *cert. granted*, 142 S. Ct. 2707 (2022), are purportedly "controlling case[s]" that decided "identical" issues. Mot. 1–2. But the difference between structural and non-structural claims is the very reason why those cases are not "controlling," as the District Court correctly noted.

*Bank of Louisiana* focused on <u>non-structural</u> claims. The plaintiffs in that case did not argue that there was any difference between structural and non-structural claims for purposes of Section 1818(i), and ergo this Court had no occasion to consider that issue. *See Cochran v. SEC*, 969 F.3d 507, 518–19 (2020) (Haynes, J., dissenting in part) (noting that *Bank of Louisiana* "never considered whether the structural nature of a claim might bear on the jurisdictional analysis" and did not "address [that] key point"), *rev'd on reh'g en banc*, 20 F.4th 194 (5th

Cir. 2021).   Indeed, the government itself has elsewhere conceded that *Bank of Louisiana* did <u>not</u> resolve any structural constitutional claim.  *See infra* at 13.

*Cochran* does not help the government either.   All *Cochran* says is that Section 1818(i) presents an "explicit" jurisdictional bar.  *Cochran*, 20 F.4th at 204. Again, Burgess has never contested that point.   The government skips past the critical question presented by this case, which is whether that "explicit" jurisdictional bar reaches structural claims.  As the District Court recognized, that question is "a matter of first impression" in this Circuit.  ROA.337.  And matters of first impression, of course, are not appropriate for summary disposition.  *See Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 914 (D.C. Cir. 1996) ("Parties should avoid requesting summary disposition on issues of first impression.").

Instead, summary reversals are generally reserved for situations where the appeal is "frivolous"[1] or where one party "concede[s]" that Circuit precedent is against them.[2]  That is not this case.  Here the parties submitted dozens of pages of briefing on the jurisdictional issue to the District Court and hotly debated jurisdiction at a multi-hour hearing.  After that hearing concluded, the District Court entered an Order correctly concluding that Section 1818(i) does not explicitly strip jurisdiction over structural constitutional claims (*see infra* Section I.A) and that neither *Bank of*

---

[1] *United States v. Acevedo-Azua*, 754 F. App'x 234, 235 (5th Cir. 2018).

[2] *United States v. Monshizadeh*, 679 F. App'x 359, 359–60 (5th Cir. 2017).

3

*Louisiana* nor *Cochran* compelled the opposite conclusion (*see infra* Section I.B). On this record, summary reversal is plainly inappropriate. Given the absence of controlling case law and the importance of the questions presented by Burgess, the government's Motion should be denied—or, at the very least, carried with the case.

## LEGAL STANDARD

In this Circuit, summary disposition is appropriate only when either (1) "time is truly of the essence" or (2) "one of the parties is [so] clearly right as a matter of law" that there is "no substantial question as to the outcome of the case." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969); *accord* Mot. 2.[3]

## ARGUMENT

### I.    The District Court Has Competent Jurisdiction.

#### A.    12 U.S.C. § 1818(i) Does Not Explicitly Strip District Courts of Jurisdiction To Hear <u>Structural</u> Constitutional Claims.

The first of the government's many wrong turns is to claim that, "[u]nder th[e] framework" established by Section 1818, "federal courts have subject matter jurisdiction to review FDIC administrative enforcement actions" only in narrow circumstances. Mot. 5. But Burgess does not claim that the District Court had

---

[3] The government argues in passing that "time is of the essence" here because the preliminary injunction "prevents the FDIC from proceeding with an ongoing administrative enforcement action." Mot. 2. That cursory argument is curious given that the government has not sought a stay of the preliminary injunction itself, which presumably would have been appropriate if there were any time-sensitive issue.

4

jurisdiction "under" Section 1818.  The source of jurisdiction here is 28 U.S.C. § 1331, which imposes on federal district courts a "virtually unflagging obligation" to consider cases that present a federal question.  *Mata v. Lynch*, 576 U.S. 143, 150 (2015) (citation omitted).  The question here is not whether Section 1818 affirmatively confers jurisdiction, but is instead whether Section 1818(i) <u>clearly withdraws</u> jurisdiction that already exists under 28 U.S.C. § 1331.  As the District Court correctly concluded, the answer to that question is no.

Section 1818(i)(1) provides in pertinent part that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [12 U.S.C. § 1818], or to review, modify, suspend, terminate, or set aside any such notice or order."  Burgess does not dispute that this text would strip jurisdiction if a plaintiff sought to enjoin an FDIC proceeding on the basis of some irregularity that was <u>internal</u> to the proceeding itself.  But this case falls outside the ambit of Section 1818(i)(1) because here Burgess is pursuing <u>structural</u> constitutional claims that are <u>exogenous</u> to the agency's enforcement proceeding.

Both this Court and the Supreme Court have held that complaints alleging <u>structural</u> constitutional defects are a special species of claim that, for a variety of reasons, must be treated differently than other claims.  The key insight from that case law is that, for purposes of Section 1818(i), there is a material difference between:

5

1) "structural" constitutional claims that are wholly collateral to the agency proceeding; and

2) "claims alleging 'irregularities' during an enforcement proceeding," which by definition "are not wholly collateral."

*Cochran*, 969 F.3d at 518 n.1 (Haynes, J., dissenting in part) (quoting *Bank of Louisiana*, 919 F.3d at 928–29). With respect to the claims in the second camp, Section 1818(i)(1) strips jurisdiction, because a collateral attack pertaining to "irregularities" in the agency process is by definition an effort to "review" the agency's actions <u>within</u> the proceeding. But with respect to structural claims that fall into the first camp, Section 1818(i)(1) is silent.

For this reason, the November Order rightly limited its analysis to the question of whether Section 1818(i) explicitly forecloses <u>structural</u> constitutional claims, as distinct from other types of claims. The District Court's conclusion that the statute does not strip jurisdiction over such claims—unaddressed by the government's Motion—was correct for four reasons.

<u>First</u>, the District Court correctly recognized that, "where Congress intends to preclude judicial review of constitutional claims, its intent to do so must be clear." ROA.338 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). That principle— which amounts to a "clear statement rule"—is critical, because the text of Section 1818(i) does <u>not</u> evince any "clear" intent to foreclose the district courts' jurisdiction over structural constitutional claims. Indeed, the government admitted at the District

6

Court that "Section 1818(i)(1) does <u>not</u> specifically mention that the jurisdictional bar encompasses structural constitutional claims." ROA.281 (emphasis added).

Second, the fact that Section 1818(i) does not clearly foreclose jurisdiction over structural constitutional claims is confirmed by a comparison between that provision and other statutes that <u>do</u> clearly strip jurisdiction over such claims. The District Court rightly noted that "Congress has shown that when it wants to strip district courts of jurisdiction over structural constitutional claims, it will explicitly do so." ROA.338. Congress has done so in multiple other statutes, including by explicitly mentioning that structural constitutional claims are foreclosed[4] and by explicitly mentioning that jurisdiction under Section 1331 is being withdrawn as to certain types of claims.[5] Congress did not do either of those things here.

Third, the government's reading of Section 1818(i)(1) is untenable because, if credited, it would foreclose all meaningful review of structural constitutional claims, despite the absence of any evidence that Congress intended that outcome.

---

[4] *See, e.g.*, 18 U.S.C. § 1252(b)(9) (judicial-review provision within the Immigration and Nationality Act) ("Judicial review of all questions of law and fact, including interpretation and application of <u>constitutional</u> and statutory provisions, . . . shall be available only in judicial review of a final order. . . ." (emphasis added)).

[5] *See, e.g.*, 42 U.S.C. § 405(h) ("No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under <u>section 1331</u>. . . ." (emphasis added)); *see also Bank of Louisiana*, 919 F.3d at 924 n.10 (noting that "section 1818(i) does not reference other jurisdictional statutes explicitly," and specifically contrasting Section 1818(i) with 42 U.S.C. § 405(h), the latter of which explicitly references Section 1331).

After the Supreme Court's decision last Term in *Collins v. Yellen*, plaintiffs seeking retrospective relief for a structural constitutional problem must show a "compensable harm." 141 S. Ct. 1761, 1789 (2021). That showing is, by design, nearly impossible to make. Thus, the only path to a meaningful remedy for structural constitutional harms is to seek <u>prospective</u> rather than retrospective relief. And prospective relief, in turn, can only be secured by filing a declaratory-judgment action in district court before the agency reaches a final decision. Judge Oldham presciently explained this dynamic in his *Cochran* concurrence, which noted that, "[a]fter *Collins*," a declaratory-judgment lawsuit of the type Burgess is now pursuing "may be the only way to provide a 'meaningful avenue of relief'" when a plaintiff challenges an agency's "unimpeded control over the way it . . . proceeds against its targets." *Cochran*, 20 F.4th at 233 (Oldham, J., concurring).

<u>Fourth</u>, interpreting Section 1818(i)(1) to explicitly strip district-court jurisdiction over structural claims would itself present serious constitutional concerns by creating a situation in which plaintiffs like Burgess have no opportunity to secure a meaningful remedy for violations of the Constitution. *See Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986) (noting that a scheme which operates to deny meaningful judicial review for a constitutional question would raise "serious constitutional question[s]"). Constitutional avoidance therefore

counsels in favor of interpreting Section 1818(i)(1) to allow district courts to hear structural constitutional claims. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005).

Although these rationales were the cornerstone of Burgess's briefing below and of the November Order, none of them is mentioned even once in the government's Motion. The Motion is instead content to merely block-quote the text of Section 1818(i) and offer the *ipse dixit* claim that the statute is "abundantly" clear. Mot. 5–6. At the very least, the arguments presented above foreclose the possibility that the government is so "clearly right" that summary disposition would be appropriate. *Groendyke*, 406 F.2d at 1162.

>   **B.** **Neither *Bank of Louisiana* nor *Cochran* Controls this Case.**

>   >   **1.** ***Bank of Louisiana* Is Not Controlling.**

Given the Motion's near-exclusive reliance on the Fifth Circuit's 2019 decision in *Bank of Louisiana*, a detailed recounting of that case is warranted.

The plaintiffs in *Bank of Louisiana* were a community bank and several of its officers. The FDIC accused the Bank of various forms of misconduct and initiated two administrative enforcement proceedings. *See Bank of Louisiana*, 919 F.3d at 920. While the second of those proceedings was pending at the agency, the Bank and the officers filed a declaratory-judgment action in federal court in Louisiana. The plaintiffs' chief contentions were that "the FDIC denied it equal protection by targeting" the Bank's president "due to his age" and that the administrative law judge

("ALJ") used by the FDIC had "violated due process by preventing [the Bank] from proffering certain evidence" and by preventing the Bank's president "from talking with his counsel at certain points during the proceedings." *Id.* at 921.[6]

The FDIC moved to dismiss the plaintiffs' lawsuit for want of subject-matter jurisdiction, and that motion was granted. *See Bank of Louisiana v. FDIC*, No. 16-cv-13585, 2017 WL 3849340, at *1 (E.D. La. Jan. 13, 2017). The District Court—in deference to certain concessions that the plaintiffs had made during the motion-

---

[6] The Complaint mentioned, vaguely and in passing, that the removability protections for the FDIC's Executive Secretary allegedly violated the separation of powers because the Executive Secretary was protected by dual "for-cause" protection from removal. Compl. ¶¶ 57–58, *Bank of Louisiana v. FDIC* (No. 16-cv-13585), Dkt. No. 1 (E.D. La. Aug. 4, 2016). There was no subsequent discussion of the Executive Secretary in the plaintiffs' appellate briefs or at argument, and nor did the District Court or the Fifth Circuit ever discuss the Executive Secretary.

The Complaint also noted—with no further explanation—that "the proceedings and actions of the FDIC and its employees, including the ALJ, violated the separation of powers under the U.S. Constitution, the Bank's right to counsel and free speech, and [t]he Government in the Sunshine Act." *Id.* ¶ 7; *see id.* ¶ 31. The Complaint did not explain how or why the "actions" of the ALJ violated the separation of powers, and did not mention removability protections for the ALJ even a single time. Moreover, the plaintiffs later expressly abandoned any challenge that they might have been making with respect to the statutes that protected the ALJ from removal, *see infra* note 7, and instead elected to focus their appellate arguments "only" on the equal-protection and due-process arguments, *see infra* notes 8, 9, 11, 12. As the November Order noted, there is considerable "confusion about whether [the] *Bank of Louisiana* [plaintiffs] actually pursued a separation of powers claim" in their federal case, or only in the separate enforcement proceedings and appeals therefrom. ROA.336 n.15; *see* ROA.819:15–17 (government counsel describing the *Bank of Louisiana* Complaint as "scattershot" and "all over the place").

to-dismiss briefing[7]—clarified in its Opinion that the *Bank of Louisiana* plaintiffs

"d[id] <u>not</u> question the constitutionality or inherent authority of the FDIC," and then

suggested that the answer to the jurisdictional question in that case may well have

been different if the plaintiffs had done something more than just "attack the motives

underlying the FDIC's" enforcement proceeding. *Id.* at *6 (emphasis added).

The plaintiffs then appealed. Their appellate briefs make clear that, by the

time they arrived at the Fifth Circuit, the *Bank of Louisiana* plaintiffs were

"target[ing] <u>only</u> the discriminatory practices employed by the FDIC <u>during its</u>

<u>investigation</u>."[8] The plaintiffs' appellate briefs did not mention any purported

separation-of-powers problem vis-à-vis the FDIC's Executive Secretary.[9]

Plaintiffs also made several concessions in their briefs, including the critical

concession that Section 1818(i) "show[ed a] fairly discernable intent to limit

---

[7] *See, e.g.*, Pl.'s Opp. to Defs.' Mot. to Dismiss at 1, *Bank of Louisiana v. FDIC* (No. 16-cv-13585), Dkt. No. 16 (E.D. La. Oct. 25, 2016) ("Plaintiffs have not challenged the constitutionality of . . . any . . . banking statute.").

[8] *See* Br. of Appellants at 7 (emphasis added), *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019), 2017 WL 2332944, at *7 (May 26, 2017) ("*Bank of Louisiana* Opening Br.").

[9] The plaintiffs' Opening Brief did briefly suggest that there were "serious allegations" concerning "the constitutional authority of the FDIC's ALJ." *Bank of Louisiana* Opening Br., *supra* note 8, at *4. But that claim was not explained in the plaintiffs' Complaint, and the plaintiffs' Opening Brief makes clear that they were only challenging "the ALJ <u>in both enforcement proceedings</u>" and the direct appeals therefrom—i.e., <u>not</u> in the separate District Court case and appeal therefrom. *Id.* (emphasis added).

jurisdiction."[10]  As both the government and the *Bank of Louisiana* panel recognized, the plaintiffs conceded that Section 1818(i) <u>explicitly</u> stripped jurisdiction, but then argued that they should still prevail under the *Thunder Basin* factors for <u>implicit</u> jurisdiction stripping.  *See Bank of Louisiana*, 919 F.3d at 923 ("The parties and the district court addressed the question presented under the implicit preclusion analysis."); *Cochran* En Banc Argument Tr. at 48:40–50, https://bit.ly/3viEMm0 (Jan. 20, 2021) (government counsel admitting that the *Bank of Louisiana* plaintiffs conceded the question of whether Section 1818(i) explicitly stripped jurisdiction).

The *Bank of Louisiana* panel affirmed, reasoning that district courts lack jurisdiction to enjoin an FDIC proceeding on the basis of alleged violations that occur <u>within the proceeding</u>.  919 F.3d at 921.  The *Bank of Louisiana* Opinion focused only on the equal-protection and due-process arguments, and did not address the interplay between Section 1818(i) and any <u>structural</u> constitutional claim. Indeed, in the colloquy from the panel-stage oral argument in *Cochran* that is quoted below, the government conceded that the *Bank of Louisiana* Opinion did <u>not</u> resolve any separation-of-powers claim:

---

[10] Reply Br. of Appellants at 1, *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019), 2017 WL 3579413, at *1 (Aug. 9, 2017).

GOVERNMENT COUNSEL:  There's a separation of powers challenge to the ALJ [in *Bank of Louisiana*]. . . .

JUDGE HAYNES:  It did not resolve that challenge.

GOVERNMENT COUNSEL:  No, it did not.  And we're not claiming that it did.

*Cochran* Panel Argument Tr. at 16:12–25, https://bit.ly/3C49X8y (Nov. 5, 2019).[11]

Judge Haynes, who wrote the opinion for the en banc Court in *Cochran*, expressly acknowledged the crucial distinction between structural claims (of the type at issue here) and non-structural claims (of the type at issue in *Bank of Louisiana*). As a dissenter at the panel stage of *Cochran*, Judge Haynes correctly noted that *Bank of Louisiana* "did not address a structural claim" but instead "analyzed only . . . due process and equal protection claims."   *Cochran*, 969 F.3d at 518 (Haynes, J., dissenting in part).  As Judge Haynes noted, the fact that the parties and the District Court in *Bank of Louisiana* had "focused" on the due-process and equal-protection claims meant that the Fifth Circuit had no occasion in that case to "squarely consider

---

[11] The panel did note in passing, as part of its <u>implicit</u> jurisdiction-stripping analysis, that "the Bank's separation-of-powers challenge to the ALJ does not directly implicate the agency's expertise."  919 F.3d at 930.  But, as context makes clear, the remark about a "separation-of-powers challenge to the ALJ" referred to an argument that the plaintiffs were making in a related case involving a petition for review of the FDIC's Final Decision, and not to any argument present in the separate District Court case and the appeal therefrom.  *See supra* notes 6, 9.

whether a [structural claim] should be analyzed differently than other types of constitutional claims." *Id.*[12]

The Motion's reductive claims that *Bank of Louisiana* "is directly on point" and is "controlling case law" are therefore incorrect. Mot. 9, 1. In truth, *Bank of Louisiana* does not control here—for three reasons.

First, *Bank of Louisiana* did not consider whether Section 1818(i) explicitly strips jurisdiction over <u>structural</u> constitutional claims of the type at issue here. As Judge Haynes has explained, *Bank of Louisiana* "never considered whether the structural nature of a claim might bear on the jurisdictional analysis" and simply did not "address [that] key point." *Cochran*, 969 F.3d at 518–19 (Haynes, J., dissenting in part); *accord* ROA.336 (November Order) ("*Bank of Louisiana* expressly declined to hold that § 1818(i) is an explicit jurisdictional bar on the court's jurisdiction to hear any structural claims involving the FDIC." (emphasis altered)). The government has elsewhere conceded as much. *See supra* at 13. Because *Bank of Louisiana* delivered no holding on this issue, this Court is free to confirm and hold

---

[12] At argument on Ms. Cochran's request for a stay, Judge Jones likewise expressed doubt about whether a separation-of-powers claim was "actually argued to the Fifth Circuit" in *Bank of Louisiana*. *Cochran* Stay-Stage Argument Tr. at 23:10–15, https://bit.ly/3YRoyhu (Sept. 24, 2019); *see id.* at 23:19–32 (JUDGE JONES: "I'm just wondering the extent we have to go back behind our printed decisions into what went on before in order to arguably expand the scope of the decision.").

that Section 1818(i) does not strip jurisdiction over structural constitutional claims of the type at issue here.

Second, the plaintiffs' briefs in *Bank of Louisiana* did <u>not</u> argue that there was a material distinction between structural and non-structural claims for jurisdictional purposes. Thus, even if it were possible to construe the *Bank of Louisiana* decision as having delivered any comment on the interplay between Section 1818(i) and structural constitutional claims, the panel in this case would not be required to follow whatever *Bank of Louisiana* might have said on that issue. That is so because, in this Circuit, the fact that a particular issue was not raised in the parties' briefs means that future Fifth Circuit panels are not precluded from reaching a different result in a future case where that issue <u>is</u> presented in the briefs. *See Ochoa-Salgado v. Garland*, 5 F.4th 615, 619 (5th Cir. 2021); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 229 n.15 (5th Cir. 2020); *Matter of Swift*, 129 F.3d 792, 796 n.18 (5th Cir. 1997). As the District Court correctly noted, this rule applies with special force when, as here, the relevant issue is one of jurisdiction. *See* ROA.336 ("When questions of jurisdiction have been sidestepped in prior decisions *sub silentio*, later federal courts may consider the issue when a subsequent case squarely presents the jurisdictional issue."); *see also id.* (citing *Hagans v. Lavine*, 415 U.S. 528, 525 n.8 (1974), and *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63 n.4 (1989)).

Third, several arguments that the *Bank of Louisiana* plaintiffs did make in their briefs highlight how different that case is from this one. Most importantly, the *Bank of Louisiana* plaintiffs conceded the issue of explicit jurisdiction-stripping and elected to focus on the *Thunder Basin* implicit jurisdiction-stripping analysis. *See supra* at 11-12. Burgess has made no such concession here. And when an Opinion relies on a concession, the Court's "affirmation of the conceded proposition" does not "operate[] as binding precedent." *Ochoa-Salgado*, 5 F.4th at 620.[13]

### 2. *Cochran* Is Not Controlling.

The government's Motion next contends that, even if *Bank of Louisiana* is not controlling, the interpretation of that case offered in this Court's en banc decision in *Cochran* forecloses Burgess's jurisdictional argument. That too is wrong.

The plaintiff in *Cochran* filed a federal lawsuit seeking to enjoin a pending enforcement proceeding that the Securities and Exchange Commission ("SEC") had initiated against her. 20 F.4th at 198. The question on appeal was whether the judicial-review provision in the Exchange Act, 15 U.S.C. § 78y, stripped district courts of jurisdiction to hear structural constitutional claims by providing that a

---

[13] It also bears mention that the *Bank of Louisiana* plaintiffs argued that the dividing line between precluded and non-precluded claims was whether the plaintiff was "seek[ing] review of the merits of the FDIC Board's final order." *Bank of Louisiana* Opening Br., *supra* note 8, at *13. That is not the line Burgess seeks to draw here.

person aggrieved by a final SEC order could appeal that order directly to a court of appeals. The Court held that it did not. *See Cochran*, 20 F.4th at 213.

En route to ruling in Ms. Cochran's favor, the panel rejected the contention that *Bank of Louisiana* was somehow helpful to the government's position. *Cochran* distinguished *Bank of Louisiana* because "the statutory-review scheme at issue in that case differed in a key respect from the Exchange Act's: in *Bank of Louisiana*, the scheme included an explicit statutory bar"—i.e., Section 1818(i)—whereas the Exchange Act did not. 20 F.4th at 204. *Cochran* "clarif[ied] that *Bank of Louisiana* was addressing the explicit statute at issue there" and that *Bank of Louisiana*'s holding was "based on the explicit jurisdictional bar." *Id.* (emphasis added).

*Cochran* does not support the government's argument. All *Cochran* said was that *Bank of Louisiana* should be construed as an explicit jurisdiction-stripping case. That gloss on *Bank of Louisiana*—while difficult to square with what the *Bank of Louisiana* opinion actually said[14]—has no import here. Whether Section 1818(i) explicitly strips jurisdiction over non-structural claims, including the equal-protection and due-process claims pursued in *Bank of Louisiana*, does not answer whether it explicitly strips jurisdiction over structural constitutional claims like those

---

[14] The *Bank of Louisiana* decision in fact clearly stated that the panel there "need not resolve" the issue of whether Section 1818(i) "'explicitly' limits" jurisdiction "because of [its] holding that the statutory scheme withdraws district jurisdiction implicitly." 919 F.3d at 924 n.10 (emphasis added).

Burgess presses here. *Cochran* does not say that it does, and *Cochran* is therefore beside the point.

As the District Court correctly explained, "*Bank of Louisiana* made clear that it did not decide the issue" of "whether district courts are <u>explicitly</u> barred from reviewing structural constitutional claims under § 1818(i)." ROA.336–337 (emphasis altered). And to the extent *Cochran* addresses that issue at all, it simply "'assumed' that, based on the *Bank of Louisiana* decision, § 1818(i) represented an explicit jurisdictional bar." *Id.* That specific issue was not briefed in either *Bank of Louisiana* or in *Cochran*,[15] and ergo whatever "assumptions" *Cochran* may have made are not binding precedent vis-à-vis future cases, like this one, "where [the jurisdictional issue] is squarely presented." ROA.337; *see supra* at 15.

In any event, the District Court was correct to explain that whatever *Cochran* might have said on this issue was dicta, because the extent to which Section 1818(i) explicitly forecloses jurisdiction over structural constitutional claims was not "necessary to the decision" in *Cochran*. ROA.337. The *Cochran* Court noted that

---

[15] At the en banc oral argument in *Cochran*, Ms. Cochran's counsel was explicitly asked whether her proposed rule of law depended on whether the claims at issue were structural or non-structural. She responded "we didn't get into the briefing on that." *Cochran* En Banc Argument Tr. at 17:37–57. The government's attorney likewise conceded in *Cochran* that, in the government's view, "whether a district court has jurisdiction" does not depend on "the type of constitutional claim that a person raises." *Cochran* Stay-Stage Argument Tr. at 23:32–40.

Section 1818(i) contains a jurisdiction-stripping provision whereas 15 U.S.C. § 78y

does not, and held that this fact alone was enough to differentiate *Bank of Louisiana*

from the case at bar.  20 F.4th at 204.  In order to reach that conclusion, *Cochran* did

not need to—and in fact did not—deliver any holding concerning whether Section

1818(i) strips jurisdiction over structural constitutional claims.[16]

## II. Burgess Does Not Oppose a Stay of All District Court Proceedings <u>Other than</u> Proceedings Related to His Pending Motion for Reconsideration.

The government's Motion also requests that this Court order "a stay of further

proceedings in the district court—but not a stay of the PI Order itself—pending

resolution of this appeal."  Mot. 12.  Burgess does not oppose a stay of all

proceedings <u>other than</u> those related to his pending motion for reconsideration.  That

reconsideration motion argues that the District Court erred in denying a preliminary

---

[16] It is true that *Cochran* characterized *Bank of Louisiana* as a case involving "a separation-of-powers challenge to an administrative proceeding before the [FDIC]." 20 F.4th at 204.  But that merely reflects the way that the government described *Bank of Louisiana* in its *Cochran* briefs.  In reality, the Complaint in *Bank of Louisiana* did <u>not</u> include any language suggesting that the plaintiffs thought there was some problem with the removability protections for the ALJs used by the FDIC, and the government conceded at the *Cochran* oral argument that *Bank of Louisiana* did not resolve any separation-of-powers claim.  *See supra* notes 6, 9, 11.  The well-documented confusion regarding what claims were presented in *Bank of Louisiana* shows the wisdom in the Fifth Circuit's longstanding rule that, when a specific issue is not briefed to a panel, future panels retain discretion to hear arguments that were not made to the first-in-time court.  *See supra* at 15 (collecting cases).  The *Cochran* briefs did not present any argument akin to the one Burgess presents here—i.e., that the *Bank of Louisiana*'s interpretation of Section 1818(i) did not reach (and should not be construed as reaching) structural constitutional claims.

injunction as to Counts 1 and 2 in the Complaint, which allege that the FDIC's appointed directors and the ALJs used by the FDIC are unconstitutionally shielded from removal. *See* ROA.720–757. The government's current view is apparently that the stay should apply to all District Court proceedings, despite the fact that the government agreed earlier this month that briefing on the reconsideration motion should proceed while the rest of the case is stayed.[17]

Staying all proceedings except those related to the reconsideration motion would be entirely consistent with the government's stated goal of eliminating "parallel duplicative proceedings." Mot. 13. If the District Court denies the reconsideration motion, Burgess intends to file his own notice of appeal and to request that this Court consolidate that new appeal with the instant case. Thus, allowing the District Court to rule on the reconsideration motion would actually prevent "duplicative proceedings"—i.e., two related (but non-consolidated) appeals that are each related to Burgess's requests for injunctive relief. And given that Burgess's reconsideration motion will be fully briefed and ripe for decision in less than a month (*see* ROA.767), allowing the briefing on the reconsideration motion to proceed in the normal course will have no adverse effect on any of the parties.

---

[17] On December 2, 2022, the government filed with the District Court a motion to stay all "proceedings in [the] case, other than those related to [Burgess's] motion for reconsideration." ROA.716 ¶ 4 (emphasis added). Burgess did not oppose that relief. The government's Motion offers no explanation for its change in position.

## **CONCLUSION**

The government's motion for summary reversal should be denied.


Dated:  December 30, 2022                Respectfully submitted,

                                         */s/ Manuel G. Berrelez*

                                         Manuel G. Berrelez
                                             *Attorney of Record*
James T. Dawson                          Vinson & Elkins LLP
Vinson & Elkins LLP                      Trammell Crow Center
2200 Pennsylvania Avenue, NW             2001 Ross Avenue, Suite 3900
Suite 500 West                           Dallas, Texas 77002
Washington, DC 20037                     Phone: (214) 220-7700
Phone: (202) 639-6507                    Facsimile: (214) 220-7716
Facsimile: (202) 639-6500                Email: mberrelez@velaw.com
Email: jamesdawson@velaw.com


*Counsel for Plaintiff-Appellee Cornelius Campbell Burgess*

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that, on December 30, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Dated:  December 30, 2022

*/s/ Manuel G. Berrelez*
Manuel G. Berrelez
   *Attorney of Record*
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 77002
Phone: (214) 220-7700
Facsimile: (214) 220-7716
Email: mberrelez@velaw.com

*Counsel for Plaintiff-Appellee*
*Cornelius Campbell Burgess*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.     This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,178 words, excluding the parts of the filing exempted by Federal Rule of Appellate Procedure 32(f).

2.     This opposition and cross-motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

Dated:  December 30, 2022          */s/ Manuel G. Berrelez*
                                    Manuel G. Berrelez
                                        *Attorney of Record*
                                    VINSON & ELKINS LLP
                                    Trammell Crow Center
                                    2001 Ross Avenue, Suite 3900
                                    Dallas, Texas 77002
                                    Phone: (214) 220-7700
                                    Facsimile: (214) 220-7716
                                    Email: mberrelez@velaw.com

                                    *Counsel for Plaintiff-Appellee*
                                    *Cornelius Campbell Burgess*