Case No. 22-11172

# United States Court of Appeals for the Fifth Circuit

## CORNELIUS CAMPBELL BURGESS,

*Plaintiff-Appellee/Cross-Appellant,*

— v. —

## JENNIFER WHANG, IN HER OFFICIAL CAPACITY AS AN ADMINISTRATIVE LAW JUDGE; FEDERAL DEPOSIT INSURANCE CORPORATION; MARTIN J. GRUENBERG, IN HIS OFFICIAL CAPACITY AS ACTING CHAIRMAN OF THE FDIC; MICHAEL J. HSU, IN HIS OFFICIAL CAPACITY AS A DIRECTOR OF THE FDIC; ROHIT CHOPRA, IN HIS OFFICIAL CAPACITY AS A DIRECTOR OF THE FDIC,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court for the Northern District of Texas (Wichita Falls Division), No. 7:22-cv-00100-O, Hon. Reed O'Connor

## OPENING BRIEF OF APPELLANTS/CROSS-APPELLEES

B. Amon James
Assistant General Counsel
J. Scott Watson
Senior Counsel
Joseph Brooks
Counsel
FEDERAL DEPOSIT INSURANCE
  CORPORATION
3501 Fairfax Drive, Room VS-D-7010
Arlington, VA 22226
Tel: (703) 562-2054 | Fax: (703) 562-2469

January 30, 2023

*Counsel for Appellants/Cross-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

Appellants/Cross-Appellees (FDIC Appellants) are not required to provide a certificate of interested persons under 5th Cir. R. 28.2.1 as the Federal Deposit Insurance Corporation (FDIC) is a federal agency established under 12 U.S.C. § 1811 and all remaining FDIC Appellants are individuals acting in their official governmental capacities.

## STATEMENT REGARDING ORAL ARGUMENT

FDIC Appellants respectfully request oral argument. This appeal raises multiple issues whose resolution by this Court could have a significant impact on regulation of the nation's banking system. Moreover, this Court's decision will potentially affect not only the administrative enforcement action at issue in this case, but also other administrative enforcement actions initiated by the FDIC and by the other federal banking agencies. FDIC Appellants therefore believe oral argument would aid this Court's decision-making process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.........................................................i

STATEMENT REGARDING ORAL ARGUMENT...............................................ii

TABLE OF CONTENTS...................................................................................iii

TABLE OF AUTHORITIES...............................................................................v

THIS COURT'S EN BANC CLARIFICATION OF *BANK OF LOUISIANA*....1

PRELIMINARY STATEMENT...........................................................................2

STATEMENT OF JURISDICTION....................................................................5

STATEMENT OF THE ISSUES.........................................................................6

STATEMENT OF THE CASE............................................................................7

    I.   Regulatory And Procedural Background..........................................................7

        A.   The FDIC.............................................................................................7

        B.   FDIC Administrative Enforcement Actions and Judicial Review.............8

        C.   The FDIC's Administrative Enforcement Action Against Burgess.........10

        D.   Burgess's Preemptive District Court Lawsuit...........................................12

    II.   Rulings Presented For Review....................................................................15

SUMMARY OF ARGUMENT..........................................................................16

ARGUMENT..................................................................................................19

    I.   Standard Of Review...................................................................................19

    II.   The PI Order And Nov. 6 Order Should Be Vacated And This Case Should Be Dismissed In Its Entirety Because Section 1818(i) Divests District Courts Of Jurisdiction To Review And Enjoin FDIC Enforcement Proceedings.............................................................................20

A.  This Court's En Banc Decision in *Cochran* Forecloses Jurisdiction Here.....................................................................20

B.  Even Putting *Cochran* Aside, Section 1818(i) is an *Explicit* Jurisdictional Bar to All of Burgess's Claims............................29

C.  An *Implicit* Preclusion Analysis Reinforces the Conclusion That District Court Jurisdiction is Precluded Here.................34

III.  The Preliminary Injunction Also Should Be Vacated Because Burgess Did Not Show That He Is Likely To Prevail On The Merits Of His Jury-Trial Claim Or That He Would Be Irreparably Harmed Absent An Injunction................................................................38

A.  The District Court Erred in Ruling that Burgess is Likely to Prevail on the Merits Because Controlling Precedent Holds There is No Right to a Jury Trial of Section 1818 Administrative Enforcement Claims.......................................................................39

1.  The Supreme Court's Decision in *Granfinanciera* Compels the Conclusion that Burgess has no Right to a Jury Trial Here Because Section 1818 Enforcement Actions Involve Only Public Rights.....................................................................39

2.  This Court's Decision in *Akin* is Controlling Precedent Holding That Section 1818 Enforcement Actions Involve Only Public Rights as to Which There is no Right to a Jury Trial.......................44

3.  This Court's Decision in *Jarkesy v. SEC* is Inapposite....................46

B.  The District Court Erred in Ruling That the Irreparable Harm Requirement was "Automatically Satisfied".............................49

CONCLUSION................................................................54

CERTIFICATE OF SERVICE.........................................56

CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)...............................57

iv

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Akin v. Office of Thrift Supervision,*
  950 F.2d 1180 (5th Cir. 1992)..............................................4, 6, 15, 17, 18, 44-46, 49

*Bank of Louisiana v. FDIC,*
  919 F.3d 916 (5th Cir. 2019)..............................................1, 3, 4, 15-17, 21-30, 34-38

*Beacon Theatres, Inc. v. Westover,*
  359 U.S. 500 (1959)................................................................................................49

*BedRoc Ltd., LLC v. United States,*
  541 U.S. 176 (2004)..........................................................................................24, 30

*Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.,*
  502 U.S. 32 (1991)............................................................................................20, 23

*Bonan v. FDIC,*
  2023 WL 156852 (E.D. Mo. Jan. 11, 2023).......................................................34, 35

*Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency,*
  174 F.3d 1115 (10th Cir. 1999)..................................................................................26

*Cavallari v. OCC,*
  57 F.3d 137 (2d Cir. 1995)...............................................................................45, 49

*Chambless Enters., LLC v. Redfield,*
  508 F. Supp. 3d 101 (W.D. La. 2020)....................................................7, 19, 53, 54

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) (en banc), *cert. granted,*
  142 S.Ct. 2707 (2022)..........................................1, 3, 5, 15, 16, 24-29, 38

*Cochran v. SEC,*
  969 F.3d 507 (5th Cir. 2020), *rev'd on reh'g en banc,*
  20 F.4th 194 (5th Cir. 2021)...............................................................................27, 28

*Cunningham v. Adams,*
 808 F.2d 815 (11th Cir. 1987)....................................................................51

*EEOC v. Boh Bros. Const. Co., L.L.C.,*
 731 F.3d 444 (5th Cir. 2013) (en banc).......................................................6

*Elrod v. Burns,*
 427 U.S. 347 (1976).............................................................................50, 51

*Granfinanciera, S.A. v. Nordberg,*
 492 U.S. 33 (1989)..........................................................4, 5, 17, 39-49

*Hohe v. Casey,*
 868 F.2d 69 (3d Cir. 1989).............................................................51, 52

*In re Sims,*
 994 F.2d 210 (5th Cir. 1993)..........................................................................6

*International Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,*
 818 F.3d 193 (5th Cir. 2016)..........................................................................5

*Jacobs v. National Drug Intelligence Ctr.,*
 548 F.3d 375 (5th Cir. 2008)..................................................................18, 46

*Jarkesy v. SEC,*
 34 F.4th 446 (5th Cir. 2022)........................................................18, 46-48

*Jolly v. Coughlin,*
 76 F.3d 468 (2d Cir. 1996)..........................................................................52

*Lambert v. Board of Comm'r's of Orleans Levee Dist.,*
 2006 WL 8456316 (E.D. La. Mar. 22, 2006)...............................................54

*Lucia v. SEC,*
 --- U.S. ---, 138 S.Ct. 2044 (2018)........................................................11, 27

*National Football League Players Ass'n v. National Football League,*
 874 F.3d 222 (5th Cir. 2017)..................................................................19, 20

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v.*
*City of Jacksonville,*
  896 F.2d 1283 (11th Cir. 1990)............................................................50, 51

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
  --- U.S. ---, 138 S.Ct. 1365 (2018)..............................................................41

*Public Serv. Co. of N.H. v. Town of West Newbury,*
  835 F.2d 380 (1st Cir. 1987)........................................................................52

*Rhoades v. Casey,*
  196 F.3d 592 (5th Cir. 1999)........................................................................23

*Sampson v. Murray,*
  415 U.S. 61 (1974)........................................................................................49

*Shalala v. Illinois Council on Long Term Care, Inc.,*
  529 U.S. 1 (2000)......................................................................................31-33

*Siegel v. LePore,*
  234 F.3d 1163 (11th Cir. 2000) (en banc)........................................7, 19, 51

*Sweis v. U.S. Foreign Claims Settlement Comm'n,*
  950 F. Supp. 2d 44 (D.D.C. 2013)...............................................................53

*Texas Med. Providers Performing Abortion Servs. v. Lakey,*
  667 F.3d 570 (5th Cir. 2012)..................................................................38, 39

*United Offshore Co. v. Southern Deepwater Pipeline Co.,*
  899 F.2d 405 (5th Cir. 1990)........................................................................19

*United States v. Brigham,*
  382 F.3d 500 (5th Cir. 2004) (en banc)......................................................26

*United States v. Murphy,*
  578 F.3d 719 (8th Cir. 2009)........................................................................26

*United States v. Wallace,*
  964 F.3d 386 (5th Cir. 2020)........................................................................45

*Ward v. Santa Fe Indep. Sch. Dist.,*
  393 F.3d 599 (5th Cir. 2004)..................................................................5, 6

*Webster v. Doe,*
  486 U.S. 592 (1988)........................................................................32, 33

*Wheeler v. Wexford Health Sources, Inc.,*
  689 F.3d 680 (7th Cir. 2012)....................................................................52

## UNITED STATES CONSTITUTION

U.S. Const. art. III..............................................................................40-44, 47

U.S. Const. amend. I..............................................................................51, 52

U.S. Const. amend. VII...............................................................13, 39, 40, 50

U.S. Const. amend. VIII................................................................................52

U.S. Const. amend. XIV................................................................................52

## FEDERAL STATUTES

5 U.S.C. §§ 701-706.......................................................................................9

12 U.S.C. § 1811...........................................................................................7

12 U.S.C. § 1817...........................................................................................8

12 U.S.C. § 1817(a)........................................................................................8

12 U.S.C. § 1818....................................3-6, 8, 15, 17, 18, 20-22, 32, 39, 42, 43, 48, 49

12 U.S.C. § 1818(b)........................................................................................8

12 U.S.C. § 1818(b)(1)..................................................................................44

12 U.S.C. § 1818(c)................................................................8

12 U.S.C. § 1818(c)(2)..........................................................21

12 U.S.C. § 1818(e)...........................................................8, 48

12 U.S.C. § 1818(h)...............................................................8

12 U.S.C. § 1818(h)(2)........................................................9, 21

12 U.S.C. § 1818(i)...................................3-6, 8, 15, 16, 23-25, 27-32, 34, 37, 38

12 U.S.C. § 1818(i)(1).................................3, 6, 21, 25, 34

12 U.S.C. § 1818(i)(2).......................................................42, 48

12 U.S.C. § 1819..............................................................7, 8

12 U.S.C. § 1820(b)..............................................................8

12 U.S.C. § 1820(d)..............................................................8

12 U.S.C. § 1821(k)..........................................................48, 49

15 U.S.C. § 78u-2(a)............................................................47

18 U.S.C. § 1252(b)(9)..........................................................33

28 U.S.C. § 1292(a)(1)...........................................................5

28 U.S.C. § 2107(b)..............................................................5

42 U.S.C. § 405(h)..............................................................31

Administrative Procedure Act,
    5 U.S.C. §§ 701-706........................................................9, 10

Dodd Frank Act § 929P(a),
    15 U.S.C. § 78u-2(a).........................................................47

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
    Pub. L. No. 101-73, 103 Stat. 183......................................................................8

Financial Institutions Supervisory Act of 1966,
    Pub. L. No. 89-695, 80 Stat. 1028................................................................20

## FEDERAL REGULATIONS

12 C.F.R. Part 308......................................................................................................9

12 C.F.R. § 308.5........................................................................................................9

12 C.F.R. § 308.38......................................................................................................9

12 C.F.R. § 308.39......................................................................................................9

12 C.F.R. § 308.40......................................................................................................9

12 C.F.R. § 308.41....................................................................................................10

## FEDERAL RULES

Fed. R. App. P. 4(a)(1)(B)...........................................................................................5

## THIS COURT'S EN BANC CLARIFICATION OF *BANK OF LOUISIANA*

[In] *Bank of Louisiana v. FDIC*, . . . we . . . h[eld] that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the Federal Deposit Insurance Corporation ("FDIC"). 919 F.3d 916, 925-27, 930 (5th Cir. 2019). Critically, the statutory-review scheme at issue in that case differed in a key respect from the Exchange Act's: in *Bank of Louisiana*, the scheme included an explicit statutory bar on any court enjoining "the issuance or enforcement of any . . . [FDIC] order." *Id.* at 920 (quoting 12 U.S.C. § 1818(i)(1)). Accordingly, we held that district court jurisdiction was *explicitly* divested. *Id.* at 924 (explaining that "the plain terms of section 1818(i) bar jurisdiction here"). Although we proceeded to analyze the *Thunder Basin* factors, we did so merely to "reinforce" our conclusion based on the explicit jurisdictional bar. *Id.* at 925. Consequently, we clarify that *Bank of Louisiana* was addressing the explicit statute at issue there[.][1]

---

[1] *Cochran v. SEC*, 20 F.4th 194, 204 (5th Cir. 2021) (en banc) (first two ellipses and first two and last brackets added), *cert. granted on other grounds*, 142 S.Ct. 2707 (2022).

## PRELIMINARY STATEMENT

For eight years Appellee/Cross-Appellant Burgess—a former bank president and CEO—vigorously defended against claims in an FDIC administrative enforcement action. The extended proceedings included a seven-day hearing before an administrative law judge (ALJ), a final order of the FDIC Board of Directors (Board) removing Burgess from his bank-related positions and assessing a $200,000 civil money penalty, a direct appeal to this Court, a remand to the Board after an intervening Supreme Court decision held that another agency's ALJs are subject to the Appointments Clause, and a supplemental three-day hearing before a newly appointed ALJ. The proceedings then returned to the Board for issuance of a final order.

Before the Board could act, however, Burgess filed this district court lawsuit seeking to prevent the Board from issuing a final order because—after eight years of litigation including two administrative hearings and an intervening appeal to this Court—Burgess now contends he has been denied his right to a jury trial. And for that reason, the district court preliminarily enjoined FDIC Appellants from continuing the administrative enforcement proceeding "in any way." FDIC Appellants bring this interlocutory appeal from that preliminary injunction order (PI Order).

The PI Order should be vacated and this lawsuit should be dismissed in its entirety because this Court has already held that district courts lack subject matter jurisdiction to review or enjoin FDIC enforcement proceedings. And in any event,

Burgess is not entitled to a preliminary injunction here because, among other reasons, this Court has already held there is no right to a jury trial of section 1818 enforcement claims as they involve public rights. The PI Order is therefore grounded on two rulings that contravene controlling circuit law. Moreover, reversal of either of those rulings would require that the PI Order be vacated.

*First*, the district court ruled that it has jurisdiction over Burgess's claims for declaratory and injunctive relief barring the Board from issuing a final order.[2] But in 12 U.S.C. § 1818(i), Congress divested district courts of jurisdiction to grant such relief. In pertinent part, that statute provides that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of *any* notice or order [under section 1818]."[3] By its plain terms, this language *explicitly* precludes district court jurisdiction to enter a preliminary injunction enjoining the Board from issuing a final order in an FDIC enforcement proceeding. What is more, any conceivable doubt about this was resolved by this Court's en banc decision in *Cochran v. SEC*.[4]

In *Cochran*, this Court "clarif[ied] that [its decision in] *Bank of Louisiana* [*v. FDIC*][5] . . . address[ed] the *explicit* statute at issue there"—*i.e.*, section 1818(i)—which "included an *explicit* statutory bar on any court enjoining 'the issuance or enforce-

---

[2] ROA.334-43.

[3] 12 U.S.C. § 1818(i)(1).

[4] 20 F.4th 194 (5th Cir. 2021) (en banc), *cert. granted*, 142 S.Ct. 2707 (2022).

[5] 919 F.3d 916 (5th Cir. 2019).

ment of *any* . . . [FDIC] order.'"[6] Moreover, this Court also clarified that "*Bank of Louisiana* . . . h[eld] that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC].'"[7] Thus, section 1818(i) explicitly precludes district court jurisdiction to enjoin the issuance of *any* FDIC order—even if a respondent asserts a separation-of-powers claim.[8]

*Second*, the district court ruled that Burgess is likely to prevail on the merits of his right-to-a-jury-trial claim.[9] But in *Akin v. Office of Thrift Supervision*,[10] this Court held there was no right to a jury trial of claims brought in a section 1818 administrative enforcement action because such a proceeding "is a proper administrative forum for adjudicating public rights."[11] What is more, *Akin* relied on *Granfinanciera, S.A. v. Nordberg*,[12] where the Supreme Court reaffirmed that jury trials are not required in cases involving claims asserting "public rights" and defined that term as including "statutory cause[s] of action [that] inhere[ ] in, or lie[ ] against, the Federal Government in its sovereign capacity" and "statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an ad-

---

[6] *Cochran*, 20 F.4th at 204 (fifth bracket and second ellipsis in original) (footnote added).

[7] *Id.*

[8] Burgess's right-to-a-jury-trial claim presents a separation-of-powers challenge to the FDIC administrative proceeding. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53-54 (1989).

[9] ROA.346-49.

[10] 950 F.2d 1180 (5th Cir. 1992).

[11] *Id.* at 1186.

[12] 492 U.S. 33 (1989).

ministrative agency[.]"[13] As we demonstrate *infra*, the section 1818 enforcement claims at issue in this case fit easily within both of these definitions.

For these reasons, as well as the additional reasons discussed in the body of this brief, this Court should vacate the district court's PI Order.

## STATEMENT OF JURISDICTION

1. The district court lacked subject matter jurisdiction over Burgess's claims for declaratory and injunctive relief because, as we demonstrate *infra*, district courts are divested of such jurisdiction by 12 U.S.C. § 1818(i). The district court did have jurisdiction to determine its own jurisdiction.[14]

2. This Court has jurisdiction over FDIC Appellants' interlocutory appeal under 28 U.S.C. § 1292(a)(1) because it is taken from a district court order granting a preliminary injunction. FDIC Appellants filed their notice of appeal within 60 days after entry of the PI Order as required by 28 U.S.C. § 2107(b) and Fed. R. App. P. 4(a)(1)(B). The district court entered the PI Order on December 1, 2022,[15] and FDIC Appellants filed their notice of appeal on December 2, 2022.[16]

3. This Court lacks jurisdiction over Burgess's cross-appeal. "It is a central tenet of appellate jurisdiction that a party who is not aggrieved by a judgment [or

---

[13] *Id.* at 53 and 55 n.10.

[14] *See International Energy Ventures Mgmt., L.L.C. v. United Energy Grp. Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016).

[15] ROA.680-83.

[16] ROA.684-86.

appealable order] of the district court has no standing to appeal it."[17] And "[s]imply stated, a party who has obtained a judgment in his favor, *granting the relief sought*, is not aggrieved by it."[18] Here, the PI Order granted Burgess all of the preliminary injunctive relief he sought with respect to all Counts of his Complaint.[19]

## STATEMENT OF THE ISSUES

1. Section 1818(i) provides that "no court shall have jurisdiction to affect by injunction or otherwise the issuance . . . of *any* . . . order [under section 1818]."[20] The district court entered a preliminary injunction barring the FDIC from issuing a final order in the section 1818 administrative enforcement proceeding at issue in this appeal. Did the district court lack jurisdiction to enter that preliminary injunction?

2. In *Akin* this Court held there was no right to a jury trial of claims brought in an administrative enforcement proceeding under section 1818 because "[w]here there is a proper administrative forum for adjudicating public rights, there is no right to a jury trial."[21] This case involves adjudication of claims authorized by section 1818 in an administrative enforcement proceeding conducted under section 1818. Did the

---

[17] *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004).

[18] *EEOC v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 469 n.35 (5th Cir. 2013) (en banc) (emphasis in original) (quoting *In re Sims*, 994 F.2d 210, 214 (5th Cir. 1993)).

[19] *Compare* ROA.682-83 (PI Order) ("Defendants are hereby enjoined from . . . continuing the Enforcement Proceeding in any way.") *with* ROA.174 (Burgess's motion for a preliminary injunction) ("This [c]ourt should enter a preliminary injunction barring the Defendants from continuing the Enforcement Proceeding.") and ROA.140 (same).

[20] 12 U.S.C. § 1818(i)(1).

[21] *Akin*, 950 F.2d at 1186.

district court err in ruling that Burgess is likely to succeed on the merits of his claim that he has been denied his Seventh Amendment right to a jury trial?

3.  The district court did not even consider whether Burgess showed he would suffer irreparable injury absent an injunction because, the court said, the "concept that a violation of a constitutional right in and of itself constitutes irreparable injury has been universally recognized and is not open to debate."[22] But while this Court has not squarely decided the issue, other circuit courts and other district courts within this Circuit have rejected the concept that irreparable harm is automatically presumed whenever constitutional claims are involved.[23] Did the district court err in ruling "the irreparable injury requirement [wa]s automatically satisfied" here?[24]

## STATEMENT OF THE CASE

### I.    Regulatory And Procedural Background.

### A.  The FDIC.

Responding to an epidemic of bank closures that occurred during the Great Depression, in 1933 Congress established the FDIC to restore confidence in the nation's banking system by providing insurance for eligible bank deposits.[25] Subsequent legislation expanded the FDIC's role in the regulation and stabilization of

---

[22] ROA.349.

[23] *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc) (citing cases); *Chambless Enters., LLC v. Redfield*, 508 F. Supp. 3d 101, 120 (W.D. La. 2020) (citing cases).

[24] ROA.350.

[25] *See* 12 U.S.C. §§ 1811, 1819.

banks.[26] Among other things, the FDIC currently serves as the federal regulator for certain state-chartered banks.[27] In that capacity it assesses the operations and financial condition of the banks it regulates primarily by conducting bank examinations and preparing reports of those examinations.[28]

### B.  FDIC administrative enforcement actions and judicial review.

The FDIC is also empowered by statute to initiate administrative enforcement actions against financial institutions and affiliated parties who engage in unsafe and unsound practices or violate banking laws or regulations.[29] When exercising that authority, the FDIC may issue a notice of charges,[30] hold hearings,[31] issue cease-and-desist orders,[32] and, when appropriate, impose sanctions—including removing institution-affiliated parties from their bank-related offices, prohibiting them from working in the banking industry, and assessing civil money penalties against them.[33]

The FDIC initiates an administrative enforcement action by issuing a notice of charges. Unless the charges are uncontested, a hearing and related proceedings are

---

[26] *See, e.g.,* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (codified at various sections of Title 12 U.S.C.).

[27] *See* 12 U.S.C. §§ 1817(a), 1819, 1820(b).

[28] *See* 12 U.S.C. §§ 1817, 1820(b) and (d).

[29] *See* 12 U.S.C. § 1818.

[30] *Id.* § 1818(b).

[31] *Id.* § 1818(h).

[32] *Id.* §§ 1818(b), (c).

[33] *Id.* §§ 1818(e), (i).

subsequently conducted by an ALJ pursuant to the Administrative Procedure Act (APA)[34] and the FDIC's corresponding Rules of Practice and Procedure.[35] FDIC ALJs are authorized to conduct a broad range of activities that include handling scheduling matters, issuing subpoenas, overseeing discovery, ruling on certain procedural matters, and ruling on the admissibility of evidence.[36]

After completion of a hearing and filing of post-hearing submissions, the ALJ must issue a recommended decision and file with the FDIC's Executive Secretary the complete administrative record of the proceeding including recommended findings of fact and conclusions of law and a proposed order.[37] The parties may then file "exceptions" to the ALJ's recommended decision.[38] Thereafter, the case is transmitted to the Board for its review and, within 90 days, issuance of a final decision and order.[39]

Once the Board issues its final decision and order, the respondent may, within 30 days, appeal to the United States Court of Appeals for either the District of Columbia Circuit or the circuit within which the bank's home office is located.[40] The

---

[34] 5 U.S.C. §§ 701-706.

[35] 12 C.F.R. Part 308.

[36] *See id.* at § 308.5.

[37] *Id.* at § 308.38.

[38] *Id.* at § 308.39.

[39] *Id.* at § 308.40.

[40] *See* 12 U.S.C. § 1818(h)(2).

FDIC may stay any order it issues pending judicial review.[41] The court of appeals conducts its review of the Board's final decision and order pursuant to the APA.[42]

### C. The FDIC's administrative enforcement action against Burgess.

Herring Bank is a community bank that was founded in Vernon, Texas in 1899 and currently has 15 branches.[43] Burgess served as the Bank's Chief Executive Officer from 2000 to 2012 and as its President from 2002 to 2012.[44] While he held those positions, the Bank sustained sizeable losses as a result of a Ponzi scheme to which it fell victim.[45]

In 2010, the FDIC began an investigation of Burgess after receiving a tip that he was using the Bank's funds to renovate his house.[46]

In November 2014, the FDIC initiated an administrative enforcement action against Burgess (Enforcement Proceeding).[47]

In September 2016, a seven-day hearing was conducted before ALJ Christopher McNeil.[48]

---

[41] *See* 12 C.F.R. § 308.41.

[42] *See* 12 U.S.C. § 1818(h)(2).

[43] ROA.13.

[44] ROA.13.

[45] ROA.14.

[46] ROA.14.

[47] ROA.28. The Enforcement Proceeding is styled *In re Cornelius Campbell Burgess et al.* (Nos. FDIC-14-0307e, FDIC 140-0308k).

[48] ROA.29.

In January 2017, ALJ McNeil issued a Recommended Decision in which he recommended that Burgess be removed from his bank-related positions, prohibited from working in the banking industry, and assessed a $200,000 civil money penalty.[49]

In August 2017, the Board adopted the Recommended Decision, issued a final order of removal and prohibition, and assessed a $200,000 civil money penalty against Burgess.[50] Later that month, Burgess filed a petition for review of the FDIC's final decision and order with this Court.[51]

In June 2018—while Burgess's appeal from the Board's final order was still pending—the Supreme Court issued its decision in *Lucia v. SEC*,[52] which held Securities and Exchange Commission ALJs are inferior officers of the United States subject to the Appointments Clause. As a result of that decision, in August 2018 this Court remanded the Enforcement Proceeding back to the Board for further proceedings.[53]

In October 2019, the Board appointed Appellant/Cross-Appellee Jennifer Whang as an ALJ for the FDIC.[54] In November 2019, the FDIC's Executive Secretary reassigned the Enforcement Proceeding to ALJ Whang.[55] In January 2022,

---

[49] ROA.29.

[50] ROA.29.

[51] ROA.29.

[52] --- U.S. ---, 138 S.Ct. 2044 (2018).

[53] ROA.30.

[54] ROA.30.

[55] ROA.30.

after several postponements due to the pandemic, a three-day supplemental hearing was held before ALJ Whang.[56]

On September 16, 2022, ALJ Whang issued a Recommended Decision which again recommended that Burgess be removed from his bank-related offices, prohibited from further participation in the banking industry, and assessed a civil money penalty of $200,000.[57] On October 17, 2022, Burgess filed his exceptions to ALJ Whang's Recommended Decision.[58] Among other exceptions, Burgess claimed that the FDIC Board is unconstitutionally structured, that FDIC ALJs are unconstitutionally shielded from removal, and that he was unconstitutionally denied a jury trial of the claims in the Enforcement Proceeding.[59] At that point, all that remained of the Enforcement Proceeding was for the Board to review the record and the Recommended Decision and issue its final decision and order.[60]

### D. Burgess's preemptive district court lawsuit.

On October 6, 2022—before the Board could take any action—Burgess filed this lawsuit in the district court against the FDIC, ALJ Whang, and all three of the then-serving FDIC Board members.[61] According to Burgess, the sole purpose of his

---

[56] ROA.30.

[57] ROA.30.

[58] ROA.31.

[59] ROA.274.

[60] ROA.31.

[61] ROA.12.

lawsuit is to prevent FDIC Appellants from continuing the Enforcement Proceeding against him.[62] The Complaint asserts three claims for declaratory relief: (1) a claim alleging the FDIC Board is unconstitutionally structured; (2) a claim alleging FDIC ALJs are unconstitutionally shielded from removal; and (3) a claim alleging the FDIC unconstitutionally deprived Burgess of his purported Seventh Amendment right to a jury trial.[63]

On October 15, 2022, Burgess moved for entry of a preliminary injunction "barring the FDIC from continuing the Enforcement Proceeding."[64]

On November 6, 2022, the district court entered an order granting Burgess's motion (Nov. 6 Order).[65] The court first rejected the FDIC's argument that the court lacked jurisdiction to grant the declaratory and injunctive relief sought in the Complaint.[66] Next, the district court ruled that Burgess was unlikely to succeed on the merits of his FDIC-Board-structure and ALJ-removal-protection claims.[67] The court also ruled, however, that Burgess was likely to succeed on the merits of his right-to-a-jury-trial claim.[68] The district court then ruled that, "[s]ince the [c]ourt has determined that [Burgess] was entitled under the Seventh Amendment to a jury trial, the

---

[62] ROA.13.

[63] ROA.35-50.

[64] ROA.174.

[65] ROA.328-51.

[66] ROA.334-43.

[67] ROA.344-46.

[68] ROA.346-49.

irreparable injury requirement is automatically satisfied without the need to consider [Burgess's] showings of irreparable harm."[69] Finally, the court found that the balance of hardships tipped in favor of Burgess and that the public interest weighed in favor of the injunction because "[a]n injunction does not disserve the public interest when it prevents constitutional deprivations."[70] The Nov. 6 Order concluded by directing the parties to file briefs describing in detail what relief the injunction should include.[71]

On December 1, 2022, the district court entered the PI Order and preliminarily enjoined FDIC Appellants from:

- entering any Final Decision in the Enforcement Proceeding . . . ;
- acting on any motions or requests filed by the parties to the Enforcement Proceeding . . . ;
- transmitting the record of the Enforcement Proceeding to the FDIC's Board of Directors . . . ; or
- otherwise continuing the Enforcement Proceeding in any way.[72]

On December 2, 2022, FDIC Appellants noticed their appeal from both the PI Order and the Nov. 6 Order.[73] On January 4, 2023, Burgess noticed his cross-appeal from the same two orders.[74]

---

[69] ROA.350.

[70] ROA.350.

[71] ROA.351.

[72] ROA.682-83.

[73] ROA.684-86.

[74] Case: 22-11172, Document: 31.

## II.    Rulings Presented For Review.

1. Even though this Court sitting en banc in *Cochran* clarified *Bank of Louisiana* as "holding that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]" due to section 1818(i)'s "*explicit* jurisdictional bar,"[75] the district court ruled that section 1818(i) does not *explicitly* bar its jurisdiction in this case.[76] The district court also ruled that section 1818(i) does not *implicitly* bar its jurisdiction in this case.[77]

2. Without even mentioning this Court's controlling and directly-on-point decision in *Akin*—which held there is no right to a jury trial of section 1818 enforcement claims—the district court ruled that Burgess is likely to succeed on the merits of his jury-trial claim.[78]

3. The district court did not consider whether Burgess had shown he would suffer irreparable injury absent a preliminary injunction because, the court ruled, it had determined Burgess was entitled to a jury trial under the Seventh Amendment and, therefore, "the irreparable injury requirement is automatically satisfied."[79]

---

[75] *Cochran*, 20 F.4th at 204 (emphasis added).

[76] ROA.334-38.

[77] ROA.338-43.

[78] ROA.346-49. FDIC Appellants brought *Akin* to the district court's attention and argued that it required rejection of Burgess's jury-trial claim at a hearing held five days before the Nov. 6 Order was issued. *See* ROA.774, 815. FDIC Appellants also argued that *Akin* required rejection of Burgess's jury-trial claim in two briefs filed before the PI Order was issued. *See* ROA.370, 590-91.

[79] ROA.350.

## SUMMARY OF ARGUMENT

1.  Although the district court's twenty-four-page Nov. 6 Order and Burgess's improper cross-appeal make this case seem complex, the entire case can and should be resolved by deciding only one straightforward issue and applying only one controlling precedent. The straightforward issue is whether district court jurisdiction over this case is explicitly precluded by 12 U.S.C. § 1818(i). The controlling precedent is this Court's en banc decision in *Cochran*.

In *Cochran*, this Court clarified the "holding" of its earlier decision in *Bank of Louisiana* as being "that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]."[80] Moreover, the *Cochran* Court further clarified that *Bank of Louisiana* "held that district court jurisdiction was *explicitly* divested (explaining that 'the plain terms of section 1818(i) bar[red] jurisdiction [t]here')."[81] Thus, *Bank of Louisiana* as clarified by *Cochran* is directly on point. It necessarily follows that *Cochran* requires a holding here that the district court lacks jurisdiction over this entire case.

2. Even putting *Cochran* aside, the plain terms of section 1818(i) *explicitly* preclude district court jurisdiction over Burgess's claims. What is more, this Court's controlling decision in *Bank of Louisiana* requires a holding here that an *implicit*

---

[80] *Cochran*, 20 F.4th at 204.

[81] *Id.* (internal citation and punctuation omitted).

preclusion analysis "reinforces" the conclusion that the district court lacks jurisdiction over this entire case.[82]

3. Alternatively, this Court could resolve this appeal by deciding a second straightforward issue and applying a second controlling precedent. The straightforward issue is whether Burgess has been denied his right to a jury trial. The controlling precedent is this Court's decision in *Akin.*

In *Akin,* this Court applied the Supreme Court's decision in *Granfinanciera* while holding there is no right to a jury trial of enforcement claims authorized by 12 U.S.C. § 1818 because "where there is a proper administrative forum for adjudicating public rights, there is no right to a jury trial."[83] In *Granfinanciera*, the Supreme Court reaffirmed that there is no right to a jury trial of claims involving solely "public rights"[84] and it defined that term as including "statutory cause[s] of action [that] inhere[ ] in, or lie[ ] against, the Federal Government in its sovereign capacity"[85] and "statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency[.]"[86] The section 1818 enforcement claims at issue here fit easily within both of these definitions.

---

[82] *See Bank of Louisiana*, 919 F.3d at 925 (*implicit* preclusion analysis "reinforce[s] the conclusion that the [section 1818] review scheme precludes district court jurisdiction over the Bank's claims").

[83] *Akin*, 950 F.2d at 1186 (citing *Granfinanciera*, 492 U.S. at 42, 54-55).

[84] *Granfinanciera*, 492 U.S. at 51.

[85] *Id.* at 53.

[86] *Id.* at 55 n.10.

The district court did not even mention *Akin* and instead concluded that this Court's decision in *Jarkesy v. SEC* [87] requires a jury trial here.[88] But that conclusion is fatally flawed for two reasons. *First*, one panel of this Court cannot overrule the decision of another panel of this Court absent a change in law at the Supreme Court, en banc court, or statutory level.[89] No such post-*Akin* change in the law was identified by either the district court or Burgess, and we are not aware of any. Consequently, *Akin* remains controlling circuit law. *Second*, *Jarkesy* is distinguishable as it involved a different statute that—unlike section 1818—gives the SEC the option to bring enforcement actions in federal district court rather than before an administrative tribunal and the *Jarkesy* decision relied heavily on this distinguishing fact.[90] Accordingly, *Akin*—and not *Jarkesy*—is binding precedent here.

4. The district court did not even consider whether Burgess showed that he would suffer irreparable harm if his request for a preliminary injunction were denied. Instead, the court stated that the "concept that a violation of a constitutional right in and of itself constitutes irreparable injury has been universally recognized and is not open to debate"[91] and then ruled that—because it had found Burgess was entitled to a jury trial—"the irreparable injury requirement was automatically satis-

---

[87] 34 F.4th 446 (5th Cir. 2022).

[88] ROA.346-49.

[89] *E.g., Jacobs v. National Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

[90] *See Jarkesy*, 34 F.4th at 455-56.

[91] ROA.349.

fied[.]"[92] This Court has not squarely addressed this issue. But a number of other circuit courts and other district courts within this Circuit have rejected the concept that irreparable harm is automatically presumed whenever any constitutional claim is involved.[93] That is the better view of the law and this Court should apply it here.

## ARGUMENT

### I.     Standard Of Review.

Questions of subject matter jurisdiction are reviewed *de novo*.[94] Moreover, "[w]hile preliminary injunctions are generally reviewed under an abuse of discretion standard, *de novo* review is appropriate where 'a district court's ruling rests solely on a premise as to the applicable rule of law' and the applicable facts are established or of no controlling relevance."[95] "The underlying facts in this case are undisputed[,]"[96] and the issues of whether Burgess is entitled to a jury trial of the FDIC's section 1818 claims and whether irreparable harm is automatically established as a matter of law in this case present questions of law. The Nov. 6 Order and the PI Order therefore must be reviewed *de novo*.[97]

---

[92] ROA.350.

[93] *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc) (citing cases); *Chambless Enters., LLC v. Redfield*, 508 F. Supp. 3d 101, 120 (W.D. La. 2020) (citing cases).

[94] *National Football League Players Ass'n v. National Football League*, 874 F.3d 222, 225 (5th Cir. 2017).

[95] *Id.* (quoting *United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990)).

[96] ROA.328 n.1.

[97] *See United Offshore*, 899 F.2d at 407.

II.    **The PI Order And Nov. 6 Order Should Be Vacated And This Case Should Be Dismissed In Its Entirety Because Section 1818(i) Divests District Courts Of Jurisdiction To Review And Enjoin FDIC Enforcement Proceedings.**

"When courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case."[98] Consequently—even in appeals from preliminary injunction orders—the threshold issue that must be resolved is whether the district court has subject matter jurisdiction over the case.[99] And when such jurisdiction is lacking, the appropriate course is for this Court to vacate the district court's preliminary injunction and remand to the district court with instructions to dismiss the case.[100] That is precisely what this Court should do here because the district court lacks subject matter jurisdiction over this case.

A.  **This Court's en banc decision in *Cochran* forecloses jurisdiction here.**

The Financial Institutions Supervisory Act of 1966, codified at 12 U.S.C. § 1818 *et seq.*, established a "tripartite regime of judicial review" for administrative enforcement actions brought by the FDIC and the other federal banking agencies.[101] Under this framework, federal courts have subject matter jurisdiction to review FDIC administrative enforcement actions in only three circumstances. *First*, the statute permits the FDIC to petition district courts for "the enforcement of any effective

---

[98] *National Football League Players Ass'n*, 874 F.3d at 225.

[99] *Id.*

[100] *Id.* at 229.

[101] *See Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 38 (1991) (discussing 12 U.S.C. § 1818).

and outstanding notice or order issued [to an insured bank]" pursuant to section 1818 proceedings.[102] *Second*, district courts have jurisdiction to review challenges by bank directors and other institution-affiliated parties to the FDIC's issuance of a temporary cease and desist order.[103] *Third*, the United States courts of appeals have exclusive jurisdiction to review final orders issued by the FDIC in section 1818 proceedings.[104] None of these circumstances is present here.

Outside of these three specifically delineated circumstances, federal courts lack subject matter jurisdiction to review or otherwise interfere with FDIC administrative enforcement proceedings. Congress made this abundantly clear with unambiguous statutory language:

> [E]xcept as otherwise provided[,] . . . *no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [section 1818]*, or to review, modify, suspend, terminate, or set aside any such notice or order.[105]

Moreover, this Court's controlling precedent confirms that this language means exactly what it says.

In *Bank of Louisiana v. FDIC*,[106] the appellants were a bank and three of its directors who—just as Burgess has done here—filed a district court lawsuit seeking

---

[102] *See* 12 U.S.C. § 1818(i)(1).

[103] *See* 12 U.S.C. § 1818(c)(2).

[104] *See* 12 U.S.C. § 1818(h)(2).

[105] 12 U.S.C. § 1818(i)(1).

[106] 919 F.3d 916 (5th Cir. 2019).

declaratory and injunctive relief to prevent the FDIC Board from issuing a final order in a section 1818 administrative enforcement proceeding. This Court held that the district court had correctly dismissed the lawsuit for lack of subject matter jurisdiction.[107]

This Court began its analysis in *Bank of Louisiana* by observing that, "[a]s a general matter, federal district courts have subject matter jurisdiction over all civil cases arising under the Constitution and federal law."[108] But as this Court further observed, "Congress may channel[ ] judicial review of a constitutional claim through a statutory scheme of administrative review followed by judicial review in a federal appellate court[,] [thereby] preclud[ing] district court jurisdiction[.]"[109] And "[i]n that event, federal district courts lack subject matter jurisdiction to hear those claims."[110]

This Court then explained that "Congress may preclude district court jurisdiction either explicitly or implicitly."[111] In order "[t]o discern an *explicit* preclusion, [this Court] examine[s] whether the text . . . expressly limit[s] the jurisdiction that other statutes confer on district courts[.]"[112] In other words, "[w]hen dealing with an express preclusion clause . . . [courts] determine the scope of preclusion *simply by*

---

[107] *Id.* at 930.

[108] *Id.* at 922.

[109] *Id.* (internal quotation marks omitted).

[110] *Id.*

[111] *Id.* at 923.

[112] *Id.* (emphasis and first three and last brackets added).

*interpreting the words Congress has chosen.*"[113] On the other hand, "[t]o discern an *implicit* preclusion, [this Court] engage[s] in a more complex analysis."[114] That analysis ultimately requires consideration of "three 'factors,' sometimes referred to as the '*Thunder Basin* factors.'"[115] Those factors are: "(1) whether precluding district court jurisdiction 'could foreclose all meaningful judicial review'; (2) whether the Bank's 'suit is wholly collateral to a statute's review provisions'; and (3) whether its claims are 'outside the agency's expertise.'"[116]

The *Bank of Louisiana* Court next noted that "[b]oth the Supreme Court and [this Court] have 'held that the plain, preclusive language of § 1818(i) 'provides . . . clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin' administrative proceedings.'"[117] This Court then applied section 1818(i) to the case before it and held that "the plain terms of section 1818(i) bar[red] jurisdiction [t]here."[118]

Having interpreted and applied the plain language of the statute, at that point this Court's explicit preclusion analysis was complete. Indeed, as the Supreme Court has instructed, when interpreting a statute the "inquiry begins with the statutory text,

---

[113] *Id.* (emphasis added).

[114] *Id.* (emphasis added).

[115] *Id.*

[116] *Id.*

[117] *Id.* at 924 (quoting *Rhoades v. Casey*, 196 F.3d 592, 597 (5th Cir. 1999) (quoting *MCorp*, 502 U.S. at 44)).

[118] *Id.*

and ends there as well if the text is unambiguous."[119] Nevertheless, because the district court in *Bank of Louisiana* had resolved the jurisdictional issue by employing an implicit preclusion analysis, this Court thought it "prudent to cycle through the *Thunder Basin* factors."[120] And after doing so, it determined that "[t]hose factors *reinforce[d]* the conclusion [it had already reached under its explicit preclusion analysis] that the [statutory] review scheme preclude[d] district court jurisdiction over the Bank's claims."[121]

That this Court elected to "cycle through the *Thunder Basin* factors" in *Bank of Louisiana* does not detract from its holding that section 1818(i) *explicitly* precludes district court jurisdiction to review and enjoin FDIC administrative enforcement proceedings. Indeed, any doubt about this was swept aside by this Court's subsequent en banc decision in *Cochran*. There, the SEC attempted to rely on *Bank of Louisiana* in a case involving a district court lawsuit challenging an SEC administrative enforcement proceeding on "structural constitutional" grounds.[122] But this Court rejected the SEC's argument and instead distinguished *Bank of Louisiana* on the ground that "the statutory review scheme at issue in that case differed in a key respect from the Exchange Act's [which governs SEC proceedings]: in *Bank of Loui-*

---

[119] *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

[120] *Bank of Louisiana*, 919 F.3d at 925.

[121] *Id.* (emphasis and brackets added).

[122] *Cochran*, 20 F.4th at 198. Specifically, the plaintiff-appellant in *Cochran* alleged that SEC ALJs "are unconstitutionally insulated from the President's Article II removal power." *Id.*

*siana*, the scheme included an *explicit* statutory bar on any court enjoining 'the issuance or enforcement of any . . . [FDIC] order.'"[123] Then—resolving any lingering doubt about what this Court had actually held in *Bank of Louisiana*—this Court sitting en banc in *Cochran* stated: "[W]e *clarify* that *Bank of Louisiana* was addressing the *explicit* statute at issue there" and that it "h[eld] that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]."[124] Thus, *Bank of Louisiana*—as clarified by *Cochran*—is directly on point and it therefore requires the same result here that this Court affirmed there: dismissal of the entire case for lack of subject matter jurisdiction.[125]

Notwithstanding these controlling decisions, the district court in this case held that it *did* have jurisdiction to enjoin the FDIC Board from issuing a final order while ruling that section 1818(i) is not an *explicit* jurisdictional bar to structural constitutional claims.[126] To clear the path for that ruling, the district court first stated that the en banc Court in *Cochran* had merely "'assumed' that, based on the *Bank of Louisiana* decision, § 1818(i) represented an explicit jurisdictional bar" to a separation-of-powers challenge.[127] And having thus dispensed with *Cochran*, the district

---

[123] *Cochran*, 20 F.4th at 204 (quoting 12 U.S.C. § 1818(i)(1)) (brackets and emphasis added).

[124] *Id.* (emphases and first two brackets added).

[125] This Court has held that section 1818(i)(1)'s "specific prohibition against affecting agency orders 'by injunction *or otherwise*' encompasses declaratory relief[.]" *Bank of Louisiana*, 919 F.3d at 924.

[126] ROA.338.

[127] ROA.337.

court concluded that whether section 1818(i) is an *explicit* jurisdictional bar to such a challenge was "a matter of first impression."[128] But this Court sitting en banc in *Cochran* did not merely "assume" anything. To the contrary, this Court unequivocally stated: "[W]e *clarify* that *Bank of Louisiana* was addressing the *explicit* statute at issue there."[129] And while it should go without saying, when a federal court of appeals sitting en banc "clarifies" one of its prior precedents the en banc clarification is controlling circuit law.[130]

The district court also stated that *Cochran's* clarification of *Bank of Louisiana* was not binding precedent because it was not "necessary to the decision."[131] But again, that is simply not correct. Rather, it is easily shown that *Bank of Louisiana* did not play the minor role in *Cochran* that the district court ascribed to it. To the contrary, the *Bank of Louisiana* decision—and, in particular, what that decision actually held—were at the very heart of *Cochran*.

At the panel stage in *Cochran* the Court held that *Bank of Louisiana* was controlling circuit law that mandated the result in *Cochran*: "Bound by *Bank of Louisiana* . . . we hold that the [Exchange Act's] statutory review scheme is the exclusive

---

[128] ROA.337.

[129] *Cochran*, 20 F.4th at 204 (emphasis added).

[130] *See United States v. Brigham*, 382 F.3d 500, 503, 509-11 (5th Cir. 2004) (en banc) ("[c]larifying prior precedents" and then deciding case based on those precedents as clarified); *see also United States v. Murphy*, 578 F.3d 719, 721 (8th Cir. 2009) (applying as controlling law an earlier en banc court decision's "clarification" of one of the circuit's prior precedents); *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1117-18 (10th Cir. 1999) (same).

[131] ROA.337.

path for asserting a constitutional challenge to SEC proceedings."[132] What is more, the panel-stage decision directly addressed whether *Bank of Louisiana* involved a separation-of-powers claim. The appellant in *Cochran* argued that *Bank of Louisiana* was distinguishable because, unlike her case, it involved only "run-of-the-mill due process claims."[133] But the panel-stage decision flatly rejected that argument: "[W]hat cannot be denied is that *Bank of Louisiana* recognized the separation-of-powers claim—a *Lucia*-based challenge[ ] to the ALJ's very authority to act—and resolved it. That is enough to bind us."[134]

In Judge Haynes' panel-stage opinion dissenting in part in *Cochran*, she disagreed with the panel majority's holding that *Bank of Louisiana* was binding authority. Judge Haynes explained: "I do not think that *Bank of Louisiana* controls because it did not address a structural claim[,] . . . [rather] the court analyzed only the due process and equal protection claims."[135]

Thus, it is beyond dispute that the issue of whether *Bank of Louisiana* resolved a separation-of-powers challenge was front and center before the en banc Court in *Cochran*. So too was the issue of whether *Bank of Louisiana* held that section 1818(i) *explicitly* stripped jurisdiction over a separation-of-powers challenge, as

---

[132] *Cochran v. SEC*, 969 F.3d 507, 510 (5th Cir. 2020), *rev'd on reh'g en banc*, 20 F.4th 194 (5th Cir. 2021); *see also id.* at 512 ("we find *Bank of Louisiana* controlling").

[133] *Id.* at 513.

[134] *Id.* at 514 (citation omitted).

[135] *Id.* at 518.

the appellant in *Cochran* briefed that precise issue and argued that section 1818(i) did *explicitly* strip such jurisdiction but that the statute governing SEC administrative enforcement proceedings did not.[136] Consequently, while sitting en banc in *Cochran* this Court necessarily had to address whether *Bank of Louisiana* resolved a separation-of-powers claim and, if it did, whether the *Bank of Louisiana* Court held that section 1818(i) *explicitly* precluded jurisdiction over that claim.

In addressing these issues, the en banc Court in *Cochran* could have distinguished *Bank of Louisiana* by adopting the position in Judge Haynes' panel-stage dissent in *Cochran* that *Bank of Louisiana* did not address a structural separation-of-powers claim. But the en banc Court did not do that. To the contrary, in the *Cochran* en banc decision—*authored by Judge Haynes*—this Court clarified that *Bank of Louisiana's* "holding" was "that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]."[137]

Alternatively, the en banc Court in *Cochran* could have distinguished *Bank of Louisiana* by adopting the position of the appellant in *Cochran* that section 1818(i) was an *explicit* jurisdictional bar to the separation-of-powers challenge at issue in *Bank of Louisiana*. And that is precisely what the en banc Court did in *Cochran*:

---

[136] *See Cochran v. SEC*, Appellant's Opening Brief on Rehearing En Banc, 2020 WL 7075176, at *34 (Nov. 30, 2020) (arguing that *Bank of Louisiana* was not controlling in *Cochran* because "the FDIC statutory scheme at issue in *Bank of Louisiana* explicitly stripped jurisdiction: '[N]o court shall have jurisdiction to affect by injunction or otherwise' the administrative proceedings. 12 U.S.C. § 1818(i)(1). The Exchange Act contains no similar jurisdictional bar.").

[137] *Cochran*, 20 F.4th at 204.

> [I]n *Bank of Louisiana*, the scheme included an explicit statutory bar on any court enjoining "the issuance or enforcement of any . . . [FDIC] order." Accordingly, we held that district court jurisdiction was *explicitly* divested (explaining that "the plain terms of section 1818(i) bar jurisdiction here"). Although we proceeded to analyze the *Thunder Basin* factors, we did so merely to "reinforce" our conclusion based on the explicit jurisdictional bar. Consequently, we clarify that *Bank of Louisiana* was addressing the explicit statute at issue there[.][138]

Thus, it is simply not true, as the district court stated,[139] that this Court sitting en banc in *Cochran* merely "'assumed' that, based on the *Bank of Louisiana* decision, § 1818(i) represented an explicit jurisdictional bar." Nor is it true, as the district court stated,[140] that resolution of the issue of whether *Bank of Louisiana* held that section 1818(i) was an *explicit* jurisdictional bar to a separation-of-powers challenge was not necessary to the en banc Court's decision in *Cochran*.

In sum, *Cochran's* clarification of *Bank of Louisiana* is controlling circuit law and, as such, it mandates a holding here that section 1818(i) is an *explicit* jurisdictional bar to all of Burgess's claims in this case.

## B.  Even putting *Cochran* aside, section 1818(i) is an *explicit* jurisdictional bar to all of Burgess's claims.

Even if *Cochran* had not already decided the issue, section 1818(i) would still be an explicit jurisdictional bar to Burgess's claims for declaratory and injunctive re-

---

[138] *Cochran*, 20 F.4th at 204 (internal citations and punctuation omitted).

[139] ROA.337.

[140] ROA.337.

lief to prevent continuance of the Enforcement Proceeding. Under controlling law, this result necessarily follows from the unambiguous language of section 1818(i).

As this Court explained in *Bank of Louisiana*, "when dealing with an express preclusion clause . . . [the Court] determine[s] the scope of preclusion simply by interpreting the words Congress has chosen."[141] Moreover, as the Supreme Court has instructed, when interpreting a statute a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous."[142]

The operative language of section 1818(i) states that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of *any* notice or order under [section 1818]." There is nothing ambiguous about this language, nor did the district court say there is. Rather, section 1818(i)'s text explicitly precludes jurisdiction to enjoin issuance or enforcement of *any* FDIC notice or order during an on-going administrative enforcement proceeding. What is more, this Court ruled in *Bank of Louisiana* that "*the plain terms of section 1818(i)* bar[red] jurisdiction [t]here."[143] And as this Court repeatedly confirmed in its *Bank of Louisiana* decision, that case involved a "separation-of-powers claim," namely, that "the ALJ was unconstitutionally appointed."[144]

---

[141] *Bank of Louisiana*, 919 F.3d at 923 (emphasis added).

[142] *BedRoc*, 541 U.S. at 183.

[143] *Bank of Louisiana*, 919 F.3d at 924.

[144] *Id.* at 921, 926; *see also id.* at 926 (discussing "the Bank's Appointments Clause challenge to ALJ authority"), 930 (discussing "the Bank's separation-of-powers challenge to the ALJ").

Notwithstanding section 1818(i)'s unambiguous Congressional mandate, the district court ruled that the statute does not *explicitly* preclude jurisdiction over so-called "structural" constitutional claims. The court gave three reasons in support of that ruling. None of them is valid.

*First*, the district court stated that "[t]he fact that [section 1818(i)] does not directly reference other jurisdictional statutes weighs against it being an explicit bar."[145] However, the authority the court cited for this proposition—the Supreme Court's decision in *Shalala v. Illinois Council on Long Term Care, Inc.*[146]—does not support it. The district court pointed to the fact that the statute creating the explicit jurisdictional bar in *Shalala* provided that "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."[147] But while the Supreme Court quoted this statutory language in *Shalala*, it did not say that a direct reference to other jurisdictional statutes is necessary in order for a jurisdictional bar to be explicit. Nor did it say that the absence of such a direct reference weighs against a jurisdictional bar being explicit. Moreover, nowhere in the *Shalala* decision did the Court say that the reference in the statutory language to other jurisdictional statutes had anything to do with the types of claims that were jurisdictionally barred.

---

[145] ROA.337.

[146] 529 U.S. 1 (2000).

[147] ROA.337 (quoting *Shalala*, 529 U.S. at 10) (quoting 42 U.S.C. § 405(h)).

Critically, however, the Supreme Court *did* address the phrase within the statutory language quoted above "*to recover on **any** claim arising under this subchapter*."[148] Interpreting *this* statutory language, the Court ruled that "[t]he statute plainly bars [judicial] review . . . irrespective of whether the individual challenges the agency's [action] on evidentiary, rule-related, statutory, *constitutional*, or other legal grounds."[149] Section 1818(i) similarly provides that "[n]o court shall have jurisdiction to affect by injunction or otherwise *the issuance or enforcement of **any** notice or order under [section 1818]*." (Emphasis added). Applying *Shalala*, this italicized phrase "plainly bars" a district court from enjoining issuance of any FDIC notice or order "irrespective of whether the individual challenges the agency's [action] on evidentiary, rule-related, statutory, *constitutional*, or other legal grounds."[150] Thus, not only does *Shalala* fail to support the district court's ruling here that section 1818(i) is *not* an explicit jurisdictional bar to Burgess's claims, but it instead strongly supports a contrary ruling that section 1818(i) *is* such an explicit jurisdictional bar.

*Second*, the district court pointed to the Supreme Court's statement in *Webster v. Doe* "that where Congress intends to preclude judicial review of constitutional claims, its intent to do so must be clear."[151] But as just discussed in the previous

---

[148] *Shalala*, 529 U.S. at 10 (emphasis by Supreme Court, bold emphasis added).

[149] *Id.* (emphasis added).

[150] *Id.*

[151] ROA.338 (quoting 486 U.S. 592, 603 (1988)).

paragraph, the Supreme Court subsequently ruled in *Shalala* that language substantially similar to that in section 1818(i) "plainly bar[red]" jurisdiction over "constitutional" claims even though it did not specifically mention "constitutional" claims. Nor does *Webster* provide any support for an argument that a different rule applies to so-called "*structural* constitutional claims." Indeed, *Webster* did not involve, nor did it even mention, "structural" constitutional claims.[152]

*Third*, the district court stated that "Congress has shown that when it wants to strip district courts of jurisdiction over *structural* constitutional claims, it will explicitly do so."[153] As support for this proposition, the court relied solely on the following language from the Immigration and Nationality Act: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order under this section."[154] But this statutory language does not even mention "structural" constitutional claims. Consequently, it provides no support for the district court's ruling.

Finally on this point, we note that the Eastern District of Missouri recently rejected a copycat action in which the plaintiff parroted the allegations of Burgess's Complaint and relied on the district court's decision in this case while seeking to

---

[152] *See Webster*, 486 U.S. at 601-02 (describing claims at issue there as due process, equal protection, and privacy claims).

[153] ROA.338 (emphasis added).

[154] ROA.338 (quoting 18 U.S.C. § 1252(b)(9)) (ellipsis by district court).

enjoin an FDIC enforcement proceeding.[155] The court held that "[section] 1818(i)(1) explicitly divest[ed] th[e] [c]ourt of jurisdiction to grant the injunctive and declaratory relief sought."[156]

In sum, just as in *Bank of Louisiana* "the plain terms of section 1818(i) bar jurisdiction here."[157] What is more, none of the district court's reasons for concluding otherwise is valid. Consequently, section 1818(i) is an explicit jurisdictional bar to Burgess's entire lawsuit.

### C. An *implicit* preclusion analysis reinforces the conclusion that district court jurisdiction is precluded here.

In *Bank of Louisiana*, this Court also analyzed the preclusion-of-jurisdiction issue by undertaking an implicit preclusion analysis. And after completing that analysis, this Court held that it "reinforce[d] the conclusion that the [section 1818] review scheme preclude[ed] district court jurisdiction over the Bank's claims."[158] Because *Bank of Louisiana* is controlling circuit law, this Court's holding that the implicit preclusion analysis "reinforces" the conclusion that section 1818(i) precludes jurisdiction over a structural separation-of-powers claim is again binding authority here.

The district court acknowledged that it was "bound to follow" this Court's implicit preclusion analysis in *Bank of Louisiana* and, in particular, this Court's analysis

---

[155] *See Bonan v. FDIC*, 2023 WL 156852, at *1, *4 (E.D. Mo. Jan. 11, 2023).

[156] *Id.* at *4.

[157] *Bank of Louisiana*, 919 F.3d at 924.

[158] *Id.* at 925.

of the *Thunder Basin* factors.[139] Specifically, the district court acknowledged that it was "bound to follow" this Court's ruling that the third *Thunder Basin* factor—agency expertise—"weigh[ed] in favor of preclusion."[160] But the district court also concluded that, as to the other two *Thunder Basin* factors, "[this] [C]ourt's implicit preclusion analysis [in *Bank of Louisiana*] focused entirely on the non-structural Equal Protection and Due Process claims[.]"[161] The district court therefore determined that it had to analyze the other two *Thunder Basin* factors itself.[162] And after doing so, the court concluded that the first two factors—availability of meaningful judicial review if jurisdiction is precluded and whether Burgess's claims are wholly collateral to the Enforcement Proceeding—weighed against implicit preclusion of jurisdiction.[163] The district court then ruled that "two out of the three factors weigh against implicit preclusion so that the [c]ourt concludes that it is not implicitly precluded from hearing [Burgess's] structural constitutional claims and issuing a preliminary injunction if appropriate."[164]

The district court's implicit preclusion analysis is fatally flawed because the court misread *Bank of Louisiana*. Specifically, the district court erred in concluding

---

[139] ROA.343.

[160] ROA.343.

[161] ROA.339.

[162] ROA.339-40.

[163] ROA.340-343.

[164] ROA.343.

that this Court in *Bank of Louisiana* did not consider the structural separation-of-powers claim while analyzing the first *Thunder Basin* factor—availability of meaningful judicial review. As this Court's *Bank of Louisiana* decision plainly states, while considering that factor this Court first noted that the statutory scheme "authorizes review of final Board orders in a federal circuit court" and concluded that "[b]ased on that alone, the scheme would provide meaningful judicial review of the Bank's claims that the enforcement proceedings were *tainted by constitutional violations.*"[165] Moreover, the *Bank of Louisiana* decision further states that "[t]he Bank in fact raised *its constitutional claims* during the enforcement proceedings, and both the ALJ and the Board addressed them."[166]

Critically, this Court in *Bank of Louisiana* left no room for doubt that the "constitutional claims" it had focused on while analyzing the first *Thunder Basin* factor included the structural separation-of-powers claim at issue in that case. Indeed, while analyzing that first factor this Court expressly relied on the fact that "the ALJ wrote a 'lengthy, detailed, and well-reasoned opinion' that 'fully addressed' the Bank's age discrimination, due process, *and separation-of-powers claims.*"[167] This Court also expressly relied on the fact that the Board had "review[ed] and agree[d] with [the] ALJ's rejection of *the Bank's Appointments Clause challenge to ALJ au-*

---

[165] *Bank of Louisiana*, 919 F.3d at 926 (emphasis added).

[166] *Id.* (emphasis added).

[167] *Id.* (emphasis added).

thority."[168] And this Court also relied on the fact that "the Bank then sought [this Court's] review of the Board's order—and actually obtained relief when [this Court] granted the FDIC's motion to remand the case in light of the Supreme Court's *Lucia* decision."[169] The *Bank of Louisiana* Court then summed up its analysis of the first *Thunder Basin* factor with the following unequivocal statement: "If this is not 'meaningful judicial review' of *the Bank's constitutional claims*, we do not know what would qualify."[170]

Thus, it is beyond dispute that this Court in *Bank of Louisiana* directly addressed a separation-of-powers claim while applying at least two of the three *Thunder Basin* factors and that it concluded both factors favored implicit preclusion of jurisdiction as to *that* claim. Consequently, *Bank of Louisiana* mandates a ruling here that an implicit preclusion analysis reinforces the conclusion that section 1818(i) divested the district court of jurisdiction over Burgess's structural separation-of-powers claims.[171]

---

[168] *Id.* (emphasis added).

[169] *Id.*

[170] *Id.* (emphasis added).

[171] The district court concluded that the second *Thunder Basin* factor—whether Burgess's claims are "wholly collateral" to the Enforcement Proceeding—does not favor implicit preclusion because "[t]he outcome of his constitutional challenges will have no bearing on his ultimate liability for his alleged statutory violations." ROA.342. But as to the only claim on which the court granted a preliminary injunction—the jury-trial claim—the court was clearly wrong. Because the FDIC is not authorized to bring enforcement actions in a court of law, a decision holding Burgess is entitled to a jury trial would directly bear on his ultimate liability. Thus—while two of the three *Thunder Basin* factors would be sufficient—for purposes of this appeal from the PI Order all three of the *Thunder Basin* factors favor implicit preclusion of jurisdiction.

In sum, *Bank of Louisiana* as clarified by *Cochran* held that section 1818(i) is an *explicit* jurisdictional bar to a separation-of-powers claim in an FDIC enforcement proceeding. Interpreting section 1818(i) as a matter of first impression yields the same conclusion. And *Bank of Louisiana* also held that this conclusion is reinforced by an implicit preclusion analysis. Any way you slice it, district court jurisdiction is precluded here.

## III. The Preliminary Injunction Also Should Be Vacated Because Burgess Did Not Show That He Is Likely To Prevail On The Merits Of His Jury-Trial Claim Or That He Will Be Irreparably Harmed Absent An Injunction.

"To be entitled to a preliminary injunction, the applicant must show (1) a substantial likelihood that [he] will prevail on the merits, (2) a substantial threat that [he] will suffer irreparable injury if the injunction is not granted, (3) [his] substantial injury outweighs the threatened harm to the part[ies] whom [he] seek[s] to enjoin, and (4) granting the preliminary injunction will not disserve the public interest."[172] Moreover, "[this Court] ha[s] cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion *on all four requirements*.'"[173]

As we demonstrate below, Burgess was not entitled to preliminary injunctive relief in this case because the district court erred in ruling that he had satisfied either of the first two requirements for such relief.

---

[172] *Texas Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012).

[173] *Id.* (emphasis added).

**A. The district court erred in ruling that Burgess is likely to prevail on the merits because controlling precedent holds there is no right to a jury trial of section 1818 administrative enforcement claims.**

An "absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law."[174] The district court thus erred here as a matter of law because—under controlling precedent—Burgess has no right to a jury trial of administrative enforcement claims authorized by 12 U.S.C. § 1818.

**1. The Supreme Court's decision in *Granfinanciera* compels the conclusion that Burgess has no right to a jury trial here because section 1818 enforcement actions involve only public rights.**

In *Granfinanciera, S.A. v. Nordberg*,[175] the Supreme Court considered whether there was a Seventh Amendment right to a jury trial of certain bankruptcy claims whose adjudication Congress had assigned to a non-jury tribunal. Under the Court's analysis, Burgess's Seventh Amendment claim fails."[176]

The Supreme Court began its analysis in *Granfinanciera* by noting that it has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were adminis-

---

[174] *Id.*

[175] 492 U.S. 33 (1989).

[176] As the Court observed, the operative language of the Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." *Id.* at 40-41 (quoting U.S. Const. amend. VII).

tered.'"[177] The Court further noted that the Seventh Amendment applies not only to causes of action that existed when it was adopted in 1791, but also "to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty."[178]

The Supreme Court then described the analysis that would govern its resolution of the jury-trial issue in that case. "First, [the Court] compare[s] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [the Court] examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature."[179] The Court instructed that "[t]he second stage of this analysis is more important than the first."[180] Finally, "[i]f, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, [the Court] must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder."[181]

As the Supreme Court explained, this last stage of the right-to-a-jury-trial analysis presents a classic separation-of-powers question: "the question whether the Sev-

---

[177] *Id.* at 41.

[178] *Id.* at 42.

[179] *Id.*

[180] *Id.*

[181] *Id.*

enth Amendment permits Congress to assign [a legal claim's] adjudication to a [non-jury tribunal] requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal."[182] Thus, the Court explained, "if Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a non-jury factfinder."[183]

The district court in this case collapsed the first two steps of the Supreme Court's analysis into one and concluded that "the FDIC's claims against [Burgess] arise at common law as the FDIC is seeking civil penalties against [Burgess], along with separate equitable remedies."[184] While we disagree with the conclusion that the FDIC's claims arise at common law, we agree that the FDIC is seeking a civil money penalty and that this remedy is a legal remedy. Consequently, under the legal analysis prescribed by *Granfinanciera*, whether Burgess is entitled to a jury trial of the FDIC's claim for a civil money penalty turns on whether "Congress may and has permissibly withdrawn jurisdiction over that action by courts of law and assigned it *exclusively* to non-Article III tribunals sitting without juries[.]"[185] There can be no dispute here with respect to the second part of this inquiry as Congress has indisputably

---

[182] *Id.* at 53.

[183] *Id.* at 53-54; *accord Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, --- U.S. ---, --- 138 S.Ct. 1365, 1379 (2018).

[184] ROA.347-48.

[185] *Granfinanciera*, 492 U.S. at 49 (emphasis added).

assigned adjudication of the section 1818 civil money penalty claim at issue here exclusively to the FDIC.[186] As for the first part of the inquiry, *Granfinanciera* reaffirmed that "Congress may only deny trials in actions at law . . . in cases where 'public rights' are litigated."[187] Thus, the pivotal issue here boils down to whether section 1818 enforcement claims involve solely public rights.

The Supreme Court in *Granfinanciera* identified two distinct circumstances that satisfy the "public rights" requirement. First, it reaffirmed that the requirement is satisfied where a "statutory cause of action inheres in, or lies against, the Federal Government in its sovereign capacity."[188] *Granfinanciera* did not involve such a statutory cause of action, so this circumstance was not relevant there. But in this case, the section 1818 enforcement claims at issue are without question statutory causes of action that inhere in the Federal Government in its sovereign capacity. Thus, Congress did permissibly assign adjudication of the FDIC's enforcement claims against Burgess to a non-Article III tribunal as such claims involve solely public rights.

The claims against the petitioners in *Granfinanciera* did not inhere in or lie against the Federal Government in its sovereign capacity. Accordingly, the Supreme Court next considered whether "the class of 'public rights' whose adjudication Congress may assign to administrative agencies or courts of equity sitting without juries is

---

[186] *See* 12 U.S.C. § 1818(i)(2).

[187] *Granfinanciera*, 492 U.S. at 51.

[188] *Id.* at 53.

more expansive[.]"[189] The Court concluded that it is, explaining that "in *some* cases involving . . . disputes to which the Federal Government is not a party in its sovereign capacity . . . Congress [may] dispense with juries as factfinders through its choice of an adjudicative forum."[190] The Court then held that where the Federal Government in its sovereign capacity is *not* involved, "Congress may decline to provide jury trials [in cases] involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency or specialized court of equity."[191]

It cannot be disputed that section 1818 enforcement claims like those at issue here are integral parts of a public regulatory scheme. Nor can it be disputed that Congress has assigned adjudication of those claims to the FDIC. Thus, even if the additional requirements applicable to situations where the Federal Government in its sovereign capacity is *not* a party were somehow deemed applicable here, the Enforcement Proceeding would still involve solely public rights.

Summing up its separation-of-powers analysis in *Granfinanciera*, the Supreme Court described the situation where Congress may *not* assign adjudication of statutory claims to a non-Article III tribunal: "If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, *and* if that right

---

[189] *Id.*

[190] *Id.* at 55 n.10.

[191] *Id.*

neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court."[192] Neither of those circumstances is present here.

Thus, *Granfinanciera* compels the conclusion that Congress permissibly assigned adjudication of section 1818 enforcement claims to FDIC administrative tribunals without transgressing Article III. Moreover, because the Seventh Amendment requires nothing more, *supra* at pp. 40-41, *Granfinanciera* also compels the conclusion that a respondent in a section 1818 administrative enforcement proceeding has no right to a jury trial. And that is precisely what this Court held in *Akin v. Office of Thrift Supervision*.[193]

> **2.  This Court's decision in *Akin* is controlling precedent holding that section 1818 enforcement actions involve only public rights as to which there is no right to a jury trial.**

In *Akin*, the Office of Thrift Supervision (OTS) initiated formal cease and desist proceedings under 12 U.S.C. § 1818(b)(1) against Akin, the sole shareholder and former officer of a bank that had failed. OTS sought to enforce an agreement Akin had entered with OTS's predecessor agency requiring that he pay more than $19 million to the failed bank's receivership. On direct appeal to this Court from OTS's final order requiring Akin to make that payment, he characterized the enforcement proceeding as "a contract collection action" on behalf of the failed bank

---

[192] *Id.* at 54-55 (emphasis added).
[193] 950 F.2d 1180 (5th Cir. 1992).

and argued that he had therefore been improperly denied his right to a jury trial.[194] This Court rejected that argument for two reasons.

*First*, this Court relied on the Supreme Court's decision in *Granfinanciera* and held that "Akin's claimed right to a jury trial must also fail" because "where there is a proper administrative forum for adjudicating public rights, there is no right to a jury trial."[195] *Second*, this Court rejected Akin's characterization of the administrative enforcement proceeding as a "collection action on a breach of contract" and held Akin also had no right to a jury trial for that alternative reason.[196]

"Because alternative holdings in this circuit are binding precedent and not obiter dictum, [this Court is] bound to follow them."[197] Thus, *Akin's* holding that the public-rights doctrine defeated a claimed right to a jury trial of section 1818 enforcement claims that sought a legal remedy requires rejection of Burgess's claimed right to a jury trial here. Notably, in *Cavallari v. Office of the Comptroller of the Currency*, the Second Circuit relied on the *Akin* decision to support its holding that there was no right to a jury trial of a section 1818(i) enforcement claim that sought a civil money penalty because that claim "clearly implicate[d] public rights."[198]

---

[194] *Id.* at 1182, 1183, 1186.

[195] *Id.* at 1186 (citing *Granfinanciera*, 492 U.S. at 42, 54-55).

[196] *Id.*

[197] *United States v. Wallace*, 964 F.3d 386, 390 (5th Cir. 2020) (internal citation and quotation marks omitted).

[198] 57 F.3d 137, 145 (2d Cir. 1995) (citing *Akin*, 950 F.2d at 1186).

### 3. This Court's decision in *Jarkesy v. SEC* is inapposite.

The Nov. 6 Order granting Burgess's motion for a preliminary injunction mentioned neither this Court's decision in *Akin* nor the Supreme Court's decision in *Granfinanciera*.[199] Instead, the district court relied solely on this Court's more recent decision in *Jarkesy v. SEC*[200] to support its ruling that Burgess was likely to prevail on the merits of his jury-trial claim.[201] But *Jarkesy* is not controlling law here for two reasons.

*First*, it is "well-settled . . . that one panel of [this] [C]ourt may not overturn another panel's decision, absent an intervening change in the law, such as by statutory amendment, or the Supreme Court, or [this Circuit's] *en banc* court."[202] Neither the district court nor Burgess has suggested that there has been any such intervening change in the law, and we are not aware of any such change. Thus, *Jarkesy* could not overrule *Akin*. Consequently, *Akin*—and not *Jarkesy*—is controlling circuit law on whether there is a right to a jury trial of section 1818 enforcement claims.

*Second*, *Jarkesy* is in any event materially distinguishable from this case. In *Jarkesy*, this Court addressed whether the petitioners had a right to a jury trial of securities fraud claims the SEC brought against them in an administrative proceeding

---

[199] As noted earlier in this brief, *supra* at p. 15 n.78, FDIC Appellants argued to the district court before the court issued the Nov. 6 Order and the PI Order that *Akin*—which relied on *Granfinanciera*—required rejection of Burgess's right-to-a-jury-trial claim.

[200] 34 F.4th 446 (5th Cir. 2022).

[201] ROA.347, 347-49.

[202] *Jacobs v. National Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

under section 929P(a) of the Dodd Frank Act.[203] Unlike section 1818—which assigns the adjudication of *all* claims authorized by that statute *exclusively* to an administrative tribunal of the appropriate financial regulatory agency—the statute at issue in *Jarkesy* provides the SEC with the option to bring enforcement actions either in-house or in Article III courts.[204] This aspect of the statutory scheme for SEC enforcement actions was the linchpin of the *Jarkesy* Court's holding that the claims there did not involve public rights whose adjudication Congress had permissibly assigned to a non-Article III tribunal. Indeed, in its just-over-one-page analysis concluding that the public-rights doctrine did not apply in that case, the *Jarkesy* Court referred to this aspect of the SEC statutory scheme three times.[205]

The *Jarkesy* Court's focus on the SEC's option to elect whether to adjudicate enforcement claims before a non-jury tribunal or before an Article III court dovetails with the analysis set forth in the *Granfinanciera* decision. Indeed, the Supreme Court held there that "[u]nless Congress may and has permissibly withdrawn jurisdiction over [an] action by courts of law and assigned it *exclusively* to non-Article III tribunals sitting without juries, the Seventh Amendment guarantees petitioners a jury

---

[203] 15 U.S.C. § 78u-2(a).

[204] *See Jarkesy*, 34 F.4th at 455.

[205] *See id.* at 455 ("[T]he statutory scheme itself allows the SEC to bring enforcement actions either in-house or in Article III courts, where the jury trial right would apply."); *id.* at 456 ("Congress could have purported to assign such proceedings *solely* to administrative tribunals, but it did not."); *id.* ("Again, Congress has not limited the SEC's ability to bring enforcement actions in Article III courts.").

trial upon request."[206]   But as noted above, the statutory scheme that governs adjudication of FDIC enforcement claims is materially different: Congress *did* assign adjudication of *all* section 1818 claims *exclusively* to FDIC administrative tribunals.[207] What is more, unlike in *Jarkesy* where "the SEC ha[d] in fact brought many [enforcement] actions to jury trial over the years,"[208] neither the district court nor Burgess cited to even one case where an FDIC enforcement action was brought in a court of law. Nor could they have, as it has never happened.

Nevertheless, the district court tried to shoehorn this case into *Jarkesy* by stating that "several of the FDIC's enabling statutes allow it to bring cases before a jury in federal and state court against bank officials accused of various forms of misconduct."[209] As support for that statement, the court cited only one statute: 12 U.S.C. § 1821(k). But by its plain terms, section 1821(k) authorizes the FDIC to bring only certain claims in federal or state court and only while acting in its distinct capacity as receiver or conservator of a failed bank. Those claims, moreover, are run-of-the-mill civil claims that could have been brought pre-failure by a bank itself to recover for harm done to the bank—not enforcement claims Congress has authorized only the FDIC to bring to protect the public and deter wrongdoing by bank officers and

---

[206] *Granfinanciera*, 492 U.S. at 49.

[207] *See* 12 U.S.C. §§ 1818(e), (i)(2).

[208] *Jarkesy*, 34 F.4th at 456.

[209] ROA.348.

employees.[210] In any event, it is beyond cavil that section 1821(k) does not assign adjudication of FDIC enforcement claims to federal or state courts. Because Congress has instead assigned adjudication of FDIC enforcement claims "exclusively to non-Article III tribunals sitting without juries,"[211] Burgess has no right to a jury trial here.

In sum, the Supreme Court's decision in *Granfinanciera* compels the conclusion that section 1818 enforcement claims involve public rights and, therefore, there is no right to a jury trial of such claims. What is more, this Court's controlling decision in *Akin* held precisely that. In addition, this Court's decision in *Jarkesy*—relied on by the district court—is not controlling law here. Thus, the district court erred in ruling Burgess is likely to prevail on the merits of his jury-trial claim. For this additional and alternative reason the Nov. 6 Order and the PI Order should be vacated.

## B. The district court erred in ruling that the irreparable harm requirement was "automatically satisfied."

The Supreme Court has repeatedly stated that "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."[212] Put another way, "[a] showing of irreparable harm is the *sine qua non* of in-

---

[210] *See Cavallari*, 57 F.3d at 145 ("The OCC charges clearly implicate public rights, as distinct from any legal claims against [an institution-affiliated party] that the FDIC as [a failed bank's] receiver might bring.") (brackets added).

[211] *Granfinanciera*, 492 U.S. at 49.

[212] *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)).

junctive relief."[213] Yet here the district court acknowledged that it did not even consider whether Burgess had made a sufficient showing of irreparable harm.[214] Rather, the court simply ruled that "[s]ince [it] ha[d] determined that [Burgess] was entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement [wa]s automatically satisfied[.]"[215]

Explaining its decision to give Burgess a free pass on the critical irreparable injury requirement, the district court stated: "Th[e] concept that a violation of a constitutional right in and of itself constitutes irreparable injury has been universally recognized and is not open to debate."[216] As a review of the case law addressing this issue demonstrates, however, this concept is far from universally recognized and it is most certainly open to debate. Indeed, this concept has been squarely rejected by a number of other circuit courts and by a number of other district courts within this Circuit.

In support of its ruling that irreparable harm was "automatically satisfied," the district court relied on the Supreme Court's decision in *Elrod v. Burns*,[217] which stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time,

---

[213] *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotation marks omitted)..

[214] ROA.350.

[215] ROA.350.

[216] ROA.349.

[217] ROA.349.

unquestionably constitutes irreparable injury."[218] But *Elrod* said nothing about constitutional claims not involving First Amendment rights, and this case does not involve such rights. Courts that have considered this distinction have found it dispositive.

In *Siegel v. Lepore*,[219] the plaintiff Republican candidates for President and Vice President, along with several Florida voters, brought a lawsuit to stop recounts of ballots cast in the November 2000 election. The plaintiffs alleged the recounts violated the Constitution's due process and equal protection guarantees. On appeal from the denial of a request for preliminary injunctive relief, the Eleventh Circuit affirmed. As relevant here, the court rejected the plaintiffs' "conten[tion] that a violation of constitutional rights always constitutes irreparable harm."[220] The court explained: "The only areas of constitutional jurisprudence where we have said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether."[221]

Similarly, in *Hohe v. Casey* the Third Circuit affirmed the denial of a preliminary injunction sought to prevent a union from collecting specified fees from non-

---

[218] 427 U.S. 347, 373 (1976).

[219] 234 F.3d 1163 (11th Cir. 2000) (en banc).

[220] *Id.* at 1177.

[221] *Id.* at 1178. *See also City of Jacksonville*, 896 F.2d at 1285 (irreparable injury cannot be presumed from a substantially likely equal protection violation); *Cunningham v. Adams*, 808 F.2d 815, 821-22 (11th Cir. 1987) (same in action alleging Fourteenth Amendment violations).

member workers.[222] Even though the plaintiffs had alleged violations of their First and Fourteenth Amendment rights, the court ruled that the irreparable harm requirement was not satisfied. The court explained: "Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction."[223] In *Public Serv. Co. of N.H. v. Town of West Newbury*, the First Circuit affirmed the denial of a preliminary injunction where the plaintiff alleged a violation of its procedural due process rights.[224] The court specifically rejected the plaintiff's contention that "it made a sufficient showing of irreparable harm by alleging a deprivation of [a]constitutional right," explaining that instances where parties have been permitted to establish irreparable harm in that way "are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy or other [similar] rights[.]"[225] And in *Wheeler v. Wexford Health Sources, Inc.*,[226] a case involving an alleged deprivation of Eighth Amendment rights, the Seventh Circuit held irreparable injury could not be automatically assumed because "equitable relief depends on irreparable harm, even when constitutional rights are at stake."[227]

---

[222] 868 F.2d 69 (3d Cir. 1989).

[223] *Id.* at 73.

[224] 835 F.2d 380 (1st Cir. 1987).

[225] *Id.* at 382.

[226] 689 F.3d 680 (7th Cir. 2012).

[227] *Id.* at 682. *Contra Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (affirming preliminary injunction and holding irreparable harm requirement satisfied for Eighth Amendment claim based on "the presumption of irreparable injury that flows from a violation of constitutional rights").

Although this Court has not squarely addressed this issue, district courts within this Circuit other than the court below have, and a number of them have rejected the concept that all likely constitutional violations automatically establish irreparable harm. For example, in *Chambless Enterprises, LLC v. Redfield,*[228] a case involving a separation-of-powers challenge to a federal agency order, the Western District of Louisiana denied a motion for preliminary injunction because the plaintiffs failed to satisfy the irreparable harm requirement. The court specifically rejected the plaintiffs' argument "that irreparable harm is automatically presumed where constitutional claims are alleged."[229] As the court explained, "[t]hat the nature of certain constitutional violations, such as violations of the freedoms of speech and privacy, is such that they necessarily cause irreparable harm does not . . . establish that any alleged constitutional violation does so."[230] The court then held that "[m]erely asserting a constitutional claim is insufficient to trigger a finding of irreparable harm, particularly where the alleged injury involves neither free speech nor invasion of privacy."[231] And

---

[228] 508 F. Supp. 3d 101 (W.D. La. 2020).

[229] *Id.* at 120.

[230] *Id.*

[231] *Id.* (internal quotation marks omitted). *See also Sweis v. U.S. Foreign Claims Settlement Comm'n,* 950 F. Supp. 2d 44, 48 (D.D.C. 2013) (rejecting argument that a "separation-of-powers claim independently justifies an injunction, because the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for the reason that the D.C. Circuit "has indicated that merely raising a constitutional claim is insufficient to warrant a presumption of irreparable injury") (internal quotation marks omitted).

in *Lambert v. Board of Comm'rs of Orleans Levee Dist.*,[232] the Eastern District of Louisiana rejected the argument that "the alleged violation of a constitutional right always establishes irreparable harm" in a case involving alleged violations of due process rights.[233] Just as in *Chambless Enterprises*, the court explained that, while that concept may appropriately be applied in cases involving "violations of the freedoms of speech and privacy," it does not apply to constitutional violations outside of those contexts.[234]

Based on the authorities discussed above, we submit that the better view of the law is that a showing of a likely violation of a constitutional right—other than privacy rights and certain First Amendment rights—does not automatically establish irreparable harm and that this Court should join those courts that have so held. For this additional and alternative reason, the Nov. 6 Order and the PI Order should be vacated.

## CONCLUSION

This Court should vacate the district court's Nov. 6 Order and PI Order and remand this case with instructions to dismiss for lack of subject matter jurisdiction. Alternatively, and at a bare minimum, this Court should vacate the Nov. 6 Order and the PI Order.

---

[232] 2006 WL 8456316 (E.D. La. Mar. 22, 2006).

[233] *Id.* at *7.

[234] *Id.*

Dated: January 30, 2023

Respectfully submitted,

B. Amon James
Assistant General Counsel
J. Scott Watson
Senior Counsel
<u>s/Joseph Brooks</u>
Joseph Brooks
Counsel
**FEDERAL DEPOSIT INSURANCE
  CORPORATION**
3501 Fairfax Drive, Room D-7010
Arlington, VA 22226
Tel: (703) 562-2054
Fax: (703) 562-2496

*Counsel for Appellants/Cross-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opening Brief of Appellants/Cross-Appellees has been filed by electronic case filing and served on counsel of record through the Court's Notice of Docket Activity on this 30th day of January, 2023.

s/ Joseph Brooks
Joseph Brooks

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)

Undersigned counsel certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 12,786 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Undersigned counsel further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a pro-portionally spaced 14-point (12-point for footnotes) Baskerville Old Face typeface using Microsoft Word 2016.

s/Joseph Brooks
Joseph Brooks
*Counsel for Appellants/Cross-Appellees*

Dated: January 30, 2023