No. 22-11172

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**CORNELIUS CAMPBELL BURGESS**,

*Appellee/Cross-Appellant*,

*v.*

**JENNIFER WHANG**, in her official capacity as an Administrative Law Judge;
**FEDERAL DEPOSIT INSURANCE CORPORATION**;
**MARTIN J. GRUENBERG**, in his official capacity as Acting Chairman of the
FDIC; **MICHAEL J. HSU**, in his official capacity as a Director of the FDIC;
**ROHIT CHOPRA**, in his official capacity as a Director of the FDIC,

*Appellants/Cross-Appellees*.

---

On Appeal from the United States District Court for the Northern District of Texas
No. 7:22-cv-100 — The Honorable Reed O'Connor, U.S. District Judge, Presiding

---

## PRINCIPAL AND RESPONSE BRIEF OF APPELLEE/
## CROSS-APPELLANT CORNELIUS CAMPBELL BURGESS

---

(Counsel listed inside cover.)

Michael A. Heidler
VINSON & ELKINS LLP
200 West 6th Street
Suite 2500
Austin, Texas 78701
Phone: (512) 542-8400
Facsimile: (512) 542-8612
Email: mheidler@velaw.com

James T. Dawson
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: (202) 639-6588
Facsimile: (202) 639-6500
Email: jamesdawson@velaw.com

Manuel G. Berrelez
   *Attorney of Record*
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 77002
Phone: (214) 220-7700
Facsimile: (214) 220-7716
Email: mberrelez@velaw.com

*Counsel for Appellee/Cross-Appellant Cornelius Campbell Burgess*

## CERTIFICATE OF INTERESTED PERSONS OF APPELLEE/ CROSS-APPELLANT CORNELIUS CAMPBELL BURGESS

*Cornelius Campbell Burgess v. Jennifer Whang*, et al. (No. 22-11172)

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    **Cornelius Campbell Burgess**, Appellee/Cross-Appellant, represented by:

> **Manuel G. Berrelez**
> **Michael A. Heidler**
> **James T. Dawson**
> **Thomas P. Mitsch**
> **James F. Hopper**
> **Madelyn C. Stanley**
> **VINSON & ELKINS LLP**

2.    **Herring Bank**, a regional bank headquartered in Amarillo on whose board of directors Cornelius Campbell Burgess now serves as Vice Chair;

3.    **Herring Bancorp, Inc.,** the parent company of Herring Bank, on whose board of directors Cornelius Campbell Burgess now serves as Vice Chair;

4.    **Jennifer Whang**, Appellant/Cross-Appellee, in her official capacity as an administrative law judge, represented by:

ii

**Joseph Brooks**
**Arthur E. Anthony**
**Andrew A. Nicely**
**FEDERAL DEPOSIT INSURANCE CORPORATION**

5.    **Federal Deposit Insurance Corporation** ("FDIC"), Appellant/Cross-

Appellee, an independent agency of the United States, represented by:

**Joseph Brooks**
**Arthur E. Anthony**
**Andrew A. Nicely**
**FEDERAL DEPOSIT INSURANCE CORPORATION**

6.    **Martin J. Gruenberg**, Appellant/Cross-Appellee, in his official

capacity as Acting Chairman of the FDIC, represented by:

**Joseph Brooks**
**Arthur E. Anthony**
**Andrew A. Nicely**
**FEDERAL DEPOSIT INSURANCE CORPORATION**

7.    **Michael J. Hsu**, Appellant/Cross-Appellee, in his official capacity as

a director of the FDIC, represented by:

**Joseph Brooks**
**Arthur E. Anthony**
**Andrew A. Nicely**
**FEDERAL DEPOSIT INSURANCE CORPORATION**

8.    **Rohit Chopra**, Appellant/Cross-Appellee, in his official capacity as a

director of the FDIC, represented by:

**Joseph Brooks**
**Arthur E. Anthony**
**Andrew A. Nicely**
**FEDERAL DEPOSIT INSURANCE CORPORATION**

Dated:  March 31, 2023

/s/ Manuel G. Berrelez

Manuel G. Berrelez
  *Attorney of Record*
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 77002
Phone: (214) 220-7700
Facsimile: (214) 220-7716
Email: mberrelez@velaw.com

*Counsel for Appellee/Cross-Appellant*
*Cornelius Campbell Burgess*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee/Cross-Appellant Cornelius Campbell Burgess agrees with the Appellants/Cross-Appellees that oral argument is appropriate because it would be likely to aid this Court in its decision-making process.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ...................................................... ii

Statement Regarding Oral Argument ................................................. v

Table of Contents ........................................................................ vi

Table of Authorities .................................................................... ix

Glossary .................................................................................. xvi

Introduction ............................................................................... 1

Jurisdictional Statement ................................................................ 5

Statement of Issues Presented for Review .......................................... 6

Statement of the Case................................................................... 6

    A.    The Federal Deposit Insurance Corporation. ......................... 6

        1.    The Powers of the FDIC. ........................................... 6

        2.    The Structure of the FDIC. ......................................... 7

        3.    The FDIC's Use of Administrative Law Judges.................. 8

        4.    The FDIC's Process for Conducting Adjudications. ............ 10

    B.    The FDIC's Enforcement Proceeding Against Burgess. .............. 10

    C.    Procedural Posture.................................................... 12

        1.    Burgess's Complaint and Preliminary Injunction Motion........ 12

        2.    The District Court Grants a Partial Preliminary Injunction. .......................................................... 13

Summary of Argument ................................................................ 15

Argument ............................................................................... 16

I.    Standard of Review. ............................................................ 16

II.    [Principal Appeal]  The District Court Had Subject-Matter Jurisdiction. .... 17

    A.    Section 1818(i) Does Not Explicitly Strip Jurisdiction. .................. 17

        1.    The Jurisdiction-Stripping Language in Section 1818(i) Does Not Apply to Structural Constitutional Claims. .............. 17

        2.    *Bank of Louisiana* Is Not "Controlling" Authority.................. 23

(a)  No Structural Constitutional Claim Was at Issue in *Bank of Louisiana*. ........................................................25

(b)  *Bank of Louisiana* Did Not Resolve a Structural Claim. ...............................................................28

(c)  *Bank of Louisiana* Is Not Binding Because the Plaintiffs There Did Not Suggest that Different Jurisdictional Rules Apply to Structural and Non-Structural Claims. ...........................................29

3.  *Cochran*'s Remarks on *Bank of Louisiana* Are Not Controlling. ............................................................30

B.  Section 1818(i) Does Not Implicitly Strip Jurisdiction Over Structural Constitutional Claims. .......................................33

III.  [Principal Appeal]  The Preliminary Injunction as to Count 3 Should Be Affirmed Because the Enforcement Proceeding Violates the Seventh Amendment. ................................................................................36

A.  The Government Forfeited All of Its Merits-Based Arguments Concerning Burgess's Seventh Amendment Claim. ...........................36

B.  The District Court Correctly Found that, under *Jarkesy*, Burgess Is Likely to Succeed on His Argument that the FDIC's Enforcement Proceeding Violates the Seventh Amendment. .............38

1.  The Two-Part Test Prescribed by *Jarkesy* Controls this Case. .................................................................38

2.  The "Public Rights" Exception Does Not Apply Here. ...........40

(a)  The Action Here Was Known at Common Law. ..........40

(b)  Forcing the FDIC to Proceed via Jury Trials Would Not Dismantle the Statutory Scheme. ...............41

3.  The Government's Effort to Distinguish *Jarkesy* Fails. ...........44

C.  This Court's Decision in *Akin* Is Inapposite. ......................................45

IV.  [Principal Appeal]  Burgess Has Established Irreparable Harm. .................46

V.  [Cross-Appeal] This Court Has Competent Jurisdiction Over Burgess's Cross-Appeal. ...............................................................................50

VI.  [Cross-Appeal] The Denial of a Preliminary Injunction as to Count 2 Should Be Reversed Because the OFIA ALJs Are Unconstitutionally Shielded from Removal. ........................................................................52

A.    Burgess Is Likely to Succeed on His Argument that the ALJs Used by the FDIC Enjoy Unconstitutional Protection from Removal...............................................................................................52

B.    The District Court Erred by Requiring Burgess to Show a "Compensable Harm" Attributable to the Removal Protections. .......53

    1.    Footnote 16 of *Cochran* Controls this Case..............................56

    2.    *Community Financial* Is Inapposite. ........................................57

    3.    In the Event that this Court Discerns a Conflict Between *Cochran* and *Community Financial*, It Must Follow *Cochran*.................................................................................59

VII.    [Cross-Appeal] The Denial of a Preliminary Injunction as to Count 1 Should Be Reversed Because the Structure of the FDIC's Board Violates the Constitution. ...............................................................60

Conclusion ...........................................................................................63

Certificate of Service ...........................................................................65

Certificate of Compliance .....................................................................66

# TABLE OF AUTHORITIES

**Cases:**                                                                  **Page(s)**

*Aetna Cas. & Surety Co. v. Cunningham*,
   224 F.2d 478 (5th Cir. 1955) .............................................................50

*Akin v. Office of Thrift Supervision*,
   950 F.2d 1180 (5th Cir. 1992) ................................................... 45, 46

*Almeida-Sanchez v. United States*,
   413 U.S. 266 (1973).........................................................................20

*Amazing Spaces, Inc. v. Metro Mini Storage*,
   608 F.3d 225 (5th Cir. 2010) ..........................................................50

*Bank of La. v. FDIC*,
   2017 WL 3849340 (E.D. La. Jan. 13, 2017),
   *aff'd*, 919 F.3d 916 (5th Cir. 2019)............................................. 24, 26

*Bank of La. v. FDIC*,
   919 F.3d 916 (5th Cir. 2019) ..................................................... *passim*

*Bowen v. Mich. Acad. of Family Physicians*,
   476 U.S. 667 (1986)........................................................................23

*Bowsher v. Synar*,
   478 U.S. 714 (1986)............................................................. 44, 47, 59

*BST Holdings, LLC v. OSHA*,
   17 F.4th 604 (5th Cir. 2021) ...........................................................48

*Burgess v. FDIC*,
   871 F.3d 297 (5th Cir. 2017) ................................................. 9, 12, 47

*Carr v. Saul*,
   141 S. Ct. 1352 (2021).....................................................................35

*CBS Inc. v. PrimeTime 24 Joint Venture*,
   245 F.3d 1217 (11th Cir. 2001) .......................................................20

*Clark v. Martinez*,
   543 U.S. 371 (2005)........................................................................23

**Cases—Continued:** <u>Page(s)</u>

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022),
  *cert. granted*, 2023 WL 2227658 (U.S. Feb. 27, 2023) ........................... *passim*

*Cochran v. SEC*,
  969 F.3d 507 (5th Cir. 2020),
  *on reh'g*, 20 F.4th 194 (5th Cir. 2021) (en banc),
  *cert. granted*, 142 S. Ct. 2707 (2022) ................................................................28

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) (en banc),
  *cert. granted*, 142 S. Ct. 2707 (2022). ...................................... *passim*

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021)..................................................................... *passim*

*Comsat Corp. v. FCC*,
  250 F.3d 931 (5th Cir. 2001) ................................................................38

*Consumers' Research v. Consumer Prod. Safety Comm'n*,
  592 F. Supp. 3d 568 (E.D. Tex. 2022),
  *appeal docketed*, No. 22-40328 (5th Cir. June 15, 2022)........................... 57, 62

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
  661 F.2d 328 (5th Cir. 1981) ................................................................48

*EIJ, Inc. v. United Parcel Serv., Inc.*,
  233 F. App'x 600 (9th Cir. 2007)........................................................38

*El Paso Nat. Gas Co. v. Neztsosie*,
  526 U.S. 473 (1999)..............................................................................50

*Elrod v. Burns*,
  427 U.S. 347 (1976)....................................................................... 46, 48

*Ex parte Young*,
  209 U.S. 123 (1908)..............................................................................21

*FDIC v. Sumner Fin. Corp.*,
  451 F.2d 898 (5th Cir. 1971) ................................................................44

**Cases—Continued:**                                                    <u>Page(s)</u>

*Feds for Med. Freedom v. Biden*,
  No. 22-40043, 2023 WL 2609247 (5th Cir. Mar. 23, 2023) (en banc) ..............62

*Fontenot v. McCraw*,
  777 F.3d 741 (5th Cir. 2015) ..............................................................21

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989) ...................................................................... 38, 41

*GTFM, LLC v. TKN Sales, Inc.*,
  No. 00-cv-0235, 2000 WL 364871 (S.D.N.Y. Apr. 10, 2000),
  *rev'd on other grounds*, 257 F.3d 235 (2d Cir. 2001) ........................................48

*Hagans v. Lavine*,
  415 U.S. 528 (1974)...................................................................... 29, 33

*In re Gulf States Long Term Acute Care of Covington, L.L.C.*,
  614 F. App'x 714 (5th Cir. 2015) ........................................................37

*In re Hooper*,
  112 B.R. 1009 (B.A.P. 9th Cir. 1990) ................................................41

*Integrity Advance, LLC v. CFPB*,
  48 F.4th 1161 (10th Cir. 2022) ........................................................23

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022),
  *reh'g denied*, 51 F.4th 644 (5th Cir. 2022) (per curiam),
  *cert. filed* Mar. 8, 2023 (No. 22-859) ...................................... *passim*

*Lincoln Gen. Ins. Co. v. de la Luz Garcia*,
  501 F.3d 436 (5th Cir. 2007) ..........................................................37

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018)................................................................ 12, 52

*Matter of Howard*,
  972 F.2d 639 (5th Cir. 1992) ..........................................................59

*Miller v. Estate of BG*,
  No. 3:21-cv-15, 2021 WL 5314983 (W.D. Pa. Apr. 21, 2021).........................48

**Cases—Continued:** <u>Page(s)</u>

*Ochoa-Salgado v. Garland,*
   5 F.4th 615 (5th Cir. 2021) .......................................................... 29, 30

*Opulent Life Church v. City of Holly Springs, Miss.,*
   697 F.3d 279 (5th Cir. 2012) ................................................... 49

*Racal Survey U.S.A., Inc. v. M/V COUNT FLEET,*
   231 F.3d 183 (5th Cir. 2000) ................................................... 59

*Resolution Tr. Corp. v. Fleischer,*
   835 F. Supp. 1318 (D. Kan. 1993) ......................................... 43

*Seila Law LLC v. CFPB,*
   140 S. Ct. 2183 (2020) ................................................... *passim*

*Shalala v. Ill. Council on Long Term Care, Inc.,*
   529 U.S. 1 (2000) ......................................................... 19

*Texas v. United States,*
   809 F.3d 134 (5th Cir. 2015) ................................................... 49

*Topletz v. Skinner,*
   7 F.4th 284 (5th Cir. 2021) ................................................... 16

*Tull v. United States,*
   481 U.S. 412 (1987) ......................................................... 40

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.,*
   761 F.3d 409 (5th Cir. 2014) ................................................... 37

*United States v. Perlaza-Ortiz,*
   869 F.3d 375 (5th Cir. 2017) ................................................... 39

*United States v. Stalnaker,*
   571 F.3d 428 (5th Cir. 2009) ................................................... 39

*Webster v. Doe,*
   486 U.S. 592 (1988) ......................................................... 18

*Welsh v. Fort Bend Indep. Sch. Dist.,*
   860 F.3d 762 (5th Cir. 2017) ................................................... 37

**Cases—Continued:**                                      **Page(s)**

*Wiener v. United States*,
  357 U.S. 349 (1958) ............................................................... 7


**Statutes:**

5 U.S.C. § 1202(d) ....................................................... 10, 53

5 U.S.C. § 7521(a) .........................................................9, 53

12 U.S.C. § 2 ......................................................................8

12 U.S.C. § 242 ................................................................10

12 U.S.C. § 1752a(c) ........................................................10

12 U.S.C. § 1812(a)(1) .......................................................7

12 U.S.C. § 1812(a)(1)(A) ..................................................7

12 U.S.C. § 1812(a)(1)(B). ..................................................7

12 U.S.C. § 1812(a)(1)(C) ...................................................7

12 U.S.C. § 1812(c)(1) ....................................................7, 62

12 U.S.C. § 1818(b) ........................................... 7, 43, 45, 46

12 U.S.C. § 1818(b)(1) .......................................................7

12 U.S.C. § 1818(c) .......................................................7, 18

12 U.S.C. § 1818(e) ............................................................7

12 U.S.C. § 1818(e)(1)(C) ...................................................7

12 U.S.C. § 1818(e)(4) ....................................................7, 10

12 U.S.C. § 1818(e)(6) .......................................................7

12 U.S.C. § 1818(h) ...........................................................7

**Statutes—Continued:**          **Page(s)**

12 U.S.C. § 1818(i)(1) ............................................................ *passim*

12 U.S.C. § 1818(i)(2) .................................................................. 7

12 U.S.C. § 1818 note (1989) ..................................................... 8

12 U.S.C. § 1819(a) ..................................................................... 44

12 U.S.C. § 1821(c)(5)(H) .......................................................... 43

12 U.S.C. § 1821(k) ............................................................... 42, 43

15 U.S.C. § 78y ..................................................................... 30, 33

28 U.S.C. § 1292(a)(1) .................................................................. 5

28 U.S.C. § 1331 ........................................................................... 5

28 U.S.C. § 2107(b) ...................................................................... 5

42 U.S.C. § 405(h) ...................................................................... 19

**Regulations:**

12 C.F.R. § 308.5(a) .................................................................. 10

12 C.F.R. § 308.5(b)(2) ................................................................. 9

12 C.F.R. § 308.5(b)(3) ................................................................. 9

12 C.F.R. § 308.5(b)(5) ................................................................. 9

12 C.F.R. § 308.5(b)(7) ................................................................. 9

12 C.F.R. § 308.5(b)(8) ............................................................... 10

12 C.F.R. § 308.5(b)(11) ............................................................... 9

12 C.F.R. § 308.35 ..................................................................... 10

12 C.F.R. § 308.38 ..................................................................... 10

**Regulations—Continued:**                                                    **Page(s)**

12 C.F.R. § 308.103(a) ..............................................................................10


**Statutory History:**

S. Rep. No. 1482 (1966) ...........................................................................18


**Other Authorities:**

Br. of Appellants, *Bank of La. v. FDIC*,
  919 F.3d 916 (5th Cir. 2019), 2017 WL 2332944 (May 26, 2017)....................27

*Cochran* En Banc Argument, https://bit.ly/3viEMm0 (Jan. 20, 2021)....................31

*Cochran* Panel Argument, https://bit.ly/3C49X8y (Nov. 5, 2019) ........................29

*Cochran* Stay-Stage Argument, https://bit.ly/3YRoyhu (Sept. 24, 2019)........ 27, 32

Complaint, *Bank of La. v. FDIC* (No. 16-cv-13585),
  Dkt. No. 1 (E.D. La. Aug. 4, 2016) ............................................................ 25, 26

Jellum, Linda D., *The SEC's Fight to Stop District Courts from Declaring Its
  Hearings Unconstitutional*, 101 Tex. L. Rev. 339 (2022)..................................28

Order, *Cochran v. SEC* (No. 19-10396), Dkt. 77-2 (5th Cir. Sept. 24, 2019).........47

Reply Br. of Appellants, *Bank of La. v. FDIC*,
  919 F.3d 916 (5th Cir. 2019), 2017 WL 3579413 (Aug. 9, 2017) .....................27

Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3904
  (3d ed. Westlaw Sept. 2022)........................................................................ 50, 51

# **GLOSSARY**

**ALJ** refers to an administrative law judge;

**Comptroller** refers to the Comptroller of the Currency;

**CFPB** refers to the Consumer Financial Protection Bureau;

**Dist. Ct. Dkt.** refers to entries on the District Court's docket below;

**ECF** refers to entries on this Court's docket;

**December Order** refers to the District Court's December 1, 2022 Order entering a partial preliminary injunction (ROA.680-683);

**Enforcement Proceeding** refers to the FDIC administrative proceeding styled *In re Cornelius Campbell Burgess et al.* (Nos. FDIC-14-0307e, FDIC 140-0308k);

**FIRREA** refers to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (Aug. 9, 1989);

**FDIC** refers to Appellant/Cross-Appellee Federal Deposit Insurance Corporation;

**FRB** refers to the Board of Governors of the Federal Reserve System;

**Government** refers to the Appellants/Cross-Appellees, together;

**MSPB** refers to the Merit Systems Protection Board;

**NCUA** refers to the National Credit Union Administration;

**November Order** refers to the District Court's November 6, 2022 Order granting Burgess's motion for a preliminary injunction in part (ROA.328-351);

**OCC** refers to the Office of the Comptroller of the Currency;

**OFIA** refers to the Office of Financial Institution Adjudication;

**Opening Br.** refers to the government's opening brief (ECF 56);

**Orders** refers to the November Order and the December Order, together; and

**Recommended Decision** refers to ALJ Whang's September 16, 2022 Recommended Decision in the Enforcement Proceeding (ROA.461-586).

# **INTRODUCTION**

For more than a dozen years, unelected bureaucrats at the Federal Deposit Insurance Corporation ("FDIC") have been targeting Campbell Burgess through an administrative enforcement proceeding that the agency's own staff have described as a "witch hunt." The purported justification for the government's investigation is that Burgess engaged in self-dealing while serving as the president of a community bank. But in truth the proceeding is a stalking horse through which unaccountable civil servants seek to punish Burgess because they loathe him and his politics.

Although Burgess strongly disagrees with the allegations that the FDIC has levied against him, this case has nothing to with the merits of those allegations. Instead, this case is entirely about **how** the FDIC is adjudicating the charges against Burgess. In October 2022, Burgess filed a three-Count Complaint alleging that the FDIC's Enforcement Proceeding is unconstitutional because (1) the FDIC is unconstitutionally structured, (2) the administrative law judges ("ALJs") used by the FDIC enjoy an unconstitutional level of protection from removal, and (3) the Enforcement Proceeding violates the Seventh Amendment. The District Court granted a preliminary injunction as to Count 3, and the government appealed. The District Court denied an injunction as to Counts 1 and 2, and Burgess cross-appealed.

Lacking any colorable response to Burgess's constitutional arguments, the government has elected to focus its defense on the notion that 12 U.S.C. § 1818(i)(1)

stripped the District Court of subject-matter jurisdiction to entertain this case. But, as the District Court correctly held, the government's argument skips past the critical distinction between non-structural claims (those that allege irregularities internal to the administrative proceeding, such as claims that the agency improperly excluded evidence) and structural claims (those that allege that the agency's proceeding is unlawful in its entirety because it violates the separation of powers). Burgess has never disputed that Section 1818(i) contains an explicit jurisdictional bar over non-structural claims. Burgess's argument here is that **structural** constitutional claims nonetheless fall outside the ambit of Section 1818(i)'s preclusive reach.

This Court has explained that the reason for treating structural and non-structural claims differently for jurisdictional purposes is that, when the claim is non-structural, enforcement targets can receive a meaningful remedy in the adjudication or on appeal: They can press their argument to the agency, hope that it is resolved in their favor, and, if not, they can file a petition for review with the court of appeals. Structural claims are different because they relate to the agency's authority to adjudicate the claim in the first place. When the claim is structural, the enforcement target cannot meaningfully press an argument to the agency, because the agency has no authority to declare itself (or its processes) unconstitutional. *Cochran v. SEC*, 20 F.4th 194, 207-08 (5th Cir. 2021) (en banc), *cert. granted*, 142 S. Ct. 2707 (2022). And the enforcement target is not assured an adequate remedy by appeal, because

2

the agency could rule in their favor on the merits, in which case they would have no standing to appeal, and ergo no opportunity to seek **any** remedy despite having been injured by being subjected to an unconstitutional process. *See id.* at 208-09.

Statutes should not be read to strip jurisdiction over structural constitutional claims absent unmistakable evidence that Congress intended that outcome. Section 1818(i) evinces no such intent. Indeed, the government admitted at the District Court that "Section 1818(i)(1) does **not** specifically mention that the jurisdictional bar encompasses structural constitutional claims." ROA.281 (emphasis added).

As the District Court noted, the question whether Section 1818(i) strips district courts of jurisdiction to adjudicate structural constitutional claims is "a matter of first impression" in this Circuit. ROA.337. *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019)—which the government wrongly treats as "controlling" precedent on this issue—in fact focused on **non-structural** claims; indeed, the government itself has elsewhere conceded that *Bank of Louisiana* did not resolve any structural constitutional claim. In any event, the question whether structural and non-structural constitutional claims should be treated differently for jurisdictional purposes was not briefed or decided in either *Bank of Louisiana* or *Cochran*.

After rejecting the government's jurisdictional argument, the District Court proceeded to the merits. The District Court correctly found that its analysis of Burgess's Seventh Amendment claim "should mirror that in" *Jarkesy v. SEC*, 34

F.4th 446, *reh'g denied*, 51 F.4th 644 (5th Cir. 2022) (per curiam), *cert. filed* Mar.

8, 2023 (No. 22-859).  ROA.347.  The government confirmed at the District Court

that it "disagrees with *Jarkesy*" (Dist. Ct. Dkt. 62 at 35), and it therefore comes as

no surprise that the Opening Brief relegates that case to an afterthought.  But *Jarkesy*

is the law of the Circuit, and it can be neither ignored nor distinguished.  Under

*Jarkesy*, the FDIC's proceeding plainly violates the Seventh Amendment.

In addition to affirming the issuance of a preliminary injunction as to Count

3, this Court should also reverse the denial of a preliminary injunction as to Counts

1 and 2.  Those Counts allege that the appointed directors of the FDIC and the ALJs

used by the FDIC are unconstitutionally shielded from removal.  The District Court

concluded that these claims "have merit" (ROA.344)—i.e., they are correct as a

matter of law.  But it denied relief on both Counts because it interpreted this Court's

cases to require Burgess to show a "compensable harm" resulting from the

removability defects.  That holding was erroneous.  No such requirement exists.

This Court has clarified that plaintiffs who seek only an assurance that an

adjudication will be conducted in compliance with the Constitution are **not** required

to demonstrate "compensable harm" in order to secure a remedy.  *See Cochran*, 20

F.4th at 210 n.16.  Were it otherwise, there would be no way to enforce the Supreme

Court's instruction that plaintiffs must be permitted to seek "relief sufficient to

ensure that the … standards to which they are subject will be enforced only by a

constitutional agency accountable to the Executive." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010) ("*PCAOB*"); *see Cochran*, 20 F.4th at 233 (Oldham, J., concurring) ("A person subject to an unconstitutional adjudication should at least be able to sue for declaratory relief requiring a constitutionally structured proceeding.").

The government clearly believes a number of recent opinions from this Court and the Supreme Court were wrongly decided. It thinks cases of this type should not be allowed into district court, and that the targets of unconstitutional administrative enforcement proceedings should instead be forced to endure those proceedings for years without any chance to present their constitutional arguments to anyone with authority to address them. This case presents an important opportunity for this Court to clarify that this is not—and cannot be—the law.

## JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1). The notices of appeal filed by the government and Burgess were both timely under 28 U.S.C. § 2107(b) because each was lodged within 60 days of the District Court's November 6, 2022 and December 1, 2022 Orders. *See* ROA.684-686; Dist. Ct. Dkt. 63.

The District Court properly rejected the government's argument that it was divested of subject-matter jurisdiction by 12 U.S.C. § 1818(i). *See infra* Section II.

5

And this Court has competent jurisdiction over Burgess's cross-appeal because the District Court granted him less than all of the relief sought.  *See infra* Section V.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The issues presented in the principal appeal filed by the government are:

**1.**     Whether the District Court had subject-matter jurisdiction.

**2.**     Whether the District Court erred by granting a preliminary injunction as to Count 3, which alleges that the Enforcement Proceeding violates the Seventh Amendment by depriving Burgess of his right to a trial by jury.

**3.**     Whether the District Court abused its discretion in concluding that the Enforcement Proceeding is causing Burgess irreparable harm.

The issues presented in the cross-appeal filed by Burgess are:

**1.**     Whether the District Court erred by denying a preliminary injunction as to Count 2, which alleges that the ALJs used by the FDIC enjoy an unconstitutional level of protection from removal.

**2.**     Whether the District Court erred by denying a preliminary injunction as to Count 1, which alleges that the FDIC is unconstitutionally structured.

## STATEMENT OF THE CASE

**A.     The Federal Deposit Insurance Corporation.**

**1.     The Powers of the FDIC.**

Congress has authorized the FDIC to enforce a variety of federal banking laws and regulations and to investigate banks and bankers.  The FDIC is empowered to

issue a "notice of charges" against an enforcement target, 12 U.S.C. § 1818(b)(1); to

issue "cease-and-desist orders," *id.* § 1818(b)-(c); to conduct hearings, *id.* § 1818(h);

and to levy significant civil monetary penalties, *id.* § 1818(i)(2).

The most severe sanctions that the FDIC can issue are removal and prohibition

orders.  12 U.S.C. § 1818(e).  A removal order operates to remove subjects from

their bank-related offices.  *Id.* §§ 1818(e)(1)(C), 1818(e)(4).  Prohibition orders

operate to preclude a banker from ever again "participat[ing] in any manner in the

conduct of the affairs of any" bank.  *Id.* § 1818(e)(6).  In the banking industry,

prohibition is colloquially known as the "death penalty."  ROA.19 (Compl. ¶24).

### 2.     The Structure of the FDIC.

The Board of Directors of the FDIC has five members.  *See* 12 U.S.C.

§ 1812(a)(1).  Three of those members are appointed by the President to fixed, six-

year terms.  *Id.* §§ 1812 (a)(1)(C), (c)(1).  Those directors are tenure-protected and

may only be removed by the President for cause.  *See Wiener v. United States*, 357

U.S. 349, 352, 356 (1958) (equating fixed-length terms with for-cause removal

protection); *PCAOB*, 561 U.S. at 487 (same).  The remaining two Directors are "dual

hat" and *ex officio* members of the Board.  They are the Director of the Consumer

Financial Protection Bureau ("CFPB") and the Comptroller of the Currency

("Comptroller").  12 U.S.C. § 1812(a)(1)(A)-(B).  The President may fire both of

7

those officers at will.  *See id.* § 2; *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192,

2201 (2020).

### 3. The FDIC's Use of Administrative Law Judges.

Section 916 of the Financial Institutions Reform, Recovery, and Enforcement

Act of 1989 ("FIRREA") required a group of "Federal banking agencies" to "jointly

… establish their own pool of administrative law judges."  Pub. L. No. 101-73 § 916,

103 Stat. 183, 486 (Aug. 9, 1989) (codified at 12 U.S.C. § 1818 note (1989)).  Those

agencies (the "Banking Agencies") include the FDIC, the Office of the Comptroller

of the Currency ("OCC"), the Board of Governors of the Federal Reserve System

("FRB"), and the National Credit Union Administration ("NCUA").

Since 1991, the Banking Agencies have managed their affairs through a series

of "Interagency Administrative Law Judge Agreements."  *See* ROA.208-251.  In the

initial 1991 Agreement, the Banking Agencies created a new entity called the Office

of Financial Institution Adjudication ("OFIA").  ROA.209 ¶1(e).

The 1991 Agreement also provided that the ALJs of OFIA—who conduct

administrative adjudications for all of the Banking Agencies—would "be selected

by mutual agreement among the [Banking] Agencies."  ROA.209 ¶2(a).  From at

least 2011 to the present, the Interagency Agreements have provided that "[a]ny

change to the Office Staff personnel"—specifically including changes to the

8

complement of OFIA ALJs—"shall be subject to the prior written approval of all [Banking] Agencies."  ROA.222 ¶3; ROA.231; ROA.239 ¶2; ROA.246.

The ALJs used by the FDIC have "broad authority" and "carry out important functions over which they exercise significant direction."  *Burgess v. FDIC*, 871 F.3d 297, 302 (5th Cir. 2017).  They have the power to issue subpoenas, rule on the admissibility of evidence, regulate hearings, and rule on a variety of procedural and substantive motions.  12 C.F.R. §§ 308.5(b)(2), (3), (5), (7), (11).

Despite the significant executive authority that the ALJs used by the FDIC wield, they enjoy an extraordinary level of protection from removal.  As an initial matter, all four of the Banking Agencies would need to unanimously concur, in writing, to the initiation of removal proceedings.  Assuming the Banking Agencies are fully staffed, initiating a removal proceeding would require separate sign-offs from at least 9 different people—the Comptroller, 3 of the 5 members of the FDIC Board (one of whom could be the Comptroller), 4 of the 7 members of the FRB, and 2 of the 3 members of NCUA.  *See* ROA.25 (Compl. ¶49 n.4).  Even then, the ALJ could not be fired unless at least 2 of the 3 members of the Merit Systems Protection Board ("MSPB") also found that there was "good cause" for his or her removal.  *See* 5 U.S.C. § 7521(a).  Ultimately, at least 11 different people would need to agree before one of the ALJs used by the FDIC could be removed from office.

But it gets worse.  The problem is not just that a minimum of 11 people would need to sign off on the termination of the ALJ, but also that at least 9 of those people are themselves tenure-protected.  All of the members of the FRB, NCUA, and the MSPB (and a majority of the FDIC's directors) can only be removed for cause.  *See* 12 U.S.C. § 242 (FRB); *id.* § 1752a(c) (NCUA); 5 U.S.C. § 1202(d) (MSPB).

### 4.    The FDIC's Process for Conducting Adjudications.

When the FDIC issues a Notice to begin removal or prohibition proceedings, that Notice must both (1) "contain a statement of the facts constituting grounds" for the charges and (2) "fix a time and place at which a hearing will be held thereon." 12 U.S.C. § 1818(e)(4).  The parties then litigate in a "hearing" before an administrative law judge.  *See* 12 C.F.R. §§ 308.5(a), 308.35.  FDIC regulations provide that hearings "shall be held before an administrative law judge of the Office of Financial Institution Adjudication."  *Id.* § 308.103(a).

After the hearing, the ALJ prepares a "recommended decision" for presentation to the FDIC's Board.  12 C.F.R. §§ 308.5(b)(8), 308.38.  The Board may then order a variety of sanctions, including removal or prohibition.  12 U.S.C. § 1818(e)(4).

### B.    The FDIC's Enforcement Proceeding Against Burgess.

Cornelius Campbell Burgess served as the Chief Executive Officer of Herring Bank from 2000 to 2012.  ROA.13 (Compl. ¶2).  Under Burgess's leadership, the

bank added 14 branches and increased its assets more than six-fold. *See id.* Burgess has been described by his peers (and even by his regulators) as a "visionary." *Id.*

The initial impetus for the FDIC's hostility towards Burgess was the agency's unsubstantiated belief that Burgess was to blame for losses sustained by Herring Bank as a result of a Ponzi scheme to which the bank fell victim. ROA.13-14 (Compl. ¶4). In 2010, the FDIC was given an excuse to begin an investigation of Burgess when it received a false tip that he was using bank funds to renovate his house. *See id.* For four years, the FDIC conducted an unrelenting investigation of Burgess. The record from that proceeding contains ample evidence that FDIC personnel were biased against Burgess because they strongly disliked Burgess's "managerial style" and harbored politically-motivated objections to some of the financial services and products that Herring Bank began providing under his leadership. *See* ROA.28 (Compl. ¶58). The FDIC's obsession with Burgess was so unusual that some staff within the FDIC described it as a "witch hunt." ROA.28 (Compl. ¶59).

The FDIC formally opened the Enforcement Proceeding in November 2014. ROA.28 (Compl. ¶60). The FDIC then referred the Enforcement Proceeding to OFIA for a hearing. At the end of a years-long process, the FDIC Board issued an order of removal and prohibition against Burgess. ROA.29 (Compl. ¶67).

On August 25, 2017, Burgess filed a petition for review in this Court. He also requested a stay on the ground that the ALJs used by the FDIC were "inferior Officers" who had not been validly appointed under the Appointments Clause. ROA.29 (Compl. ¶68). On September 7, 2017, this Court issued a published Order that stayed the FDIC Board's decision. *See Burgess*, 871 F.3d at 304.

On June 21, 2018, the Supreme Court issued its opinion in *Lucia v. SEC*, which confirmed that ALJs are inferior officers of the United States. 138 S. Ct. 2044, 2055 (2018). On August 20, 2018, this Court remanded the Enforcement Proceeding back to the FDIC for further proceedings in light of *Lucia*.

On remand, the Board reassigned responsibility for conducting the Enforcement Proceeding to ALJ Jennifer Whang. ROA.30 (Compl. ¶¶73-75). A three-day supplemental hearing before ALJ Whang was held in January 2022.

On September 16, 2022, ALJ Whang issued her own Recommended Decision. *See* ROA.461-586. ALJ Whang recommended that Burgess be removed from his bank-related offices, be prohibited from further participation in the banking industry, and be assessed a civil monetary penalty of $200,000. ROA.584-585.

### C.    Procedural Posture.

#### 1.    Burgess's Complaint and Preliminary Injunction Motion.

On October 6, 2022, Burgess filed a Complaint for declaratory and injunctive relief in the United States District Court for the Northern District of Texas. *See*

ROA.12-51. Burgess named as Defendants the FDIC, the members of the FDIC's Board, and ALJ Whang. ROA.18 (Compl. ¶¶18-22).

The Complaint included three Counts. <u>First</u>, Burgess alleged that the FDIC is unconstitutionally structured because its appointed directors possess substantial executive authority, yet the executive—the President—cannot fire those directors at will. ROA.35-39 (Compl. ¶¶90-105). <u>Second</u>, Burgess alleged that the ALJs used by the FDIC are unconstitutionally shielded from removal. ROA.40-43 (Compl. ¶¶106-118). <u>Third</u>, Burgess alleged that the Enforcement Proceeding violated the Seventh Amendment. ROA.43-50 (Compl. ¶¶119-140).

Shortly thereafter, Burgess filed a motion for preliminary injunction ROA.129-176. On November 1, 2022, the District Court held a two-hour hearing on Burgess's motion. *See* ROA.774-863 (transcript).

### 2. The District Court Grants a Partial Preliminary Injunction.

On November 6, 2022, the District Court entered an Order granting the preliminary-injunction motion in part. ROA.328-351 ("November Order").

The District Court first concluded that 12 U.S.C. § 1818(i) did not strip district courts of jurisdiction to hear cases of this type. *See* ROA.334-343.

With respect to Counts 1 and 2, the District Court concluded that Burgess's "claims that the FDIC Board structure and the double removal protections afforded FDIC ALJs are unconstitutional **have merit**," but denied an injunction because it

found that Burgess was "unlikely to succeed on the merits of the remedy on his first two claims." ROA.344 (emphasis added). The District Court's decision relied heavily on this Court's decision in *Community Financial Services Ass'n of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, 2023 WL 2227658 (U.S. Feb. 27, 2023). The District Court read *Community Financial* to mean that, "even in cases where the plaintiff is seeking prospective relief, the plaintiff must demonstrate" that "the unconstitutional removal protection inflicted harm." ROA.345. Because Burgess had "provided no evidence" of the "harm of the kind required," the District Court denied an injunction as to Counts 1 and 2. *Id.*

As to Count 3, the District Court concluded that Burgess had "shown a substantial likelihood of success on the merits of his claim that the FDIC violated [his] Seventh Amendment right to a jury trial," and therefore held that an injunction was appropriate as to that issue only. ROA.349; *see* ROA.351.

On November 11, 2022, the government sought reconsideration of the November Order. ROA.363-378. In this reconsideration motion, the government raised a merits defense to Count 3 for the first time. ROA.365-376.

On December 1, 2022, the District Court entered an Order that (1) denied the government's motion for reconsideration and (2) formally entered a preliminary injunction barring the FDIC from continuing the Enforcement Proceeding due to the Seventh Amendment defect. ROA.680-683 (the "December Order").

## <u>SUMMARY OF ARGUMENT</u>

The District Court correctly concluded that 12 U.S.C. § 1818(i) did not strip district-court jurisdiction over this lawsuit either explicitly (*see infra* Section II.A) or implicitly (*see infra* Section II.B).  The government's contrary arguments misrepresent this Court's case law and fail to acknowledge that, were the government's draconian theory credited, Burgess would have no meaningful opportunity to receive judicial review of his structural constitutional claims.

The District Court was also correct to conclude that the Enforcement Proceeding violates the Seventh Amendment.  All of the government's merits arguments concerning the Seventh Amendment were forfeited because the first filing that raised those arguments was a motion for reconsideration.  In any event, the Enforcement Proceeding is unconstitutional under *Jarkesy*, and the government's halfhearted efforts to distinguish that case fall flat.  *See infra* Section III.

The government's final argument is that deprivations of constitutional rights do not constitute an irreparable injury.  That puzzling theory has been repeatedly rejected by both this Court and the Supreme Court.  *See infra* Section IV.

In his cross-appeal, Burgess asks that this Court reverse the District Court's denial of a preliminary injunction as to Counts 1 and 2.  This Court plainly has jurisdiction to award that relief (*see infra* Section V), and it should do so.

In Count 2, Burgess sought to enjoin the Enforcement Proceeding because the ALJs used by the FDIC enjoy an unconstitutional level of protection from removal. Both the government and the District Court have agreed that this argument is meritorious as a matter of constitutional law. The District Court nonetheless denied relief because it believed Burgess was required to show a "compensable harm" resulting from the removability defect and could not discharge that burden. But, as this Court's en banc decision in *Cochran* makes clear, no such showing is required when, as here, a plaintiff merely seeks prospective relief sufficient to ensure that an adjudication is conducted in compliance with the Constitution. *See infra* Section VI.

In Count 1, Burgess sought to enjoin the Enforcement Proceeding because the FDIC is unconstitutionally structured. Here again, the District Court concluded that Burgess's argument was meritorious but denied relief due to the lack of a "compensable harm." That holding should be reversed because, as explained above, Burgess bore no obligation to show a harm of that type. *See infra* Section VII.

## ARGUMENT

## I.    Standard of Review.

"This court reviews the grant or denial of a preliminary injunction for abuse of discretion, with any underlying legal determinations reviewed *de novo* and factual findings for clear error." *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021). The District Court's jurisdictional ruling is reviewed *de novo*. *See* Opening Br. 19 n.94.

**II.    [Principal Appeal]  The District Court Had Subject-Matter Jurisdiction.**

**A.    Section 1818(i) Does Not Explicitly Strip Jurisdiction.**

**1.    The Jurisdiction-Stripping Language in Section 1818(i) Does Not Apply to <u>Structural</u> Constitutional Claims.**

Section 1818(i)(1) provides in pertinent part that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [12 U.S.C. § 1818], or to review, modify, suspend, terminate, or set aside any such notice or order." Burgess does not dispute that this text would strip jurisdiction if a plaintiff sought to enjoin an FDIC proceeding on the basis of some irregularity that was internal to the proceeding itself. But this case falls outside the ambit of Section 1818(i)(1) because here Burgess is pursuing **<u>structural</u>** constitutional claims that are wholly collateral to the agency's enforcement proceeding. *See Cochran*, 20 F.4th at 208 (distinguishing between "structural" claims and non-structural claims that seek "substantive relief").[1] As explained below, the District Court's conclusion that Section 1818(i) does not strip district-court jurisdiction over structural claims was correct for four reasons.

<u>First</u>, the District Court correctly recognized that, "where Congress intends to preclude judicial review of constitutional claims, its intent to do so must be clear."

---

[1] In this brief, Burgess cites primarily to the *Cochran* en banc opinion authored by Judge Haynes. 20 F.4th at 197. But the legal propositions on which Burgess relies are also embodied in the concurring opinion authored by Judge Oldham (and joined in full by Judges Smith, Willett, Duncan, Engelhardt, and Wilson). *See id.* at 213.

ROA.338 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). Section 1818(i) does not evince any "clear" intent to foreclose the district courts' jurisdiction over structural constitutional claims. Indeed, the government admitted at the District Court that "Section 1818(i)(1) does **not** specifically mention that the jurisdictional bar encompasses structural constitutional claims." ROA.281 (emphasis added).[2]

The government contends that *Webster* is irrelevant because that case "did not involve … 'structural' constitutional claims." Opening Br. 33. But that argument misunderstands *Webster*. The question there was whether the CIA's decision to terminate an employee for being gay was shielded from judicial review under a provision of the National Security Act. The Supreme Court held that it was not. 486 U.S. at 603-04. In so holding, the Court explained that a "heightened showing" of an intent to strip jurisdiction is required in cases where crediting the government's reading of a statute would result in the denial of a "judicial forum for a colorable constitutional claim." *Id.* at 603. This is exactly such a case. As explained below,

---

[2] To the extent this Court might find legislative history probative, the relevant Senate Report acknowledges that other provisions of 12 U.S.C. § 1818 also allow review in district courts when the claims are wholly collateral to the FDIC proceeding. For example, 12 U.S.C. § 1818(c) allows district courts to hear claims challenging a temporary cease-and-desist order issued by the FDIC. Judicial review of these orders is permissible because such cases are "ancillary to the administrative proceedings" and "would not extend to full consideration of the merits of the Board's charges." S. Rep. No. 1482, at 22 (1966). The same reasoning applies to structural constitutional claims of the type at issue here.

the government's reading of Section 1818(i) would deprive Burgess of any meaningful avenue of judicial review. *See infra* at 21-23.

Second, a comparison between Section 1818(i) and other statutes that contain broader jurisdiction-stripping language confirms that Section 1818(i) does not clearly foreclose jurisdiction over Burgess's claims. As the District Court correctly explained, the fact that Section 1818(i) "does not directly reference other jurisdictional statutes weighs against it being an explicit bar." ROA.337. The District Court compared Section 1818(i) to 42 U.S.C. § 405(h), the latter of which provides that no "action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under **Section 1331**." *Id.* (emphasis added); *see id.* (discussing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000), which construed 42 U.S.C. § 405(h)).

The government insists that *Shalala* did not say that the absence of a "direct reference" to Section 1331 "weighs against a jurisdictional bar being explicit." Opening Br. 31. But this Court's opinion in *Bank of Louisiana* said exactly that, drawing on *Shalala* for support. *See Bank of Louisiana*, 919 F.3d at 924 n.10. The District Court merely leveraged *Shalala* en route to making its point that Congress knows how to strip all of the federal-question jurisdiction that exists under Section 1331 when it wants to, and yet elected not to do so here. *See CBS Inc. v. PrimeTime*

*24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir. 2001) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling.").[3]

Third, the fact that Section 1818(i) does not foreclose jurisdiction over structural constitutional claims is confirmed by the text itself. The statute provides in pertinent part that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order **under any such section**." 12 U.S.C. § 1818(i)(1) (emphasis added). The government agrees that the statutory term "under any such section" is a reference to Section 1818. *See* Opening Br. 21. But this case cannot involve a notice or order "under" Section 1818. To be sure, the FDIC invoked Section 1818 when it initiated the Enforcement Proceeding. But in truth the Enforcement Proceeding is not actually being conducted "under" Section 1818 because Section 1818 does not—and could not—authorize administrative proceedings that violate the Constitution. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973) ("[N]o Act of Congress can authorize a violation of the Constitution."); *see also Jarkesy*, 34 F.4th at 453. Unconstitutional

---

[3] The Opening Brief argues (at 32) that *Shalala* "strongly supports" the government because the statute at issue there and Section 1818 both use the word "any." But the ultimate holding in *Shalala* has no relevance here because that case did not involve a structural constitutional claim. In any event, the two statutes use the word "any" differently. The word "any" in Section 1818(i) is modifying "notice or order" and, unlike the word "any" as used in Section 405(h), is not describing any **claims** over which jurisdiction is foreclosed.

administrative proceedings of the type at issue are not conducted "under" any statute, but rather are *ultra vires* acts that federal courts possess inherent equitable authority to enjoin. *Cf. Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015) (a government agent's activities are "*ultra vires*" when they constitute "'illegal act[s] … to enforce a legislative enactment which is void because unconstitutional'" (quoting *Ex parte Young*, 209 U.S. 123, 159 (1908))).

The language "under any such section" in Section 1818(i) is a textual warrant for treating structural and non-structural claims differently for jurisdictional purposes. If the claim is structural, then it implicates the constitutionality of the proceeding. And if that structural claim is valid, then the enjoined notice or order is **<u>not</u>** issued "under" Section 1818, because no law can authorize the issuance of a notice or order through an unconstitutional proceeding. Conversely, if the claim relates to a non-structural defect within an otherwise valid proceeding (e.g., a complaint about the exclusion of evidence within an adjudication that all agree is constitutional), then the proceeding is authorized, and ergo the resulting order or notice **<u>would</u>** be one issued "under" Section 1818.

<u>Fourth</u>, the government's reading of Section 1818(i)(1) is untenable because, if credited, it would foreclose all meaningful review of structural constitutional claims, despite the absence of any evidence that Congress intended that outcome.

This Court explained in *Cochran* that, if the only path to judicial superintendence of an agency's adjudication is to wait for that adjudication to conclude and then file a petition for review, then the enforcement target has no opportunity for "meaningful judicial review." 20 F.4th 209. That is so because, in many cases, "the enforcement proceedings will not necessarily result in a final adverse order." *Id.* For example, the agency could rule in favor of the enforcement target on the merits, or it could issue an order finding that the record shows a violation but declining to take any further action. *See* ROA.110 n.3. In those situations, the enforcement target could not appeal, and thus the enforcement target would "be left unable to seek redress for the injury of having to appear before the [agency]." *Cochran*, 20 F.4th at 209. This Court therefore found that the statute at issue in *Cochran* should not be interpreted to preclude district-court jurisdiction over structural constitutional claims, because allowing lawsuits in district court was the only way to ensure "an adequate possibility of meaningful judicial review" for claims of that special type. *Id.* The same outcome is warranted here.

It also bears mention that, after the Supreme Court's decision last Term in *Collins v. Yellen*, plaintiffs seeking **retrospective** relief for a structural constitutional problem must show a "compensable harm." 141 S. Ct. 1761, 1789 (2021). That showing is, by design, nearly impossible to make. Thus, the only path to a meaningful remedy for structural constitutional harms is to seek **prospective** rather

than retrospective relief. And prospective relief, in turn, can only be secured by filing a declaratory-judgment action in district court before the agency reaches a final decision. Judge Oldham presciently explained this dynamic in his *Cochran* concurrence, which noted that, "[a]fter *Collins*," a declaratory-judgment lawsuit of the exact type Burgess is now pursuing "may be the only way to provide a 'meaningful avenue of relief'" when a plaintiff presses structural constitutional claims. *Cochran*, 20 F.4th at 233 (Oldham, J., concurring).

In short, interpreting Section 1818(i)(1) to strip district-court jurisdiction over structural constitutional claims would itself present serious constitutional concerns by creating a situation in which plaintiffs like Burgess have no opportunity to secure a meaningful remedy for separation-of-powers violations. *See Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986). This Court can and should avoid that outcome by invoking the canon of constitutional avoidance, and interpreting Section 1818(i) to allow district courts to hear structural constitutional claims. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005); *see also Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1178 (10th Cir. 2022) (Phillips, J., concurring).

## 2.    *Bank of Louisiana* Is Not "Controlling" Authority.

Given the government's near-exclusive reliance on this Court's 2019 decision in *Bank of Louisiana*, a detailed recounting of that case is warranted.

23

The plaintiffs in *Bank of Louisiana* were a community bank and several of its officers. The FDIC accused the bank of misconduct and initiated two administrative enforcement proceedings. *See Bank of Louisiana*, 919 F.3d at 920. While the second of those proceedings was pending at the agency, the bank and the officers filed a declaratory-judgment action in federal court. The plaintiffs' chief contentions were that "the FDIC denied it equal protection by targeting" the Bank's president "due to his age" and that the ALJ used by the FDIC had "violated due process by preventing [the Bank] from proffering certain evidence" and "by preventing [the Bank's president] from talking with his counsel." *Id.* at 921.

The FDIC moved to dismiss the plaintiffs' lawsuit for want of subject-matter jurisdiction, and that motion was granted. *See Bank of La. v. FDIC*, No. 16-cv-13585, 2017 WL 3849340, at *1 (E.D. La. Jan. 13, 2017). This Court affirmed, reasoning that district courts lack jurisdiction to enjoin an FDIC proceeding on the basis of alleged violations that occur within the proceeding. 919 F.3d at 921.

*Bank of Louisiana* does not control here because: (1) no structural constitutional claim was at issue in *Bank of Louisiana*; (2) even if such a claim was at issue, it was not **resolved** by *Bank of Louisiana*; and (3) even if such a claim had been at issue and had been resolved, *Bank of Louisiana* still would not be binding because the plaintiffs there did not press the same theory that Burgess presses here.

### (a)     No Structural Constitutional Claim Was at Issue in *Bank of Louisiana*.

The Opening Brief claims that *Bank of Louisiana* "involved a separation-of-powers claim, namely that the ALJ was unconstitutionally appointed." Opening Br. 30 (internal quotation marks omitted). That is not true. This Court can review for itself the Complaint filed in *Bank of Louisiana*. It does not mention any purported defect in the appointment of the ALJ used by the FDIC in that case. *See* Compl., *Bank of La. v. FDIC* (No. 16-cv-13585), Dkt. No. 1 (E.D. La. Aug. 4, 2016).

The government's confusing description of this Court's case law conflates two distinct Fifth Circuit proceedings both styled *Bank of Louisiana v. FDIC*. In the first of those cases (Fifth Circuit No. 16-60837 or "*Bank of Louisiana I*"), the bank made an Appointments Clause challenge to the ALJs used by the FDIC, received an adverse decision from the FDIC Board, and then filed a petition for review with this Court, which ultimately remanded the matter back to the agency. In the second of those cases (Fifth Circuit No. 17-30044 or "*Bank of Louisiana II*"), the bank sought a declaratory judgment that there were certain infirmities with the FDIC's enforcement action, had its case dismissed by the District Court for want of jurisdiction, and then appealed to this Court, which affirmed.

Against this backdrop, the government's suggestion that *Bank of Louisiana* involved a structural constitutional claim is misleading, because the government fails to clarify that such claim was the focus of *Bank of Louisiana I* **and not** *Bank of*

*Louisiana II*.[4]   And *Bank of Louisiana I* is irrelevant to the meaning of Section

1818(i)(1), because that case was not an appeal from an action first filed in district

court, but rather involved a petition for review of an FDIC Order.

The plaintiffs-appellants in *Bank of Louisiana II*, unlike the petitioners in

*Bank of Louisiana I*, did **not** pursue any separation-of-powers claims.  Indeed, the

District Court opinion in the case that matured into *Bank of Louisiana II* confirmed

that fact.  *See* 2017 WL 3849340, at *6 (noting that the plaintiffs "d[id] **not** question

the constitutionality or inherent authority of the FDIC" (emphasis added)).[5]

---

[4] The government cites page 926 of *Bank of Louisiana II*, which discussed "the Bank's Appointments Clause challenge to [the] ALJ."  Opening Br. 30 n.144 (quoting *Bank of Louisiana*, 919 F.3d at 926).  This part of *Bank of Louisiana II* was discussing, as part of its recounting of the procedural history, the arguments that the Bank had presented to the FDIC Board and to this Court **in *Bank of Louisiana I***.

[5] The *Bank of Louisiana II* Complaint did briefly suggest—with no further explanation—that the FDIC proceeding "violated the separation of powers." *Bank of Louisiana II* Compl., *supra*, at ¶7; *see id.* ¶31.  But the Complaint did not actually argue that the actions of the ALJ or the FDIC's Directors violated the separation of powers; indeed, the Complaint did not mention removability protections or appointments processes for those officers even a single time.  *Cf.* ROA.819:15-17 (government counsel describing the *Bank of Louisiana* Complaint as "scattershot" and "all over the place"); *see also* ECF 29 at 10-11 & n.6.  The plaintiffs' reference to a "separation of powers" violation was apparently intended to suggest that the FDIC's **Executive Secretary** had unlawful protection from removal. *See Bank of Louisiana II* Compl., *supra*, at ¶¶57-58.  That argument is non-sensical because the Executive Secretary, unlike the ALJs and the FDIC Directors, is not an officer of the United States.  In any event, there was no subsequent discussion of the Executive Secretary in the plaintiffs' appellate briefs or at argument, and nor did the District Court or the Fifth Circuit ever discuss the Executive Secretary.  Moreover, the *Bank of Louisiana II* plaintiffs later abandoned any structural challenge that they might

The appellate briefs filed by the *Bank of Louisiana II* appellants likewise make clear that, by the time they arrived at the Fifth Circuit, they were "target[ing] **only** the discriminatory practices employed by the FDIC during its investigation."[6] Plaintiffs also made several concessions in their briefs, including the admission that Section 1818(i) "show[ed a] fairly discernable intent to limit jurisdiction."[7]  As both the government and *Bank of Louisiana II* recognized, the plaintiffs in that proceeding conceded that Section 1818(i) **explicitly** stripped jurisdiction, but then argued that they should still prevail under the *Thunder Basin* factors for **implicit** jurisdiction stripping.  *See Bank of Louisiana II*, 919 F.3d at 923 ("The parties and the district court addressed the question presented under the implicit preclusion analysis.").

As Judge Jones has noted, interpreting *Bank of Louisiana II* to apply to structural claims would risk "expand[ing] the scope of th[at] decision," given that no structural claim was "actually argued to the Fifth Circuit" in that case.  *Cochran* Stay-Stage Argument at 23:10-32, https://bit.ly/3YRoyhu (Sept. 24, 2019).

---

have been making, and instead focused their appellate arguments "only" on the equal-protection and due-process issues.  *See infra* note 6; *see also* ROA.336 n.15.

[6] *See* Br. of Appellants at 7 (emphasis added), *Bank of La. v. FDIC*, 919 F.3d 916 (5th Cir. 2019), 2017 WL 2332944, at *7 (May 26, 2017).

[7] Reply Br. of Appellants at 1, *Bank of La. v. FDIC*, 919 F.3d 916 (5th Cir. 2019), 2017 WL 3579413, at *1 (Aug. 9, 2017).

**(b)** ***Bank of Louisiana* Did Not Resolve a Structural Claim.**

Even if this Court were to construe the *Bank of Louisiana II* plaintiffs as having pursued a structural constitutional claim, that case still would not be binding because this Court did not **resolve** any such claim in its opinion.

Judge Haynes has correctly explained that *Bank of Louisiana II* "did not address a structural claim" but instead "analyzed only … due process and equal protection claims." *Cochran v. SEC*, 969 F.3d 507, 518 (5th Cir. 2020) (Haynes, J., dissenting in part); *see id.* at 518-19 (*Bank of Louisiana* "never considered whether the structural nature of a claim might bear on the jurisdictional analysis" and simply did not "address [that] key point"); *accord* Linda D. Jellum, *The SEC's Fight to Stop District Courts from Declaring Its Hearings Unconstitutional*, 101 Tex. L. Rev. 339, 409 (2022) (explaining jurisdictional implications of the difference between the non-structural claims in *Bank of Louisiana II* and the structural claims in *Cochran*).

The fact that the parties and the District Court in *Bank of Louisiana II* had "focused" on the due-process and equal-protection claims meant that this Court had no occasion to "squarely consider whether a [structural claim] should be analyzed differently than other types of constitutional claims." *Cochran*, 969 F.3d at 518 (Haynes, J., dissenting). Indeed, in the colloquy from the panel-stage oral argument in *Cochran* that is quoted below, the government itself conceded that the *Bank of Louisiana II* opinion did **not** resolve any separation-of-powers claim:

28

GOVERNMENT COUNSEL:  There's a separation of powers challenge to the ALJ [in *Bank of Louisiana*] …

JUDGE HAYNES:  It did not resolve that challenge.

GOVERNMENT COUNSEL:  No, it did not.  And we're not claiming that it did.

*Cochran* Panel Argument at 16:12-25, https://bit.ly/3C49X8y (Nov. 5, 2019).

> **(c)**     ***Bank of Louisiana* Is Not Binding Because the Plaintiffs There Did Not Suggest that Different Jurisdictional Rules Apply to Structural and Non-Structural Claims.**

Even if a structural claim had been both presented and resolved in *Bank of Louisiana II*, that case still would not be binding as to the question presented here. That is so because the plaintiffs in *Bank of Louisiana II* did **not** argue that there was a distinction between structural and non-structural claims for jurisdictional purposes.

In this Circuit, the fact that a particular issue was not raised in the parties' briefs means that future panels are not precluded from reaching a different result in a case where that issue **is** briefed.  *See Ochoa-Salgado v. Garland*, 5 F.4th 615, 619 (5th Cir. 2021).  As the District Court noted, this rule applies with special force when, as here, the relevant issue is one of jurisdiction.  *See* ROA.336; *Hagans v. Lavine*, 415 U.S. 528, 533 n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.").

Indeed, several arguments that the *Bank of Louisiana* plaintiffs **did** make in their briefs highlight how different that case is from this one. Most importantly, the *Bank of Louisiana* plaintiffs conceded the issue of explicit jurisdiction-stripping and elected to focus on the *Thunder Basin* implicit jurisdiction-stripping analysis. *See supra* at 27. Burgess has made no such concession here. And when an opinion relies on a concession, the Court's "affirmation of the conceded proposition" does not "operate[] as binding precedent." *Ochoa-Salgado*, 5 F.4th at 620.

### 3. *Cochran*'s Remarks on *Bank of Louisiana* Are Not Controlling.

The government next contends that, even if *Bank of Louisiana II* is not itself controlling, the interpretation of that case offered by this Court's en banc decision in *Cochran* forecloses Burgess's argument. Opening Br. 24-29. That too is wrong.

The plaintiff in *Cochran* sought to enjoin a pending enforcement proceeding that the Securities and Exchange Commission ("SEC") had initiated against her. 20 F.4th at 198. The question on appeal was whether the Exchange Act, 15 U.S.C. § 78y, stripped district courts of jurisdiction to hear structural constitutional claims. This Court held that it did not. *See* 20 F.4th at 213; *see also supra* at 2-3.

En route to ruling in Ms. Cochran's favor, the panel rejected the contention that *Bank of Louisiana II* was somehow helpful to the government's position. *Cochran* distinguished *Bank of Louisiana II* because "the statutory-review scheme at issue in that case differed in a key respect from the Exchange Act's: in *Bank of*

*Louisiana*, the scheme included an explicit statutory bar"—i.e., Section 1818(i)—whereas the Exchange Act did not. 20 F.4th at 204. *Cochran* "clarif[ied] that *Bank of Louisiana* was addressing the explicit statute at issue there" and that *Bank of Louisiana II* was "based on the **explicit** jurisdictional bar." *Id.* (emphasis added).

All *Cochran* said was that *Bank of Louisiana II* should be construed as an explicit jurisdiction-stripping case. That gloss on *Bank of Louisiana II* has no import here. Whether Section 1818(i) explicitly strips jurisdiction over **non-structural** claims of the type at issue in *Bank of Louisiana II* does not answer the separate question of whether it also strips jurisdiction over **structural** constitutional claims. *Cochran* does not say that it does, and *Cochran* is therefore beside the point.

As the District Court explained, *Bank of Louisiana II* "made clear that it did not decide the issue" of "whether district courts are explicitly barred from reviewing **structural** constitutional claims under [Section] 1818(i)." ROA.336-337 (emphasis altered). That issue simply was not briefed in *Bank of Louisiana II*. *See supra* at 29-30. Nor was it briefed or decided in *Cochran*. Indeed, at argument in *Cochran*, Ms. Cochran's counsel was explicitly asked whether her proposed rule of law depended on whether the claims at issue were structural or non-structural. She responded "we didn't get into the briefing on that." *Cochran* En Banc Argument at 17:37-57, https://bit.ly/3viEMm0 (Jan. 20, 2021). The government's attorney likewise expressed the view that "whether a district court has jurisdiction" did not

depend on "the **type** of constitutional claim." *Cochran* Stay-Stage Argument, *supra*, at 23:32-40 (emphasis added).

Given that context, the District Court was correct to hold that *Cochran* merely "'**assumed**' that, based on the *Bank of Louisiana* decision, [Section] 1818(i) represented an explicit jurisdictional bar to hear … structural claims." ROA.337 (emphasis added). The Opening Brief takes issue with this portion of the District Court's Order, arguing that "*Cochran* did not merely 'assume' anything," but rather "unequivocally stated" that "*Bank of Louisiana* was addressing the **explicit** statute at issue there." Opening Br. 26 (internal quotation marks omitted) (emphasis altered). That evinces yet another misunderstanding of what the District Court said. No one disputes that *Bank of Louisiana II* held that Section 1818(i) explicitly strips district-court jurisdiction to hear the types of claims at issue **in that case**. But the question at issue here is whether Section 1818(i) **also** strips jurisdiction over structural constitutional claims. *Bank of Louisiana II* did not reach that question. *Cochran* appears to have "assumed" that Section 1818(i) might strip jurisdiction over such claims, but that question was not briefed or addressed in *Cochran*. The District Court was therefore correct to hold that whatever "assumptions" *Cochran* may have made are not binding precedent vis-à-vis future cases, like this one, "where

[the jurisdictional issue] is squarely presented." ROA.337; *accord Hagans*, 415 U.S. at 533 n.5.[8]

In any event, the District Court rightly explained that whatever *Cochran* might have said on this issue was dicta, because the question whether Section 1818(i) forecloses jurisdiction over structural constitutional claims was not "necessary to the decision" in *Cochran*. ROA.337. The *Cochran* Court noted that Section 1818(i) contains a jurisdiction-stripping provision whereas 15 U.S.C. § 78y does not, and held that this fact alone was enough to differentiate *Bank of Louisiana II* from the case at bar. 20 F.4th at 204. In order to reach that conclusion, *Cochran* did not need to deliver any holding concerning whether Section 1818(i) strips jurisdiction over **<u>structural</u>** constitutional claims. Indeed, *Cochran* could not have delivered any such holding, given that Section 1818(i) does not even apply to the SEC.

### B.    Section 1818(i) Does Not Implicitly Strip Jurisdiction Over Structural Constitutional Claims.

The District Court was also correct in holding that Section 1818(i) does not implicitly strip jurisdiction over structural constitutional claims. *See* ROA.338-340.

---

[8] It is true that *Cochran* characterized *Bank of Louisiana II* as a case involving "a separation-of-powers challenge to an administrative proceeding before the [FDIC]." 20 F.4th at 204. But that merely reflects the way that the government described *Bank of Louisiana* in its *Cochran* briefs. In reality, the *Bank of Louisiana II* appellants did **<u>not</u>** press any structural constitutional claim. *See supra* at 25-26.

That result is compelled by a straightforward application of the test articulated in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).

The first *Thunder Basin* factor is whether "a finding of preclusion could foreclose all meaningful judicial review." 510 U.S. at 207, 212-13. As explained above, *Cochran* held that a statutory scheme allowing a regulated party to seek judicial review only by waiting for a final agency action and then appealing to the court of appeals does not guarantee the plaintiff meaningful judicial review of structural constitutional claims. *See* 20 F.4th at 209. The *Cochran* Court also found that judicial review would not be "meaningful" if the plaintiff were forced to endure the very agency process that she sought to enjoin. *Id.* at 208, 210. As the District Court rightly held, both of those considerations apply with "identical" force here. ROA.341. Burgess could be deprived of any judicial review of his constitutional claims if the FDIC issues a Final Decision that is favorable to him.

The second *Thunder Basin* factor is whether the claims at issue are "wholly collateral" to the agency's proceeding. *Thunder Basin*, 510 U.S. at 212; *see Cochran*, 20 F.4th at 206-09. The government does not—and could not—dispute that the removability claims are structural and therefore wholly collateral. *See Cochran*, 20 F.4th at 207 (noting that a "removal power claim is wholly collateral"). The government does argue that the Seventh Amendment claim is not "wholly collateral" (Opening Br. 37 n.171), but that is wrong under *Cochran* because the

Seventh Amendment claim has nothing to do with any "substantive aspect" of the Enforcement Proceeding. *See Cochran*, 20 F.4th at 207-09. Indeed, the government itself conceded in a prior filing in this appeal that "Burgess's right-to-a-jury-trial claim is a **structural separation-of-powers claim** given that the jury right limits the power of other governmental actors." ECF 30-1 at 2 n.1 (emphasis added) (internal quotation marks omitted).

The third *Thunder Basin* factor is whether the claims at issue are "outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212. Burgess's claims fall outside the agency's expertise because, like the claims in *Cochran*, they present questions of constitutional law as to which the FDIC has no special knowledge. *See Cochran*, 20 F.4th at 207-08; *Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021) ("[A]gency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise.").[9]

---

[9] The District Court suggested (ROA.343) that it was "bound to follow" *Bank of Louisiana II*'s discussion of the third *Thunder Basin* factor, because the panel in that case noted that "the Bank's separation-of-powers challenge to the ALJ does not directly implicate the agency's expertise." 919 F.3d at 930. But the panel's remark referred to an argument that the plaintiffs were making in *Bank of Louisiana I*, not *Bank of Louisiana II*. *See supra* at 25-26 & note 4. In any case, what *Bank of Louisiana II* had to say about the third *Thunder Basin* factor was abrogated by the later decisions in *Carr* and *Cochran*. Finally, the other two factors would still clearly counsel against preclusion, as the District Court properly held. ROA.340-341.

The government's brief does not even bother to apply the *Thunder Basin* factors. Its entire argument rests on the premise that *Bank of Louisiana II* is "controlling" as to the implicit jurisdiction-stripping analysis. Opening Br. 34. But that is wrong because, as explained above and in the November Order, *Bank of Louisiana II* did not consider or resolve a structural constitutional claim. ROA.339.

## III.  [Principal Appeal]  The Preliminary Injunction as to Count 3 Should Be Affirmed Because the Enforcement Proceeding Violates the Seventh Amendment.

### A.  The Government Forfeited All of Its Merits-Based Arguments Concerning Burgess's Seventh Amendment Claim.

In its opposition to Burgess's preliminary-injunction motion, the government did not raise any merits-based arguments concerning the Seventh Amendment claim. The opposition instead focused on jurisdiction. *See* ROA.344 n.21 (portion of November Order noting that the "FDIC ma[de] no argument … that Plaintiff's substantive constitutional claims lack merit"). The government's first filing that contained any merits-based arguments was **its motion for reconsideration** pursuant to Federal Rule of Civil Procedure 54(b). ROA.365-73. Now, at this late stage, the government has elected to devote a significant portion of its Opening Brief to merits-based Seventh Amendment arguments. Opening Br. 38-49.

Those arguments are all forfeited. This Court has repeatedly held that it "will not consider an issue raised for the first time in a Motion for Reconsideration" before the district court. *Lincoln Gen. Ins. Co. v. de la Luz Garcia*, 501 F.3d 436, 442 (5th

Cir. 2007) (internal quotation marks omitted). That rule applies with full force to reconsideration motions under Rule 54(b). *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 426 (5th Cir. 2014); *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 614 F. App'x 714, 718 (5th Cir. 2015) (declining to "consider an issue raised for the first time in a Motion for Reconsideration," even though the Rule 54(b) motion in question "thoroughly discussed" the issue on which appellant sought to appeal and the District Court had addressed that argument).

Although this Court has discretion to consider arguments presented for the first time in a reconsideration motion when there are "extraordinary circumstances," *Welsh v. Fort Bend Indep. Sch. Dist.*, 860 F.3d 762, 765 n.2 (5th Cir. 2017), no such circumstances exist here. The government offers no explanation for its puzzling decision not to brief the merits in its opposition to Burgess's preliminary-injunction motion. As a result of the government's strategic choices, the District Court had no merits briefing to consider at the hearing. *See* ROA.782:18-20 (District Judge noting at the hearing that the government "did not contest the merits in their pleadings," meaning there was "no need to get into the merits").

It would be profoundly unfair to the District Court (and to Burgess) to vacate the preliminary injunction on the basis of arguments that the government did not

timely raise and that the District Court therefore never fully addressed.[10]

Conversely, leaving the preliminary injunction intact would pose no prejudice to the government, which is free to make its merits arguments at later stages of this case. Indeed, the government has already made those exact arguments in its motion to dismiss, which is now pending at the District Court.  Dist. Ct. Dkt. 62 at 35-36.

> **B.     The District Court Correctly Found that, under *Jarkesy*, Burgess Is Likely to Succeed on His Argument that the FDIC's Enforcement Proceeding Violates the Seventh Amendment.**

Even if this Court were to consider the government's Seventh Amendment arguments, they would provide no grounds to disturb the existing injunction.  Simply put, the government's theories are fundamentally at odds with *Jarkesy*.

> **1.     The Two-Part Test Prescribed by *Jarkesy* Controls this Case.**

The government's discussion of the Seventh Amendment begins with a confusing, multi-page summary of *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).  *See* Opening Br. 39-41.  That discussion glosses over this Court's recent published opinion in *Jarkesy*, which discussed *Granfinanciera* and other Supreme Court cases at length and distilled from them a two-part test applicable to Seventh

---

[10] The government states in a footnote that it brought certain merits arguments "to the district court's attention … **at a hearing** held five days before the [November] Order was issued."  Opening Br. 15 n.78 (emphasis added).  But arguments presented for the first time at a hearing are waived.  *See Comsat Corp. v. FCC*, 250 F.3d 931, 936 n.5 (5th Cir. 2001); *EIJ, Inc. v. United Parcel Serv., Inc.*, 233 F. App'x 600, 602 (9th Cir. 2007).

Amendment challenges in this Circuit. *Jarkesy*, 34 F.4th at 451-54; *see* ROA.347 (District Court noting that *Jarkesy* "clarified" *Granfinanciera*). The test prescribed in *Jarkesy* is binding on this Court. *See United States v. Perlaza-Ortiz*, 869 F.3d 375, 378 (5th Cir. 2017) ("methodology" of binding precedents is controlling).[11]

The test prescribed by *Jarkesy* "moves in two stages. First, a court must determine whether an action's claims arise 'at common law' under the Seventh Amendment. Second, if the action involves common-law claims, a court must determine whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." 34 F.4th at 453.

As to the first part of this test, the government notes that it "disagrees" with the District Court's conclusion that the FDIC's claims arise at common law. Opening Br. 41. But the government does not say **why** it holds that view or marshal any case law in support of its opinion, and it has therefore waived any argument that the Enforcement Action does not involve common-law claims. *See United States v. Stalnaker*, 571 F.3d 428, 439-40 (5th Cir. 2009) (issues "waived for inadequate

---

[11] The government's laser-like focus on *Granfinanciera*, without paying any attention to the ways in which that opinion was clarified by *Jarkesy*, leads to a variety of missteps in its brief. For example, the government now argues that the "'public rights' requirement" is automatically "satisfied" when the "claims at issue are … statutory causes of action that inhere in the Federal Government in its sovereign capacity." Opening Br. 42-43. If that were true, *Jarkesy* clearly could not have been decided as it was. The government's argument on this issue in fact tracks arguments made by **the dissent** in *Jarkesy*.

39

briefing" when they are "not fully explain[ed]" and do not cite "relevant law").  In any case, the claims at issue here clearly do arise at common law, most obviously because the FDIC is seeking civil monetary penalties.  *See Jarkesy*, 34 F.4th at 452; *accord Tull v. United States*, 481 U.S. 412, 418-24 (1987).

By the government's admission, the "pivotal issue" in this case is the second part of the *Jarkesy* test, which concerns the public-rights exception.  Opening Br. 42.  As explained below, the public-rights exception does not apply here.

### 2.    The "Public Rights" Exception Does Not Apply Here.

Under *Jarkesy*, the "relevant considerations" when determining whether the public-rights exception applies "include: (1) whether Congress created a new cause of action, and remedies therefor, unknown to the common law" and "(2) whether jury trials would go far to dismantle the statutory scheme or impede swift resolution of the claims created by statute."  34 F.4th at 453 (internal quotation marks omitted).  Both of those factors support the District Court's analysis.

### (a)    The Action Here Was Known at Common Law.

The District Court correctly concluded that actions of the type at issue here "have been known at common law for centuries."  ROA.348.  The government does not, and could not, contest that premise.  *Jarkesy* held that a statutory cause of action seeking civil monetary penalties is akin to a common-law action.  34 F.4th at 451-56; *see* ROA.155; ROA.347-348; ROA.398-400.  And certainly "an action to

40

recover money damages for … breach of fiduciary duty … was the type of action that would have been brought in a court of law in the courts of England prior to the merger of law and equity." *In re Hooper*, 112 B.R. 1009, 1012 (B.A.P. 9th Cir. 1990); *accord* ROA.546 (portion of Recommended Decision concluding that Burgess's alleged "self-dealing" was a "breach of [a] common law fiduciary duty").

### (b)  Forcing the FDIC to Proceed via Jury Trials Would Not Dismantle the Statutory Scheme.

The next consideration under *Jarkesy* is "whether jury trials would go far to dismantle the statutory scheme or impede swift resolution of the claims created by statute." 34 F.4th at 453 (internal quotation marks omitted). At the outset, it bears mention that this factor is not applicable at all in cases of this type. *Granfinanciera* clarified that federal courts may "owe some deference" to Congress's judgment to route certain claims to non-jury proceedings if, but only if, Congress "has given careful consideration to the constitutionality of a legislative provision." 492 U.S. at 61. *Granfinanciera* then held that, because Congress did not appear to have considered the issue, its assignment of claims to a non-jury tribunal could not "be justified on the ground that jury trials of fraudulent conveyance actions would go far to dismantle the statutory scheme." *Id.* (internal quotation marks omitted). Here, the government has marshalled no evidence that Congress gave "careful consideration" to the constitutionality of enforcement actions akin to the one at issue here, nor is Burgess aware of any.

41

In any event, the District Court correctly concluded that "the use of jury trials to adjudicate claims of the type that the FDIC is pursuing against Burgess would not 'dismantle the statutory scheme'" because the claims at issue here are not "of 'the sort … uniquely suited for agency adjudication.'"  ROA.348 (quoting *Jarkesy*, 34 F.4th at 456).  As the District Court explained, "[f]ederal courts have handled claims alleging entitlement to civil penalties for breaches of common-law duties for many decades" and "several of the FDIC's enabling statutes," specifically including 12 U.S.C. § 1821(k), allow the agency "to bring cases before a jury."  ROA.348.

The government's Opening Brief has little to say about the District Court's considered analysis of this issue.  Its only retort is to suggest that "section 1821(k) authorizes the FDIC to bring only certain claims … and only while acting in its distinct capacity as receiver or conservator of a failed bank," and that Section 1821(k) does not authorize the FDIC to pursue "enforcement claims … to protect the public and deter wrongdoing by bank officers."  Opening Br. 48-49.

This argument misstates the relevant inquiry.  The question is not whether some statute other than Section 1818(i) allows the FDIC to do all of the things that Section 1818(i) permits.  Instead, the question is whether the statutory scheme would be "dismantled" if the FDIC could no longer pursue enforcement actions in-house.  And, as the District Court properly determined, the answer to that question is no.

The government's brief dramatically undersells the FDIC's ability to deploy other arrows from its quiver to enforce the country's banking laws and accomplish the exact same regulatory purposes, all without violating the Seventh Amendment. There is no dispute that Section 1821(k) allows the FDIC to seek "money damages" against the officers and directors of a bank by filing a civil action in federal court. It is undisputed that the FDIC often files such lawsuits against bank officers that seek money damages based on alleged breaches of common law fiduciary duties. *See* ROA.48-49 (Compl. ¶137) (collecting cases).

The FDIC insists that Section 1818(i) is markedly different from Section 1821(k) because Section 1821(k) only permits the FDIC to "act[] in its distinct capacity as a receiver or conservator of a **_failed_** bank." Opening Br. 48 (emphasis added). But, as the FDIC well knows, "insolvency is but one of many grounds for the appointment of a conservator or receiver." *Resolution Tr. Corp. v. Fleischer*, 835 F. Supp. 1318, 1325 (D. Kan. 1993). A receivership can be initiated in a wide variety of less dire circumstances, including in cases where bankers have engaged in "any unsafe or unsound practice." 12 U.S.C. § 1821(c)(5)(H).

Moreover, a proceeding under Section 1821(k) is not the only other option available to the FDIC. For example, it might have been possible for the FDIC to seek remedies against Burgess based on the same underlying allegations via a cease-and-desist proceeding under 12 U.S.C. § 1818(b), without the need for a jury.

43

Moreover, the FDIC's enabling statute authorizes the FDIC "[t]o sue and be sued." 12 U.S.C. § 1819(a). This Court has interpreted this general language as authorizing the FDIC to file federal actions seeking injunctive relief to enforce its regulations. *See FDIC v. Sumner Fin. Corp.*, 451 F.2d 898, 903-04 (5th Cir. 1971).

### 3.    The Government's Effort to Distinguish *Jarkesy* Fails.

The government next argues that this case differs from *Jarkesy* because the statute at issue there (the Exchange Act) allowed the SEC to pursue enforcement proceedings either in-house or in federal court, whereas the statute at issue here allows the FDIC to pursue enforcement proceedings only in-house. *See* Opening Br. 46-48; *see id.* at 41. Although the government is correct about the difference between the two statutes, it never explains why that difference is legally significant.

At the outset, it bears emphasis that neither Congress nor an agency can extinguish a constitutional right merely because allowing a citizen to exercise that right would be inconvenient. *See Bowsher v. Synar*, 478 U.S. 714, 736 (1986) ("[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution."); *see also* ROA.406; ROA618-619 n.8. Thus, the fact that the FDIC may be unable to pursue enforcement actions involving civil money penalties via in-house tribunals if the injunction is affirmed is of no moment. Moreover, the

FDIC could seek statutory authorization to pursue such claims in federal court if it wished.

In any event, *Jarkesy* could not have been clearer that the only relevant considerations when deciding whether the public-rights exception applies are whether the action was known at common law, whether jury trials would dismantle the statutory scheme, and whether jury trials would materially delay the disposition of claims. 34 F.4th at 453. That the FDIC can conduct enforcement proceedings under Section 1818(i) only in-house (and not in federal court) is relevant here only to the extent that it implicates one of those sub-factors. Phrased differently, the differences between the Exchange Act and the FDI Act were not the "linchpin" of the *Jarkesy* panel's public-rights holding, as the government wrongly suggests. Opening Br. at 47. Instead, those differences were, at most, relevant to one sub-factor of a factor in the *Jarkesy* test. *See Jarkesy*, 34 F.4th at 453, 456 n.6.

## C.     This Court's Decision in *Akin* Is Inapposite.

The government's next argument is that this case is purportedly "controll[ed]" by *Akin v. Office of Thrift Supervision*, 950 F.2d 1180 (5th Cir. 1992). *See* Opening Br. 44-45. Not so. *Akin* is plainly distinguishable because it involved a request for a cease-and-desist order under 12 U.S.C. § 1818**(b)** rather than, as here, a request for civil monetary penalties under 12 U.S.C. § 1818**(i)**. Section 1818(b), unlike Section 1818(i), does not explicitly authorize the FDIC to seek civil monetary penalties.

Section 1818(b) instead lists **equitable** remedies that the FDIC can impose in a cease-and-desist order, such as restitution or a command to hire qualified officers.

The government is wrong to suggest that *Akin* delivered a "holding that the public-rights doctrine defeated a claimed right to a jury trial on section 1818 enforcement claims **that sought a legal remedy**." Opening Br. 45 (emphasis added). The agency did not seek a "legal remedy" in *Akin*, and nor does *Akin* purport to deliver any holding with respect to "section 1818 enforcement claims" generally rather than a holding with respect to Section 1818(b) claims specifically.[12] In short, *Akin* is irrelevant because that case involved a request for equitable remedies rather than a request for legal remedies of the type sought here and in *Jarkesy*.

## IV. [Principal Appeal] Burgess Has Established Irreparable Harm.

The government's final contention is that the District Court erred by concluding that "the deprivation of a constitutional right 'unquestionably constitutes irreparable injury.'" ROA.349 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). In the government's telling, "the better view of the law is that a showing of a likely

---

[12] Moreover, the argument pressed by the respondent in *Akin* was that he was entitled to a jury because the Section 1818(b) action was, in his view, "a collection action on a breach of contract." 950 F.2d at 1186. The Court's cursory discussion of the jury-trial issue in *Akin* held only that Akin's particular argument was meritless because his action was not, in fact, for breach of contract. *See id.* That holding has nothing to do with the issues presented here. *See* ROA.403-405 & n.5; ROA.612-613.

violation of a constitutional right … does not automatically establish irreparable harm." Opening Br. 54. That argument is meritless for five reasons.

First, the government's theory is dead on arrival because the Supreme Court has already held that "separation-of-powers violation[s]" cause a "here-and-now injury." *PCAOB*, 561 U.S. at 513 (quoting *Bowsher*, 478 U.S. at 727 n.5). And, notwithstanding the government's puzzling claim that "this Court has not squarely addressed this issue" (Opening Br. 53), this Court has in fact repeatedly held that structural constitutional defects **do** create the requisite irreparable harm necessary for an injunction to issue. Indeed, at a prior stage **of this very case**, this Court issued a stay after finding that Burgess had "established an irreparable injury" based on "his challenge to the constitutionality of the FDIC's adjudication." *Burgess*, 871 F.3d at 304. Similarly, this Court granted an injunction pending appeal in *Cochran*. *See* Order, *Cochran v. SEC* (No. 19-10396), Dkt. 77-2 (5th Cir. Sept. 24, 2019). Stays and injunctions of these types can issue only upon a showing of irreparable harm. *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (per curiam).

Second, it is remarkable that, for all its posturing, the government never articulates any reason why an allegation of a Seventh Amendment violation would be insufficient to establish the risk of an irreparable harm. If Burgess is denied an injunction but ultimately prevails in this litigation, then he will have suffered harm in the form of being subjected to an unconstitutional proceeding. *See Cochran*, 20

47

F.4th at 212-13 ("[W]ithholding judicial consideration would injure [Ms. Cochran] by forcing her to litigate before an ALJ who is unconstitutionally insulated."). That harm cannot be remedied by monetary damages and is accordingly irreparable.

Notably, the government cites no case where any court has ever ruled that the risk of a Seventh Amendment violation does not amount to an irreparable harm. So far as Burgess is aware, every case ever to consider the issue has concluded that such violations **do** cause an irreparable harm. *Cf. Miller v. Estate of BG*, No. 3:21-cv-15, 2021 WL 5314983, at *7 (W.D. Pa. Apr. 21, 2021); *see also GTFM, LLC v. TKN Sales, Inc.*, No. 00-cv-0235, 2000 WL 364871, at *2 (S.D.N.Y. Apr. 10, 2000), *rev'd on other grounds*, 257 F.3d 235 (2d Cir. 2001).

<u>Third</u>, the government is wrong to suggest that the rule prescribed in *Elrod*— i.e., that deprivations of a constitutional right "unquestionably constitute[] an irreparable injury," 427 U.S. at 373—is somehow limited to cases "involving First Amendment rights." Opening Br. 51. This Court has reaffirmed that the *Elrod* rule applies to a variety of other constitutional protections, including both "liberty interests" protected by the Due Process Clause, *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021), and privacy rights protected by the Fourteenth Amendment, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). The government does not even attempt to explain why the *Elrod* rule would capture those constitutional violations but not the ones at issue here.

Fourth, the cases that the government cites for its proposed rule are plainly distinguishable. In *Opulent Life Church v. City of Holly Springs, Mississippi*, this Court reaffirmed the general rule that "no further showing of irreparable injury" is required in cases where "an alleged deprivation of a constitutional right is involved." 697 F.3d 279, 295 (5th Cir. 2012) (internal quotation marks omitted). But the Court also recognized a "narrow exception" to this general rule under which irreparable harm might not exist when the injury alleged is a "minor and temporary **monetary** harm." *Id.* (emphasis added). Notably, the vast majority of the cases cited by the government—including *Northeastern Florida*, *Hohe*, *Cunningham*, and *Sweis*— involve situations where the movants' claimed harms were primarily pecuniary, and ergo would fall into this exception. *See* Opening Br. 50-52. Conversely, this is **not** a case where the claimed harm is primarily monetary in nature. *See* ROA.157-160.

Fifth, even if this Court were to find that the District Court erred by not looking past the constitutional violation when analyzing irreparable harm, any such error would be harmless because the record already contains abundant evidence of irreparable harm. *See Opulent Life*, 697 F.3d at 296; *see also Texas v. United States*, 809 F.3d 134, 178 (5th Cir. 2015) (affirming an injunction on "alternate and additional grounds"). At the District Court, Burgess filed a lengthy affidavit attesting to the many irreparable harms he would suffer absent an injunction— including not just pecuniary harms, but also reputational harms (to both himself and

Herring Bank) and lost opportunities.  *See* ROA.178-181.  These injuries, which the government fails to mention, are more than sufficient grounds to affirm the finding of irreparable harm.

## V.    [Cross-Appeal] This Court Has Competent Jurisdiction Over Burgess's Cross-Appeal.

The Opening Brief argues in passing that this "Court lacks jurisdiction over Burgess's cross-appeal" because Burgess was purportedly "not aggrieved" by the Orders and therefore "has no standing to appeal."   Opening Br. 5-6 (internal quotation marks omitted).  The government is again mistaken.

A cross-appeal is a jurisdictional prerequisite when, as here, the plaintiff-appellee seeks to modify an injunction in a way that is favorable to him.  *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 250 (5th Cir. 2010). Indeed, "a party who has won an injunction … is well advised to take a cross-appeal if it wishes to argue an alternative basis for injunctive relief."  Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3904 (3d ed. Westlaw Sept. 2022); *see El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479-80 (1999).   Thus, Burgess was not only permitted to file a cross-appeal, but was **required** to do so given that he is seeking to modify the injunction.   *See Aetna Cas. & Surety Co. v. Cunningham*, 224 F.2d 478, 480 (5th Cir. 1955) (noting that a "judgment may have different qualities and legal consequences dependent on the claim on which it is based" and that, "if [a

plaintiff] was denied judgment of the quality to which it laid claim, it is a party aggrieved on appeal").

Granting Burgess's request to alter the injunction so that it extends to Counts 1 and 2 would have significant practical consequences. Most obviously, the FDIC could attempt to withdraw its request for civil monetary penalties in the Enforcement Proceeding. *Cf.* ROA.373-374. Alternatively, the agency could seek authorization from Congress to bring enforcement proceedings in federal court. If such efforts were successful, the FDIC would no doubt argue that the Seventh Amendment issue at the core of Count 3 has been "cured" and that the existing injunction should be lifted. In order to protect against that possibility, Burgess requires a modification of the existing injunction such that it is not limited to Count 3.

In any event, this Court need not labor long on the government's argument concerning jurisdiction over the cross-appeal. That is so because, even if the government were correct that the cross-appeal is improper (and it is not), the arguments presented in the remaining sections of this brief could still be considered as alternative grounds for affirmance. *See* Wright & Miller, *supra*, § 3904.

**VI.    [Cross-Appeal] The Denial of a Preliminary Injunction as to Count 2 Should Be Reversed Because the OFIA ALJs Are Unconstitutionally Shielded from Removal.**

**A.    Burgess Is Likely to Succeed on His Argument that the ALJs Used by the FDIC Enjoy Unconstitutional Protection from Removal.**

In *PCAOB*, the Supreme Court held that "dual for-cause limitations on the removal" of officers of the United States "contravene the Constitution's separation of powers" and the Take Care Clause.  561 U.S. at 492, 502-03.  In *Jarkesy*, this Court applied *PCAOB* en route to holding that removal restrictions for the ALJs used by the SEC were unconstitutional.  34 F.4th at 465.  In so holding, the panel accepted Mr. Jarkesy's "straightforward" three-part argument.  *Id.*  <u>First</u>, the Court held that the "SEC ALJs are 'inferior officers'" under *Lucia*.  *Id.* at 464-65; *accord Lucia*, 138 S. Ct. at 2055.  <u>Second</u>, the panel found that the "SEC ALJs are insulated from the President by at least two layers of for-cause protection from removal."  *Jarkesy*, 34 F.4th at 464.  And <u>third</u>, because the ALJs were officers of the United States who enjoyed double for-cause removal protection, the "statutory removal restrictions" for the SEC's ALJs "[we]re unconstitutional" under *PCAOB*.  *Id.* at 463-65.

*Jarkesy* controls this case.   There is no material difference between an ALJ used by the SEC and an ALJ used by the FDIC.  The ALJs used by the FDIC—like the members of the Accounting Board at issue in *PCAOB* and the SEC ALJs at issue in *Jarkesy*—enjoy at least two layers of protection from removal.  The first layer of protection is that the ALJs used by the FDIC cannot be removed unless the MSPB

finds that there is good cause for their termination.  5 U.S.C. § 7521(a).  The second layer of protection is that the members of the MSPB themselves enjoy for-cause protection from removal.  *Id.* § 1202(d).

In fact, the constitutional defect tainting the ALJs used by the FDIC is vastly more problematic than the defects at issue in *Jarkesy* and *PCAOB*.  That is so because the FDIC's Board cannot even initiate a proceeding to remove an ALJ unilaterally; instead, all four of the so-called Banking Agencies must unanimously agree, in writing, to begin that process.  *See supra* at 8-10.

The government conceded at the District Court that "*Jarkesy* is currently binding precedent" foreclosing its position.  Dist. Ct. Dkt. 62 at 35.  The District Court likewise agreed that Burgess's claim that "the double removal protections afforded [to] FDIC ALJs are unconstitutional **ha[s] merit**," but then denied the injunction as to Count 2 after concluding that the Court "cannot afford [Burgess] any relief as to [that] claim."  ROA.344 (emphasis added).  As explained below, that holding was incorrect.

### B.    The District Court Erred by Requiring Burgess to Show a "Compensable Harm" Attributable to the Removal Protections.

The District Court held that, in order "to obtain a remedy, [Burgess] must demonstrate not only that the removal restriction violates the Constitution, but also that 'the unconstitutional removal provision inflicted harm.'"  ROA.344 (quoting

*Collins*, 141 S. Ct. at 1788-89). That holding rests on an incorrect interpretation of *Collins*, *Cochran*, and *Community Financial*, and it should be reversed.

In *Collins*, the plaintiffs challenged certain contractual arrangements that had been brokered by the Federal Housing Finance Agency ("FHFA") on grounds that the FHFA was unconstitutionally structured. 141 S. Ct. at 1770, 1775. The Supreme Court agreed that the agency's structure was unconstitutional, and then turned to the question of remedies. The Court began its discussion by noting that the plaintiffs "no longer ha[d] a live claim for prospective relief" and that "the **only remaining ... question** concern[ed] retrospective relief." *Id.* at 1787 (emphasis added). The Court further noted that there was "no reason to regard any of the actions taken by the FHFA in relation to the [contract] as void." *Id.* The Supreme Court then clarified that this did "not necessarily mean, however, that the [plaintiffs] have no entitlement to retrospective relief." *Id.* at 1788. Instead, the plaintiffs could be entitled to retrospective relief if they could show a "compensable harm." *Id.* at 1789. As an example of a "compensable harm," the Court hypothesized a situation where the President wanted to fire an officer but was blocked by a court from doing so. *Id.*

This Court then applied *Collins* in *Community Financial*. The plaintiffs in *Community Financial* were payday lenders and other credit-access companies who challenged the validity of the CFPB's 2017 Payday Lending Rule on various grounds, including, as relevant here, a claim that the CFPB Director was

unconstitutionally shielded from removal at the time of that Rule's promulgation. *See Community Financial*, 51 F.4th at 623, 625-26.  They claimed that the Payday Lending Rule was "void *ab initio*" and sought an order "holding unlawful, enjoining enforcement of, and setting aside the 2017 Rule."  ROA.740 & nn.9-10.

This Court declined to grant the plaintiffs their requested relief based on its view that they had failed to discharge their obligation to "demonstrate that the unconstitutional removal provision caused them harm."  51 F.4th at 632.  As part of its remedial discussion, the panel stated that "*Collins* did not rest on a distinction between prospective and retrospective relief."  *Id.* at 631.

The District Court interpreted *Community Financial* to mean that, "even in cases where the plaintiff is seeking prospective relief, the plaintiff must demonstrate … that the unconstitutional removal provision inflicted harm."  ROA.345.  And because Burgess had not shown that the removal restrictions at issue "inflicted harm of the kind required under *Collins*," the District Court found that it "cannot grant [Burgess] relief for his claims regarding the removal protections."  ROA.345-346.

That holding did not account for footnote 16 of *Cochran*, which held that *Collins* is irrelevant in cases where, as here, the plaintiff merely seeks a constitutionally-compliant adjudication.  *See infra* Section VI.B.1.  Moreover, the District Court  wrongly expanded *Community Financial* beyond its facts.  *See infra*

Section VI.B.2.  The District Court also would have been required to follow *Cochran* if that case conflicted with *Community Financial*.  *See infra* Section VI.B.3.

### 1.    Footnote 16 of *Cochran* Controls this Case.

In *Cochran*, the plaintiff "did not seek review of any particular SEC order," but rather sought (1) "a declaration that SEC ALJs are unconstitutionally insulated from … removal" and (2) an "injunction" that would prospectively "bar[] the SEC from continuing its administrative proceedings against her."  20 F.4th at 213.  This Court held that the district court had jurisdiction to consider Ms. Cochran's request for those remedies, which are identical to the remedies Burgess seeks here.

In so holding, this Court explicitly rejected the dissenters' argument concerning *Collins*, which closely tracks the government's argument in this appeal.  The Court noted that "***Collins* does not impact our conclusion** in this case because Cochran does not seek to 'void' the acts of any SEC official.  Rather, she seeks an administrative adjudication untainted by separation-of-powers violations."  *Id.* at 210 n.16 (emphasis added).  Footnote 16 of *Cochran* correctly read the remedial discussion in *Collins* as limited to cases where the plaintiff sought **retrospective** relief, such as "void[ing]" an agency's prior act.  The Court found that *Collins* simply "does not impact" the analysis when a plaintiff seeks **prospective** relief, as Ms. Cochran had (and as Burgess does here).

At the very least—and regardless of whether the distinction is phrased in the argot of "prospective vs. retrospective" relief—*Cochran* plainly held that *Collins* does not forbid equitable relief to stop an ongoing proceeding before unconstitutionally insulated adjudicator(s), where the plaintiff is not seeking to "void" any already-extant agency decision. Indeed, *Cochran* specifically explained that if, as the dissent suggested, *Collins*'s remedial analysis would foreclose relief on Ms. Cochran's removal claim in a post-enforcement petition for review, that would **strengthen** the Court's conclusion that only **pre-enforcement review** offered the prospect of "**meaningful judicial review**"—because it would provide the only viable path to relief for Ms. Cochran. 20 F.4th at 210 n.16.

Relying on *Cochran*, another court within this Circuit recently agreed with the exact argument Burgess presses here. *See Consumers' Research v. Consumer Prod. Safety Comm'n*, 592 F. Supp. 3d 568, 587 (E.D. Tex. 2022) ("[T]he Fifth Circuit held in *Cochran v. SEC* that *Collins* does not apply to plaintiffs seeking prospective relief."), *appeal docketed*, No. 22-40328 (5th Cir. June 15, 2022). The District Court's Orders, which did not apply *Cochran*, must therefore be reversed.

## 2.   *Community Financial* **Is Inapposite.**

In lieu of applying *Cochran*, the District Court applied *Community Financial*. But the discussion of remedies in *Community Financial* is irrelevant to the particular

fact pattern presented in this case—i.e., a situation in which the plaintiff seeks **only** prospective relief and does not request vacatur of agency action.

The plaintiffs' lead argument in *Community Financial* was that the CFPB's Payday Lending Rule should be vacated because it was promulgated at a time when the agency's Director enjoyed an unconstitutional level of protection from removal. To the extent the plaintiffs sought prospective relief at all, that relief was limited to a request for an injunction that would block the agency from enforcing the rule on a going-forward basis due to the removability problem. *See* ROA.739-741 & n.11.

The critical difference between *Community Financial* and this case is that, in *Community Financial*, the plaintiffs' request for prospective relief would, by their own admission, stand or fall based on whether the Payday Lending Rule was vacated. In other words, whether or not the *Community Financial* plaintiffs' requested relief was conceptualized as "prospective" or "retrospective," they clearly sought to deprive a **prior** agency action of legal force. By contrast, Burgess has not asked this Court to vacate or set aside any prior action of the FDIC. Instead, Burgess's argument is that—regardless of what may have happened up to this point—the government should be enjoined from **continuing** the Enforcement Proceeding unless and until the removability defects are cured. That requested relief is totally unlike the relief sought in *Community Financial*.

From the perspective of the relief sought, this case—unlike *Collins* and *Community Financial*—is no different from *PCAOB*, where the Supreme Court held that plaintiffs challenging removability restrictions for officers were entitled to declaratory relief, and did **not** require the plaintiffs to show compensable harm.  561 U.S. at 491 n.2, 513.  *PCAOB* explained that the separation-of-powers violation in that case entitled the plaintiff "to declaratory relief sufficient to ensure that" their regulator was "accountable to the Executive."  *Id.* at 513 (quoting *Bowsher*, 478 U.S. at 727 n.5); *see Cochran*, 20 F.4th at 233 (Oldham, J., concurring).

*Community Financial* had no occasion to consider whether a plaintiff would be required to show a "compensable harm" in a case where, as here, he or she requests **only** prospective relief, and nothing about the plaintiff's entitlement to prospective relief depends in any way on whether retrospective relief is also warranted.  Moreover, as explained below, any broader interpretation of *Community Financial* would make that case irreconcilable with the en banc decision in *Cochran*.

### 3.    In the Event that this Court Discerns a Conflict Between *Cochran* and *Community Financial*, It Must Follow *Cochran*.

This Court has repeatedly held that, when two of its opinions are "in conflict," courts in this Circuit are "bound to follow … the earlier decision of th[e] court on the subject."  *Matter of Howard*, 972 F.2d 639, 641 (5th Cir. 1992).  That rule applies with special force when the earlier decision is an en banc opinion.  *See Racal Survey U.S.A., Inc. v. M/V COUNT FLEET*, 231 F.3d 183, 190 n.7 (5th Cir. 2000).

Thus, to the extent that *Community Financial* conflicts with *Cochran*, this Court would be required to follow *Cochran*. And such a conflict clearly exists, assuming *Community Financial* is interpreted to apply to the facts of this case. *Cochran*'s holding that *Collins* does not "impact" the remedial analysis when the plaintiff seeks only prospective relief to ensure "an administrative adjudication untainted by separation-of-powers violations," 20 F.4th at 210 n.16, is clearly in conflict with *Community Financial*'s statement that "*Collins* did not rest on a distinction between prospective and retrospective relief," 51 F.4th at 631, to the extent the latter is applied to the circumstances here.

It also bears mention that *Community Financial* may well have been decided differently if the panel had been made aware of the import of the *Cochran* decision for its remedial analysis. But *Cochran* was never cited in the *Community Financial* briefs and was not discussed at argument. *See supra* at 31.

## VII.  [Cross-Appeal] The Denial of a Preliminary Injunction as to Count 1 Should Be Reversed Because the Structure of the FDIC's Board Violates the Constitution.

Since the Founding, it has been understood that the executive power granted to the President in Article II "include[s] a power to oversee executive officers through removal." *PCAOB*, 561 U.S. at 492; *see Jarkesy*, 34 F.4th at 463.  The Supreme Court's decision in *Seila Law* synthesized the prior case law concerning limits on the President's removal power into an easy-to-administer rule:  Congress

may not interfere with the President's "unrestricted removal power," subject only to "two exceptions." 140 S. Ct. at 2198. The first exception is that Congress may constrain the President's ability to remove "**inferior** officers with limited duties and no policymaking or administrative authority." *Id.* at 2200 (emphasis added). The second exception is that Congress may constrain the President's ability to remove **principal** officers only when they serve as the heads of "multimember expert agencies that do not wield substantial executive power." *Id.* at 2199-2200.

The FDIC's Board is unconstitutional under *Seila Law*. There can be no debate that the members of the FDIC's Board are "principal" officers who are the heads of a multimember expert agency. *See* 12 U.S.C. § 1812(a)(1). Nor can it be seriously contended that the FDIC does not "wield[] substantial executive power." Indeed, the FDIC's arsenal of executive powers closely resembles the list of "quintessentially executive powers" that the Supreme Court enumerated in *Seila Law*. 140 S. Ct. at 2200. For example, *Seila Law* found that the CFPB Director wielded executive power because he could, "though administrative adjudications," bring "the coercive power of the state to bear on millions of private citizens." *Id.* at 2200-01. The same is true of the FDIC Board, which has authority to conduct adjudications that have a profound effect on regulated parties and the nation at large. And *Seila Law* concluded that the CFPB Director wielded executive power because he was empowered "to seek daunting monetary penalties against private parties."

*Seila Law*, 140 S. Ct. at 2200.  The FDIC Board again has the same authority and has invoked it here.  *See* 12 U.S.C. § 1818(i).

Because the members of the FDIC's Board are (1) principal officers who (2) serve as the head of an agency that "wield[s] substantial executive power," the President must be able to fire those officers at will.  Congress has nonetheless insulated a majority of the FDIC's Board from removal.  *See* 12 U.S.C. § 1812(c)(1).  Burgess is likely to succeed on the merits of his claim that this arrangement is unconstitutional.  *See Consumers' Research*, 592 F. Supp. 3d at 585-89 (holding that the structure of the Consumer Product Safety Commission, which is materially the same as that of the FDIC, violates *Seila Law*); *Feds for Med. Freedom v. Biden*, No. 22-40043, 2023 WL 2609247, at *20 (5th Cir. Mar. 23, 2023) (en banc) (Ho, J., concurring) ("In an appropriate case, we should consider whether laws that limit the President's power to remove Executive Branch employees are consistent with the vesting of executive power exclusively in the President."); *see also* ROA.149-150 & nn.2-5.

The District Court concluded that Burgess's "claim[] that the FDIC Board structure … [is] unconstitutional ha[s] merit," but nonetheless denied an injunction because Burgess had not demonstrated a "compensable harm" attributable to the unconstitutionality of the FDIC's structure. ROA.344.  As explained in Section VI.B above, the "compensable harm" requirement does not apply to suits of this type.

Thus, the District Court's denial of a preliminary injunction as to Count 1 should be reversed for the same reasons applicable to the denial of an injunction on Count 2.

## CONCLUSION

The District Court's Orders should be affirmed in part and reversed in part. The portions of the Orders finding that the District Court had jurisdiction and issuing a preliminary injunction on Count 3 should be affirmed. The portions of the Orders denying a preliminary injunction as to Counts 1 and 2 should be reversed.

Dated:  March 31, 2023

Respectfully submitted,

*/s/ Manuel G. Berrelez*

Manuel G. Berrelez
   *Attorney of Record*
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 77002
Phone: (214) 220-7700
Facsimile: (214) 220-7716
Email: mberrelez@velaw.com

Michael A. Heidler
VINSON & ELKINS LLP
200 West 6th Street
Suite 2500
Austin, Texas 78701
Phone: (512) 542-8400
Facsimile: (512) 542-8612
Email: mheidler@velaw.com

James T. Dawson
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: (202) 639-6588
Facsimile: (202) 639-6500
Email: jamesdawson@velaw.com

*Counsel for Appellee/Cross-Appellant*
*Cornelius Campbell Burgess*

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that, on March 31, 2023, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Dated:  March 31, 2023

*/s/ Manuel G. Berrelez*
Manuel G. Berrelez
  *Attorney of Record*
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 77002
Phone: (214) 220-7700
Facsimile: (214) 220-7716
Email: mberrelez@velaw.com

*Counsel for Appellee/Cross-Appellant*
*Cornelius Campbell Burgess*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 28.1(e)(2)(B)(i) and Fifth Circuit Rule 32.2 because it contains 15,193 words, excluding the parts of the filing exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

Dated:  March 31, 2023                     */s/ Manuel G. Berrelez*
                                           Manuel G. Berrelez
                                               *Attorney of Record*
                                           VINSON & ELKINS LLP
                                           Trammell Crow Center
                                           2001 Ross Avenue, Suite 3900
                                           Dallas, Texas 77002
                                           Phone: (214) 220-7700
                                           Facsimile: (214) 220-7716
                                           Email: mberrelez@velaw.com

                                           *Counsel for Appellee/Cross-Appellant*
                                           *Cornelius Campbell Burgess*