# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

CORNELIUS CAMPBELL BURGESS,

*Appellee/Cross-Appellant*,

v.

JENNIFER WHANG, in her official capacity as an Administrative Law Judge;
FEDERAL DEPOSIT INSURANCE CORPORATION;
MARTIN J. GRUENBERG, in his official capacity as Acting Chairman of the FDIC;
MICHAEL J. HSU, in his official capacity as a Director of the FDIC; ROHIT CHOPRA,
in his official capacity as a Director of the FDIC,

*Appellants/Cross-Appellees*.

───────────────────

Appeal from the United States District Court for the Northern District of Texas
No. 7:22-cv-100 — The Honorable Reed O'Connor, U.S. District Judge, Presiding

───────────────────

## BRIEF OF THE CATO INSTITUTE
## AS *AMICUS CURIAE* IN SUPPORT OF
## APPELLEE/CROSS-APPELLANT

───────────────────

Thomas A. Berry
    *Counsel of Record*
Isaiah McKinney
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
443-254-6330
tberry@cato.org

April 7, 2023

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**
CASE NO. 22-11172

*Burgess v. FDIC, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to Case |
| --- | --- |
| Thomas Berry | Counsel to *Amicus* |
| Isaiah McKinney | Counsel to *Amicus* |
| Cato Institute | *Amicus curiae* |

*Amicus* Cato Institute is a Kansas nonprofit corporation that has no parent companies, subsidiaries, or affiliates, and does not issue shares to the public.

/s/ Thomas A. Berry

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ............................................................................. i

TABLE OF AUTHORITIES ............................................................................. iii

INTEREST OF *AMICUS CURIAE* ............................................................. 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................... 1

ARGUMENT ................................................................................................... 4

   I.  The Constitution Requires Separation of Government Powers and
      Protections for the Accused ....................................................................... 4

   II. This Type of Action Existed at Common Law, and There is a Right to a
      Jury Trial Under *Jarkesy* ....................................................................... 10

CONCLUSION ............................................................................................... 13

CERTIFICATE OF COMPLIANCE ............................................................... 15

CERTIFICATE OF SERVICE ........................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atcheson v. Everitt*, 98 Eng. Rep. 1142 (K.B. 1775) ................................................10

*Atlas Roofing Co. v. OSHRC*, 430 U.S. 442 (1977) ..................................................9

*Burgess v. FDIC*, No. 7:22-cv-00100-O, 2022 U.S. Dist. LEXIS 213050 (N.D. Tex. Nov. 6, 2022) ..............................................................................2, 3

*Calcraft v. Gibbs*, 101 Eng. Rep. 11 (K.B. 1792)....................................................11

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1989) ..................................................................................................... 12, 13

*Cox v. Mundy*, 96 Eng. Rep. 267 (K.B. 1764) ........................................................11

*Crowell v. Benson*, 285 U.S. 22 (1932) ....................................................................9

*Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014) ....................................4

*Gervys v. Cooke*, Mich. 14 Hen. 8, pl. 5, 119 S.S. 108 (C.P. 1522).......................12

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).........................................4, 9

*Hastynges v. Beverley*, Pasch. 2 Ric. 2, Ames 121 (C.P. 1379) .............................12

*Hepner v. United States*, 213 U.S. 103 (1909) .......................................................10

*In re Margery*, Y.B. Trin. 2 Hen. 6, pl. 4, fol. 12b, 13a (C.P. 1424)......................12

*Jacob v. United States*, 13 F. Cas. 267 (1821).........................................................11

*Jarkesy v. S.E.C.*, 34 F.4th 446 (5th Cir. 2022) ........................................... 2, 9, 10

*Lucia v. Sec. & Exch. Comm.*, 138 S. Ct. 2044 (2018)............................................2

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1856) ........................................................................................... 4, 7, 8

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365 (2018) ................................................................................................ *passim*

*Okden v. Keynel*, 83 Eng. Rep. 243 (K.B. 1680) ...................................................11

*Patterson v. United States*, 15 U.S. 221 (1817)......................................................11

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015)..................................................5

*Stern v. Marshall*, 564 U.S. 462 (2011)................................................................4, 8

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985)..........................9

*Tull v. United States*, 481 U.S. 412 (1987) ...................................................... 1, 10

iii

*United States v. Giles*, 13 U.S. 212 (1815) ............................................................11

*United States v. Mundell*, 27 F. Cas. 23 (1795) ....................................................11

*United States v. Regan*, 232 U.S. 37 (1914) ..........................................................10

*Untied States v. Tenbroek*, 28 F. Cas. 33 (Cir. Ct. D. Penn. 1815) ........................11

Y.B. Hil. 19 Hen. 6, pl. 6, fol. 49b (C.P. 1441) ....................................................13

**Constitutional Provisions**

U.S. Const. amend. VII ............................................................................................1

U.S. Const. art. I, § 1 ..............................................................................................5

U.S. Const. art. III, § 1 ............................................................................................5

U.S. Const. art. III, § 2 ............................................................................................5

**Other Authorities**

Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559 (2007) ............................................................................................ 4, 7, 8

Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559 (2002) ......................................................................8

*Case of the Mayor and Burgess of Lynne Regis, concerning Minosmer of Corporations*, X Reports of Edward Coke 122 (1777) ......................................11

David J. Seipp, *Trust and Fiduciary Duty in the Early Common Law*, 91 B.U. L. Rev. 1011 (2011) .................................................................................. 12, 13

Gary Lawson, *The Rise and Rise of the Administrative State*, 107 Harv. L. Rev. 1231 (1994) ..........................................................................................6

Ilan Wurman, *Constitutional Administration*, 69 Stan. L. Rev. 359 (2017) .............5

John Harrison, *Public Rights, Private Privileges, and Article III*, 54 Ga. L. Rev. 143 (2019) ............................................................................................7, 8

Rachel E. Barkow, *Separation of Powers and the Criminal Law*, 58 Stan. L. Rev. 989 (2006) ..........................................................................................6

Steven G. Calabresi & Gary Lawson, *The Depravity of the 1930s and the Modern Administrative State*, 94 Notre Dame L. Rev. 821 (2018) ......................6

The Federalist No. 78 (Alexander Hamilton) ......................................................5, 6

The Federalist No. 79 (Alexander Hamilton) ..........................................................5

William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511 (2020) ............................................................................................................7

William Bradford Reynolds, *Originalism and the Separation of Powers*, 63
Tul. L. Rev. 1541 (1989)........................................................................5

# INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute was established in 1977 as a nonpartisan public policy research foundation dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to promote the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato publishes books and studies, conducts conferences, and issues the annual *Cato Supreme Court Review*. This case interests Cato because the separation of powers is crucial to the protection of individual liberty and property. When the government deprives individuals of these rights through unaccountable administrative processes, it raises serious constitutional issues.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Seventh Amendment guarantees the right to a jury trial for "suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. If an action is akin to a suit that would have historically been brought at law, rather than equity, then the defendant is entitled to a jury trial. *Tull v. United States*, 481 U.S. 412, 417 (1987).

---

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in any part. No person or entity other than *amicus* made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

But in some situations, Congress can statutorily grant adjudicative authority to non-Article III, non-jury tribunals without violating the jury provision of the Seventh Amendment. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1379 (2018). In the Fifth Circuit, the test to determine whether a proceeding requires a jury hinges on whether the action would have arisen at common law. *See Jarkesy v. S.E.C.*, 34 F.4th 446, 454 (5th Cir. 2022).

Mr. Cornelius Burgess served as the CEO of Herring Bank from 2000 to 2012. *Burgess v. FDIC*, No. 7:22-cv-00100-O, 2022 U.S. Dist. LEXIS 213050, at *4–5 (N.D. Tex. Nov. 6, 2022). The Federal Deposit Insurance Corporation (the "FDIC") initiated an investigation of Mr. Burgess for allegedly improper use of bank funds, and the agency later brought an enforcement action against him. *Id.* The FDIC sought $200,000 in civil penalties, along with the removal of Mr. Burgess from his position at the bank and other injunctive relief. *Id.* The FDIC brought the action before an Administrative Law Judge (an "ALJ"), and the ALJ ordered Mr. Burgess removed and fined him $200,000. *Id.* at *6.

After the agency issued a final decision, Mr. Burgess sought review in the Fifth Circuit, which stayed the final order and remanded it back to the FDIC for further consideration in light of the Supreme Court's decision in *Lucia v. Sec. & Exch. Comm.*, 138 S. Ct. 2044, 2055 (2018). *See Burgess*, No. 7:22-cv-00100-O, at *6–7. Eventually the case was assigned to ALJ Whang, who issued a Recommended

Decision that Mr. Burgess be removed and fined a $200,000 civil penalty. *Id.* Mr. Burgess then filed this lawsuit in the United States District Court for the Northern District of Texas, challenging the constitutionality of the administrative proceedings. *Id.* at *8. Among his claims, Mr. Burgess challenged the ALJ's factfinding in his case as violating his Seventh Amendment right to a jury trial. *Id.*

Jury trials, although not required in all administrative actions, are required if the suit was an action available at common law at the time of the Seventh Amendment's adoption and if a jury trial would not upset the statutory scheme. The Supreme Court has held that suits for civil penalties, like the one the FDIC brought against Mr. Burgess, were actions available at common law during the Framing Era. Not only has the Supreme Court affirmed this multiple times, but history is replete with examples of jury trials in this type of action.

Further, this system of executive adjudication, used by the FDIC and other agencies, is not consistent with our constitutional order, and it yields predictably biased and unfair results. The Constitution separates government powers and guarantees fair and impartial adjudication procedures to prevent arbitrary deprivations of life, liberty, and property. Although our legal traditions allow executive-branch factfinding in a narrow set of cases that do not involve vested private rights, this is not one of those cases. The FDIC may not strip a citizen of his or her liberty and property via an executive-branch adjudication.

Because of the denial of his constitutional right to a jury trial, Mr. Burgess has been deprived of his liberty and property without due process of law, regardless of the merits of the enforcement action. This Court should apply Fifth Circuit and Supreme Court precedent and affirm the lower court's order on the jury trial issue.

## ARGUMENT

I. **The Constitution Requires Separation of Government Powers and Protections for the Accused**

The adjudicative powers of the Executive Branch are limited. *See Oil States*, 138 S. Ct. at 1373; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989). In most cases, the Constitution's separation of powers requires the government to bring civil penalty suits against private persons in Article III courts, subject to impartial adjudication by independent judges and lay juries. *See Stern v. Marshall*, 564 U.S. 462, 482–84 (2011). Administrative adjudications are an exception to that rule, permissible only when a suit concerns public rights and privileges, not the vested liberty and property rights of private citizens. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32–33 (2014); *see also Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 275–76 (1856) (explaining that the Article III "judicial power" analysis also asks whether the government is threatening "liberty or property" without due process of law); Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 563 (2007).

This separation of powers between the Judicial and Executive Branches is a bedrock principle recognized since the Founding. The Framers deliberately separated the centers of power in the new federal government so that it could be effective while simultaneously protecting individual rights. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 116–19 (2015) (Thomas, J., concurring); *see also* William Bradford Reynolds, *Originalism and the Separation of Powers*, 63 Tul. L. Rev. 1541, 1550–51, n.31 (1989) ("The framers . . . had a deep and distrustful vision of . . . the corrupting effects of unchecked power . . . ."). The Framers achieved this balance by two steps: First, they vested the political powers—legislative and executive—in two representative branches, *see* U.S. Const. art. I, § 1; *id.* art. II, § 1, cl. 1, while entrusting the judicial power to a separate, independent branch, see *id.* art. III, § 1; *see also* The Federalist Nos. 78, 79 (Alexander Hamilton). Second, they incorporated individualized safeguards for those accused of wrongdoing. Among these were the ancient common law rights to due process and trial by jury. U.S. Const. art. III, § 2, cl. 3; *id.* amends. IV–VII.

When combined, these features ensure that no person is deprived of the rights to life, liberty, or property without a broad political and legal consensus: "a law permitting such deprivation, an executive deci[sion] to enforce that law, and a court adjudicat[ion of] the facts" in front of an impartial judge and lay jury. Ilan Wurman, *Constitutional Administration*, 69 Stan. L. Rev. 359, 370 (2017). Building that

consensus is difficult—but that is the point. "[T]he Framers weighed the need for federal government efficiency against the potential for abuse and came out heavily in favor of limiting federal government power. . . ." Rachel E. Barkow, *Separation of Powers and the Criminal Law*, 58 Stan. L. Rev. 989, 1017 (2006).

But in the ensuing two centuries, the political branches have often pushed for more expedient arrangements. As the Framers expected, temporary "ill humors" sometimes "occasion . . . innovations in the government" that cut against traditional checks and balances. The Federalist No. 78, at 469 (Alexander Hamilton) (Clinton Rossiter ed., 1961); *see* Steven G. Calabresi & Gary Lawson, *The Depravity of the 1930s and the Modern Administrative State*, 94 Notre Dame L. Rev. 821, 829–30 (2018). And the right to a full adjudicative process in an independent forum has, in certain instances, been weakened or eliminated. *See* Gary Lawson, *The Rise and Rise of the Administrative State*, 107 Harv. L. Rev. 1231, 1246–48 (1994). Attempts to replace the jury trial with an ALJ executive adjudication process in administrative cases is one of the ways this constitutional right has been weakened.

Even though executive adjudication often runs afoul of the Seventh Amendment, our legal traditions have always allowed *some* executive-branch adjudications in limited situations. *See Oil States*, 138 S. Ct. at 1373. Indeed, a person's procedural right to an Article III tribunal (and all its attendant constitutional protections) has always turned on what substantive interests hung in the balance. On

the one hand, there are "private right[s]," which must be adjudicated in "the common law, . . . equity, or admiralty" courts. *Murray's Lessee*, 59 U.S. at 284–85. On the other hand, there are private privileges tied to "public rights," for which something less than an Article III process is required. *Id.*; *Oil States*, 138 S. Ct. at 1373 (noting that Congress has "significant latitude to assign adjudication of public rights to entities other than Article III courts"); Nelson, *Adjudication*, *supra*, at 466–69; William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1536 (2020) ("[T]he so-called 'public rights' doctrine really describes a set of adjudications that are permissible because they are a form of executive power and usually do not involve deprivations of life, liberty, or property.").

How can courts distinguish the two? As traditionally understood, the "private rights" label encompasses interests in life, liberty, and property that have fully vested in private persons and are thus entitled to Article III adjudication. *See* Nelson, *Adjudication*, *supra*, at 565–67. "Public rights," by contrast, are "the ownership interests of the government," which it may tentatively confer on private persons as privileges or benefits. John Harrison, *Public Rights, Private Privileges, and Article III*, 54 Ga. L. Rev. 143, 163–64, 166–70 (2019); Nelson, *Adjudication*, *supra*, 567–69. Such privileges and benefits, which include licenses, patents, and other government largesse, belong to the government. *See Oil States*, 138 S. Ct. at 1373–74. As such, the government can keep these privileges from fully vesting in private

hands (and thus becoming private rights) and can impose special encumbrances and conditions. *See* Nelson, *Adjudication*, *supra*, at 583; Harrison, *supra*, at 170.

One type of valid condition on such public rights is that the recipient assent to adjudication in an executive-branch tribunal. *See Oil States*, 138 S. Ct. at 1374–75; Harrison, *supra*, at 179. When legitimately imposed, this requirement can establish an administrative agency as the sole adjudicator of a privilege or public right, due to the government's sovereign immunity from compulsory process in the Article III courts. *See Murray's Lessee*, 59 U.S. at 284; *see also* Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559, 1574–78 (2002) (explaining the principle of sovereign immunity). Executive adjudication in these situations is constitutional precisely because the adjudication does not deprive individuals of vested private rights. Instead, it only affects those interests that the government, on behalf of the public, can distribute and withdraw at will. *See Murray's Lessee*, 59 U.S. at 284.

As the administrative state has expanded, the Supreme Court has sometimes loosened the "public rights" exception's narrow boundaries, and precedent on the meaning of a "public right" has "not been entirely consistent." *Oil States*, 138 S. Ct. at 1373 (quoting *Stern*, 564 U.S. at 488). In some contexts, for example, the Court has allowed private rights affiliated with certain regulatory schemes to be adjudicated (at least initially) outside of the Article III courts. See *Crowell v. Benson*,

285 U.S. 22, 51–65 (1932). In others, the Court has expanded the concept of "public rights" to sweep in traditionally private rights impacted by certain regulatory regimes. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 589–90, 593–94 (1985); *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 450–56 (1977). But the Court has also held that a statutory right may be a private right, if is "not closely intertwined with a federal regulatory program . . . and if that right neither belongs to nor exists against the Federal Government." *Granfinanciera*, 492 U.S. at 54–55 (recognizing that a bankruptcy trustee's statutory right to recover from fraud is a private right).

Although the Supreme Court precedent has been murky at times, the Fifth Circuit has been clear. *Jarkesy* created a two-step test for the "public rights" exception, which starts with analyzing whether the "actions' claims arise at common law under the Seventh Amendment." *Jarkesy*, 34 F.4th at 453. For statutory rights, courts examine whether the suit is for "common-law-like legal remedies." *Id.* at 452. If a suit is for common-law claims, the "court must determine whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." The test proceeds with two steps:

> (1) whether Congress creat[ed] a new cause of action, and remedies therefor, unknown to the common law, because traditional rights and remedies were inadequate to cope with a manifest public problem; and (2) whether jury trials would go far to dismantle the statutory scheme or impede swift resolution of the claims created by statute.

*Id.* at 453 (internal quotations omitted). Both the initial step and the two-part statutory analysis ask whether the action was a common-law action. Here, the type of civil penalty action that Mr. Burgess faces—FDIC's suit for a monetary remedy—was a common law action, as both the Supreme Court's precedents and history show. Rather than being subject to an executive adjudication, Mr. Burgess is entitled to a jury trial under both Supreme Court precedent and this court's precedent in *Jarkesy*.

## II. This Type of Action Existed at Common Law, and There is a Right to a Jury Trial Under *Jarkesy*

Both the Supreme Court and the Fifth Circuit have recognized that actions for civil penalties are suits for "common-law-like legal remedies" and that defendants in such actions have the right to a jury trial. *See Tull*, 481 U.S. at 418–19; *Jarkesy*, 34 F.4th at 452. *See also Hepner v. United States*, 213 U.S. 103, 115 (1909) (explaining in dicta that a defendant in a civil penalties case was entitled to a jury); *United States v. Regan*, 232 U.S. 37, 46–47 (1914) (same). The English and American common-law histories also show that civil penalty actions were common-law actions in which the defendant was entitled to a jury.

The Supreme Court explained in *Tull* that civil penalty suits are analogous to actions for debt, which were common-law suits in England and early America. *Tull*, 481 U.S. at 418. The early English cases themselves affirmed this point: In *Atcheson v. Everitt*, the court explained that penalty suits, such as actions for debt, are civil cases and heard at common law. 98 Eng. Rep. 1142, 1142–43 (K.B. 1775). And in a

1774 *qui tam* action, the court stated that civil suits for debt and penalties are actions at common law. *Cox v. Mundy*, 96 Eng. Rep. 267, 267 (K.B. 1764). Some other examples of jury trials in civil penalty suits, in chronological order, include a suit for civil penalties in 1680, where the defendant faced a jury trial for not going to church. *Okeden v. Keynel*, 83 Eng. Rep. 243, 243 (K.B. 1680). In another civil penalty case, the mayor brought a debt action before a jury. *Case of the Mayor and Burgess of Lynne Regis, concerning Misnosmer of Corporations*, X Reports of Edward Coke 122, 122 (1777). Finally, a jury heard an action for debt for a penalty over game laws. *Calcraft v. Gibbs*, 101 Eng. Rep. 11, 11–12 (K.B. 1792).

In early America, civil penalty suits were also heard before juries. In 1795, just three years after the ratification of the Seventh Amendment, a jury trial was granted in a statutory civil penalty action. *United States v. Mundell*, 27 F. Cas. 23, 25 (1795). Similarly, a civil penalty action for debt for violating a duty tax law was granted a jury trial. *Jacob v. United States*, 13 F. Cas. 267, 268–70 (1821). In *Untied States v. Tenbroek*, the United States commenced an action in debt for a penalty for operating a still without a license, which was heard before a jury. 28 F. Cas. 33 (Cir. Ct. D. Penn. 1815), *aff'd*, 15 U.S. 248, 258 (1817). Other actions in debt brought by the government, such as for bond penalties, were also entitled to a jury. *See United States v. Giles*, 13 U.S. 212, 230–32 (1815); *Patterson v. United States*, 15 U.S. 221, 222–24 (1817).

Here, the government is seeking a civil penalty of $200,000 against Mr. Burgess. Since the Supreme Court has held, and the history shows, that civil penalty actions like this are entitled to a jury trial, Mr. Burgess has a right to a jury in this action.

Not only is a jury required here because this is a civil penalty case and civil penalty suits were suits at law, but some suits for breach of fiduciary duty were common-law actions, even though many were heard at equity. *Compare* David J. Seipp, *Trust and Fiduciary Duty in the Early Common Law*, 91 B.U. L. Rev. 1011 (2011), *with Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567 (1989). In *Gervys v. Cooke*, the court recognized that the common law created fiduciary duties and relationships. Mich. 14 Hen. 8, pl. 5, 119 S.S. 108 (C.P. 1522) (Seipp Database No. 1522.014ss)[2] ("[I]t is not conscience that makes [fiduciary relationships] but common reason, which is common law . . . ."). And common law courts awarded damages for breach of fiduciary duties. *See Hastynges v. Beverley*, Pasch. 2 Ric. 2, Ames 121, 122 (C.P. 1379) (Belknap, C.J.C.P.) (Seipp Database No. 1379.009am)[3] (discussed by Seipp, *supra*, at 1034); *In re Margery*, Y.B. Trin. 2 Hen. 6, pl. 4, fol. 12b, 13a (C.P. 1424) (Seipp Database No. 1424.002)[4] (violators of fiduciary duty were required to repay the waste from their own wealth,

---

[2] Available at https://tinyurl.com/bdhnpkpf.
[3] Available at https://tinyurl.com/3rzrxexf.
[4] Available at https://tinyurl.com/2tcs6syf.

as discussed by Seipp, *supra*, at 1034); Y.B. Hil. 19 Hen. 6, pl. 6, fol. 49b (C.P. 1441) (Seipp Database No. 1441.033)[5] (same, as discussed by Seipp, *supra*, at 1034). So even though most suits for fiduciary duty were heard at equity, *see Terry*, 494 U.S. at 567, these cases show that some fiduciary duty suits involved damages at law.

Mr. Burgess is entitled to a jury under *Jarkesy*. The government is seeking $200,000 in damages against Mr. Burgess for allegedly breaching his fiduciary duties. Civil penalty actions, just like the FDIC's action against Mr. Burgess, were well-recognized common-law actions, both in England and the United States. Suits for damages for breach of fiduciary duty were also sometimes suits at common law and not just equity. This type of civil penalty was a familiar action at common law and would have been guaranteed a right to a jury trial at common law. Mr. Burgess is entitled to a jury.

## CONCLUSION

The Seventh Amendment provides a right to a jury trial in civil cases at common law. When an agency brings an action against someone to deprive them of personal rights like property, a private right, not a public one, is at stake and the individual is entitled to a jury trial. This Court should affirm the lower court's decision on the jury trial issue.

---

[5] Available at https://tinyurl.com/ydx3yc62.

Respectfully submitted,

*/s/ Thomas A. Berry*

DATED: April 7, 2023

Thomas A. Berry
  *Counsel of Record*
Isaiah McKinney
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
443-254-6330
tberry@cato.org

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because it contains 3,311 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman, 14-point font.

*/s/ Thomas A. Berry*

April 7, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ *Thomas A. Berry*

April 7, 2023