## Case No. 22-11172

_____

# United States Court of Appeals
# for the Fifth Circuit

_____

### CORNELIUS CAMPBELL BURGESS,

*Plaintiff-Appellee/Cross-Appellant,*

— v. —

### JENNIFER WHANG, IN HER OFFICIAL CAPACITY AS AN ADMINISTRATIVE LAW JUDGE; FEDERAL DEPOSIT INSURANCE CORPORATION; MARTIN J. GRUENBERG, IN HIS OFFICIAL CAPACITY AS ACTING CHAIRMAN OF THE FDIC; MICHAEL J. HSU, IN HIS OFFICIAL CAPACITY AS A DIRECTOR OF THE FDIC; ROHIT CHOPRA, IN HIS OFFICIAL CAPACITY AS A DIRECTOR OF THE FDIC,

*Defendants-Appellants/Cross-Appellees.*

_____

On Appeal from the United States District Court for the Northern District of Texas (Wichita Falls Division), No. 7:22-cv-00100-O, Hon. Reed O'Connor

_____

## RESPONSE AND REPLY BRIEF OF APPELLANTS/CROSS-APPELLEES

_____

B. AMON JAMES
Assistant General Counsel
J. SCOTT WATSON
Senior Counsel
JOSEPH BROOKS
Counsel
**FEDERAL DEPOSIT INSURANCE CORPORATION**
3501 Fairfax Drive, Room VS-D-7010
Arlington, VA 22226
Tel: (703) 562-2054 | Fax: (703) 562-2469

May 1, 2023                    *Counsel for Appellants/Cross-Appellees*

_____

## CERTIFICATE OF INTERESTED PERSONS

Appellants/Cross-Appellees (FDIC Appellants) are not required to provide a certificate of interested persons under 5th Cir. R. 28.2.1 as the Federal Deposit Insurance Corporation (FDIC) is a federal agency established under 12 U.S.C. § 1811 and all remaining FDIC Appellants are individuals acting in their official governmental capacities.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.......................................................i

TABLE OF CONTENTS................................................................................ii

TABLE OF AUTHORITIES........................................................................iv

PRELIMINARY STATEMENT......................................................................1

STATEMENT OF JURISDICTION.................................................................6

STATEMENT OF THE ISSUES.....................................................................6

STATEMENT OF THE CASE........................................................................6

SUMMARY OF ARGUMENT.......................................................................7

ARGUMENT.............................................................................................9

   I.   Section 1818(i) Explicitly Precludes District-Court Jurisdiction Here..............9

      A.  *Cochran's* Interpretation of *Bank of Louisiana* Forecloses
          Jurisdiction Over All of Burgess's Claims.................................................9

      B.  Burgess's Arguments About Why *Cochran's* Interpretation
          of *Bank of Louisiana* is Flawed Are Legally Irrelevant and
          Otherwise Meritless...............................................................................19

      C.  The Supreme Court's *Axon* Decision Leaves Undisturbed the
          Parts of *Cochran* and *Bank of Louisiana* That Address *Explicit*
          Preclusion of Jurisdiction and Also Provides Additional Support
          for the Conclusion That Section 1818(i) *Explicitly* Precludes
          District-Court Jurisdiction Here............................................................23

      D.  Even If This Court Had Not Already Decided the Issue in *Cochran*
          and *Bank of Louisiana*, Section 1818(i) Would Still *Explicitly*
          Preclude Jurisdiction Over All of Burgess's Claims..............................26

  II.  The Preliminary Injunction Should Be Vacated For The Additional
      And Alternative Reason That This Court Has Already Held There Is
      No Right To A Jury Trial Of Section 1818 Enforcement Claims.................32

A.    FDIC Appellants Timely Raised in the District Court Their Arguments Concerning Burgess's Seventh Amendment Claim..............33

B.    *Akin* is Controlling Circuit Law Holding There Is No Right To a Jury Trial of Section 1818 Enforcement Claims...................................36

C.    This Court's Decision in *Jarkesy v. SEC* Is Not Controlling here..........39

III.   The District Court Correctly Ruled That Burgess Is Not Likely To Succeed On The Merits Of His Improper-Removal-Protection Claims Because He Did Not Show The Requisite Harm Required For Such Claims.............................................................................................................43

IV.   Burgess Did Not Establish Irreparable Harm.................................................47

CONCLUSION.................................................................................................52

CERTIFICATE OF SERVICE.....................................................................53

CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)...............................54

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Akin v. Office of Thrift Supervision,*
  950 F.2d 1180 (5th Cir. 1992).................................................4, 5, 7, 8, 33, 34, 36-39

*Ali v. Federal Bureau of Prisons,*
  552 U.S. 1 (1997)..........................................................................................30

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n,*
  430 U.S. 442 (1977)...............................................................................40, 42, 43

*Axon Enter., Inc. v. FTC,*
  598 U.S. ---, 143 S.Ct. 890 (12023)....................................................3, 23-26, 28, 29

*Bank of Louisiana v. FDIC,*
  919 F.3d 916 (5th Cir. 2019)..............................................1-5, 7, 9-21, 23, 25-27

*BedRoc Ltd., LLC v. United States,*
  541 U.S. 176 (2004)......................................................................................27

*Benisek v. Lamone,*
  --- U.S. ---, 138 S.Ct. 1942 (2018)...............................................................51

*Black v. North Panola Sch. Dist.,*
  461 F.3d 584 (5th Cir. 2006)........................................................................35

*BST Holdings, LLC v. OSHA,*
  17 F.4th 604 (5th Cir. 2021).........................................................................49

*Burgess v. FDIC,*
  871 F.3d 297 (5th Cir. 2017).........................................................................48

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022), *cert. filed* Jan.30, 2023 (U.S. No.22-714)...............45

*Central Pines Land Co. v. United States,*
  274 F.3d 881 (5th Cir. 2001).........................................................................16

*CFPB v. Law Offices of Crystal Maroney, P.C.,*
  63 F.4th 174 (2d Cir. 2023)..........................................................................45

*Chambless Enters., LLC v. Redfield,*
  508 F. Supp. 3d 101 (W.D. La. 2020)..................................................49

*Clark v. Martinez,*
  543 U.S. 371 (2005)...........................................................................32

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enter., Inc. v. FTC,*
  598 U.S. ---, 143 S.Ct. 890 (2023)..........................1-3, 7, 9-15, 18, 20, 23, 26, 45-48

*Cochran v. SEC,*
  969 F.3d 507 (5th Cir. 2020), *rev'd in part on reh'g en banc,*
  20 F.4th 194 (5th Cir. 2021), *aff'd sub nom. Axon Enter., Inc. v. FTC,*
  598 U.S. ---, 143 S.Ct. 890 (2023)..............................1-3, 12, 13, 16-18, 20, 21, 28

*Collins v. Yellen,*
--- U.S. ---, 141 S.Ct. 1761 (2021)....................................................6, 44-46

*Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022), *cert. granted,*
  2023 WL 2227658 (U.S. Feb. 27, 2023)...........................................5, 6, 8, 45, 47

*Cooper Indus., Ltd. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,*
  876 F.3d 119 (5th Cir. 2017)..............................................................43

*Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.,*
  710 F.3d 579 (5th Cir. 2013)..............................................................51

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
  661 F.2d 328 (5th Cir. 1981)...........................................................49, 50

*Fraternal Order of Police v. United States,*
  173 F.3d 898 (D.C. Cir. 1999)..........................................................5, 34

*Free Enter. Fund v. PCAOB,*
  561 U.S. 477 (2010)...........................................................................48

*Grabowski v. Jackson Cnty. Pub. Defenders Office*,
  47 F.3d 1386 (5th Cir. 1995).................................................................19

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989)................................................................37, 38, 40

*Griffin v. Box*,
  910 F.2d 255 (5th Cir. 1990)...............................................................5, 34

*Jacobs v. National Drug Intelligence Ctr.*,
  548 F.3d 375 (5th Cir. 2008)...........................................................2, 11, 39

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022), *reh'g denied*,
  51 F.4th 644 (5th Cir.), *cert. filed* Mar. 8, 2023 (U.S. No. 22-859).................39-41

*Kirksey v. Board of Supervisors of Hinds Cnty., Miss.*,
  528 F.2d 536 (5th Cir. 1976)...............................................................16

*Lucia v. SEC*,
  --- U.S. ---, 138 S.Ct. 2044 (2018).......................................................17

*Nobby Lobby, Inc. v. City of Dallas*,
  970 F.2d 82 (5th Cir. 1992)...............................................................16

*Opulent Life Church v. City of Holly Springs, Miss.*,
  697 F.3d 279 (5th Cir. 2012)...............................................................50

*Pereira v. Sessions*,
  --- U.S. ---, 138 S.Ct. 2105 (2018).......................................................31

*Shalala v. Illinois Council on Long Term Care, Inc.*,
  529 U.S. 1 (2000).........................................................................29

*Skehan v. Board of Trustees of Bloomsburg State College*,
  590 F.2d 470 (3d Cir. 1978)...............................................................35

*Smith v. Regional Transit Auth.*,
  756 F.3d 340 (5th Cir. 2014)............................................................2, 11

*Sweis v. U.S. Foreign Claims Settlement Comm'n,*
  950 F. Supp. 2d 44 (D.D.C. 2013).............................................................49

*Sykes v. Texas Air Corp.,*
  834 F.2d 488 (5th Cir. 1987)...................................................................22

*Texas Med. Providers Performing Abortion Servs. v. Lakey,*
  667 F.3d 570 (5th Cir. 2012)...................................................................32

*Trotti & Thompson v. Crawford,*
  631 F.2d 1214 (5th Cir. 1980)..............................................................2, 11

*United States v. Berry,*
  951 F.3d 632 (5th Cir. 2020)...................................................................22

*United States v. Ghali,*
  699 F.3d 845 (5th Cir. 2012)............................................2, 3, 11, 14, 19

*United States v. Gonzalez,*
  520 U.S. 1 (1997)....................................................................................30

*United States v. Stalnaker,*
  571 F.3d 428 (2009).................................................................................41

*United States v. Wallace,*
  964 F.3d 386 (5th Cir. 2020)...................................................................39

*Unimex, Inc. v. U.S. Dep't of Hous. & Urban Dev.,*
  594 F.2d 1060 (5th Cir. 1979).................................................................16

*Ward v. Santa Fe Indep. Sch. Dist.,*
  393 F.3d 599 (5th Cir. 2004)...................................................................43

*Webster v. Doe,*
  486 U.S. 592 (1988)...........................................................................28, 29

*White v. Johnson,*
  429 F.3d 572 (5th Cir. 2005)...................................................................51

# UNITED STATES CONSTITUTION

U.S. Const. art. II................................................................32

U.S. Const. art. III..........................................................39-40

U.S. Const. amend. VII............................5, 8, 33, 35, 37, 40, 49

# FEDERAL STATUTES

8 U.S.C. § 1229(a)............................................................31

8 U.S.C. § 1229b(d)(1)(A)...................................................31

12 U.S.C. § 1818..................................27, 31, 33, 36, 38, 39, 41-43

12 U.S.C. § 1818(b)..............................................27, 37, 42

12 U.S.C. § 1818(h)..............................................................27

12 U.S.C. § 1818(i)........................1, 2, 4, 7, 9-11, 15, 22, 23, 25, 26

12 U.S.C. § 1818(i)(1)......................................................25-32

12 U.S.C. § 1819(a)..............................................................42

12 U.S.C. § 1819(a)(Fourth).................................................21

12 U.S.C. § 1821(k)........................................................41, 42

28 U.S.C. § 1331...........................................................24, 29

42 U.S.C. § 405(h).........................................................25, 29

42 U.S.C. § 2000cc *et seq*...............................................50

# FEDERAL RULES

Fed. R. Civ. P. 54(b)..........................................................33

# PRELIMINARY STATEMENT

Appellee/Cross-Appellant Burgess filed a district-court lawsuit seeking to halt an ongoing FDIC administrative proceeding and alleged three separation-of-powers claims. After the district court issued a preliminary injunction barring the FDIC from continuing the proceeding, FDIC Appellants brought this appeal. The parties agree the threshold issue that must be decided is whether 12 U.S.C. § 1818(i) explicitly precludes district-court jurisdiction over Burgess's claims.[1] Helpfully, Burgess makes a concession in his brief that streamlines the resolution of this case-dispositive issue.

Burgess concedes "that *Bank of Louisiana II* held that Section 1818(i) *explicitly* strips district-court jurisdiction to hear the types of claims at issue in that case."[2] Thus, the jurisdictional issue before the Court here reduces to this: Was a separation-of-powers claim at issue in *Bank of Louisiana II*? That precise issue was squarely presented to and decided by this Court sitting en banc in *Cochran v. SEC*.[3]

As detailed in FDIC Appellants' opening brief, the *Cochran* panel-stage majority held that it was bound by *Bank of Louisiana II* because that case, like *Cochran*, involved a "separation-of-powers claim."[4] But in her panel-stage opinion dissent-

---

[1] *See* FDIC Appellants Opening Br. 16, 20-34; Burgess Principal Br. 15, 17-33.

[2] *Id.* at 32 (bold print and underlining omitted, emphasis added). "*Bank of Louisiana II*" is Burgess's shorthand for *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019). *See id.* at 25.

[3] 20 F.4th 194 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. ---, 143 S.Ct. 890 (2023).

[4] FDIC Appellants Opening Br. 26-27, 27 (quoting *Cochran v. SEC*, 969 F.3d 507, 510 (5th Cir. 2020), *rev'd in part on other grounds on reh'g en banc*, 20 F.4th 194 (5th Cir. 2021)).

ing in part, Judge Haynes took the position that *Bank of Louisiana II* was *not* controlling in *Cochran* because, in her view, it did *not* involve a separation-of-powers claim.[5] Sitting en banc in *Cochran*, this Court resolved the issue by interpreting *Bank of Louisiana II* as "holding that the district court lacked jurisdiction over a *separation-of-powers* challenge to an administrative proceeding before the [FDIC]."[6]

"It is a well-settled Fifth Circuit rule of orderliness that one panel of [this] [C]ourt may not overturn another panel's decision, absent an intervening change in the law[.]"[7] This rule applies to interpretations of judicial decisions,[8] including this Court's own prior decisions.[9] It necessarily follows that this Court is bound by the *Cochran* en banc Court's interpretation of the holding in *Bank of Louisiana II*. Thus, Section 1818(i) *explicitly* precludes district-court jurisdiction here.

Faced with this insurmountable hurdle, Burgess parrots the district court's assertion that the *Cochran* en banc Court "merely assumed" that *Bank of Louisiana II* held that Section 1818(i) is an explicit jurisdictional bar to a separation-of-powers claim.[10] But he does not dispute that the focal point of both the majority opinion and the dissenting-in-part opinion at the panel stage in *Cochran* was whether a separa-

---

[5] *See id.* at 27 (quoting *Cochran*, 969 F.3d at 518 (Haynes, Circuit Judge, dissenting in part)).

[6] *Cochran*, 20 F.4th at 204 (emphasis added).

[7] *Jacobs v. National Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008); *see Smith v. Regional Transit Auth.*, 756 F.3d 340, 344 n.4 (5th Cir. 2014) (applying rule to prior en banc decision).

[8] *See, e.g., United States v. Ghali*, 699 F.3d 845, 846-48 (5th Cir. 2012).

[9] *See, e.g., Trotti & Thompson v. Crawford*, 631 F.2d 1214, 1220-21 & n.15 (5th Cir. 1980).

[10] Burgess Principal Br. 32.

tion-of-powers claim was at issue in *Bank of Louisiana II.* Nor could he, as those published opinions conclusively establish that it was.[11] What is more, Burgess is doubly wrong when he says "that question was not briefed or addressed in *Cochran.*"[12] As we demonstrate *infra* at 12-14, that question was repeatedly briefed in *Cochran* at the panel, petition-for-rehearing, and rehearing-en-banc stages. And as the *Cochran* en banc decision itself irrefutably establishes, it was addressed there as well. "Accordingly, the rule of orderliness applies here with full effect."[13]

After FDIC Appellants filed their opening brief, the Supreme Court decided *Axon Enterprise Inc. v. FTC,*[14] which affirmed *Cochran. Axon* leaves undisturbed the part of *Cochran* that addressed *explicit* preclusion. Moreover, as we show *infra* at 23-25, it also supports the conclusion that jurisdiction is *explicitly* precluded here. However, *Axon's implicit*-preclusion analysis broke new ground and we therefore clarify that FDIC Appellants are *not* arguing jurisdiction is *implicitly* precluded here.

\*    \*    \*

Burgess's remaining arguments fare no better.

Even if the question of whether Section 1818(i) is an explicit jurisdictional bar to structural constitutional claims were instead before this Court *as a matter of first*

---

[11] *See Cochran*, 969 F.3d at 510, 513-14, 516-17 (panel-stage majority opinion); *id.* at 518-21 (panel-stage opinion dissenting in part).

[12] Burgess Principal Br. 32.

[13] *Ghali*, 699 F.3d at 848; *see id.* at 847-48 (holding rule of orderliness applied "with full effect" to prior decision's interpretation of a case because relevant issue was briefed in the interpreting case).

[14] 598 U.S. ---, 143 S.Ct. 890 (2023).

*impression*, the outcome would be the same. Burgess agrees the issue would be solely one of statutory interpretation.[15] And he concedes that Section 1818(i) *does* create an explicit jurisdictional bar to *non-structural* constitutional claims.[16] This alone is dispositive because Burgess does not point to any language in Section 1818(i) that distinguishes between *structural* and *non-structural* claims. There is none.

What is more, Burgess improperly conflates the *explicit*-preclusion and *implicit*-preclusion analyses. Without identifying any ambiguity in Section 1818(i), he argues two extra-textual reasons for treating structural and non-structural constitutional claims differently: (1) he contends structural claims are "wholly collateral" to the enforcement proceeding; and (2) he contends precluding district court jurisdiction "would foreclose all meaningful review of structural constitutional claims."[17] But as Burgess well knows,[18] these are two of the *Thunder Basin* factors used to conduct an *implicit*-preclusion analysis. They play no part in an *explicit*-preclusion analysis.

Turning to likelihood of success, Burgess attempts to avoid this Court's controlling decision in *Akin v. Office of Thrift Supervision*[19]—which held there is no right to a jury trial of Section 1818 enforcement claims—by arguing that FDIC

---

[15] *See* Burgess Principal Br. 17-23; *see also* FDIC Appellants' Opening Br. 22-23 ("[W]hen dealing with an express preclusion clause . . . [courts] determine the scope of preclusion *simply by interpreting the words Congress has chosen*.") (quoting *Bank of Louisiana II*, 919 F.3d at 923)).

[16] Burgess Principal Br. 2, 32.

[17] *Id.* at 17, 21.

[18] *See id.* at 34.

[19] 950 F.2d 1180 (5th Cir. 1992).

Appellants forfeited their Seventh Amendment arguments by failing to timely raise them in the district court.[20] This argument has no purchase. Indeed, Burgess admits FDIC Appellants argued at the preliminary injunction hearing that *Akin* required rejection of his jury-trial claim.[21] And it is well established that this was sufficient to preserve the issue for appeal.[22] As for FDIC Appellants' arguments on the jury-trial issue, nothing in Burgess's principal brief materially distinguishes *Akin* from this case. Moreover, the district court's ruling that Burgess was required but unable to show a compensable harm for his removal-protection claims is fully in line with this Court's controlling decision in *Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*.[23]

Finally, Burgess's assertion that FDIC Appellants "believe[ ] a number of recent opinions from this Court . . . were wrongly decided"[24] turns the FDIC's position on its head. FDIC Appellants are asking this Court to apply its decisions in *Cochran* and *Bank of Louisiana II* and reverse for lack of jurisdiction or, alternatively, apply its decisions in *Akin* and *Community Financial* and reverse on the merits. And it is Burgess who strives mightily to avoid these controlling Fifth Circuit precedents.

---

[20] Burgess Principal Br. 36-38.

[21] *Id.* at 38 n.10; *see also* FDIC Appellants Opening Br. 15 n.78, 46 n.199.

[22] *See, e.g., Griffin v. Box*, 910 F.2d 255, 259 (5th Cir. 1990) (quoting with approval district court's statement that "all arguments made by plaintiffs were raised or could have been raised at the preliminary injunction hearing"); *Fraternal Order of Police v. United States*, 173 F.3d 898, 902 (D.C. Cir. 1999) (holding requirement that issue on appeal be raised in the trial court was satisfied where issue was raised orally at a combined summary judgment/preliminary injunction hearing).

[23] 51 F.4th 616 (5th Cir. 2022), *cert. granted*, 2023 WL 2227658 (U.S. Feb. 27, 2023).

[24] Burgess Principal Br. 5.

## STATEMENT OF JURISDICTION

FDIC Appellants stand by the Statement of Jurisdiction in their Opening Brief of Appellants/Cross-Appellees at 5-6.

## STATEMENT OF THE ISSUES

With respect to the issues raised by FDIC Appellants' principal appeal, FDIC Appellants stand by the Statement of Issues in their Opening Brief of Appellants/Cross-Appellees at 6-7.

The issue raised in Burgess's cross-appeal is:

In *Community Financial*, this Court interpreted the Supreme Court's decision in *Collins v. Yellen*[25] as holding that a party who challenges an unconstitutional removal restriction must demonstrate that the restriction inflicted harm regardless of whether the challenging party seeks retrospective or prospective relief.[26] Burgess did not satisfy this requirement here.[27] Did the district court correctly rule that Burgess failed to show a substantial likelihood of success on the merits of his unconstitutional-removal-restriction claims directed at the FDIC Board members and the ALJ?

## STATEMENT OF THE CASE

FDIC Appellants stand by the Statement of the Case in their Opening Brief of Appellants/Cross-Appellees at 7-15 except that, in response to Burgess's principal

---

[25] --- U.S. ---, 141 S.Ct. 1761 (2021).

[26] 51 F.4th at 631.

[27] ROA.346.

cross-appeal brief, FDIC Appellants hereby supplement the Rulings Presented for Review section of their Statement of the Case, *id.* at 15, with the following additional ruling presented for review:

The district court ruled that Burgess did not show a substantial likelihood of success on his unconstitutional-removal-protection claims directed at FDIC Board members and the ALJ because he did not show those removal protections inflicted harm of the kind required by controlling Supreme Court and Fifth Circuit case law.[28]

## SUMMARY OF ARGUMENT

1. The district court twice erred in ruling that Section 1818(i) does not explicitly preclude its jurisdiction over Burgess's claims. *First,* the court erroneously ruled that it was not bound by this Court's en banc decision in *Cochran,* which interpreted this Court's *Bank of Louisiana II* decision as "holding that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]" and "that district court jurisdiction was *explicitly* divested" by "the plain terms of [S]ection 1818(i)[.]"[29] *Second,* the district court interpreted Section 1818(i) as a matter of first impression and erroneously ruled that it is *not* an explicit jurisdictional bar to Burgess's claims.

2. The district court erroneously refused to apply this Court's controlling decision in *Akin,* which held that respondents in Section 1818 administrative enforce-

---

[28] ROA.344-46.

[29] *Cochran,* 20 F.4th at 204.

ment proceedings have no right to a jury trial. Under *Akin*, Burgess cannot show a substantial likelihood of success on the merits of his jury-trial claim. Indeed, under *Akin* he has *zero* likelihood of success on the merits of that claim. What is more, Burgess's argument that FDIC Appellants waived their merits-based Seventh Amendment arguments has no purchase and should be rejected out of hand.

3. The district court correctly ruled that—under this Court's controlling decision in *Community Financial*—Burgess was required to show that the removal protections he challenges "inflicted harm." And because he did not do so, the district court correctly ruled that Burgess failed to show a substantial likelihood of success on the merits of his unconstitutional-removal-protection claims directed at FDIC Board members and the ALJ.

4. The district court ruled irreparable harm was "automatically" established because Burgess alleged a deprivation of a constitutional right, namely, a Seventh Amendment right to a jury trial. None of the cases Burgess relies on in his principal brief shows that either the Supreme Court or this Court has ever held that a violation of a constitutional right—other than a right to privacy or certain First Amendment rights—automatically constitutes irreparable harm. This case involves neither privacy rights nor First Amendment rights. Moreover, Burgess's speculative affidavit failed to establish that he would suffer any irreparable harm absent an injunction. For this additional and alternative reason, the preliminary injunction should be vacated.

## ARGUMENT

### I.    Section 1818(i) Explicitly Precludes District Court Jurisdiction Here.

The parties agree the threshold issue in this appeal is whether 12 U.S.C. § 1818(i) explicitly precludes district-court jurisdiction over Burgess's claims.[30] But Burgess stumbles at the gate with an analytical misstep: He first argues that Section 1818(i) precludes jurisdiction over separation-of-powers claims as a matter of first impression and subsequently argues that this Court's en banc decision in *Cochran* did not already decide the issue against him. This puts the cart before the horse. As we explain *infra* at 19, the *Cochran* Court's interpretation of *Bank of Louisiana* would be binding precedent even if this Court were to conclude that the *Cochran* Court's interpretation appears flawed. The en banc decision in *Cochran* must therefore be considered first. Indeed, as we demonstrate below, it is the only thing this Court should need to consider in order to fully resolve this appeal.

### A.    *Cochran's* Interpretation of *Bank of Louisiana* Forecloses Jurisdiction Over All of Burgess's Claims.

Burgess contends that Section 1818(i) does not preclude district-court jurisdiction here because separation-of-powers claims are exempt from the statute's explicit jurisdictional bar. But that argument runs headlong into this Court's en banc decision in *Cochran,* which interpreted this Court's earlier decision in *Bank of Louisiana II* as "holding that the district court lacked jurisdiction over a separation-of-powers

---

[30] *See* FDIC Appellants Opening Br. 16, 20-34; Burgess Principal Br. 15, 17-33.

challenge to an administrative proceeding before the [FDIC]."[31] In addition, *Cochran* interpreted *Bank of Louisiana II* as having "held that district court jurisdiction was *explicitly* divested . . . [by] the plain terms of [S]ection 1818(i)[.]"[32]

Burgess admits that *Cochran* correctly held "*Bank of Louisiana II* should be construed as an *explicit* jurisdiction-stripping case."[33] But he contends *Cochran* "does not answer the separate question of whether [Section 1818(i)] also strips jurisdiction over structural constitutional claims."[34] This is so, Burgess argues, because "[t]he plaintiffs-appellants in *Bank of Louisiana II* . . . did not pursue any separation-of-powers claims."[35] And as a necessary corollary to this argument, Burgess concedes "that *Bank of Louisiana II* held that Section 1818(i) explicitly strips district-court jurisdiction to hear the types of claims at issue in that case."[36] Thus, at this stage of the analysis Burgess's ability to prevail in this appeal turns on a single argument: No separation-of-powers claim was at issue in *Bank of Louisiana II.* However, that argument is foreclosed by this Court's holdings in prior cases.

"It is a well-settled Fifth Circuit rule of orderliness that one panel of [this] [C]ourt may not overturn another panel's decision, absent an intervening change in

---

[31] *Cochran*, 20 F.4th at 204.

[32] *Id.* (emphasis in original, quotation marks omitted, ellipsis added)

[33] Burgess Principal Br. 31 (emphasis added).

[34] *Id.* (bold print and underlining omitted).

[35] *Id.* at 26.

[36] *Id.* at 32 (bold print and underlining omitted).

the law, such as by a statutory amendment, or the Supreme Court, or [the Fifth Circuit's] en banc court."[37] Moreover, this rule applies to this Court's interpretations of judicial decisions[38]—including its own prior judicial decisions.[39] Consequently, this Court's interpretation of *Bank of Louisiana II* is settled. As noted above, the *Cochran* en banc Court interpreted *Bank of Louisiana II* as "holding that the district court lacked jurisdiction over *a separation-of-powers challenge* to an administrative proceeding before the [FDIC]."[40] Because *Cochran's* interpretation of *Bank of Louisiana II* is binding precedent, it fully resolves this appeal.

Undaunted by this Court's explicit interpretation of its earlier holding, Burgess presses on. Echoing the district court's November 6 Order,[41] he asserts that *Cochran* is "not binding precedent vis-à-vis future cases" because "*Cochran* appears to have 'assumed' that [*Bank of Louisiana II* held] that Section 1818(i) might strip jurisdiction over such claims, but that question was not briefed or addressed in *Cochran*."[42] This assertion is either misleading or outright false in several respects.

To begin, *Cochran* did not say that *Bank of Louisiana II* held that "Section 1818(i) *might* strip jurisdiction" over a separation-of powers claim. Rather, this Court

---

[37] *Jacobs v. National Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008); *see Smith v. Regional Transit Auth.*, 756 F.3d 340, 344 n.4 (5th Cir. 2014) (applying rule to prior en banc decision).

[38] *See, e.g., United States v. Ghali*, 699 F.3d 845, 846-48 (5th Cir. 2012).

[39] *See, e.g., Trotti & Thompson v. Crawford*, 631 F.2d 1214, 1220-21 & n.15 (5th Cir. 1980).

[40] *Cochran*, 20 F.4th at 204.

[41] ROA.337.

[42] Burgess Principal Br. 32.

sitting en banc unequivocally interpreted *Bank of Louisiana II* as "holding that the district court lacked jurisdiction over a separation-of-powers challenge."[43]

Next, the *Cochran* en banc Court did not merely "assume" what *Bank of Louisiana II* had held on this issue. As detailed in FDIC Appellants' opening brief, whether *Bank of Louisiana II* addressed a separation-of-powers claim was the central point of disagreement between the *Cochran* panel-stage majority and Judge Haynes, who dissented in part at the panel stage.[44] And icing the cake on this point, the *Cochran* en banc decision plainly states that the Court was "clarify[ing] that *Bank of Louisiana* was addressing the explicit statute at issue there" and that it "h[eld] that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]."[45] Obviously, "clarifying" a prior decision's holding is not the same thing as "assuming" what that holding was.

What is more, contrary to Burgess's assertion the parties in *Cochran* did brief the issue of whether *Bank of Louisiana II* had addressed a separation-of-powers claim. The SEC parties raised the issue in their initial appellees' brief: "This Court has . . . h[e]ld that district courts lack jurisdiction over *separation-of-powers challenges* to enforcement proceedings initiated by the Federal Deposit Insurance Cor-

---

[43] *Cochran*, 20 F.4th at 204.

[44] FDIC Appellants Opening Br. 26-28; *see also Cochran*, 969 F.3d at 510, 513-14, 516-17 (panel-stage majority opinion); *id.* at 518-21 (panel-stage opinion dissenting in part).

[45] *Cochran*, 20 F.4th at 204.

poration (FDIC). *Bank of Louisiana*, 919 F.3d at 923)";[46] "In *Bank of Louisiana*, plaintiffs sued to enjoin a pending FDIC proceeding against them, 'claiming the FDIC committed constitutional violations during the enforcement proceedings,' 919 F.3d at 921, *including a 'separation-of-powers challenge to the ALJ,' id.* at 930."[47]

At the petition-for-rehearing stage, Cochran explained the relief she was seeking from the en banc Court as follows: "This *en banc* petition seeks full court correction of the majority's overly expansive conferral of *stare decisis* effect on *Bank of Louisiana*" because "*Bank of Louisiana* did not rule on any *structural constitutional question.*"[48] In response, the SEC parties again argued that "this Court's decision in *Bank of Louisiana . . .* involved a '*separation of powers challenge to [an] ALJ*[.]'"[49]

Finally, at the rehearing-en-banc stage the SEC parties argued that "[t]his Court correctly held that *a 'separation-of-powers challenge to the ALJ'* is the kind of claim that Congress intended to channel through agency proceedings 'and the courts of appeal.' *Bank of Louisiana*, 919 F.3d at 930[.]"[50] And putting an even finer point on the issue, the SEC parties further argued that "[t]his Court's decision in *Bank of*

---

[46] Br. for Appellees at 17, *Cochran v. SEC*, No. 19-10396, Dkt. No. 59-1 (5th Cir. Aug. 9, 2019) (emphasis added).

[47] *Id.* (emphasis added).

[48] Pet. for Reh'g *En Banc* at 14-15, *Cochran v. SEC*, No. 19-10396, Dkt. No. 114 (5th Cir. Sept. 24, 2020) (emphasis added).

[49] Opp. to Pet. for Reh'g En Banc at 6, *Cochran v. SEC*, No. 19-10396, Dkt. No. 147 (5th Cir. Oct. 16, 2020) (emphasis added).

[50] En Banc Br. for Appellees at 27, *Cochran v. SEC*, No. 19-10396, Dkt. No. 215-1 (5th Cir. Dec. 30, 2020) (emphasis added).

*Louisiana . . .* ma[d]e clear that *'structural' constitutional challenges are not exempt from the statutory review schemes established by Congress.*"[51] Cochran responded with an argument much like the one Burgess presses here: "[I]t is fair to say that the *separation-of-powers* claim in *Bank of Louisiana* had been abandoned by the time of the appeal."[52] The *Cochran* en banc Court then resolved this issue by agreeing with the SEC parties and rejecting Cochran's arguments on this point.

In *United States v. Ghali*, this Court held that it was bound by a prior decision's interpretation of an earlier Supreme Court case.[53] Just as Burgess does here, the appellant in *Ghali* argued that the interpreting court's decision was not binding precedent because the relevant issue in *Ghali* had not been raised in the interpreting case. But this Court rejected that argument because one of the parties in the interpreting case had included in his brief fourteen words from a single sentence that raised the issue.[54] "Accordingly," this Court held, "the rule of orderliness applie[d] [t]here with full effect."[55] So too here.

As shown above, in this case—just as in *Ghali*—briefs filed in the interpreting case (here, *Cochran*) raised the relevant issue (here, whether *Bank of Louisiana II*

---

[51] *Id.* at 32 (emphasis added).

[52] Appellant's Reply Br. on Reh'g *En Banc* at 21, *Cochran v. SEC*, No. 19-10396, Dkt. No. 225-1 (5th Cir. Jan. 14, 2021).

[53] *Ghali*, 699 F.3d at 848.

[54] *Id.* at 847-48.

[55] *Id.* at 848.

addressed a separation-of-powers claim). Indeed, the *Cochran* parties' briefs went even further and raised the more granular issue of whether structural constitutional claims are the type of claims that are precluded by Section 1818(i).[56] And the panel-stage opinion dissenting in part also squarely raised that issue.[57]

Burgess also gamely argues that "whatever *Cochran* might have said on this issue was dicta, because the question whether Section 1818(i) forecloses jurisdiction over structural constitutional claims was not 'necessary to the decision' in *Cochran*."[58] But this argument ignores the posture of the case when it arrived at the en banc Court. Again, the primary disagreement between the panel-stage majority and the dissent was whether a separation-of-powers claim was at issue in *Bank of Louisiana II*. That issue was thus squarely presented to the en banc Court. And if the en banc Court had instead interpreted *Bank of Louisiana II* as not having addressed such a claim, that would have been enough to end its consideration of *Bank of Louisiana II*.

In any event, Burgess's "merely assumed" and "dicta" arguments would not help him even if they had merit. Rather, these arguments serve only to highlight that the *Cochran* en banc decision left undisturbed the part of the *Cochran* panel-stage decision that interpreted *Bank of Louisiana II* as having addressed a separation-of-powers claim. This too is fatal to Burgess's jurisdictional arguments.

---

[56] *Supra* 13-14 and nn. 50 & 51.

[57] *See Cochran*, 969 F.3d at 518-19 (stating that "whether the structural nature of a claim might bear on the jurisdictional analysis" was "a key point that is relevant to this case").

[58] Burgess Principal Br. 33 (quoting ROA.337).

When a panel-stage decision is reversed by this Court on rehearing en banc, the parts of that decision left undisturbed by the en banc decision retain their precedential value.[59] Directly on point is *Kirksey v. Board of Supervisors of Hinds Cnty., Miss.,*[60] where this Court applied as binding precedent a prior Fifth Circuit panel's interpretation of a judicial decision while noting that the interpreting panel decision had been reversed on other grounds on rehearing en banc.[61] Thus, the *Cochran* panel-stage decision's interpretation of *Bank of Louisiana II* as having addressed a separation-of-powers claim is binding precedent here.

It is beyond dispute that the *Cochran* panel-stage decision addressed at length whether a separation-of-powers claim was at issue in *Bank of Louisiana II.* As the Court explained in that decision, the case before it in *Cochran* required it to "assess whether Congress intended to funnel *the kind of claim Cochran assert[ed]* through the [SEC's] statutory review scheme."[62] And as the Court further explained, the appellant in *Cochran* argued that the availability of district-court review of her separation-of-powers claim was not controlled by *Bank of Louisiana II* because, "[o]n

---

[59] *See, e.g., Central Pines Land Co. v. United States,* 274 F.3d 881, 893 and n.57 (5th Cir. 2001) (explaining "the important difference between [this Court's] treatment of a panel opinion after *vacatur* [no precedential value] . . . and [this Court's] treatment when a judgment is reversed on other grounds [rulings and findings left undisturbed retain precedential value].").

[60] 528 F.2d 536 (5th Cir. 1976).

[61] *Id.* at 540; *see also, e.g., Nobby Lobby, Inc. v. City of Dallas,* 970 F.2d 82, 92 (5th Cir. 1992) (relying on panel decision reversed on other grounds en banc); *Unimex, Inc. v. U.S. Dep't of Hous. & Urban Dev.,* 594 F.2d 1060, 1061 (5th Cir. 1979) (same).

[62] *Cochran,* 969 F.3d at 512 (emphasis added).

her telling, the bank suing the FDIC was asserting run-of-the-mill due process claims rather than challenging the very authority of ALJs to act."[63] But the *Cochran* panel-stage decision flatly rejected that argument (which is essentially the same argument Burgess presses here) based on its conclusion that "*Bank of Louisiana [II]* also involved a separation-of-powers challenge to the ALJ."[64]

The *Cochran* panel-stage decision also addressed the dissent's position that *Bank of Louisiana II* did not squarely consider a structural claim because, in the dissent's view, it "address[ed] the separation-of-powers claim only in passing."[65] In response, the decision stated: "Regardless of whether one thinks that discussion was thorough enough, what cannot be denied is that *Bank of Louisiana* recognized the separation-of-powers claim—a *Lucia*-based challenge[ ] to the ALJ's very authority to act—and resolved it."[66] The Court then concluded its analysis by ruling as follows: "As *Bank of Louisiana* . . . held, even when it comes to separation-of-powers claims Congress opted for court involvement only after the end of the agency proceeding."[67]

The panel-stage dissenting opinion disagreed "that *Bank of Louisiana* [was] control[ling] because," in the dissent's view, "it did not address a structural claim."[68]

---

[63] *Id.* at 513.

[64] *Id.* (quotation marks omitted).

[65] *Id.* (quotation marks omitted).

[66] *Id.* at 513-14.

[67] *Id.* at 517.

[68] *Id.* at 518 (Haynes, Circuit Judge, dissenting).

The dissenting opinion also raised the issue of "whether structural claims should be treated differently than other constitutional claims"—specifically, "whether the structural nature of a claim might bear on the jurisdictional analysis."[69]

Thus, it is beyond dispute that at the panel stage in *Cochran* the parties briefed the issues of whether *Bank of Louisiana II* addressed a separation-of-powers claim and whether structural constitutional claims should be treated differently than non-structural constitutional claims. Moreover, it is also beyond dispute that the *Cochran* panel-stage decision interpreted *Bank of Louisiana II* as having addressed a separation-of-powers claim *and* that this interpretation was necessary to its decision. Indeed, because the panel-stage majority in *Cochran* rejected the appellant's argument that the different statutes at issue in *Cochran* and *Bank of Louisiana II* required different outcomes in those cases,[70] its decision rested entirely on its interpretation of *Bank of Louisiana II* as having addressed a separation-of-powers claim.

In sum, this Court's interpretation of *Bank of Louisiana II* in *Cochran*—whether en banc or at the panel stage—as having addressed a separation-of-powers challenge to an FDIC enforcement proceeding is binding precedent in this appeal. It necessarily follows that Section 1818(i) explicitly precludes district-court jurisdiction over all of Burgess's claims.

---

[69] *Id.* at 518; *see also id.* at 521 (again raising the issue of "whether structural claims should be considered different than other types of constitutional claims").

[70] *See Cochran*, 969 F.3d at 513.

## B. Burgess's Arguments About Why *Cochran's* Interpretation of *Bank of Louisiana* is Flawed Are Legally Irrelevant and Otherwise Meritless.

Burgess makes a number of additional arguments in support of his position that *Cochran's* interpretation of *Bank of Louisiana II* is not binding precedent here. However, they all suffer from the same infirmity: They argue that *Cochran's* interpretation of *Bank of Louisiana II* is flawed. These arguments are dead on arrival because "a panel cannot overrule, or declare void, a prior panel's *interpretation* of earlier circuit case law, *even if it appears flawed.*"[71] Accordingly, all of these arguments should be rejected out of hand as legally irrelevant. They are also meritless for other reasons. Out of an abundance of caution, we demonstrate why.

Burgess contends *Cochran's* interpretation is flawed because "the Complaint filed in *Bank of Louisiana* . . . does not mention any purported defect in the appointment of the ALJ used by the FDIC in that case."[72] Not true. The Complaint alleged as follows: "[T]he proceedings and actions of the FDIC and its employees, *including the ALJ*, violated the separation of powers under the U.S. Constitution[.]"[73]

Burgess accuses FDIC Appellants of confusing things by conflating two distinct Fifth Circuit proceedings that he dubs *"Bank of Louisiana I"* and *"Bank of Louisiana II"*, contends that a separation-of-powers claim "was the focus of" only

---

[71] *Grabowski v. Jackson Cnty. Pub. Defenders Office*, 47 F.3d 1386, 1400 n.4 (5th Cir. 1995) (first emphasis in original) (Jerry E. Smith, Circuit Judge, concurring in part and dissenting in part); *accord Ghali*, 699 F.3d at 847.

[72] Burgess Principal Br. 25.

[73] Compl. at ¶ 7, *Bank of Louisiana v. FDIC*, No. 16-cv-13585, Dkt. No. 1 (E.D. La. Aug. 4, 2016).

"*Bank of Louisiana I*", and asserts that the appellants in "*Bank of Louisiana II*" did not pursue any separation-of-powers claims.[74] It is Burgess who is confused. As this Court explained in its *Bank of Louisiana II* decision, the appellants there had sought "a declaratory judgment that the FDIC violated its constitutional . . . rights *during both enforcement proceedings.*"[75] And more to the point, in *Bank of Louisiana II* this Court repeatedly addressed the separation-of-powers claim at issue in that case.[76]

Burgess contends *Cochran's* interpretation is flawed because one judge of this Court expressed the view during a hearing on a motion for a stay in *Cochran* that "interpreting *Bank of Louisiana II* to apply to structural claims would risk 'expand-[ing] the scope of th[at] decision.'"[77] Obviously, however, a comment by a single circuit judge during a preliminary hearing on a stay motion does not trump subsequent rulings in published panel-stage and en banc decisions issued in the same case.

Burgess points to Judge Haynes' statement in her *Cochran* panel-stage dissent that *Bank of Louisiana II* 'did not address a structural claim' but instead 'analyzed only . . . due process and equal protection claims.'"[78] But he neglects to mention that Judge Haynes wrote the en banc decision in *Cochran* that interprets *Bank of Louisiana II* as "holding that the district court lacked jurisdiction over a separation-of-

---

[74] Burgess Principal Br. 25-26.

[75] *Bank of Louisiana II*, 919 F.3d at 921 (emphasis added).

[76] *Id.* at 921, 926 (twice), 930.

[77] Burgess Principal Br. 27.

[78] *Id.* at 28.

powers challenge to an administrative proceeding before the [FDIC]."[79] Obviously, the *Cochran* panel-stage dissenting opinion does not trump either the *Cochran* panel-stage decision or the subsequent *Cochran* en banc decision.

Burgess falsely suggests that FDIC Appellants themselves have conceded that *Cochran's* interpretation of *Bank of Louisiana II* is flawed. Burgess defines the term "government" to mean "the Appellants/Cross Appellees, together."[80] He then asserts that "the government itself has elsewhere conceded that *Bank of Louisiana* did not resolve any structural constitutional claim."[81] Later in his brief, Burgess repeats this assertion and identifies the source of the purported concession as a statement made by the SEC's attorney during the *Cochran* panel-stage argument.[82] But the SEC is *not* the FDIC. Nor is the FDIC bound by anything the SEC might have said in another case, as the FDIC has independent litigating authority and is represented by its own attorneys.[83] In short, the FDIC has never made the concession suggested by Burgess.

Burgess argues that, even if a structural constitutional claim had been at issue in *Bank of Louisiana II*, that case still could not be binding precedent "because the plaintiffs there did not press the same theory that Burgess presses here."[84] This

---

[79] *Cochran*, 20 F.4th at 204.

[80] Burgess Principal Br. xvi.

[81] *Id.* at 3.

[82] *Id.* at 28-29.

[83] *See* 12 U.S.C. § 1819(a)(Fourth).

[84] Burgess Principal Br. 24.

argument turns controlling circuit law on its head. "Under [this Court's] rule of orderliness . . . an earlier panel decision binds even if that panel's opinion does not explicitly address arguments presented to the later panel."[85] Thus, as this Court has explained, "[t]he fact that in [the prior case] no litigant made and no judge considered the fancy argument advanced in this case does not authorize [this Court] to disregard [the Fifth Circuit's] strong rule that [this Court] cannot overrule the prior decision."[86]

Finally, Burgess makes the puzzling assertion that "the plaintiffs in [*Bank of Louisiana II*] conceded that Section 1818(i) explicitly stripped jurisdiction, but then argued that they should prevail under the *Thunder Basin* factors for implicit jurisdiction stripping."[87] And based on this assertion, Burgess argues that *Cochran's* interpretation of *Bank of Louisiana II* is flawed because a conceded proposition does not operate as binding precedent.[88] The problem with this argument is that the plaintiffs in *Bank of Louisiana II* did not make the concession Burgess attributes to them. Indeed, if they had that would have finally resolved the jurisdictional issue against them because nothing they could have argued under the implicit jurisdiction-stripping analysis could have undone the dispositive effect of their purported concession

---

[85] *United States v. Berry*, 951 F.3d 632, 636 (5th Cir. 2020).

[86] *Sykes v. Texas Air Corp.*, 834 F.2d 488, 492 (5th Cir. 1987).

[87] Burgess Principal Br. 27; *see also id.* at 30 (repeating assertion).

[88] *Id.*

that Section 1818(i) explicitly stripped jurisdiction. Burgess appears to have confused explicit jurisdiction stripping, which the *Bank of Louisiana II* plaintiffs did *not* concede, with the first step of the implicit jurisdiction-stripping analysis ("whether it is 'fairly discernible' from the 'text, structure, and purpose' of the statutory scheme that Congress intended to preclude district court jurisdiction"),[89] which those plaintiffs did concede.[90] So this argument also is entirely without merit.

### C. The Supreme Court's *Axon* Decision Leaves Undisturbed the Parts of *Cochran* and *Bank of Louisiana* That Address *Explicit* Preclusion of Jurisdiction and Also Provides Additional Support for the Conclusion That Section 1818(i) *Explicitly* Precludes District-Court Jurisdiction Here.

In *Axon*, the Supreme Court affirmed this Court's en banc decision in *Cochran* and held that the statutory review scheme for SEC administrative proceedings does not *implicitly* preclude district-court jurisdiction over structural constitutional claims.[91] As relevant here, however, not only does *Axon* leave undisturbed the parts of *Cochran* and *Bank of Louisiana II* that address *explicit* preclusion of jurisdiction, but it also provides additional support for the conclusion that district-court jurisdiction is *explicitly* precluded in this case.

The Supreme Court began its analysis in *Axon* by reaffirming that a "statutory review scheme . . . may preclude district courts from exercising jurisdiction

---

[89] *Bank of Louisiana II*, 919 F.3d at 923.

[90] *Id.* at 924.

[91] *Axon*, 143 S.Ct. at 906. The Court also held the same with respect to the essentially identical statutory review scheme for FTC administrative proceedings. *Id.*

over challenges to federal agency action."[92] As the Court explained, although "[d]istrict courts may ordinarily hear those challenges by way of 28 U.S.C. § 1331[,] . . . Congress . . . may substitute for that district court authority an alternative scheme of review."[93]

The *Axon* Court then addressed the two very different ways in which Congress may preclude district-court jurisdiction. The Court first explained that "Congress of course may do so *explicitly*, [by] providing in so many words that district court jurisdiction will yield."[94] What is more, the Court continued, "Congress also may do so *implicitly*, by specifying a different method to resolve claims about agency action."[95] But unlike a statutory review scheme that *explicitly* precludes jurisdiction, "a statutory scheme of that kind[,]" *i.e.*, one that only *implicitly* precludes jurisdiction, "does not necessarily extend to every claim concerning agency action."[96] Consequently, the *Axon* Court explained, to determine "whether the particular claims brought [are] of the type Congress intended to be reviewed within this [latter kind of] statutory structure, [t]he Court [has] identified three considerations designed to aid in that inquiry, commonly known now as the *Thunder Basin* factors."[97]

---

[92] *Id.* at 900.

[93] *Id.*

[94] *Id.* (emphasis added).

[95] *Id.* (emphasis added).

[96] *Id.*

[97] *Id.*

The balance of the Supreme Court's decision in *Axon* applies the *Thunder Basin* factors to the SEC and FTC statutory review schemes—neither of which has express jurisdiction-stripping language like Section 1818(i)—and concludes that they do not *implicitly* preclude jurisdiction over structural constitutional claims. The decision says nothing further, however, about *explicit* preclusion. Consequently, *Axon* leaves undisturbed the parts of *Cochran* and *Bank of Louisiana II* that address *explicit* preclusion. *Axon* itself also supports the conclusion that Section 1818(i) *explicitly* bars jurisdiction here because the decision reaffirms that the inquiry in this case is limited to the words of the statute and does not include consideration of the *Thunder Basin* factors. And there is more.

In his concurring opinion in *Axon*, Justice Gorsuch provides two examples of statutes in which Congress has *explicitly* "provided in so many words" that jurisdiction is precluded over all claims—including structural constitutional claims. One of them is Section 1818(i)(1). Justice Gorsuch explained: "[I]t is sometimes more important to allow agencies to work without the bother of having to answer suits against them than it is to allow individuals their day in court. But when Congress holds that view, . . . [i]t simply tells us. *See, e.g.*, 12 U.S.C. § 1818(i)(1)."[98]

In sum, *Axon* strongly supports the conclusion that Section 1818(i)(1) *explicitly* precludes district-court jurisdiction over all of Burgess's claims in this case.

---

[98] *Id.* at 913 (Justice Gorsuch, concurring in judgment). The other example Justice Gorsuch provided is 42 U.S.C. § 405(h). *Id.*

When FDIC Appellants filed their opening brief in this appeal, this Court's complementary application of the *Thunder Basin* factors in *Bank of Louisiana II* was controlling law.[99] Accordingly, FDIC Appellants argued that an *implicit*-preclusion analysis "reinforced" the conclusion under the *explicit*-preclusion analysis that jurisdiction is precluded here.[100] In *Axon*, however, the Supreme Court broke new ground while applying the *Thunder Basin* factors.[101] Given this change in the law, we clarify that FDIC Appellants are *not* making an *implicit*-preclusion argument here.

### D. Even If this Court Had Not Already Decided the Issue in *Cochran* and *Bank of Louisiana,* Section 1818(i) Would Still Explicitly Preclude Jurisdiction Over All of Burgess's Claims.

The parties agree the pertinent language of Section 1818(i)(1) at issue here is "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of *any* notice or order under [12 U.S.C. § 1818], or to review, modify, suspend, terminate, or set aside any such notice or order."[102] Moreover, Burgess does not dispute that, "when dealing with an express preclusion clause . . . [the Court] determine[s] the scope of preclusion simply by interpreting the words Con-

---

[99] *See Cochran,* 20 F.4th at 244 n.11 (Costa, Circuit Judge, dissenting, joined by Owen, Chief Judge, and Stewart, Dennis, Southwick, Graves, and Higginson, Circuit Judges) ("As the majority does not overrule *Bank of Louisiana,* the decision's holding about . . . the *Thunder Basin* factors apparently remain[s] good law.").

[100] FDIC Appellants Opening Br. 34-37.

[101] *See Axon,* 143 S.Ct. at 902-06 (applying *Thunder Basin* factors and determining that jurisdiction over separation-of-powers claims was not implicitly precluded by SEC and FTC statutory review schemes).

[102] Burgess Principal Br. 17 (quoting 12 U.S.C. § 1818(i)(1)) (emphasis added); FDIC Appellants Opening Br. 30.

gress has chosen[,]"[103] or that this "inquiry begins with the statutory text, and ends there as well if the text is unambiguous."[104] Nor does he contend there is any ambiguity in the operative statutory language.[105] Thus, the task here requires only that this Court answer one straightforward question: Does the district court's preliminary injunction "affect . . . the issuance or enforcement of *any* notice or order under [12 U.S.C. § 1818]"? The question practically answers itself.

*First*, the preliminary injunction at issue is indisputably preventing the FDIC from enforcing the "notice of charges" it served on Burgess pursuant to 12 U.S.C. § 1818(b). *Second*, the preliminary injunction also is indisputably preventing the FDIC Board from issuing a final "order" pursuant to 12 U.S.C. § 1818(h). What is more, the declaratory relief Burgess seeks would similarly "affect" the "issuance or enforcement" of the same notice and order.[106] It necessarily follows that Section 1818(i)(1) *explicitly* precludes district-court jurisdiction to enter the preliminary injunction at issue or to otherwise adjudicate Burgess's claims. And because Burgess does not contend there is any ambiguity in the statute, that should settle the matter.

Nevertheless, Burgess throws a jumble of arguments against the wall hoping one might stick. None of them do.

---

[103] *Id.* (quoting *Bank of Louisiana*, 919 F.3d at 923).

[104] *Id.* (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)).

[105] *See* Burgess Principal Br. 17-23.

[106] *See Bank of Louisiana*, 919 F.3d at 924 (Section 1818(i)(1)'s "prohibition against affecting agency orders 'by injunction *or otherwise*' encompasses declaratory relief").

Burgess argues that Section 1818(i)(1) does not preclude jurisdiction here because he is "pursuing structural constitutional claims that are wholly collateral to the agency's enforcement proceeding."[107] But he erroneously conflates the *explicit-* and *implicit-*preclusion analyses. Whether a claim is "wholly collateral to [a] statute's review provisions" is one of the *Thunder Basin* factors used to discern Congressional intent when conducting an *implicit-*preclusion analysis.[108] As noted above, to discern Congressional intent while conducting an *explicit-*preclusion analysis a court simply interprets the statutory language Congress has chosen. Burgess repeats his error when he contends that FDIC Appellants' reading of Section 1818(i)(1) is not correct because, if it were, FDIC administrative proceeding respondents would "ha[ve] no opportunity for 'meaningful judicial review.'"[109] Again, whether precluding district-court jurisdiction could "foreclose all meaningful judicial review" is one of the *Thunder Basin* factors that must be applied during an *implicit-*preclusion analysis.[110]

Burgess argues that the Supreme Court's decision in *Webster v. Doe*[111] requires that a statute must show "clear intent" to foreclose jurisdiction over structural constitutional claims and that Section 1818(i)(1) does not do so because it "does not specifically mention that the jurisdictional bar encompasses structural constitutional

---

[107] Burgess Principal Br. 17 (bold print and underlining omitted).

[108] *See Axon*, 143 S.Ct. at 900; *Cochran*, 20 F.4th at 207.

[109] Burgess Principal Br. at 21-22, 22.

[110] *See Axon*, 143 S.Ct. at 900; *Cochran*, 20 F.4th at 207, 208-09.

[111] 486 U.S. 592 (1988).

claims."[112] There are several problems with this argument. *First*, Burgess has not identified—nor are we aware of—any jurisdiction-stripping statute that specifically mentions "structural constitutional claims." *Second*, *Webster* provides no support for such a requirement because it did not involve—nor did it even mention—"structural" constitutional claims.[113] *Third*, Section 1818(i)(1) does not specifically mention any type of claim—whether constitutional or based on other legal grounds. Yet Burgess concedes it strips jurisdiction over non-structural constitutional claims.

Burgess notes that the district court compared Section 1818(i)(1) to 42 U.S.C. § 405(h) and, because the latter statute directly references 28 U.S.C. § 1331 and the former does not, concluded the absence of a direct reference to Section 1331 in Section 1818(i)(1) weighed against it being an explicit bar to Burgess's claims.[114] Far more persuasive, however, is Justice Gorsuch's concurring opinion in *Axon*, where he quotes these same two statutes and concludes that *both* would *explicitly* preclude jurisdiction over structural constitutional claims like those at issue in that case.[115]

Burgess's attempts to find an exemption for *structural* constitutional claims in Section 1818(i)(1) also run headlong into his admission that the statute *does* expli-

---

[112] Burgess Principal Br. 17-18.

[113] Burgess tries to have it both ways on this point. He disagrees with FDIC Appellants' "conten-[tion] that *Webster* is irrelevant because that case 'did not involve . . . 'structural' constitutional claims." Burgess Principal Br. 18. But just two pages later, he argues that the "holding in *Shalala* [*v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000)] has no relevance here because that case did not involve a structural constitutional claim." *Id.* at 20 n.3.

[114] *Id.* at 19.

[115] *See Axon*, 143 S.Ct. at 913 (Justice Gorsuch, concurring in judgment).

citly bar *non-structural* constitutional claims.[116] This admission is fatal because there is no language in Section 1818(i)(1) that distinguishes between *structural* and *non-structural* constitutional claims. To the contrary, Section 1818(i)(1) plainly states that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of *any* notice or order under [section 1818]." And the Supreme Court has repeatedly held while construing other statutes that, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately *of whatever kind.*'"[117] Section 1818(i)(1) therefore precludes jurisdiction to affect the issuance or enforcement of *any* FDIC orders or notices—including orders or notices in administrative proceedings where a respondent raises a structural constitutional claim.

Unable to find any language in Section 1818(i)(1) that exempts structural constitutional claims from its explicit jurisdictional bar, Burgess instead contends that the phrase "under any such section"—and, in particular, the word "under"—is a "textual warrant for treating structural and non-structural claims differently for jurisdictional purposes."[118] This is so, Burgess argues, because "if [a] structural claim is valid, then the enjoined notice or order is not issued 'under' Section 1818, because no law can authorize the issuance of a notice or order through an unconstitutional proceed-

---

[116] Burgess Principal Br. 2 ("Burgess has never disputed that Section 1818(i) contains an explicit jurisdictional bar over non-structural claims.").

[117] *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 219 (2008) (emphasis added) (quoting *United States v. Gonzalez*, 520 U.S. 1, 5 (1997)).

[118] Burgess Principal Br. 20-21.

ing."[119] Unsurprisingly, Burgess cites no case in which any court has interpreted the word "under" in such a contrived way. Moreover, the Supreme Court's interpretation of a virtually identical statutory phrase and, in particular, the word "under" in that phrase forecloses Burgess's argument.

In *Pereira v. Sessions*,[120] one of the issues before the Supreme Court was the proper interpretation of the word "under" as it appears in the statutory phrase "notice to appear under section 1229(a)" included in 8 U.S.C. § 1229b(d)(1)(A). The Court first rejected arguments that the word "under" meant "issued under the authority of" or "authorized by."[121] It then held as follows: "Based on the plain language and statutory context . . . we think it obvious that the word 'under,' as used in [§ 1229b(d)(1)(A)], can only mean 'in accordance with' or 'according to,' for it connects . . . § 1229b(d)(1) to a 'notice to appear' . . . described in § 1229(a)(1)(G)(i)."[122] Likewise here, the word "under" in Section 1818(i)(1) connects that section to "any notice or order" described in other specified subsections of Section 1818. Thus, Burgess's argument—*i.e.*, that the phrase "under any such section" is "a textual warrant" for treating claims differently whenever a respondent argues an administrative proceeding is somehow *ultra vires*—is entirely without merit.

---

[119] *Id.* at 21.

[120] --- U.S. ---, 138 S.Ct. 2105 (2018).

[121] *Id.* at 2117.

[122] *Id.*

Burgess's final argument regarding interpretation of Section 1818(i)(1) is that this Court should apply the canon of constitutional avoidance and interpret the statute to permit jurisdiction here in order to avoid considering a potential constitutional concern he suggests would be presented if the statute is interpreted to preclude jurisdiction.[123] But as the Supreme Court stated in the principal case Burgess cites in support of this argument, "one of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions."[124] Thus, the canon obviously should not be applied here where Burgess is asking this Court to avoid the possibility of having to consider one potential constitutional issue so that it can instead immediately consider two other constitutional issues (whether Burgess has a Seventh Amendment right to a jury trial and whether FDIC Board members and ALJs have removal protection that violates Article II of the Constitution).

In sum, even if it were an issue of first impression Section 1818(i)(1) would still have to be interpreted as an explicit jurisdictional bar to all of Burgess's claims.

## II. The Preliminary Injunction Should Be Vacated For The Additional And Alternative Reason That This Court Has Already Held There Is No Right To A Jury Trial Of Section 1818 Enforcement Claims.

An "absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law."[125]

---

[123] Burgess Principal Br. 23.

[124] *Clark v. Martinez*, 543 U.S. 371, 381 (2005) (emphasis in original).

[125] *Texas Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012).

Because this Court has already held there is no right to a jury trial of Section 1818 enforcement claims, Burgess has no likelihood of success on the merits. The preliminary injunction should also be vacated for this alternative reason.

## A.  FDIC Appellants Timely Raised in the District Court Their Arguments Concerning Burgess's Seventh Amendment Claim.

Burgess's primary argument why he should prevail on his right-to-a-jury-trial claim is that FDIC Appellants purportedly forfeited their merits-based Seventh Amendment arguments by failing to raise them in the district court.[126] This argument has no purchase.

Burgess begins by insinuating that FDIC Appellants did not make any merits-based arguments challenging his Seventh Amendment jury-trial claim until they filed their motion for reconsideration under Fed. R. Civ. P. 54(b).[127] That is not true. Rather, as we advised this Court in our opening brief,[128] FDIC Appellants argued to the district court during the preliminary injunction hearing that this Court's controlling decision in *Akin v. Office of Thrift Supervision*[129] required rejection of Burgess's jury-trial claim. Specifically, FDIC Appellants argued that

> Mr. Burgess['s claim that he] is entitled to a jury trial under the Seventh Amendment in an FDIC enforcement action . . . would require the Fifth Circuit to overrule its decision in Akin vs.

[126] Burgess Principal Br. 36-38.

[127] *Id.* at 36.

[128] FDIC Appellants Opening Br. 15 n.78.

[129] 950 F.2d 1180 (5th Cir. 1992).

> Office of Thrift Supervision, which is reported at 950 F.2d 1180, that's a 1992 decision of the Fifth Circuit, which says, there is no jury trial when a bank regulator does an administrative enforcement action against a banker.[130]

It is well established that raising this issue at the preliminary injunction hearing was sufficient to preserve it for appeal.

In *Griffin v. Box*,[131] this Court affirmed two district-court orders that had granted motions for preliminary injunctive relief. As relevant here, at the outset of its analysis in *Griffin* this Court quoted with approval the district court's observation that "all the arguments made by plaintiffs were raised or could have been raised *at the preliminary injunction hearing.*"[132]

In *Fraternal Order of Police v. United States*,[133] the D.C. Circuit considered whether the appellant had forfeited an issue on appeal because it had only raised the issue "orally before the district court at the combined summary judgment/preliminary injunction hearing."[134] The court held the issue had been preserved for appeal because the "oral argument on the [issue] was enough to satisfy the general requirement that an issue on appeal be raised in the trial court."[135]

---

[130] ROA.815.

[131] 910 F.2d 255 (5th Cir. 1990)

[132] *Id.* at 259 (emphasis added).

[133] 173 F.3d 898 (D.C. Cir. 1999).

[134] *Id.* at 362.

[135] *Id.* at 363.

In *Skehan v. Board of Trustees of Bloomsburg State College*,[136] the Third Circuit also considered whether a party had forfeited an issue by failing to raise it in the district court. As in this case,[137] both the district court and the appellee in *Skehan* contended that the appellant had not raised an issue in the district court and the appellee argued that the issue should therefore not be considered.[138] But the Third Circuit rejected that argument and instead held the issue had been raised in the district court "[b]ased on [the Third Circuit's] independent review of the record of *the preliminary injunction hearing*[.]"[139] That is precisely what should happen here, except that this Court need only review the portion of the record of the preliminary injunction hearing in this case that is quoted above at pp. 33-34.

What is more, even assuming for the sake of argument that FDIC Appellants had failed to sufficiently raise their Seventh Amendment arguments in the district court, the issue still would not be forfeited. Rather, under this Court's "extraordinary circumstances test" issues not sufficiently raised in the district court may still be considered on appeal "when the issue involved is purely a legal one and failure to address it would result in a manifest miscarriage of justice."[140] The issue of whether Burgess is entitled to a jury trial of FDIC administrative enforcement claims is a pure

---

[136] *590 F.2d 470 (3d Cir. 1978).*

[137] *See* Burgess Principal Br. 36.

[138] *See Skehan*, 590 F.2d at 482.

[139] *Id.* (emphasis added).

[140] *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 593 (5th Cir. 2006).

issue of law. And allowing Burgess to prevail in this appeal on the ground that he was denied a jury trial when controlling circuit law holds he has no right to one certainly would result in a manifest miscarriage of justice.

### B. *Akin* Is Controlling Circuit Law Holding There Is No Right to a Jury Trial of Section 1818 Enforcement Claims.

Burgess asserts that *Akin* is not controlling here because it did *not* "hold[ ] that the public-rights doctrine defeated a claimed right to a jury trial on section 1818 enforcement claims that sought a legal remedy."[141] Because *Akin* controls on what it did hold, Burgess's right-to-a-jury-trial claim necessarily fails if he is wrong about this. He is.

In *Akin*, the Office of Thrift Supervision (OTS) initiated a Section 1818 administrative enforcement proceeding against Akin, the sole shareholder and former officer of a bank that subsequently failed.[142] Three years before the bank failed, Akin had entered into an agreement with OTS's predecessor agency that required him to maintain the bank's legally mandated net worth by making capital infusions as needed.[143] During the ensuing two years, the bank developed a net-worth deficiency in excess of $19 million.[144] When Akin refused to pay that amount into the bank, OTS initiated an administrative enforcement proceeding to enforce the agreement.

[141] Burgess Principal Br. 46 (bold print and underlining omitted) (quoting FDIC Appellants Opening Br. 45).

[142] *See Akin*, 950 F.2d at 1181-82.

[143] *Id.* at 1182.

[144] *Id.*

While that proceeding was pending, the bank failed. At the end of the administrative proceeding, OTS ordered Akin to pay more than $19 million into the bank's receivership.[145] Akin then appealed that order to this Court.

Burgess tries to distinguish *Akin* by emphasizing that OTS initiated the administrative proceeding there under Section 1818(b) and sought a cease and desist order. Thus, he argues, *Akin* did not address any claim that sought a legal remedy that would have implicated the Seventh Amendment.[146] But Burgess overlooks that, in Akin's appeal to this Court, Akin "characterize[d] the OTS cease and desist proceeding as a contract collection action in behalf of . . . the receivership."[147] More to the point, this Court stated in its *Akin* decision that "Akin repeat[ed] his claim that [the] action [was] a collection action on a breach of contract, entitling him to a jury trial."[148] Critically, this Court rejected *that* claim with two alternative holdings.

First, this Court held that "Akin's claimed right to a jury trial must . . . fail" because "[w]here there is a proper administrative forum for adjudicating public rights, there is no right to a jury trial."[149] In support of that holding, this Court cited the Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg*[150]—including a

---

[145] *Id.*

[146] Burgess Principal Br. 45-46.

[147] *Akin*, 950 F.2d at 1183.

[148] *Id.* at 1186.

[149] *Id.*

[150] 492 U.S. 33 (1989).

pincite to a two-page discussion of the public-rights doctrine.[151] Thus, in this part of the *Akin* decision the Court was considering at face value Akin's claim that the administrative proceeding was a collection action on a breach of contract and that he was therefore entitled to a jury trial. And this Court plainly held that Akin was not entitled to a jury trial on that claim seeking a legal remedy because—under the public-rights doctrine—he had no right to a jury trial of Section 1818 enforcement claims. Moreover, because there is no right to a jury trial on any claim that seeks an *equitable* remedy, there would have been no reason for this Court to invoke the public-rights doctrine unless it was addressing a claim that sought a *legal* remedy.

So Burgess is simply wrong: *Akin* did deliver a holding that the public-rights doctrine defeated a clamed right to a jury trial on a section 1818 enforcement claim that sought a legal remedy.

This Court also held that the jury-trial claim in *Akin* failed for a second reason: It rejected Akin's characterization of the administrative proceeding as a collection action on a breach of contract.[152] Importantly, however, this second holding does not diminish the precedential value of this Court's alternative holding grounded on *Granfinanciera* and the public-rights doctrine. Rather, "[b]ecause alternative holdings in this circuit are binding precedent and not obiter dictum, [this Court is] bound

---

[151] *See Akin*, 950 F.2d at 1186 (citing *Granfinanciera*, 492 U.S. at 54-55).

[152] *Id.*

to follow them."[153] Consequently, Burgess has no right to a jury trial of any of the FDIC's Section 1818 enforcement claims that are at issue in this case.

### C.  This Court's Decision in *Jarkesy v. SEC* Is Not Controlling Here.

Burgess contends that this Court's recent decision in *Jarkesy v. SEC*[154]—which held there is a right to a jury trial of SEC enforcement claims—controls resolution of the jury-trial issue in this case.[155] It does not. Again, "[i]t is a well-settled Fifth Circuit rule of orderliness that one panel of [this] [C]ourt may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or [the Fifth Circuit's] en banc court."[156] Thus, *Jarkesy* could not have overruled *Akin*, which—as just shown in the preceding section of this brief— held there is no right to a jury trial of Section 1818 enforcement claims.

What is more, *Jarkesy* is in any event materially distinguishable from this case. As we explained in our opening brief,[157] unlike Section 1818—which assigns adjudi-cation of *all* enforcement claims it authorizes *exclusively* to non-jury tribunals within the federal banking agencies—the statute that governs SEC enforcement actions gives the SEC the option to adjudicate enforcement claims either in-house or in Article III

---

[153] *United States v. Wallace*, 964 F.3d 386, 390 (5th Cir. 2020) (internal citation and quotation marks omitted).

[154] 34 F.4th 446 (5th Cir. 2022), *reh'g denied*, 51 F.4th 644 (5th Cir.), *cert. filed* Mar. 8, 2023 (U.S. No. 22-859).

[155] Burgess Principal Br. 38-46.

[156] *Jacobs*, 548 F.3d at 378; *see also* FDIC Appellants Opening Br. 46.

[157] *Id.* at 46-49.

courts. And as we further explained,[158] this aspect of the SEC's enforcement scheme was the focus of this Court's public-rights analysis in *Jarkesy*. Burgess acknowledges this difference between the two statutes, but he contends that FDIC Appellants "never explain[ed] why that difference is legally significant."[159] Not true.

In our opening brief, we explained that "[t]he *Jarkesy* Court's focus on the SEC's option to elect whether to adjudicate enforcement claims before a non-jury tribunal or before an Article III court dovetails with the analysis set forth in the *Granfinanciera* decision."[160] This is so, we further explained, because "the Supreme Court held there that '[u]nless Congress may and has permissibly withdrawn jurisdiction over [an] action by courts of law and assigned it *exclusively* to non-Article III tribunals sitting without juries, the Seventh Amendment guarantees petitioners a jury trial upon request.'"[161] Thus, the fact that the SEC's statutory enforcement scheme does *not* assign jurisdiction over SEC enforcement claims *exclusively* to in-house non-jury tribunals would appear to be, without more, a sufficient ground on which to rest the decision in *Jarkesy*. But as we also explained in our opening brief, "the statutory scheme that governs adjudication of FDIC enforcement claims is materially differ-

---

[158] *Id.* at 47-48 and n.205 (citing and quoting *Jarkesy*, 34 F.4th at 455).

[159] Burgess Principal Br. 44.

[160] FDIC Appellants Opening Br. 47.

[161] *Id.* at 47-48 (emphasis in original) (quoting *Granfinanciera*, 492 U.S. at 49). *See also Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450 (1977) (Congress may "commit[ ] *exclusively* to an administrative agency the function of deciding whether a violation has in fact occurred.") (emphasis added)).

ent: Congress *did* assign adjudication of *all* Section 1818 claims *exclusively* to FDIC administrative tribunals."[162] Burgess's refusal to even acknowledge FDIC Appellants' argument on this point—let alone respond to it—speaks volumes. Moreover, it effectively concedes that this case *is* materially distinguishable from *Jarkesy*.[163]

We also noted in our opening brief that this Court in *Jarkesy* emphasized that "the SEC ha[d] in fact brought many [enforcement] actions to jury trial over the years."[164] As we explained, this is another respect in which this case is distinguishable from *Jarkesy* because "neither the district court nor Burgess [have] cited to even one case where an FDIC enforcement action was brought in a court of law. Nor could they have, as it has never happened."[165] Burgess disputes none of this. Instead, he persists in trying to hammer a square peg into a round hole by suggesting that the FDIC has options other than Section 1818 for pursuing some kinds of claims against Burgess before a jury.[166] This argument is meritless. It also misses the point.

The only statutory provision either Burgess or the district court has identified as a possible source of authority for the FDIC to bring jury-trial claims of some kind against Burgess is 12 U.S.C. § 1821(k). Burgess now concedes that Section 1821(k)

---

[162] FDIC Appellants Br. 48 (emphases in original).

[163] *See United States v. Stalnaker*, 571 F.3d 428, 439-40 (5th Cir. 2009) (issues "waived for inadequate briefing" where they were "not fully explain[ed]" and no "relevant law" was cited).

[164] FDIC Appellants Opening Br. 48 (quoting *Jarkesy*, 34 F.4th at 456).

[165] *Id.*

[166] Burgess Principal Br. 43-44.

only allows the FDIC to sue in its distinct capacity as a receiver or conservator and he does not dispute that Section 1821(k) does *not* authorize the FDIC to adjudicate *Section 1818 enforcement claims* in a federal court.[167] Burgess makes the absurd suggestion, however, that in order to pursue unspecified jury-trial claims against individual bank officers or employees the FDIC could put a bank into receivership even though it is not insolvent.[168] But doing as Burgess suggests would be like euthanizing a patient to cure what ailed him. It is therefore evident that Section 1821(k) has no role to play with respect to FDIC enforcement actions.

Burgess also argues that there are two other ways in which "it might have been possible for the FDIC to seek [equitable] remedies against Burgess": a 12 U.S.C. § 1818(b) cease-and-desist proceeding or a suit under 12 U.S.C. § 1819(a)'s "sue and be sued" clause.[169] But this would solve nothing because the FDIC would not be able to seek a civil money penalty in such proceedings.

Even more important, the fundamental problem with all of Burgess's suggested alternatives to a Section 1818 claim seeking a civil money penalty is that limiting the FDIC's enforcement authority as Burgess proposes would conflict with controlling precedent. In *Atlas Roofing*, the Supreme Court reaffirmed that Congress may "create[ ] new statutory obligations, provide[ ] for *civil penalties* for their

---

[167] *Id.* at 43.

[168] *Id.*

[169] *Id.* at 43-44.

violation, and commit[ ] *exclusively* to an administrative agency the function of deciding whether a violation has in fact occurred."[170] In enacting Section 1818, that is precisely what Congress did. But none of Burgess's suggested alternatives to a Section 1818 claim seeking a civil money penalty would allow the FDIC to do what Congress has determined and the Supreme Court has held it should be able to do.

III.    **The District Court Correctly Ruled That Burgess Is Not Likely To Succeed On The Merits Of His Improper-Removal-Protection Claims Because He Did Not Show The Requisite Harm Required For Such Claims.**

In his improper cross-appeal,[171] Burgess argues that the district court erred in denying his request for a preliminary injunction as to his claims that FDIC Board members and ALJs enjoy improper removal protections. As Burgess acknowledges, in the context of this appeal his arguments regarding these claims would provide "alternative grounds for affirmance" if this Court were to affirm the district court's ruling on subject-matter jurisdiction but reverse its ruling on his jury-trial claim.[172]

---

[170] *Atlas Roofing*, 430 U.S. at 450 (emphasis added).

[171] *See* FDIC Appellants' Opening Br. 6-7 and nn.17-19 (explaining that this Court lacks appellate jurisdiction over Burgess's cross-appeal because the preliminary injunction orders he cross-appeals from granted him all of the preliminary injunctive relief he sought with respect to all Counts of his Complaint) (citing *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004)).

[172] Burgess Principal Br. 51. Although Burgess "was required to raise these arguments to avoid forfeiture, . . . [he] was not required to do so in a cross-appeal. Rather, [he] should have simply raised them as alternate grounds for affirmance in [his] opposition brief." *Cooper Indus., Ltd. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 876 F.3d 119, 127 (5th Cir. 2017) (citation omitted). As this Court has admonished, "[t]his is not just formalism." *Id.* To the contrary, "[a] cross-appeal filed for the sole purpose of advancing additional arguments in support of a judgment is 'worse than unnecessary', because it disrupts the briefing schedule, increases the number (and usually the length) of briefs, and tends to confuse the issues." *Id.*

Burgess correctly reports that the district court concluded his arguments that FDIC Board members and ALJs have unconstitutional removal protection "have merit" and that, for purposes of this appeal, FDIC Appellants do not contest that part of the district court's order. However, the district court further ruled that Burgess is nevertheless unlikely to succeed on the merits of those claims because the court could not afford him any relief on those claims.[173] We agree.

As the district court explained,[174] in *Collins v. Yellen* the Supreme Court held that to obtain a remedy on an improper-removal-protection claim, the challenging party must demonstrate not only that the removal provision violates the Constitution, but also that "the unconstitutional removal provision inflicted harm."[175] The district court here ruled,[176] and Burgess does not contest,[177] that Burgess did not show such harm. Instead, the nub of Burgess's argument is that he was not required to do so. Specifically, Burgess argues that the *Collins* requirement that a removal provision inflict harm applies only where a challenging party is seeking *retrospective* relief and not where, as here, only *prospective* relief is being sought.[178] Once again, however, Burgess runs headlong into an adverse controlling Fifth Circuit decision.

---

[173] ROA.344-46.

[174] ROA.344.

[175] --- U.S. ---, ---, 141 S.Ct. 1761, 1788-89 (2021).

[176] ROA.345-46.

[177] Burgess Principal Br. 52-60.

[178] *Id.* at 59; *see also* ROA.345.

In *Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, this Court interpreted *Collins* and rejected the very argument Burgess presses here:

> *Collins* did not rest on a distinction between prospective and retrospective relief. * * * [Instead], *Collins's* remedial inquiry focuse[d] on whether a "harm" occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and *our determination as to whether an unconstitutional removal protection inflicted harm remains the same whether the [challenging party] seeks retrospective or prospective relief.*[179]

Applying this controlling law here, Burgess's improper-removal-protection claims do *not* provide an alternative ground for upholding the preliminary injunction. Rather, the district court's ruling that Burgess is unlikely to succeed on the merits of those claims was mandated by *Community Financial*.[180]

Burgess contends *Community Financial* does not control here because, he argues, in footnote 16 of this Court's earlier en banc decision in *Cochran* it held the *Collins* harm requirement does *not* apply to plaintiffs seeking *prospective* relief and this Court must therefore follow *Cochran* rather than *Community Financial*.[181] Burgess is wrong. There is no conflict between *Cochran* and *Community Financial* on this issue and *Community Financial* is therefore controlling.

---

[179] 51 F.4th 616, 631 (5th Cir. 2022) (quotation marks omitted, emphasis added), *cert. granted on other grounds*, 2023 WL 2227658 (U.S. Feb. 27, 2023).

[180] Notably, the two other circuits that have thus far addressed this issue have also held that the *Collins* harm requirement applies whether a claimant seeks retrospective or prospective relief. *See CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180-81 (2d Cir. 2023); *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *cert. filed* Jan. 30, 2023 (U.S. No. 22-714).

[181] Burgess Principal Br. 56-60.

Footnote 16 of the *Cochran* en banc decision cannot bear the weight Burgess places on it. In that footnote, the en banc majority responded to the dissent, which asserted that improper appointment of an ALJ creates a "more serious injury" than improper restrictions on removal of an ALJ. The dissent relied on the *Collins* holding that improper protection from removal, unlike improper appointment, does not lead to the exercise of power that an agency official does not lawfully possess.[182] The *Cochran* majority responded as follows: "*Collins* does not impact our conclusion in this case because Cochran does not seek to 'void' the acts of any SEC official. Rather, she seeks an administrative adjudication untainted by separation-of-powers violations. Although we will not engage in the dissenting opinion's efforts to weigh the relative severity of constitutional injuries, Cochran's injury is sufficiently serious to justify pre-enforcement review in federal court."[183] Conspicuously absent from footnote 16 is any mention of retrospective or prospective relief or whether *Collins* permits plaintiffs to obtain prospective relief without first showing compensable harm.

Moreover, even assuming that something could be extracted from footnote 16 that bears on the applicability of the *Collins* harm requirement to the request for prospective relief in *Cochran*, it would not be a holding that could have any binding effect here. Rather, as this Court made clear: "[*Cochran*] presented only the issue of whether the Exchange Act divested district court jurisdiction over claims that SEC

---

[182] *Cochran*, 20 F.4th at 210 n.16, responding to Dissenting Op., *id.* at 243-44.

[183] *Id.* at 210 n.16.

ALJs are unconstitutionally insulated from the President's removal power; [this Court's] holding extend[ed] no further, and the result in other cases, even those concerning similar statutory schemes, may be different."[181] Just ten months later, this Court—with a panel of three circuit judges who had joined in the *Cochran* en banc majority decision—issued the *Community Financial* decision holding there is no distinction between retrospective and prospective relief under *Collins*. Burgess's implicit suggestion that these three circuit judges had all forgotten about the decision in *Cochran* and what it had actually held—or more to the point, what it had *not* actually held—does not warrant even passing consideration.

In sum, *Community Financial* controls on this issue. Thus, Burgess's cross-appeal does not provide an alternative ground for this Court to affirm the preliminary injunction on the merits.

## IV.   Burgess Did Not Establish Irreparable Harm.

In our opening brief, we argued that the district court erred in ruling the irreparable harm requirement was "automatically satisfied" because it found Burgess was likely to succeed on a claim of a violation of a constitutional right.[185] Specifically, we argued that other circuit courts and district courts within this Circuit have held this concept applies only to "privacy rights and certain First Amendment rights."[186] Bur-

---

[181] *Id.* at 211.

[185] FDIC Appellants Opening Br. 49-54.

[186] *Id.* at 54.

gess responds that FDIC Appellants' argument on this point is "meritless for five reasons."[187] Burgess is five times wrong.

*First*, relying on the Supreme Court's decision in *Free Enterprise Fund v. PCAOB*,[188] Burgess contends FDIC Appellants' argument is "dead on arrival because the Supreme Court has already held that 'separation-of-powers violation[s]' cause a 'here-and-now injury.'"[189] But of course, a "here-and-now injury" is not the same thing as an "irreparable injury." Indeed, Burgess neglects to mention that the Supreme Court held in *Free Enterprise* that the petitioners there were *not* entitled to injunctive relief.[190] Burgess also points to the fact that this Court issued a stay at a prior stage of this case after finding the necessary irreparable harm.[191] But he neglects to mention that the long-ago finding of irreparable harm there was based on the evidence provided of the circumstances that were then present—over six years ago. There was no ruling by this Court that the irreparable harm requirement was "automatically satisfied" because a claim of a constitutional violation was involved.[192]

---

[187] Burgess Principal Br.47; *see also id.* at 46-50.

[188] 561 U.S. 477 (2010).

[189] Burgess Principal Br. 47 (quoting *Free Enterprise*, 561 U.S. at 513).

[190] *Free Enterprise*, 561 U.S. at 513; *see also Cochran*, 20 F.4th at 210 n.14 (noting that *Free Enterprise* "held that the PCAOB's structure violated the Constitution, but nevertheless conclude[d] that the plaintiffs were not entitled to injunctive relief").

[191] Burgess Principal Br. 47.

[192] *See Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017). Burgess also points to a one-sentence order issued in the *Cochran* case. Burgess Principal Br. 47. That order gives no indication of how the irreparable harm requirement to obtain a stay was satisfied in that instance.

*Second*, Burgess points out that FDIC Appellants have cited no case where a court has ruled that a Seventh Amendment violation does *not* automatically establish irreparable harm. But this puts the burden of proof on the wrong party and requires FDIC Appellants to prove a negative. What is significant here is that Burgess cannot cite a single case where a court has held that a Seventh Amendment violation *does* automatically establish irreparable harm. Equally significant is the fact that FDIC Appellants' opening brief discussed two published decisions—one from within and one from outside this Circuit—that held a separation-of-powers violation did *not* automatically establish irreparable harm.[193] Burgess tellingly says nothing about these two cases that are directly on point.

*Third*, Burgess claims this Court has held that the "automatically-satisfied" rule applies to constitutional violations other than those involving privacy rights and First Amendment freedoms.[194] But the only two cases he cites actually support FDIC Appellants' position. In *BST Holdings, LLC v. OSHA*, this Court held the irreparable harm requirement was satisfied because of "[t]he loss of First Amendment freedoms," specifically "the free religious exercise [rights] of certain employees."[195] No other constitutional violation was addressed. And in *Deerfield Med. Ctr. v. City of*

---

[193] FDIC Appellants Opening Br. 53 and n.231 (discussing *Chambless Enters., LLC v. Redfield*, 508 F. Supp. 3d 101 (W.D. La. 2020), and *Sweis v. U.S. Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44 (D.D.C. 2013)).

[194] Burgess Principal Br. 48.

[195] 17 F.4th 604, 618 and n.21 (5th Cir. 2021).

*Deerfield Beach*, this Court first stated the governing rule as being that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury" and "similarly the right of privacy must be carefully guarded for once an infringement has occurred it cannot be undone by monetary relief."[196] This Court then held it had "already determined that the constitutional right of privacy is 'either threatened or in fact being threatened', and this conclusion mandates a finding of irreparable injury."[197] Again, no other constitutional violation was addressed.

*Fourth*, Burgess chides FDIC Appellants for relying on this Court's decision in *Opulent Life Church v. City of Holly Springs, Miss.*[198] because, he says, that case affirms a "general rule" that "no further showing of irreparable injury" is required in cases where "an alleged deprivation of a constitutional right is involved."[199]  Yet again, however, the only constitutional violation addressed by this Court involved First Amendment freedoms. What is more, with respect to irreparable harm, this Court held that: "Opulent Life has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment and RLUIPA rights," and the "RLUIPA enforces First Amendment freedoms."[200]

---

[196] 661 F.2d 328, 338 (5th Cir. 1981).

[197] *Id.*

[198] 697 F.3d 279 (5th Cir. 2012).

[199] Burgess Principal Br. 49.

[200] *Opulent Life*, 697 F.3d at 295. The RLUIPA is the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.*

*Fifth*, Burgess says that none of this even matters because the record purportedly contains "abundant evidence of irreparable harm."[201] There are two problems with Burgess's fallback position on irreparable harm. First, as Burgess concedes, the only evidence of irreparable harm in the record is his own self-serving affidavit.[202] That affidavit, moreover, provides nothing more than speculation and conclusory allegations of irreparable injury.[203] This is not sufficient to support the extraordinary remedy of a preliminary injunction.[204]

What is more, as the Supreme Court reaffirmed in *Benisek v. Lamone*, "a party requesting a preliminary injunction must generally show reasonable diligence."[205] There, the Court held that parties who had waited to bring their claims until six years after they could have done so were not entitled to a preliminary injunction.[206] Similarly here, there is no valid reason why Burgess could not have brought his separation-of-powers claims immediately after the FDIC initiated the administrative enforcement proceeding against him in November 2014. Instead, he waited until the "eleventh hour"—just as his case was about to be submitted to the

---

[201] Burgess Principal Br. 49.

[202] *Id.* at 49-50.

[203] *See* ROA.178-81.

[204] *See, e.g., Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (mere speculation or conclusory allegations of irreparable injury not sufficient).

[205] --- U.S. ---, ---, 138 S.Ct. 1942, 1944 (2018).

[206] *Id*; *see also White v. Johnson*, 429 F.3d 572, 574 (5th Cir. 2005) (affirming denial of injunctive relief where movant waited until the "eleventh hour" to seek relief).

FDIC Board for its review and issuance of a final order—and did not file this lawsuit until October 2022. That was nearly eight years after Burgess originally could have filed this lawsuit. It was too late.

## CONCLUSION

This Court should vacate the district court's November 6, 2022 Order and it's December 1, 2022 preliminary injunction Order and remand this case with instructions to dismiss all claims for lack of subject matter jurisdiction.

Dated: May 1, 2023

Respectfully submitted,

B. Amon James
Assistant General Counsel
J. Scott Watson
Senior Counsel
s/Joseph Brooks
Joseph Brooks
Counsel
FEDERAL DEPOSIT INSURANCE
  CORPORATION
3501 Fairfax Drive, Room D-7010
Arlington, VA 22226
Tel: (703) 562-2054
Fax: (703) 562-2496

*Counsel for Appellants/Cross-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response and Reply Brief of Appellants/Cross-Appellees has been filed by electronic case filing and served on counsel of record through the Court's Notice of Docket Activity on this 1st day of May, 2023.

s/ Joseph Brooks
Joseph Brooks

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)

Undersigned counsel certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A)(i) because it contains 12,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Undersigned counsel further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a pro-portionally spaced 14-point (12-point for footnotes) Baskerville Old Face typeface using Microsoft Word 2016.

s/Joseph Brooks
Joseph Brooks
*Counsel for Appellants/Cross-Appellees*

Dated: May 1, 2023