Case No. 22-11172

# United States Court of Appeals for the Fifth Circuit

CORNELIUS CAMPBELL BURGESS,

*Plaintiff-Appellee/Cross-Appellant,*

— v. —

JENNIFER WHANG, IN HER OFFICIAL CAPACITY AS AN ADMINISTRATIVE LAW JUDGE; FEDERAL DEPOSIT INSURANCE CORPORATION; MARTIN J. GRUENBERG, IN HIS OFFICIAL CAPACITY AS ACTING CHAIRMAN OF THE FDIC; MICHAEL J. HSU, IN HIS OFFICIAL CAPACITY AS A DIRECTOR OF THE FDIC; ROHIT CHOPRA, IN HIS OFFICIAL CAPACITY AS A DIRECTOR OF THE FDIC,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court for the Northern District of Texas (Wichita Falls Division), No. 7:22-cv-00100-O, Hon. Reed O'Connor

## SUPPLEMENTAL PRINCIPAL BRIEF OF APPELLANTS/CROSS-APPELLEES

B. Amon James
Assistant General Counsel
J. Scott Watson
Senior Counsel
Joseph Brooks
Counsel
FEDERAL DEPOSIT INSURANCE
   CORPORATION
3501 Fairfax Drive, Room VS-D-7010
Arlington, VA 22226
Tel: (703) 562-2054 | Fax: (703) 562-2469
*Counsel for Appellants/Cross-Appellees*

November 14, 2024

## CERTIFICATE OF INTERESTED PERSONS

Appellants/Cross-Appellees (FDIC Appellants) are not required to provide a certificate of interested persons under 5th Cir. R. 28.2.1, as the Federal Deposit Insurance Corporation (FDIC) is a federal agency established under 12 U.S.C. § 1811 and all remaining FDIC Appellants are individuals acting in their official governmental capacities.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS........................................................i

TABLE OF CONTENTS..........................................................................................ii

TABLE OF AUTHORITIES..................................................................................iv

INTRODUCTION AND SUMMARY OF ARGUMENT.....................................1

ARGUMENT.............................................................................................................6

    I.    Section 1818(i) Explicitly Precludes District-Court Jurisdiction Here..............6

        A.   *Cochran's* Interpretation of *Bank of Louisiana* Forecloses District-Court Jurisdiction Over All of Burgess's Claims.......................................6

        B.   Even if it Were a Matter of First Impression, This Court Should Still Hold That Section 1818(i) Forecloses Jurisdiction Over All of Burgess's Claims...................................................................................10

    II.   The Supreme Court's *Jarkesy* Decision Does Not Require A Jury Trial Here.................................................................................................15

        A.   The Supreme Court's Decision in *Jarkesy*.............................................15

        B.   This Court's Prior Decision in *Akin*.......................................................21

        C.   *Jarkesy* Did Not "Unequivocally Overrule" *Akin* and, Therefore, *Akin* is Binding Circuit Precedent Under Which There is No Right to a Jury Trial Here......................................................................22

        D.   In any Event, *Jarkesy* is Materially Distinguishable and Does Not Require a Jury Trial Here......................................................................30

    III.   The District Court Erred In Ruling That Burgess "Automatically Satisfied" The Irreparable Injury Requirement...............................................32

CONCLUSION.......................................................................................................34

CERTIFICATE OF SERVICE............................................................................35

CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)................................36

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Akin v. Office of Thrift Supervision,*
 950 F.2d 1180 (5th Cir. 1992)....................................4, 5, 15, 21, 22, 23, 29, 30, 32

*Alabama Coushatta Tribe of Texas v. Texas,*
 66 F. App'x 525, 2003 WL 21017542 (5th Cir. Apr. 16, 2003)..............................9

*ASARCO, L.L.C. v. Montana Resources, Inc.,*
 858 F.3d 949 (5th Cir. 2017)....................................................................................9

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n,*
 430 U.S. 442 (1977)..........................................................................................25, 29

*Axon Enter., Inc. v. FTC,*
 598 U.S. ---, 143 S.Ct. 890 (2023)..........................................................................4

*Bank of Louisiana v. FDIC,*
 919 F.3d 916 (5th Cir. 2019)................................................................2, 6, 7, 8, 10

*Bonan v. FDIC,*
 2023 WL 156852 (E.D. Mo. Jan. 11, 2023).......................................................3, 11

*Braidwood Mgmt., Inc. v. Becerra,*
 104 F.4th 930 (5th Cir. 2024)................................................................................3, 9

*Burgess v. FDIC,*
 639 F. Supp. 3d 732 (N.D. Tex. 2022)...................................................................13

*Cavallari v. OCC,*
 57 F.3d 137 (2d Cir. 1995).....................................................................................22

*Cochran v. SEC,*
 20 F.4th 194 (5th Cir. 2021) (en banc), *aff'd sub nom.*
 *Axon Enter., Inc. v. FTC,*
 598 U.S. ---, 143 S.Ct. 890 (2023)..........................................................2, 6, 7, 8, 10

*Cochran v. SEC,*
   969 F.3d 507 (5th Cir. 2020), *rev'd in part on reh'g en banc,*
   20 F.4th 194 (5th Cir. 2021), *aff'd sub nom.*
   *Axon Enter., Inc. v. FTC,*
   598 U.S. 175 (2023)......................................................................2, 9

*Collins v. Department of the Treasury,*
   83 F.4th 970 (5th Cir. 2023).........................................................10

*Comer  v. Murphy Oil USA,*
   607 F.3d 1049 (5th Cir. 2010).......................................................10

*Elgin v. Department of the Treasury,*
   567 U.S. 1 (2012)....................................................................12, 13

*Fahey v. Mallonee,*
   332 U.S. 245 (1947).......................................................................25

*Grabowski v. Jackson Cnty. Pub. Defenders Office,*
   47 F.3d 1386 (5th Cir.), *vacated for reh'g en banc,*
   47 F.3d 1403 (5th Cir. 1995), *district court judgment aff'd,*
   79 F.3d 478 (5th Cir. 1996) (en banc).............................................7

*Granfinanciera, S.A. v. Nordberg,*
   492 U.S. 33 (1989)..............................4, 19, 20, 21, 23, 24, 27, 28, 29, 32

*Groos Nat'l Bank v. Comptroller of the Currency,*
   573 F.2d 889 (5th Cir. 1978)....................................................28, 31

*Jacobs v. National Drug Intelligence Ctr.,*
   548 F.3d 375 (5th Cir. 2008).......................................................6, 7

*Jarkesy v. SEC,*
   34 F.4th 446 (5th Cir. 2022), *aff'd,* --- U.S. ---, 144 S.Ct. 2117 (2024)...................29

*Krafsur v. Davenport,*
   736 F.3d 1032 (6th Cir. 2013).......................................................13

*Leachco, Inc. v. CPSC,*
   103 F.4th 748 (10th Cir. 2024)..................................................32, 33

*Louisiana Generating, L.L.C. v. Illinois Union Ins. Co.,*
831 F.3d 618 (5th Cir. 2016)..................................................................9

*Martinelli v. Hearst Newspapers, L.L.C.,*
65 F.4th 231 (5th Cir. 2023).................................................22, 23, 29, 30

*Moats v. NCUAB,*
2024 WL 1724271 (S.D. Tex. Apr. 9, 2024)........................3, 11, 12, 13

*Netsphere, Inc. v. Baron,*
799 F.3d 327 (5th Cir. 2015)................................................................10

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
458 U.S. 50 (1982).........................................................................24, 25

*Ponte v. FDIC,*
2024 WL 4730602 (D.D.C. Oct. 11, 2024)..........................................33

*Ponte v. FDIC,*
2023 WL 6441976 (D.R.I. Oct. 3, 2023)..........................................3, 14

*SEC v. Jarkesy,*
--- U.S. ---, 144 S.Ct. 2117 (2024)...............................1, 4, 5, 15-20, 22-31

*Simpson v. OTS,*
29 F.3d 1418 (9th Cir. 1994)...........................................................22, 26

*Slattery v. United States,*
635 F.3d 1298 (Fed. Cir. 2011) (en banc)............................................26

*Spawn v. Western Bank—Westheimer,*
989 F.2d 830 (5th Cir. 1993)........................................................25, 26, 27

*Stern v. Marshall,*
564 U.S. 462 (2011)............................................................................24

*Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.,*
673 F.3d 399 (5th Cir. 2012)..........................................................23, 30

*Tong v. Lumpkin,*
  90 F.4th 857 (5th Cir. 2024)...................................................................22, 30

*United States v. Mask,*
  330 F.3d 330 (5th Cir. 2003).......................................................................9

*United States v. Traxler,*
  764 F.3d 486 (5th Cir. 2014).....................................................................22

*United States v. Wallace,*
  964 F.3d 386 (5th Cir. 2020).....................................................................22

*Webster v. Doe,*
  486 U.S. 592 (1988)...........................................................................12, 13

*Zucker v. Rodriguez,*
  919 F.3d 649 (1st Cir. 2019).....................................................................26

## UNITED STATES CONSTITUTION

U.S. Const. art. II...........................................................................................19

U.S. Const. art. III...............................................................4, 14-18, 24, 25, 28, 30

U.S. Const. amend. VII................................................11, 14, 16, 17, 20, 32, 33

## FEDERAL STATUTES

5 U.S.C. § 5....................................................................................................24

12 U.S.C. § 1786(k)(1)...................................................................................11

12 U.S.C. § 1817............................................................................................26

12 U.S.C. § 1818.........................................................2, 4-7, 15, 21, 22, 25-32

12 U.S.C. § 1818(h)(1)...................................................................................24

12 U.S.C. § 1818(h)(2)...................................................................................14

12 U.S.C. § 1818(i)....................................................1, 2, 3, 4, 6, 8, 10, 11, 13, 14

12 U.S.C. § 1818(i)(1)........................................................................14, 33

12 U.S.C. § 1821(a)(4).............................................................................26

12 U.S.C. § 1824.....................................................................................26

15 U.S.C. § 77h-1(g)..............................................................................24

15 U.S.C. § 78u-2(a)..............................................................................24

15 U.S.C. § 80b-3(i)(1)..........................................................................24

## FIFTH CIRCUIT COURT RULES

5th Cir. R. 41.3................................................................................2, 3, 9, 10

## INTRODUCTION AND SUMMARY OF ARGUMENT

Nearly two years ago—in December 2022—the district court issued a preliminary injunction barring the FDIC from continuing an administrative enforcement proceeding against Appellee/Cross-Appellant Burgess. The court grounded the injunction on its ruling that Burgess is likely to succeed on the merits of his claim that he is entitled to a jury trial.[1] The FDIC immediately appealed and—after briefing in this Court was completed—this appeal was stayed for fourteen months pending the Supreme Court's disposition of a petition for a writ of certiorari in *SEC v. Jarkesy*.[2]

In June 2024, the Supreme Court decided *Jarkesy* and held that a respondent in a Securities and Exchange Commission (SEC) administrative enforcement proceeding had a right to a jury trial of securities-fraud claims. As we show *infra, Jarkesy* is not controlling here. But before discussing that issue, we address a threshold, case-dispositive issue wholly unrelated to *Jarkesy*—namely, whether the district court has jurisdiction over this case. Under this Court's binding precedent, it does not.

The parties agree the first issue that must be decided in this appeal is whether 12 U.S.C. § 1818(i) explicitly precludes district-court jurisdiction over Burgess's claims.[3] Section 1818(i) provides, in pertinent part, that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice

---

[1] ROA.349, 680-81.

[2] --- U.S. ---, 144 S.Ct. 2117 (2024).

[3] *See* FDIC Opening Br. 16, 20-34; Burgess Principal & Resp. Br. 15, 17-33; FDIC Resp. & Reply Br. 9-32; Burgess Reply Br. 4-16.

or order under [section 1818]." Several cases decided while this appeal was stayed are pertinent and significant to this issue.

In FDIC Appellants' pre-stay briefing, we primarily argued that this Court's en banc decision in *Cochran v. SEC*[4] requires this Court to hold that the district court lacks jurisdiction here.[5] In *Cochran*, this Court interpreted its prior decision in *Bank of Louisiana v. FDIC*[6] as "holding that the district court lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC]" because "district court jurisdiction was *explicitly* divested" by "the plain terms of section 1818(i)."[7] Thus, the *Cochran* en banc decision should fully resolve this appeal.

We also noted that the panel decision in *Cochran* interpreted *Bank of Louisiana* as having "held [that] even when it comes to separation-of-powers claims Congress opted for court involvement only after the end of the agency proceeding," and we argued that this part of the *Cochran* panel decision is also binding Circuit precedent.[8] Burgess's only response to this argument was to assert that this Court's Local Rule 41.3 has provided for "nearly 50 years" that "the granting of a rehearing en

---

[4] 20 F.4th 194 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

[5] *See* FDIC Opening Br. 20-29; FDIC Resp. & Reply Br. 9-15.

[6] 919 F.3d 916 (5th Cir. 2019).

[7] *Cochran*, 20 F.4th at 204 (emphasis in original, internal citation and quotation marks omitted).

[8] FDIC Resp. & Reply Br. 17 (quoting *Cochran v. SEC*, 969 F.3d 507, 517 (5th Cir. 2020), *rev'd in part en banc on other grounds*, 20 F.4th 194 (5th Cir. 2021), *aff'd sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023)).

banc vacates the panel opinion" and, therefore, it has no precedential value.[9] Burgess is wrong. Indeed, as recently as June 2024 this Court issued a published decision in which it relied on one of its prior panel decisions that had been reversed en banc on other grounds.[10] And as we show *infra*, in recent years this Court has often relied on such prior panel decisions as controlling precedent.

Thus, *both* the en banc decision *and* the panel decision in *Cochran* are binding precedent under which the district court lacks jurisdiction over Burgess's claims.

We also argued in our pre-stay briefing that—even if this issue were a matter of first impression—this Court should hold that section 1818(i) explicitly precludes district-court jurisdiction here.[11] And we noted that the Eastern District of Missouri rejected the analysis of the district court in this case while holding that section 1818(i) explicitly divests district courts of jurisdiction over structural constitutional claims.[12] While this appeal was stayed, the Southern District of Texas and the District of Rhode Island also rejected the analysis of the district court in this case while holding that jurisdiction over structural constitutional claims is explicitly precluded by section 1818(i) and a virtually identical statute.[13] What is more, as we noted in our pre-stay

---

[9] Burgess Reply Br. 15-16 (quoting 5th Cir. R. 41.3) (bold print and underlining omitted).

[10] *See Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 957 n.133 (5th Cir. 2024).

[11] FDIC Opening Br. 29-34; FDIC Resp. & Reply Br. 26-32.

[12] FDIC Opening Br. 33-34; *see Bonan v. FDIC*, 2023 WL 156852 (E.D. Mo. Jan. 11, 2023).

[13] *See Moats v. NCUAB*, 2024 WL 1724271 (S.D. Tex. Apr. 9, 2024), *appeal pending*, No. 24-40259 (5th Cir.); *Ponte v. FDIC*, 2023 WL 6441976 (D.R.I Oct. 3, 2023).

briefing, in *Axon* Justice Gorsuch cited section 1818(i) as an example of a statute that explicitly precludes district-court jurisdiction over structural constitutional claims.[14]

Turning to the jury-trial issue, the Supreme Court held in *Jarkesy* that "actions under the 'antifraud provisions of the federal securities laws'" must be brought in an Article III court because they "involve[ ] a 'matter[ ] of private rather than public right.'"[15] *Jarkesy* has no impact on this appeal, however, because it did not unequivocally overrule this Court's prior decision in *Akin v. OTS.*[16]

In *Akin*, this Court held administrative enforcement claims under the statute at issue here—12 U.S.C. § 1818—involved "public rights" and, therefore, "there [wa]s no right to a jury trial."[17] Moreover, *Akin* and *Jarkesy* are both grounded on the same Supreme Court precedent. In *Akin*, this Court rested its public-rights holding solely on *Granfinanciera, S.A. v. Nordberg.*[18] And in *Jarkesy*, the Supreme Court stated that "*Granfinanciera* effectively decide[d] th[at] case."[19] Thus, *Jarkesy* reaffirmed the mode of analysis this Court used in *Akin.* It follows that *Jarkesy* did not overrule *Akin*—either explicitly or implicitly—and that *Akin* therefore continues to be binding precedent holding there is no right to a jury trial of section 1818 claims.

---

[14] *See* FDIC Resp. & Reply Br. 25 (citing *Axon*, 598 U.S. at 208 (GORSUCH, J., concurring)).

[15] *Jarkesy*, 144 S.Ct. at 2136.

[16] 950 F.2d 1180 (5th Cir. 1992); *see* FDIC Opening Br. 44-45 (discussing *Akin*), FDIC Resp. & Reply Br. 36-39 (same).

[17] *Akin*, 950 F.2d at 1186.

[18] 492 U.S. 33 (1989); *see Akin*, 950 F.2d at 1186 (citing *Granfinanciera*, 492 U.S. at 42, 54-55).

[19] *Jarkesy*, 144 S.Ct. at 2135.

What is more, *Jarkesy* is distinguishable. As the Supreme Court explained, "[t]he object of th[e] SEC action [wa]s to regulate transactions between private individuals interacting in a pre-existing market."[20] In contrast, section 1818 actions regulate a bank-insurance program created and run by the federal government and address misconduct in operating banks that, if left unchecked, would deplete public funds in the Deposit Insurance Fund and could require public funds to be withdrawn from the Treasury. Moreover, *Jarkesy* reaffirmed that the public-rights doctrine applies only to matters that "historically could have been determined *exclusively* by [the executive and legislative] branches."[21] SEC securities-fraud claims do not satisfy this requirement, but section 1818 claims do. The SEC could bring securities-fraud claims seeking civil penalties only in a federal court prior to 2010, when Congress gave it the option to instead bring such claims in administrative proceedings.[22] Conversely, the FDIC has never been authorized to bring civil-penalty claims in a federal court. Rather, it may bring such claims only in administrative proceedings. Thus, even if *Akin* were not binding precedent, *Jarkesy* still would *not* require a jury trial here.

We also discuss *infra* cases decided while this appeal was stayed that provide additional support for the conclusion that the district court erroneously ruled that Burgess "automatically satisfied" the irreparable-harm requirement.

---

[20] *Id.* at 2136.

[21] *Id.* at 2132 (emphasis added) (bracket in original).

[22] *See id.* at 2126.

# ARGUMENT

## I.    Section 1818(i) Explicitly Precludes District-Court Jurisdiction Here.

FDIC Appellants' principal argument in this appeal is that 12 U.S.C. § 1818(i) explicitly precludes district-court jurisdiction over Burgess's claims.[23] The operative language of section 1818(i) states that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of *any* notice or order under [section 1818]."[24] As FDIC Appellants have argued, this Court should hold that section 1818(i) forecloses jurisdiction here for two alternative and independently dispositive reasons: (1) this Court's binding precedent mandates such a holding;[25] and (2) in any event, section 1818(i)'s unambiguous statutory language mandates such a holding.[26]

### A.    *Cochran's* interpretation of *Bank of Louisiana* forecloses district-court jurisdiction over all of Burgess's claims.

Before taking on the task of interpreting section 1818(i), this Court must first determine if it has already decided the issue. As noted in our pre-stay briefing, under this Court's rule of orderliness "one panel of [this] [C]ourt may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or [the Fifth Circuit's] en banc court."[27] What is

---

[23] *See* FDIC Opening Br. 1, 2-4, 6, 15, 16, 20-34; FDIC Resp. & Reply Br. 1-4, 7, 9-32.

[24] 12 U.S.C. § 1818(i) (emphasis added).

[25] *See* FDIC Opening Br. 20-29; FDIC Resp. & Reply Br. 9-23.

[26] *See* FDIC Opening Br. 29-34; FDIC Resp. & Reply Br. 26-32.

[27] *Id.* at 10-11 (quoting *Jacobs v. National Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)).

more, "a panel cannot overrule, or declare void, a prior panel's *interpretation* of earlier circuit caselaw, *even if it appears flawed.*"[28] Given this Court's rule of orderliness and its en banc decision in *Cochran*, resolution of this appeal should be a brief and straightforward exercise.

There is no dispute about how this Court sitting en banc in *Cochran* interpreted its prior panel decision in *Bank of Louisiana*. Indeed, the district court here acknowledged that the en banc Court "interpreted a prior Fifth Circuit case, *Bank of Louisiana*, as 'holding that the district court [there] lacked jurisdiction over a separation-of-powers challenge to an administrative proceeding before the [FDIC].'"[29] The district court here also acknowledged that the en banc Court "stated the statutory framework of § 1818 included 'an explicit statutory bar on any court enjoining the issuance o[r] enforcement of any FDIC order.'"[30] And the district court here acknowledged that "[t]he [en banc][C]ourt interpreted *Bank of Louisiana* as '[holding] that district court jurisdiction was explicitly divested.'"[31] Under this Court's rule of orderliness, the district court should have stopped right there and dismissed this case.

---

[28] *Id.* at 19 (quoting *Grabowski v. Jackson Cnty. Pub. Defenders Office*, 47 F.3d 1386, 1400 n.4 (5th Cir.) (first emphasis in original) (Jerry E. Smith, Circuit Judge, concurring in part and dissenting in part), *vacated for rehearing en banc*, 47 F.3d 1403 (5th Cir. 1995), *district court judgment aff'd*, 79 F.3d 478 (5th Cir. 1996) (en banc)); *see also Jacobs*, 548 F.3d at 378 ("Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void.").

[29] ROA.335 (quoting *Cochran*, 20 F.4th at 204).

[30] ROA.335 (quoting *Cochran*, 20 F.4th at 204) (internal quotation marks omitted).

[31] ROA.335 (quoting *Cochran*, 20 F.4th at 204) (fourth alteration in original).

But the district court did not dismiss this case because it interpreted *Bank of Louisiana* as *not* having addressed whether section 1818(i) explicitly precluded district-court jurisdiction over a separation-of-powers claim and it concluded this Court sitting en banc in *Cochran* had merely "assumed," incorrectly, that it did.[32] The district court then substituted its own interpretation of *Bank of Louisiana* in place of this Court's en banc interpretation in *Cochran*. And in his briefing before this Court, Burgess parrots this approach.[33] Importantly, however, Burgess does not dispute that *Bank of Louisiana* held jurisdiction over the claims at issue in that case was *explicitly* precluded by section 1818(i). Rather, Burgess argues only that *Bank of Louisiana* did not involve a separation-of-powers claim.[34] He is wrong.

In response to Burgess's argument, FDIC Appellants explained why the district court's rejection of the *Cochran* en banc Court's authoritative interpretation of *Bank of Louisiana* was erroneous.[35] And we noted that the panel decision in *Cochran* also determined "that *Bank of Louisiana* recognized the separation-of-powers claim . . . and resolved it[,]" and that it interpreted "*Bank of Louisiana* [as having]

---

[32] ROA.336-37.

[33] *See* Burgess Principal & Resp. Br. 32.

[34] *See id.* ("No one disputes that *Bank of Louisiana* [ ] held that Section 1818(i) explicitly strips district-court jurisdiction to hear the types of claims at issue in that case. But the question at issue here is whether Section 1818(i) also strips jurisdiction over structural constitutional claims. *Bank of Louisiana* [ ] did not reach that question. *Cochran* appears to have 'assumed' that Section 1818(i) might strip jurisdiction over such claims, but that question was not briefed or addressed in *Cochran*.") (bold print and underlining omitted).

[35] *See* FDIC Resp. & Reply Br. 9-15.

held [that], *even when it comes to separation-of-powers claims* Congress opted for court involvement only after the end of the agency proceeding."[36] In addition, we pointed out that—because the *Cochran* panel decision was reversed in part en banc on other grounds—this part of the *Cochran* panel decision is itself binding precedent.[37] Burgess does not dispute that the *Cochran* panel decision interpreted *Bank of Louisiana* this way, nor does he dispute that the panel majority's interpretation of *Bank of Louisiana* was necessary to its decision. Rather, Burgess's only response regarding the *Cochran* panel decision is to assert that, for "nearly 50 years," 5th Cir. R. 41.3 has provided that "the granting of a rehearing en banc vacates the panel opinion" and, Burgess says, it is therefore "of no precedential value."[38] Burgess is wrong.

Indeed, in June of this year this Court issued a published decision in which it relied on one of its prior panel decisions that had been reversed en banc on other grounds.[39] Moreover, this was not a unique occurrence. To the contrary, in recent years this Court has often relied on one of its prior panel decisions as controlling precedent even though it had been reversed en banc on other grounds.[40] And this

---

[36] *Id.* at 17 (quoting *Cochran*, 969 F.3d at 517) (emphasis added).

[37] *Id.* at 15-16.

[38] Burgess Reply Br. 15-16.

[39] *See Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 957 n.133 (5th Cir. 2024).

[40] *See, e.g., ASARCO, L.L.C. v. Montana Resources, Inc.*, 858 F.3d 949, 959 (5th Cir. 2017); *Louisiana Generating, L.L.C. v. Illinois Union Ins. Co.*, 831 F.3d 618, 629 n.33 (5th Cir. 2016); *United States v. Mask*, 330 F.3d 330, 335 (5th Cir. 2003); *Alabama Coushatta Tribe of Texas v. Texas*, 66 F. App'x 525, 2003 WL 21017542, at *1 (5th Cir. Apr. 16, 2003) (per curiam) (unpublished).

practice does not contravene Rule 41.3. Rather, that rule is simply "a provisional, practical rule that alerts practitioners and courts of the fact that the panel opinion is not precedential *pending consideration of the merits of the case by the en banc court.*"[41] Accordingly, "under [Rule 41.3] the panel's decision should be treated as having been only *provisionally vacated pending the outcome of rehearing en banc.*"[42]

Thus, under *Cochran's* binding interpretation of *Bank of Louisiana*—in either the en banc decision or the panel decision—the district court lacks jurisdiction here.[43]

### B.    Even if it were a matter of first impression, this Court should still hold that section 1818(i) forecloses jurisdiction over all of Burgess's claims.

As an alternative ground for reversing the district court and holding that its jurisdiction over Burgess's claims is explicitly precluded by section 1818(i), FDIC Appellants argued in our pre-stay briefing that interpreting section 1818(i) as a matter of first impression would yield the same result.[44] As support for this argument, we relied on, among other authorities, the decision of the Eastern District of Missouri in

---

[41] *Comer v. Murphy Oil USA*, 607 F.3d 1049, 1055 (5th Cir. 2010) (DAVIS, Circuit Judge, joined by STEWART, Circuit Judge, dissenting) (emphasis added).

[42] *Id.* at 1061 n.13 (DENNIS, Circuit Judge, dissenting) (emphasis added).

[43] Burgess contends that *Collins v. Department of the Treasury*, 83 F.4th 970 (5th Cir. 2023)—which was decided while this appeal was stayed—includes a "binding interpretation of § 1818(i)" under which that provision "d[oes] not preclude review of constitutional claims." Burgess Rule 28(j) Letter (Oct. 31, 2023) (Document: 148) at 1-2. But whatever *Collins* actually held, it cannot include such a binding interpretation of section 1818(i). Rather, under the rule of orderliness this Court is bound by its prior decisions in *Cochran* and *Bank of Louisiana. See supra* at 6-7 and nn.27 & 28; *see also Netsphere, Inc. v. Baron*, 799 F.3d 327, 334 (5th Cir. 2015) ("The rule in this Circuit is that where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this Circuit.").

[44] *See* FDIC Opening Br. 29-34; FDIC Resp. & Reply Br. 26-32.

*Bonan v. FDIC.*[45] In *Bonan*, the court rejected the analysis of the district court in this case while holding that section 1818(i) explicitly precluded district court jurisdiction over claims indistinguishable from Burgess's claims.[46] During the time this appeal was stayed, two additional courts rejected the analysis of the district court in this case and held that section 1818(i) and a nearly identical statute precluded district-court jurisdiction over structural constitutional claims like those asserted by Burgess.

In *Moats v. NCUAB*, the plaintiff—a respondent in an NCUA administrative enforcement proceeding—filed an action in the Southern District of Texas seeking to halt the enforcement proceeding. Like Burgess, Moats claimed that the enforcement proceeding violated his Seventh Amendment right to a jury trial and that removal protections for NCUA ALJs are unconstitutional.[47] The NCUA moved to dismiss and argued, *inter alia*, that district-court jurisdiction was explicitly precluded by a section of the statute governing NCUA enforcement proceedings that is nearly identical to section 1818(i).[48] The court agreed with the NCUA and dismissed the case.

The *Moats* court began its analysis by stating that "[t]he court's explicit-bar analysis starts with the text."[49] The court then concluded that, "[i]n simplest terms,

---

[45] FDIC Opening Br. 33-34.

[46] *See id.* (citing and quoting *Bonan*, 2023 WL 156852, at *4).

[47] *See Moats*, 2024 WL 1724271, at *1.

[48] *See* 12 U.S.C. § 1786(k)(1) ("no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section or section 1790d of this title or to review, modify, suspend, terminate, or set aside any such notice or order").

[49] *Moats*, 2024 WL 1724271, at *3.

the question therefore becomes whether exercising jurisdiction in th[e] matter would 'affect . . . the issuance or enforcement of *any* notice or order.'"[50] And it ruled that "[t]he answer must be yes."[51] The court explained: "In short, Moats seeks to halt the pending enforcement proceeding[ ] in its tracks. There can be little doubt that the relief Moats seeks will 'affect' the enforcement of the Notice of Charges."[52]

The *Moats* court also addressed the plaintiff's argument that "a higher bar is required for preclusion of constitutional claims."[53] The court first acknowledged that "the Supreme Court held in *Webster v. Doe* 'that where Congress intends to pre-clude judicial review of constitutional claims, its intent to do so must be clear.'"[54] But as the *Moats* court explained, the Supreme Court "later clarified, in *Elgin v. Depart-ment of Treasury*, that *Webster's* 'heightened standard' does not necessarily apply to all preclusion analyses" because it "has a 'necessary predicate'—it applies only when a statute 'purports to deny *any* judicial forum for a colorable constitutional claim.'"[55] The court thus concluded that *"Webster's* heightened standard is inapplicable where a plaintiff's claims may be 'meaningfully addressed in the Court of Appeals.'"[56] And as the *Moats* court further explained, this conclusion is reinforced by the fact that

---

[50] *Id.* (emphasis in original).

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)).

[55] *Id.* (quoting *Elgin v. Department of Treasury*, 567 U.S. 1, 9 (2012)) (emphasis added).

[56] *Id.* (quoting *Elgin*, 567 U.S. at 9).

"[e]ach precedent in the *Doe* series involved a *total* denial of judicial review for constitutional claims."[57] Accordingly, the court ruled that because Moats was "afforded later judicial review [in the Court of Appeals], *Webster's* heightened standard d[id] not apply."[58] For the same reason, *Webster's* heightened standard does not apply here.

The *Moats* court then held that "the markedly expansive language" found in the statutes that govern NCUA and FDIC administrative proceedings "alone is sufficient to establish the required intent to preclude constitutional claims."[59] The court explained: "Simply put, 'any' means 'any.' No rule of interpretation, including *Webster*, requires Congress to explicitly call out every conceivable source of jurisdiction or category of claim to accomplish its objective."[60] The *Moats* court also explicitly rejected the analysis of the district court in this case: "In *Burgess v. FDIC*, the court held that 12 U.S.C. § 1818(i), a nearly identical statute, did not preclude constitutional claims because Congress did not 'specifically mention that the bar encompasses structural constitutional claims.' But . . . nothing in either *Webster* or *Elgin* requires Congress to use such magic words."[61] We agree.[62]

---

[57] *Id.* (quoting *Krafsur v. Davenport*, 736 F.3d 1032, 1037 (6th Cir. 2013)) (emphasis in original).

[58] *Id.* (citing *Elgin*, 567 U.S. at 9).

[59] *Id.*

[60] *Id.* (internal quotation marks omitted).

[61] *Id.* at *3 n.3 (quoting *Burgess v. FDIC*, 639 F. Supp. 3d 732, 742 (N.D. Tex. 2022)).

[62] *See* FDIC Opening Br. 32-33; FDIC Resp. & Reply Br. 28-29.

In *Ponte v. FDIC*, the respondent in an FDIC administrative enforcement action filed a district-court lawsuit seeking injunctive relief to halt the proceeding. Ponte claimed he was being deprived of his Seventh Amendment right to a jury trial and that FDIC Board members and ALJs enjoy unconstitutional protection from removal.[63] The District of Rhode Island dismissed the complaint in its entirety, holding that "§ 1818(i)(1) preclude[d] th[e] [c]ourt's jurisdiction over Mr. Ponte's claims, constitutional or otherwise."[64] Interpreting the language of section 1818(i), the court concluded that "Congress . . . was explicit that district courts are not to 'affect' FDIC enforcement proceedings."[65] "Instead," the court explained, "those claims must be raised in the administrative process and, per § 1818(h)(2), may be reviewed by the appropriate court of appeals."[66] As the court further explained, "Congress has great leeway to expand or restrict the jurisdiction of the lower federal courts and is not required to invest in the lower courts all of the powers set forth in Article III. This includes the power to address the constitutionality of a statute."[67] Again, we agree.[68]

In sum, this Court should hold that section 1818(i) is an explicit jurisdictional bar to all of Burgess's claims. And if it does, there will be no need to decide any ad-

---

[63] *See Ponte*, 2023 WL 6441976, at *1 n.1.

[64] *Id.* at *2.

[65] *Id.*

[66] *Id.*

[67] *Id.* (internal citation and quotation marks omitted).

[68] *See* FDIC Opening Br. 22.

ditional issues and this case should be remanded to the district court with instructions to dismiss.

## II.    The Supreme Court's *Jarkesy* Decision Does Not Require A Jury Trial Here.

In *Jarkesy*, the Supreme Court held that a respondent in an SEC administrative enforcement proceeding had a right to a jury trial of securities-fraud claims that sought a civil penalty. *Jarkesy* is not controlling here, however, for two independently dispositive reasons. *First*, *Jarkesy* did not "unequivocally overrule" this Court's prior decision in *Akin v. OTS*,[69] which held there is no right to a jury trial of section 1818 administrative enforcement claims that seek a legal remedy because such claims fall within the public-rights doctrine. It necessarily follows that *Akin*—and not *Jarkesy*—is controlling precedent here. And *second*, the reasoning of the Supreme Court in *Jarkesy* compels the conclusion that—unlike SEC securities-fraud claims—section 1818 administrative enforcement claims fall within the public-rights doctrine. Accordingly, such claims may be resolved outside of an Article III court without a jury.

### A.  The Supreme Court's decision in *Jarkesy*.

In *SEC v. Jarkesy*,[70] the SEC initiated an administrative enforcement action against an investment adviser and his firm alleging securities fraud and seeking civil penalties and other remedies.[71] The respondent challenged the entire proceeding,

---

[69] 950 F.2d 1180 (5th Cir. 1992).

[70] --- U.S. ---, 144 S.Ct. 2117 (2024).

[71] *Id.* at 2126.

arguing that he was entitled to a jury trial because the SEC sought to recover a civil penalty. The Supreme Court determined that the case before it presented the following narrow question: "[W]hether the Seventh Amendment entitles a defendant to a jury trial *when the SEC seeks civil penalties against him for securities fraud.*"[72]

To resolve that question, the Supreme Court said it was necessary to decide two issues: (1) "whether th[e] action implicate[d] the Seventh Amendment[;]"[73] and (2) if it did, "whether the 'public rights' exception to Article III jurisdiction applies."[74]

Addressing the first issue, the Court stated that "the Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'"[75] To determine if it is, the Supreme Court instructed that "courts [must] consider the cause of action and the remedy it provides" and "the remedy [is] the 'more important' consideration."[76] The Court then ruled that, in *Jarkesy*, "the remedy [wa]s all but dispositive."[77] The Court explained: "What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'"[78] If the former is true, "money damages are the prototypical

---

[72] *Id.* at 2127 (emphasis added).

[73] *Id.*

[74] *Id.*

[75] *Id.* at 2128.

[76] *Id.* at 2129.

[77] *Id.*

[78] *Id.*

common law remedy."[79] Accordingly, "civil penalt[ies are] a type of remedy at common law that could only be enforced in courts of law."[80] The Court therefore ruled that, because the civil penalty in *Jarkesy* was "designed to punish and deter, not to compensate[,]" the securities-fraud claim "implicate[d] the Seventh Amendment."[81]

As the Supreme Court made clear, however, that ruling did *not* fully resolve the jury-trial issue. Rather, the Court ruled that "[s]ince [the securities-fraud claim] d[id] implicate the Seventh Amendment, [the Court] next [had to] consider whether the 'public rights' exception to Article III jurisdiction applie[d]."[82] As the Supreme Court explained, "[t]his exception has been held to permit Congress to assign certain matters to agencies for adjudication even though such proceedings would not afford the right to a jury trial."[83] And as the Court explicitly acknowledged, under the public-rights doctrine "the Government may extract civil penalties in administrative tribunals in some contexts."[84]

Next, the Supreme Court addressed how matters involving public rights are distinguished from those involving private rights. The Court began by stating that "[i]f a suit is in the nature of an action at common law"—that is, if the suit "is made of

---

[79] *Id.*

[80] *Id.*

[81] *Id.* at 2130.

[82] *Id.* at 2127.

[83] *Id.*

[84] *Id.* at 2134 n.2.

17

'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789'"—"then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory."[85] But "[a]t the same time," the Court continued, "[its] precedent has also recognized a class of cases concerning what [the Court] ha[s] called 'public rights.'"[86] The Court then described public rights as "matters . . . [that] fall within . . . distinctive areas involving governmental prerogatives" like those previously identified by the Court.[87] And as the Court explained, "[s]uch matters 'historically could have been determined *exclusively* by [the executive and legislative] branches,' even when they were 'presented in such form that the judicial power [wa]s capable of acting on them.'"[88]

The Supreme Court also provided the following examples of "distinctive areas involving governmental prerogatives" where related matters have been held to fall within the public-rights doctrine: "power to collect revenue," "power over immigration," "power over foreign commerce," power "to impose tariffs," "relations with Indian tribes," "administration of public lands," and "granting of public benefits such as payments to veterans, pensions, and patent rights."[89] The Court made clear that this is *not* an exhaustive list. Rather, the Court stated that it "has not 'definitively

---

[85] *Id.* at 2132.

[86] *Id.*

[87] *Id.* at 2127.

[88] *Id.* at 2132 (emphasis and first and third brackets added, internal citation omitted).

[89] *Id.* at 2132-33 (internal citations omitted).

explained' the distinction between public and private rights," and that it "d[id] not claim to do so [in *Jarkesy*]."[90] Moreover, the Supreme Court admonished that the determination of whether the public-rights doctrine applies in any particular case requires "close attention to the basis for each asserted application of the doctrine[.]"[91]

Before turning to the securities-fraud claim before it, the Supreme Court stated that "the principles identified in [*Granfinanciera, S.A. v. Nordberg*][92] largely resolve[d] [*Jarkesy*]."[93] The issue in *Granfinanciera* was whether Congress properly had assigned adjudication of fraudulent-conveyance claims to Article II bankruptcy courts. The *Jarkesy* Court noted that *Granfinanciera* held Congress did not properly assign those claims while focusing on two issues. *First*, the *Jarkesy* Court explained that fraudulent conveyance claims like those at issue in *Granfinanciera* "were often brought at law in late 18th-century England" and that "[t]he remedy the trustee sought [in *Granfinanciera*] was also one 'traditionally provided by law courts.'"[94] *Second*, the *Jarkesy* Court explained that *Granfinanciera* "also considered whether [the Article II court proceedings] were 'closely intertwined' with the bankruptcy regime."[95] And as to this second issue, the Court concluded the fact that "Congress had

---

[90] *Id.* at 2133.

[91] *Id.* at 2134.

[92] 492 U.S. 33 (1989).

[93] *Jarkesy*, 144 S.Ct. at 2134 (brackets and footnote added).

[94] *Id.* at 2135.

[95] *Id.*

already authorized jury trials for certain bankruptcy matters[ ] demonstrat[ed] that jury trials were not generally 'incompatible' with the overall regime."[96]

After discussing these two issues, the *Jarkesy* Court stated that *"Granfinanciera* effectively decide[d] th[e] [*Jarkesy*] case."[97] The Court emphasized that "[t]he object of th[e] SEC action w[as] to regulate transactions between private individuals interacting in a pre-existing market."[98] The Court also relied on the fact that Congress had authorized the SEC to bring claims like the one at issue in either a federal court or an in-house proceeding. Indeed, in its majority opinion the Court mentioned this fact five times.[99] And in particular, the Court focused on the fact that SEC securities-fraud claims seeking civil penalties had historically been brought *exclusively* in courts of law, and that it was not until 2010 that Congress granted the SEC authority to instead bring such claims in in-house administrative proceedings if it chose to do so.[100]

After analyzing these issues, the Supreme Court held in *Jarkesy* that "[t]he [public-rights] exception d[id] not apply [t]here because the [SEC securities-fraud] action d[id] not fall within [a] distinctive area[ ] involving governmental prerogatives" and that "[t]he Seventh Amendment therefore applie[d] and a jury [wa]s required."[101]

---

[96] *Id.*

[97] *Id.*

[98] *Id.* at 2136.

[99] *Id.* at 2124-25, 2125, 2126, 2126-27, 2139.

[100] *Id.* at 2126, 2139.

[101] *Id.* at 2127.

**B. This Court's prior decision in *Akin*.**

In *Akin*, the Office of Thrift Supervision (OTS) initiated a section 1818 administrative enforcement proceeding against Akin, the sole shareholder and former officer of a bank that failed. Three years before the bank failed, Akin had entered into an agreement with OTS's predecessor agency that required him to maintain the bank's legally mandated net worth by making capital infusions as needed.[102] During the ensuing two years, the bank developed a net-worth deficiency in excess of $19 million.[103] When Akin refused to pay that amount into the bank, OTS initiated an administrative proceeding to enforce the agreement. While that proceeding was pending, the bank failed. At the end of the administrative proceeding, OTS ordered Akin to pay more than $19 million into the bank's receivership.[104] Akin then appealed that order directly to this Court.

In his appeal, Akin "claim[ed] that [the] action [was] a collection action on a breach of contract, entitling him to a jury trial."[105] Taking that claim at face value, this Court rejected it and held that, because "there [wa]s a proper administrative forum for adjudicating public rights, there [wa]s no right to a jury trial."[106] As its sole support for that holding, this Court cited the Supreme Court's decision in *Granfinanciera*—

[102] *See Akin*, 950 F.2d at 1182.

[103] *Id.*

[104] *Id.*

[105] *Id.* at 1186.

[106] *Id.*

including a pincite to a two-page discussion of the public-rights doctrine.[107] Under this Court's decision in *Akin*, Burgess has no right to a jury trial here.[108]

Notably, both the Second Circuit and the Ninth Circuit have relied on *Akin* while holding that a section 1818 administrative enforcement action seeking a legal remedy fell within the public-rights doctrine.[109]

**C.** ***Jarkesy*** **did not "unequivocally overrule"** ***Akin*** **and, therefore,** ***Akin*** **is binding Circuit precedent under which there is no right to a jury trial here.**

This Court has "specifically rejected the idea that later Supreme Court . . . decisions that were not directly on point could alter the binding nature of [its] prior precedent."[110] Thus, "[n]either a mere hint of how the [Supreme] Court might rule in the future nor a decision that is merely illuminating with respect to the case before [this Court] will permit a subsequent panel to depart from [C]ircuit precedent."[111] Rather, "[f]or a Supreme Court decision to change [this] [C]ircuit's law, it must . . .

---

[107] *See Akin*, 950 F.2d at 1186 (citing *Granfinanciera*, 492 U.S. at 54-55).

[108] This Court also held in *Akin* that the jury-trial claim failed for a second reason: this Court rejected Akin's characterization of the section 1818 administrative action brought against him as a collection action on a breach of contract. *See Akin*, 950 F.2d at 1186. This second holding does not diminish the precedential value of this Court's alternative holding grounded on *Granfinanciera* and the public-rights doctrine. To the contrary, "[b]ecause alternative holdings in this [C]ircuit are binding precedent and not obiter dictum, [this Court is] bound to follow them." *United States v. Wallace*, 964 F.3d 386, 390 (5th Cir. 2020) (internal citation and quotation marks omitted).

[109] *See Cavallari v. OCC*, 57 F.3d 137, 145 (2d Cir. 1995); *Simpson v. OTS*, 29 F.3d 1418, 1423 (9th Cir. 1994).

[110] *Tong v. Lumpkin*, 90 F.4th 857, 864 (5th Cir. 2024) (quoting *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014)).

[111] *Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231, 234 (5th Cir. 2023) (internal citations and quotation marks omitted).

*unequivocally overrule* prior precedent."[112] And while this Court's precedents may be "implicitly overruled[,]" this occurs only where an intervening Supreme Court decision "fundamentally changes the focus of the relevant analysis[.]"[113]

Given these controlling legal principles and this Court's prior decision in *Akin*, this Court's "inquiry turns to whether the Supreme Court's decision in [*Jarkesy*] unequivocally, *sub silentio* overruled [*Akin*]."[114] It did not. As we demonstrate *infra*, *Akin* is distinguishable from *Jarkesy* in several critical respects. What is more, both this Court in *Akin* and the Supreme Court in *Jarkesy* grounded their holdings regarding the applicability of the public-rights doctrine on the Supreme Court's earlier decision in *Granfinanciera.*

*First*, in *Jarkesy* the Supreme Court described public rights as "matters [that] 'historically could have been determined *exclusively* by [the executive and legislative] branches,' even when they were 'presented in such form that the judicial power [wa]s capable of acting on them.'"[115] For this reason alone, SEC securities-fraud claims seeking civil penalties do not fall within the public-rights doctrine. As the Court explained, historically "the SEC could obtain civil penalties *only in federal court.*"[116]

---

[112] *Id.* at 234 (quoting *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012)) (emphasis added).

[113] *Id.*

[114] *Technical Automation Services*, 673 F.3d at 405.

[115] *Jarkesy*, 144 S.Ct. at 2132 (emphasis added).

[116] *Id.* at 2126 (emphasis added).

This changed in 2010, when Congress passed legislation that "ma[de] the SEC's authority in administrative penalty proceedings coextensive with its authority to seek penalties in [f]ederal court[,]" and "the SEC [could then] seek civil penalties in federal court, or it [could] impose them through its own in-house proceedings."[117] Nevertheless, the SEC still was not required to bring securities-fraud claims seeking a civil penalty *exclusively* in legislative or executive branch proceedings.

Unlike the SEC, however, the FDIC has never been authorized to bring enforcement claims seeking civil penalties in federal court. Nor has it ever done so. Rather, the FDIC is authorized to bring such claims *exclusively* in administrative enforcement proceedings.[118] Thus, unlike SEC securities-fraud claims, FDIC enforcement claims fit squarely within the *Jarkesy* Court's description of public rights.

Moreover, the requirement that a claim historically has been determined *exclusively* by the legislative or executive branches in order for it to fall within the public-rights doctrine is not a new requirement under *Jarkesy*. Rather, it is a long-standing cornerstone of the Supreme Court's public-rights jurisprudence.[119]

---

[117] *Id.* (citing 15 U.S.C. §§ 77h-1(g), 78u-2(a), 80b-3(i)(1)).

[118] *See* 12 U.S.C. § 1818(h)(1) ("Any hearing provided for in this section . . . shall be conducted in accordance with the provisions of chapter 5 of title 5" and "the appropriate Federal banking agency . . . shall render its decision . . . .").

[119] *See, e.g., Stern v. Marshall*, 564 U.S. 462, 493 (2011) (claim within public-rights doctrine is "one that 'historically could have been determined *exclusively* by' [the legislative or executive] branches") (emphasis added); *Granfinanciera,* 492 U.S. at 49 (a jury trial is required unless Congress has "withdrawn jurisdiction over that action by courts of law and assigned it *exclusively* to non-Article III tribunals sitting without juries") (emphasis added); *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 68 (1982) ("The [public-rights] doctrine extends . . . only to matters

*Second*, in *Jarkesy* the Supreme Court held that SEC securities fraud claims did not concern public rights because they did not fall within a "distinctive area[ ] involving governmental prerogatives where . . . a matter may be resolved outside of an Article III court, without a jury."[120] As noted *supra* at 18-19, the Court provided a non-exhaustive list of such areas involving governmental prerogatives, including collection of revenue, administration of public lands, and granting of certain public benefits. Like these examples, protection of public funds held and administered by the federal government is such a governmental prerogative. And federal banking regulation and section 1818 enforcement actions directly implicate public funds.

The Supreme Court has recognized that "[b]anking is one of the longest regulated and most closely supervised of public callings."[121] This regulatory history reflects the central importance of the banking system to the nation's economy. And as this Court has acknowledged, "the FDIC is an instrumentality created by the government for the public welfare . . . to provide for the sound, effective, and uninterrupted operation of the banking system."[122]

---

that historically could have been determined *exclusively* by [the legislative or executive] departments[.]") (emphasis added); *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450 (1977) (Congress may "create[ ] new statutory obligations, provide[ ] for civil penalties for their violation, and commit[ ] *exclusively* to an administrative agency the function of deciding whether a violation has in fact occurred.") (emphasis added).

[120] *Jarkesy*, 144 S.Ct. at 2127.

[121] *Fahey v. Mallonee*, 332 U.S. 245, 250 (1947).

[122] *Spawn v. Western Bank—Westheimer*, 989 F.2d 830, 837 (5th Cir. 1993) (internal quotation marks omitted).

What is more, unlike securities regulation, banking regulation has a direct impact on public funds. As this Court has observed, not only does "the FDIC rel[y] on premiums from insured banks to pay the cost of deposit insurance,"[123] which premiums are public funds when placed in the Deposit Insurance Fund,[124] but "the FDIC also relies on borrowing from the United States Treasury to meet its obligations."[125] Thus, the FDIC's bank-insurance obligations are "ultimately backed by the full faith and credit of the United States government[.]"[126] And because misconduct of banks and those through whom they act puts these public funds at risk, section 1818 enforcement actions are matters that fall within a distinctive area involving governmental prerogatives like those listed in *Jarkesy.* Simply put, "[t]he purpose of enforcement of the [banking] regulation laws is to safeguard the [banking] industry, the depositors, *and the federal insurance fund.*"[127] The SEC securities-fraud claims at issue in *Jarkesy* had no corresponding implications for public funds administered by the federal government or which may be drawn from the United States Treasury.

*Third,* as the Supreme Court emphasized in *Jarkesy,* "[t]he object of th[at] SEC action [wa]s to regulate transactions between private individuals interacting in a

---

[123] *Id.* (citing 12 U.S.C. § 1817).

[124] *See* 12 U.S.C. § 1821(a)(4).

[125] *Spawn,* 989 F.2d at 837 (citing 12 U.S.C. § 1824).

[126] *Zucker v. Rodriguez,* 919 F.3d 649, 655 (1st Cir. 2019); *see also Slattery v. United States,* 635 F.3d 1298, 1318 (Fed. Cir. 2011) (en banc) ("Congressional pronouncements stress the full faith and credit of the United States in connection with the FDIC.").

[127] *Simpson,* 29 F.3d at 1423 (emphasis added).

pre-existing market."[128] In contrast, section 1818 claims involve a bank-insurance program created and administered by the federal government. As this Court has noted, "[t]he Federal Deposit Insurance Act . . . represented a 'pioneering effort' to insure against losses in a market 'where commercial insurers had feared to tread.'"[129] Moreover, the object of a section 1818 enforcement action is *not* to regulate transactions between private individuals. Rather, it is to regulate federally insured banks and those through whom they act to deter misconduct that puts the financial safety and soundness of those banks—and, therefore, public funds in the Deposit Insurance Fund and the United States Treasury—at risk.

*Fourth*, the Supreme Court instructed in *Jarkesy* that, when determining if the public-rights doctrine applies, courts must also "consider[ ] whether the [enforcement] actions [at issue] [are] 'closely intertwined' with the [relevant regulatory] regime."[130] And it emphasized that, when applying this factor in *Granfinanciera*, the Court determined that the fact "that Congress had already authorized jury trials for certain bankruptcy matters demonstrat[ed] that jury trials were not generally 'incompatible' with the overall [bankruptcy] regime."[131] Applying this part of *Granfinanciera* in *Jarkesy*, the Supreme Court found it significant that "Congress had authorized the

---

[128] *Jarkesy*, 144 S.Ct. at 2136.

[129] *Spawn*, 989 F.2d at 837.

[130] *Jarkesy*, 144 S.Ct. at 2135.

[131] *Id.*

SEC to bring [securities-fraud] actions in Article III Courts and still authorizes the SEC to do so today."[132]

In contrast, Congress has authorized section 1818 enforcement actions seeking to recover civil money penalties to be brought *exclusively* in administrative enforcement proceedings. Under the reasoning of both *Jarkesy* and *Granfinanciera*, this demonstrates that jury trials *are* generally incompatible with the overall federal bank-regulatory regime. In addition, this Court has recognized that "[t]he phrase 'unsafe or unsound banking practice' is widely used in the regulatory statutes and in case law, and one of the purposes of the banking acts is clearly to commit the progressive definition and eradication of such practices to the expertise of the appropriate regulatory agencies."[133] For both of these reasons—unlike administrative proceedings for SEC securities-fraud actions—section 1818 administrative enforcement proceedings are "closely intertwined" with the relevant regulatory regime.

*Fifth*, the Supreme Court also found it significant in *Jarkesy* that if the SEC could no longer bring administrative actions seeking to impose civil penalties for securities fraud it could still bring such claims in federal court. As the Court explained, "Congress ha[s] authorized the SEC to bring such actions in Article III courts and still authorizes the SEC to do so today."[134] And in a concurring opinion, two Justices

---

[132] *Id.* at 2139.

[133] *Groos Nat'l Bank v. Comptroller of the Currency*, 573 F.2d 889, 897 (5th Cir. 1978).

[134] *Jarkesy*, 144 S.Ct. at 2139.

also emphasized this point: "[T]he Court hardly leaves the SEC without ample powers and recourse. The agency is free to pursue all of its charges against Mr. Jarkesy . . . [i]n a court, before a judge, and with a jury."[135] But that is not true here. Rather, preventing the FDIC and the other federal banking agencies from bringing enforcement claims seeking civil money penalties in administrative proceedings would foreclose them from bringing such claims at all. And as the Supreme Court acknowledged in *Jarkesy*, civil penalties are one of the "most potent enforcement tools."[136] Consequently—unlike the securities-fraud claims at issue in *Jarkesy*—requiring jury trials for section 1818 claims "would 'go far to dismantle the statutory scheme.'"[137] And as this Court has acknowledged, this is yet another factor that weighs in favor of a determination that the public-rights doctrine does apply.[138]

*Finally*, as discussed *supra* at 21-22, this Court grounded its public-rights holding in *Akin* solely on the Supreme Court's decision in *Granfinanciera*. And in *Jarkesy*, the Supreme Court stated that "*Granfinanciera* effectively decide[d] th[at] case."[139] Thus, not only did *Jarkesy not* "disavow[ ] the mode of analysis on which [this Court's] precedent relied[,]"[140] but it reaffirmed that mode of analysis.

---

[135] *Id.* at 2154 (Justice GORSUCH, with whom Justice THOMAS joined, concurring).

[136] *Id.* at 2126.

[137] *Granfinanciera*, 492 U.S. at 61 (quoting *Atlas Roofing*, 430 U.S. at 454).

[138] *See Jarkesy v. SEC*, 34 F.4th 446, 453, 455-56 (5th Cir. 2022), *aff'd*, 144 S.Ct. 2117 (2024).

[139] *Jarkesy*, 144 S.Ct. at 2135.

[140] *Martinelli*, 65 F.4th at 234.

As this Court has noted, "Article III jurisprudence is complex, requiring the court to do an examination of every delegation of judicial authority."[141] Thus, at a bare minimum, *Jarkesy* "leave[s] open the possibility that in a later case, the Supreme Court might decide that the [public-rights doctrine] does apply to [section 1818 administrative enforcement claims]."[142] What is more, given the differences between the SEC regulatory enforcement regime and the section 1818 regulatory enforcement regime discussed above, *Jarkesy* is not "directly on point" with *Akin*.[143] It necessarily follows that *Jarkesy* did not "unequivocally, *sub silentio* overrule[ ]" *Akin*.[144] Accordingly, *Akin* continues to be controlling Circuit precedent and Burgess therefore has no right to a jury trial.

### D.  In any event, *Jarkesy* is materially distinguishable and does not require a jury trial here.

Even assuming for the sake of argument that *Akin* were not controlling Circuit precedent holding that section 1818 claims fall within the public-rights doctrine, Burgess still would not be entitled to a jury trial. Rather, for the reasons discussed in the immediately preceding section of this brief, under *Jarkesy* the public-rights doctrine applies here and a jury trial is therefore not required. In summary, those reasons are:

---

[141] *Technical Automation Services*, 673 F.3d at 407.

[142] *Martinelli*, 65 F.4th at 237.

[143] *See Tong*, 90 F.4th at 864 ("[This Court] ha[s] 'specifically rejected the idea that later Supreme Court . . . decisions that were not directly on point could alter the binding nature of our prior precedent.")

[144] *Technical Automation Services*, 673 F.3d at 405.

- In *Jarkesy*, the Supreme Court reaffirmed that public rights are "matters [that] 'historically could have been determined *exclusively* by [the executive and legislative] branches[.]'"[145] Section 1818 claims seeking civil penalties fit squarely within this description because such claims historically could only be brought in administrative proceedings. SEC securities-fraud claims, in contrast, historically have been brought in federal court, and they still may be brought in federal court today.

- Because section 1818 enforcement claims directly implicate public funds in the Deposit Insurance Fund and, potentially, the United States Treasury, they more closely resemble the "matters . . . [that] fall within . . . the distinctive areas involving governmental prerogatives"[146] the Supreme Court listed in *Jarkesy* as examples of public rights than the securities-fraud claim at issue in *Jarkesy*.

- The object of the section 1818 enforcement action here is not, as in *Jarkesy*, to "regulate transactions between private individuals interacting in a pre-existing market,"[147] but rather to regulate a bank-insurance program created and administered by the federal government and backed by public funds in the Deposit Insurance Fund and, potentially, the United States Treasury.

- Unlike SEC securities-fraud claims, Congress has not authorized the FDIC or other federal banking agencies to bring enforcement actions in federal court where jury trials are available, which demonstrates that jury trials are generally incompatible with the overall bank-regulatory regime.[148] Moreover, "one of the purposes of the banking acts is clearly to commit the progressive definition and eradication of [unsafe or unsound banking practices] to the expertise of the appropriate regulatory agencies."[149] For these reasons, administrative enforcement proceedings are "'closely intertwined' with the [bank-regulatory] regime."[150]

---

[145] *Jarkesy*, 144 S.Ct. at 2132 (emphasis added).

[146] *Id.* at 2127.

[147] *Id.* at 2136.

[148] *See id.* at 2135 (where Congress authorizes jury trials for certain matters this "demonstrat[es] that jury trials [a]re not generally 'incompatible' with the overall [regulatory] regime").

[149] *Groos National Bank*, 573 F.2d at 897.

[150] *Jarkesy*, 144 S.Ct. at 2135.

- Unlike the SEC, the FDIC and the other federal banking agencies do not have the option to bring enforcement claims seeking a civil money penalty in federal court. Thus, preventing the banking agencies from bringing such claims in administrative proceedings would completely foreclose them from bringing such claims, which "would 'go far to dismantle the statutory scheme.'"[151]

Thus—even disregarding this Court's binding decision in *Akin*—Burgess has no right to a jury trial of the section 1818 enforcement claims at issue in this appeal.

## III.  The District Court Erred In Ruling That Burgess "Automatically Satisfied" The Irreparable Injury Requirement.

The district court did not require Burgess to show he would suffer irreparable harm to obtain a preliminary injunction. Rather, the court ruled that "[s]ince [it] ha[d] determined that Plaintiff was entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement [wa]s *automatically satisfied* without the need to consider Plaintiff's particular showings of irreparable harm."[152] We argued in our pre-stay briefs that this district court ruling is wrong as a matter of law, and that this error provides an additional alternative ground for reversal.[153] Two cases supporting FDIC-Appellants' position on this issue were decided while this appeal was stayed.

In *Leachco, Inc. v. CPSC*,[154] the plaintiff-appellant was the respondent in a Consumer Product Safety Commission administrative proceeding who brought a

---

[151] *Granfinanciera*, 492 U.S. at 61.

[152] ROA.350 (emphasis added).

[153] *See* FDIC Opening Br. 49-54; FDIC Resp. & Reply Br. 47-52.

[154] 103 F.4th 748 (10th Cir. 2024).

district-court action seeking to halt that proceeding and alleging, *inter alia*, separation-of-powers claims. The plaintiff moved for a preliminary injunction asserting a "purported 'here-and-now' constitutional injury of being subjected to proceedings before an unconstitutionally structured agency," and the court denied that motion because of the plaintiff's "failure to show irreparable harm."[155] On appeal, the Tenth Circuit affirmed. The court explained: "[W]hile violations of certain individual constitutional rights, without more, can constitute irreparable harm, violations of the Constitution's separation of powers provisions do not."[156]

Similarly, in *Ponte v. FDIC*,[157] the plaintiff—a respondent in an FDIC administrative proceeding—brought a district-court action and moved for an injunction to halt the proceedings while arguing that "§ 1818(i)(1) violates the Seventh Amendment by 'deny[ing] [the plaintiff] his jury rights.'"[158] The District Court for the District of Columbia denied the motion after rejecting the plaintiff's argument that he would suffer irreparable harm, explaining that "[i]t is well-established that the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial."[159]

---

[155] *Id.* at 751.

[156] *Id.* at 753.

[157] 2024 WL 4730602 (D.D.C. Oct. 11, 2024).

[158] *Id.* at *7.

[159] *Id.* at *8 (citing cases).

## CONCLUSION

This Court should vacate the district court's November 6, 2022 Order and it's December 1, 2022 preliminary injunction Order and remand this case to the district court with instructions to dismiss all claims for lack of subject-matter jurisdiction.

Dated: November 14, 2024        Respectfully submitted,

B. Amon James
Assistant General Counsel
J. Scott Watson
Senior Counsel

s/Joseph Brooks
Joseph Brooks
Counsel
FEDERAL DEPOSIT INSURANCE
  CORPORATION
3501 Fairfax Drive, Room D-7010
Arlington, VA 22226
Tel: (703) 562-2054
Fax: (703) 562-2496

*Counsel for Appellants/Cross-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing brief has been filed by electronic case filing and served on counsel of record through the Court's Notice of Docket Activity on this 14th day of November, 2024.

s/ Joseph Brooks
Joseph Brooks

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)

Undersigned counsel certifies that this brief complies with this Court's September 25, 2024 Order (Document: 174-2) and the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 8,581 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Undersigned counsel further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced 14-point (12-point for footnotes) Baskerville Old Face typeface using Microsoft Word 2016.

s/Joseph Brooks
Joseph Brooks
*Counsel for Appellants/Cross-Appellees*

Dated:  November 14, 2024

36