# No. 22-11172

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

———————————

CORNELIUS CAMPBELL BURGESS,
*Plaintiff-Appellee / Cross-Appellant*,

*v.*

JENNIFER WHANG, in her official capacity as an Administrative Law Judge; FEDERAL DEPOSIT INSURANCE CORPORATION; TRAVIS HILL, in his official capacity as Acting Chairman of the FDIC; RODNEY E. HOOD, in his official capacity as a Director of the FDIC; RUSSELL VOUGHT, in his official capacity as a Director of the FDIC,
*Defendants-Appellants / Cross-Appellees.*

———————————

On Appeal from the United States District Court for the Northern District of Texas (No. 7:22-cv-100) (District Judge Reed Charles O'Connor)

———————————

## BRIEF OF AMICUS CURIAE WASHINGTON LEGAL FOUNDATION SUPPORTING REHEARING EN BANC

———————————

Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
candrews@wlf.org

October 16, 2025

## CERTIFICATE OF INTERESTED PERSONS

I certify that the following listed persons and entities have an interest in this case's outcome as described in the fourth sentence of Fifth Circuit Rule 28.2.1. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| Party | Counsel |
|---|---|
| CORNELIUS CAMPBELL BURGESS | Manuel Berrelez, Benjamin W. Snyder, Joseph C. Schroeder<br>*Paul Hastings LLP* |
| JENNIFER WHANG, in her official capacity as an Administrative Law Judge; FEDERAL DEPOSIT INSURANCE CORPORATION; TRAVIS HILL, in his official capacity as Acting Chairman of the FDIC; RODNEY E. HOOD, in his official capacity as a Director of the FDIC; RUSSELL VOUGHT, in his official capacity as a Director of the FDIC | Joseph Brooks, Arthur E. Anthony, Andrew A. Nicely<br>*Federal Deposit Insurance Corporation* |
| Herring Bank, Herring Bancorp., Inc. (nonparties) | N/A |
| Washington Legal Foundation (amicus curiae) | Cory L. Andrews<br>*Washington Legal Foundation* |

Washington Legal Foundation is a not-for-profit corporation under Section 501(c)(3) of the Internal Revenue Code. It has no parent company, issues no stock, and no publicly held company owns a ten percent or greater interest in it.

/s/ Cory L. Andrews
CORY L. ANDREWS
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

October 16, 2025

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF AUTHORITIES.....................................................................iv

INTEREST OF AMICUS CURIAE...........................................................1

INTRODUCTION & SUMMARY OF ARGUMENT................................2

ARGUMENT ............................................................................................4

I.    THE PANEL'S DECISION CREATES AN INTRA-CIRCUIT CONFLICT AND TRIGGERS SIGNIFICANT DUE-PROCESS CONCERNS.....................4

II.   THE PANEL'S REFUSAL TO APPLY THE CLEAR-STATEMENT RULE CONTRADICTS SUPREME COURT PRECEDENT AND ENDANGERS THE SEPARATION OF POWERS ............................................................8

CONCLUSION ......................................................................................12

CERTIFICATE OF COMPLIANCE........................................................13

CERTIFICATE OF SERVICE................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbaugh v. Y & H Corp.,*
546 U.S. 500 (2006) ................................................................ 3, 8

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023) ............................................................ 2, 5, 6

*Collins v. Dep't of the Treasury,*
83 F.4th 970 (5th Cir. 2023) ................................................... 2, 4

*FDIC v. Bank of Coushatta,*
930 F.2d 1122 (5th Cir. 1991) ..................................................... 4

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) ......................................................... 1, 7, 10

*INS v. St. Cyr,*
533 U.S. 289 (2001) ..................................................................... 9

*Jarkesy v. SEC,*
603 U.S. 109 (2024) ..................................................................... 8

*Lucia v. SEC,*
585 U.S. 237 (2018) ..................................................................... 1

*Nielsen v. Preap,*
586 U.S. 392 (2019) ................................................................... 11

*Seila Law LLC v. CFPB,*
591 U.S. 197 (2020) ..................................................................... 7

*Space Exploration Technologies Corp. v. NLRB,*
151 F.4th 761 (5th Cir. 2025) ...................................... 2, 5, 6, 7, 9, 10

*Stern v. Marshall,*
564 U.S. 462 (2011) ............................................................... 10, 11

*United States v. Fowler,*
216 F.3d 459 (5th Cir. 2000) ....................................................... 4

*Webster v. Doe,*
486 U.S. 592 (1988) ................................................................. 8, 9

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

**Constitutional Provisions**

U.S. Const. art. II ................................................................ 10

U.S. Const. art. III ................................................... 1, 3, 10, 11

**Statutes**

12 U.S.C. § 1818(i)(1) ............................................... 2, 3, 7, 9, 11

**Rules**

5th Cir. R. 35.1 .................................................................. 7

**Miscellaneous**

*The Federalist*, No. 47 .......................................................... 1

Michael J. Gerhardt, *The Constitutional Limits to Court-Stripping*,
  9 Lewis & Clark L. Rev. 347 (2005) .................................... 11

## INTEREST OF AMICUS CURIAE*

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It often appears as an amicus curiae to vindicate the Constitution's careful separation of powers. *See, e.g.*, *Lucia v. SEC*, 585 U.S. 237 (2018); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010). WLF also submitted an amicus brief with the panel here.

Safeguarding the separation of powers is "the sacred maxim of free government." *The Federalist*, No. 47 (Madison). The rise of administrative agencies, those sprawling departments tasked by Congress with helping to execute its laws, has long threatened to combine the legislative and executive powers in defiance of the Constitution. WLF believes that now, more than ever, it is imperative that Article III courts perform their core function of policing the separation of powers, ensuring that no one branch encroaches on the powers of the other branches.

---

* No party's counsel authored any part of this brief. No one, apart from WLF and its counsel, contributed money intended to fund the brief's preparation or submission. All parties consented to WLF's filing this brief.

## INTRODUCTION & SUMMARY OF THE ARGUMENT

This panel's decision—that 12 U.S.C. § 1818(i)(1) strips district courts of jurisdiction over structural constitutional claims—clashes with binding circuit precedent and erodes the Constitution's safeguard against unlawful agency power. This Court, in *Collins v. Dep't of the Treasury*, 83 F.4th 970, 980 (5th Cir. 2023), declared that § 1818(i)'s text does not bar review of constitutional claims, a holding the panel brushed aside as mere dictum despite its integral role in *Collins*'s full decision on the merits.

The panel's decision also opens a rift with *Space Exploration Technologies Corp. v. NLRB* (*SpaceX*), which only six days earlier had rejected the same flawed reasoning over Judge Weiner's disagreement in his partial concurrence. 151 F.4th 761, 771 (5th Cir. 2025). *SpaceX* clarifies that post-hoc review of structural flaws like removal protections comes "too late to be meaningful" because "[a] proceeding that has already happened cannot be undone. *Id.* (quoting *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023)). In contrast to both *Collins* and *SpaceX*, the panel's decision forces individuals like Burgess to suffer through ultra vires agency proceedings before any court can intervene.

Under the Supreme Court's "bright line" rule, a statutory requirement is jurisdictional only if Congress "clearly states" that it is. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–516 (2006). That clear-statement rule should have resolved this case. By failing to demand explicit congressional intent to foreclose judicial review of constitutional challenges, the panel decision jettisons the clear-statement rule and invites grave separation-of-powers violations.

Indeed, if allowed to stand, the panel's decision raises serious doubts about the constitutionality of § 1818(i)(1). First, the FDIC's interpretation deprives regulated parties like Burgess of due process of law. Rather than have an Article III court adjudicate claims about the constitutionality of the FDIC's structure, an administrative tribunal would make that decision. Second, it would violate the separation of powers to allow Congress to strip Article III courts of jurisdiction to decide whether an administrative agency is constitutionally structured. En banc review will allow the Court to apply the constitutional-avoidance canon when construing Section 1818(i)(1), something the panel refused to do.

3

En banc review is imperative to mend this intra-circuit fracture, reaffirm judicial oversight, and avert the irreparable injury of unaccountable agency adjudication.

## ARGUMENT

### I. THE PANEL'S DECISION CREATES AN INTRA-CIRCUIT CONFLICT AND TRIGGERS SIGNIFICANT DUE-PROCESS CONCERNS.

The panel is wrong because *Collins* is binding. *Collins* carefully examined the same statute and concluded that its "language d[oes] not preclude review of constitutional claims." 83 F.4th at 980 (citing *FDIC v. Bank of Coushatta*, 930 F.2d 1122, 1130 (5th Cir. 1991). That statement was no mere aside—it was an essential holding that allowed the Court to reach the merits of Collins's removal-protection challenge against the FDIC's structure. *Id.*

By dismissing that holding as dictum, the panel ignored the rule that every panel must follow this Court's prior holdings unless clearly erroneous or overruled en banc. *See United States v. Fowler*, 216 F.3d 459, 460 (5th Cir. 2000) ("One panel of this court cannot overrule the decision of another panel."). The panel's holding thus not only flouts stare decisis but also sows confusion in an area where clarity is crucial: the

availability of pre-enforcement review for claims that an agency's very composition violates the Constitution.

Worse still, the panel's interpretation simply cannot be reconciled with this Court's holding in *SpaceX*, which was less than a week old when the panel's decision came down. 151 F.4th at 771. *SpaceX* held that delayed review of structural claims—including unconstitutional removal protections for agency officials—is "too late to be meaningful." *Id.* "If the injury is the process itself," *Space X* insisted, "review after the fact comes too late: 'A proceeding that has already happened cannot be undone,' rendering later review 'too late to be meaningful.'" *Id.* (quoting *Axon*, 598 U.S. at 191). *SpaceX* emphasized the "here-and-now injury" of submitting to an ultra vires process. *Id.*

*SpaceX* drew on Supreme Court precedent like *Axon*, which recognizes that being "subjected to unconstitutional agency authority" inflicts immediate, irreparable harm. 598 U.S. at 191. Yet the panel here endorsed precisely the opposite, forcing Burgess to endure the FDIC's enforcement action before he may challenge its constitutional defects, even though Burgess's harm accrues from the proceeding itself. Nothing "gives courts authority to engage of this business of jurisdiction-

stripping-by-implication." *Axon*, 598 U.S. at 207 (Gorsuch, J., concurring).

The panel opinion's author, Judge Weiner, was no stranger to *SpaceX*. He only partially concurred with the Court's holding. 151 F.4th at 784 (Weiner, J., concurring in part) (disagreeing with the *SpaceX* majority's "problematic" holding that "a party may challenge an unconstitutional removal provision in cases seeking only prospective relief"). This intra-circuit conflict is no picayune quibble; it undermines core constitutional protections.

By their very nature, structural claims attack the legitimacy of the adjudicator, not just the outcome. As *SpaceX* noted, such challenges are "wholly collateral" to the merits and thus fall outside any agency's expertise. *SpaceX*, 151 F.4th at 771 ("The Employers are prospectively challenging the NLRB's authority to proceed at all—'rather than actions taken in the agency proceedings.'") (quoting *Axon*, 598 U.S. at 194).

Requiring administrative exhaustion in these cases raises serious due-process concerns, as it compels litigants to "bet the farm" on an unconstitutional forum, facing costs and reputational harm that no

appeal can undo. *See Free Enter. Fund*, 561 U.S. at 490 (structural flaws demand prompt review to prevent an "ongoing constitutional violation").

Burgess's ordeal exemplifies the stakes. As a small-bank CEO, he has endured over a decade of FDIC scrutiny, including two full proceedings before ALJs whose removal protections he credibly contests are unconstitutional under Article II. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 220 (2020) (removal restrictions on principal officers violate separation of powers). The panel's rule would force him to expend the time and money of yet another Board proceeding, amplifying the precise harm that *SpaceX* deems intolerable.

En banc review is the only way to resolve this split and ensure uniformity. *See* 5th Cir. R. 35.1 (en banc review is warranted for questions of "exceptional importance" or to "secure or maintain uniformity"). Without it, litigants in scores of agency cases in this circuit face a patchwork of access to justice, depending on which panel draws their appeal—a result antithetical to the rule of law.

Indeed, the panel's decision invites broader chaos. If § 1818(i)(1) bars pre-enforcement constitutional challenges, similar statutes in other agency schemes—governing the NCUA, FHFA, and others—could be

held to do the same, despite Supreme Court signals favoring early review. *See Jarkesy v. SEC*, <u>603 U.S. 109, 132</u>–34 (2024) (Seventh Amendment claims against agency proceedings merit district-court jurisdiction). En banc review exists to prevent such fragmentation, particularly when, as here, the issue implicates the Constitution. Granting rehearing would reaffirm that constitutional violations cannot be deferred; they must be addressed up front.

## II.    THE PANEL'S REFUSAL TO APPLY THE CLEAR-STATEMENT RULE CONTRADICTS SUPREME COURT PRECEDENT AND ENDANGERS THE SEPARATION OF POWERS.

In recent years, the Supreme Court has sharpened the distinction between jurisdictional requirements that limit federal courts' adjudicatory power and non-jurisdictional rules that merely prescribe requirements for relief or procedures for processing claims. The Court has adopted a "readily administrable bright line" test: a requirement is "jurisdictional" only if Congress "clearly states" that it is. *Arbaugh*, <u>546 U.S. at 515</u>–516.

Congress can tailor federal jurisdiction; but stripping courts of authority over constitutional claims requires a "clear statement" to overcome the presumption favoring review. *See Webster v. Doe*, <u>486 U.S.</u>

592, 603 (1988) (requiring "heightened showing" to deny "any judicial forum for a colorable constitutional claim").

The panel erred by bypassing this rule, interpreting § 1818(i)(1)'s text—"in no event shall any court have jurisdiction to affect by injunction . . . the issuance or enforcement of any . . . order"—as a total bar on structural challenges. 12 U.S.C. § 1818(i)(1). But that language targets merits orders, not pre-enforcement attacks on agency legitimacy. Without an explicit text excluding constitutional review, the presumption holds. The panel's expansive view of § 1818(i)(1) thus ignores the canon that ambiguities favor review, especially when they risk "serious constitutional question[s]." *INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001).

*SpaceX* reflects this rigorous standard. It rejected jurisdiction-stripping under the Norris-LaGuardia Act, noting that structural claims "have nothing to do" with the Act's labor-dispute focus. *SpaceX*, 151 F.4th at 770 ("These suits fall outside that definition. First, they are not between the Employers and their employees—they are between the Employers and the NLRB. Second, the Employers are not 'engaged in the same industry, trade, craft, or occupation'—they are distinct companies in unrelated sectors suing a federal agency."). This narrow reading,

*SpaceX* explains, preserves court access for immediate constitutional harms. "When an agency's structure violates the separation of powers, the harm is immediate—and the remedy must be, too." *Id.* at 767.

The panel's dogged refusal to apply the clear-statement rule raises serious separation-of-powers concerns. Blocking pre-enforcement review forces litigants into constitutionally flawed proceedings where insulated officials hold unchecked sway. For Burgess, this means facing FDIC Board members and ALJs with multilayered removal protections, in defiance of Article II's mandate that executive power reside in a single President. *See Free Enter. Fund*, 561 U.S. at 492–93 (dual for-cause protections are unconstitutional). The panel's legal reasoning effectively demands that Burgess risk career-ending penalties to challenge these flaws, a deterrent that entrenches—even incentivizes—agency overreach.

Beyond Burgess's plight, the panel's view could shield agencies from timely oversight in other cases, letting structural violations fester. But it erodes the separation of powers by allowing agencies to insulate themselves from Article III scrutiny, effectively permitting officers of the United States to define their own accountability. *Cf. Stern v. Marshall*,

564 U.S. 462, 484 (2011) ("Article III protects liberty . . . through its role in implementing the separation of powers.").

Congress cannot strip federal courts of jurisdiction "in any way that undermines the functioning of Article III courts." Michael J. Gerhardt, *The Constitutional Limits to Court-Stripping*, 9 Lewis & Clark L. Rev. 347, 360 (2005). By allowing review of such claims only on a petition for review, the panel opinion permits administrative agencies to say what the law is without meaningful and timely judicial review of those decisions by Article III courts.

The canon of constitutional avoidance insists "that when a serious doubt is raised about the constitutionality of an act of Congress, [federal courts] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Nielsen v. Preap*, 586 U.S. 392, 419 (2019) (cleaned up). The panel's broad interpretation here would cede unreviewable power to unelected officials. That construction raises serious doubt about the constitutionality of § 1818(i)(1). En banc review can restore the clear-statement rule, ensuring that constitutional claims get timely hearings.

## CONCLUSION

This Court should grant the petition.

Respectfully submitted,

October 16, 2025

/s/ Cory L. Andrews
Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
candrews@wlf.org

*Counsel for Amicus Curiae*
*Washington Legal Foundation*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limits of Federal Rule of Appellate Procedure 29(a)(5) because it contains exactly 2,032 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

I also certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it uses 14-point Century Schoolbook font.

/s/ Cory L. Andrews
CORY L. ANDREWS
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

October 16, 2025

## CERTIFICATE OF SERVICE

I hereby certify that, on October 16, 2025, I electronically filed the foregoing brief with the Clerk of the Court via the appellate CM/ECF system, which served notice of the filing on all ECF-registered counsel.

/s/ Cory L. Andrews
CORY L. ANDREWS
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

October 16, 2025